# Exhibit 49 - Cosby v. KPMG, May 31, 2016

# Memorandum in support of

# Motion for Appointment as Co-Lead Plaintiffs

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| LEWIS COSBY, on behalf of himself and all others similarly situated, | ) ) CLASS ACTION ) |
| Plaintiff, | ) ) |
| v. | ) No. 3:16-cv-00121 ) |
| DELOY MILLER, et al., | ) Varlan/Shirley ) |
| Defendants. | ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR APPOINTMENT OF CO-LEAD PLAINTIFFS AND
APPROVAL OF THEIR SELECTION OF LEAD COUNSEL**

**NOW INTO COURT** come Lewis Cosby ("Cosby") and Kenneth R. Martin (as beneficiary of the Kenneth Ray Martin Roth IRA) ("Martin")(collectively, "Movants"), by and through counsel, and submit this memorandum of law in support of their Motion for Appointment of Co-Lead Plaintiffs and Approval of Their Selection of Lead Counsel.

## I. PRELIMINARY STATEMENT

This is a securities class action lawsuit on behalf of persons who purchased or otherwise acquired common shares of Miller Energy Resources ("Miller Energy") traceable to the December 6, 2012 Registration Statement (the "Class Period"). This action is brought pursuant to §§10(b), 11, 15, and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§77 et al. and breach of fiduciary duty.

# Exhibit 49 - Cosby v. KPMG, May 31, 2016

# Memorandum in support of

# Motion for Appointment as Co-Lead Plaintiffs

The foregoing Motion is made on the grounds that Cosby and Martin are the "most adequate plaintiffs" to serve as lead plaintiffs in this litigation, pursuant to the Exchange Act. In support, Movants submit a Memorandum of Law and the Declarations of Gordon Ball, Lewis Cosby, and Kenneth R. Martin.

## II. STATEMENT OF FACTS

Miller Energy purchased assets located in Alaska for $2.25 million in cash – and assumed certain liabilities it valued at approximately $2 million – during a competitive bid in a bankruptcy proceeding in December 2009 (hereinafter, the "Alaska Assets"). Following that purchase, Miller Energy, its officers, managers, Board of Directors, along with Sherb & Co., LLP ("Sherb") and KPMG, LLP ("KPMG"), used false statements, fraudulent accounting, and other fraudulent reporting devices to falsify the financial results of Miller Energy, conspiring to perpetrate a massive fraud on shareholders of Miller Energy common stock. [Doc. 1, at ¶ 3]. Among other things:

- Miller Energy's officers, managers, and Board of Directors reported those assets at a substantially overstated value of $480 million;

- Miller Energy's officers, managers, and Board of Directors recognized a one-time "bargain purchase" gain of $277 million for its fiscal third quarter ended January 2010 and fiscal year ended April 2010;

- Miller Energy's officers, managers, and Board of Directors failed to fairly account for the acquisition of the Alaska Assets in accordance with generally accepted accounting principles ("GAAP");

■ Miller Energy's officers, managers, and Board of Directors used a reserve report that contained expense numbers that were knowingly understated by the CEO of Miller Energy's Alaska operations;

■ Miller Energy's officers, managers, and Board of Directors double-counted $110 million of certain fixed assets that were already included in the reserve report;

■ Miller Energy's officers, managers, and Board of Directors filed a Form S-3 Registration Statement with the SEC on or about September 6, 2012, incorporating by reference previously filed materials that contained false or otherwise untrue statements of material facts or omissions and were not prepared in accordance with the rules and regulations governing their preparation;■ the outside directors also bear legal responsibility for the success and extent of the fraudulent scheme, as they utterly failed to carry out their duties as members of the Audit Committee of the Board of Directors, blinding themselves to the possibility of improper acts by Miller Energy management;

■ after Miller Energy's previous auditor, Sherb & Co., LLP ("Sherb"), had issued an unqualified opinion of Miller Energy's 2010 annual report that falsely stated that its audit was conducted in accordance with the standards of the Public Company Accounting Oversight Board and that Miller Energy's financial statements were presented fairly and conformed with GAAP, KPMG issued unqualified reports that Miller Energy's financial statements were fairly presented, in all material respects, disregarding overwhelming evidence of egregious over-valuations and massive accounting errors; and

■ Sherb and KPMG, who were outside auditors for Miller Energy at different times during the Class Period, knew, but never reported to the relevant authorities, that Miller Energy had falsely reported its financial results for years.

[Doc. 1, at ¶ 3].

All of Miller Energy's interim and annual financial reports issued between 2010 and 2015, relied upon a Reserve Report not prepared for the purpose and overstated the value of the Alaska Assets by hundreds of millions of dollars by failing to record the Alaska Assets at fair value as required by law. As a result, all of Miller Energy's interim and fiscal financial reports issued between 2010 and 2015, the Form S-3 filed on September 6, 2012, and numerous other final prospectuses were false and misleading. [Doc. 1, at ¶ 4]. The grossly-inflated value helped Miller Energy transform itself from a penny stock into a New York Stock Exchange-listed company purportedly valued in 2013 at $393 million. Its stock reached a 2013 high of nearly $9 per share. [Doc. 1, at ¶ 5].

For all of this, the United States Securities and Exchange Commission ("SEC") charged Miller Energy, former Chief Financial Officer Paul Boyd, and Chief Operating Officer David Hall with accounting fraud for overstating the value of Alaska Assets by more than $400 million. [Doc. 1, at ¶ 6].

Miller Energy's independent auditors, initially Sherb, and then KPMG, also repeatedly failed to conduct audits that complied with professional standards. In its fiscal 2010 audit, Sherb issued an unqualified opinion of Miller Energy's 2010 annual report endorsing the over-valuation. KPMG issued its own unqualified opinions that Miller Energy's 2011-2014 financial statements were

fairly represented in all material respects, certifying statements that KPMG should have known were substantially false and misleading. [Doc. 1, at ¶ 7].

These false financial statements, affirmed by KPMG's unqualified reports, misled and deprived common shareholders of material information about Miller Energy's financial position, through which they suffered injury to their property.

Public investors, creditors and others rely on independent, registered public accounting firms to audit financial statements and assess internal controls when deciding whether to invest in or do business with a public company. KPMG, a leading accounting firm in the oil and gas sector, had an opportunity to protect shareholders and correct Miller Energy's rampant misstatements and untruths. Yet, it did not, instead issuing unqualified reports that Miller Energy financial statements for the years ended April 30, 2011 through 2014 were fairly presented, in all material respects, the highest level of an audit report that a CPA can issue. [Doc. 1, at ¶ 11]. Moreover, KPMG has never withdrawn, amended, or otherwise altered its reports. Nor did it alert the SEC or Miller Energy's shareholders that its earlier reports were in error. [Doc. 1, at ¶ 12].

## III. LEGAL ARGUMENT

### A. Cosby and Martin Are the Most Adequate Plaintiffs.

The PSLRA establishes the procedure governing the appointment of lead plaintiff. *See* 15 U.S.C. §78u-4(a)(1)-(3)(B)(I). First, the plaintiff who files the initial action must publish a notice to the class within twenty (20) days of filing

the action informing class members of their right to file a motion for appointment as lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(A)(I). Here, the relevant notice was timely published on Business Wire on March 30, 2016. [*See* Ball Decl.].

Within sixty (60) days after publication of the notice, any person who is a member of the proposed class may apply to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. *See* 15 U.S.C. §78u-4(a)(3)(A)-(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that ***the most adequate plaintiff*** in any private action arising under this [Act] is the person or group of persons that –
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).[1]

### 1. Movants Have Timely Moved for Appointment as Co-Lead Plaintiffs.

All class members who are interested in moving for the appointment of lead plaintiff in this matter must do so by May 31, 2016. *See* 15 U.S.C. §78u-4(a)(3)(A)-(B). Movants therefore have timely moved this Court to be

---

[1] Emphasis is added and citations are omitted here and throughout.

appointed co-lead plaintiffs and signed and filed a certification stating their willingness to serve as a representative party on behalf of the class. *See* Ball Decl., Exh. 1 to Motion.

> **2. Cosby Purchased Miller Energy Common Shares During the Class Period, Investigated the Claims Against the Defendants, and Commenced the First Litigation to Protect the Proposed Class of Shareholders.**

Cosby purchased Miller Energy common shares during the Class Period. *See* Cosby Decl., Exh. 2 to Motion. Cosby is a graduate of The University of Tennessee, at Knoxville, earning an accounting degree in 1972. He has been licensed as Tennessee Certified Public Accountant since 1974, but has not practiced accounting since 1988. Cosby practiced accounting for sixteen (16) years, primarily with Coopers and Lybrand (now PriceWaterhouseCoopers) in the firm's Atlanta and Knoxville offices, during which time he audited the Tennessee Valley Authority; DeKalb County, Georgia; Knox County, Tennessee; and many other local, state and federally funded agencies.

Cosby began investigating many of the claims alleged in the Complaint in 2015, after the SEC had initiated enforcement proceedings against Miller Energy and some of its executives. *Id.* Cosby continued his investigation and ultimately brought the results of his investigative work to the attention of Knoxville attorney Gordon Ball. Cosby's knowledge of accounting practices and his investigation of Miller Energy's financial statements and reports were invaluable to Ball's own

investigation and drafting of the Complaint against the Defendants, particularly the allegations against KPMG.

On March 14, 2016, Ball, listing Cosby as the only named Plaintiff and proposed Class representative, filed this litigation. [Doc. 1].

### 3. Movants Each Have the Requisite Financial Interest in the Relief Sought by the Class.

While Cosby purchased 500 shares of Miller Energy common stock in October 2014 (which he sold in December 2014), Kenneth R. Martin, as beneficiary of the Kenneth Ray Martin Roth IRA, purchased approximately 1.2 million shares of Miller Energy common stock during the Class Period. Martin suffered losses of approximately $6,480,355.34. *See* Martin Decl., Exh. 3 to Motion. Upon information and belief, Martin's financial interest in this matter is easily the largest of any competing lead plaintiff movant. His Roth IRA is still holding 500,000 shares of stock. Upon information and belief, with the exception of former Miller Energy officers, executives, and/or board members, Martin was the third largest holder of Miller Energy common stock. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(bb).

### 4. Movants Satisfy the Requirements of Rule 23.

In addition to filing the first Complaint asserting claims on behalf of purchasers of Miller Energy common shares (Cosby) and possessing the largest financial interest (Martin), a proposed lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C.

-8-

§78u-4(a)(3)(B)(iii)(cc).  Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Of these four prerequisites, only two – typicality and adequacy – directly address the personal characteristics of the lead plaintiff movant.  Consequently, in deciding a lead plaintiff motion, the court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until a class certification motion is filed.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class.  Typicality exists where the plaintiff's claims arise from the same series of events and are based on the same legal theories as the claims of all the class members.  *See In re Am. Med. Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996) ("'a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory'").  Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical.  *See Sprague v.*

*GMC*, 133 F.3d 388, 399 (6th Cir. 1998) ("[t]he premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class"); *Craft v. Vanderbilt Univ.*, 174 F.R.D. 396, 404 (M.D. Tenn. 1996) (typicality may be satisfied "'even if there are factual distinctions between the named plaintiffs and those of other class members.'")

Movants satisfy the typicality requirement of Rule 23 because, just like all other Class members, they: (1) purchased Miller Energy securities during the Class Period at artificially-inflated prices; and (2) suffered damages thereby. Thus, Movants' claims are typical because their claims and those of other class members arise out of the same course of events.

Under Rule 23(a)(4) the representative party must also "fairly and adequately protect the interests of the class." In the Sixth Circuit, adequacy is established where (1) there are common interests between the proposed lead plaintiff and members of the class; and (2) the proposed lead plaintiff "'will vigorously prosecute the interests of the class through qualified counsel.'" *Craft*, 174 F.R.D. at 405.

Movants are adequate class representatives because their interests in aggressively pursuing their claims against the Defendants are clearly aligned with the interests of the members of the class who also suffered losses due to Defendants' false statements, misrepresentations, omissions, and other unlawful conduct. Moreover, and as demonstrated below, Movants' proposed lead counsel

-10-

is highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, Movants prima facie satisfy the typicality and adequacy requirements of Rule 23 for purposes of this Motion.

### B. Movants' Selection of Lead Counsel Should Be Approved

The lead plaintiff shall, subject to court approval, select and retain counsel to represent the class it seeks to represent. 15 U.S.C. §78u-4(a)(3)(B)(v). Movants have selected Gordon Ball PLLC to serve as lead counsel for the class. For about seven months, Gordon Ball PLLC researched and investigated the factual allegations in this case, interviewing former Miller Energy executives, employees, and investors, and reviewing thousands of pages of documents, including public financial filings, U.S. Securities and Exchange Commission ("SEC") filings by Miller Energy, regulatory filings and reports, securities analysts' reports and advisories about Miller Energy, press releases and other public statements issued by Miller Energy, media reports about Miller Energy and court filings, bankruptcy court filings, the SEC's Order Instituting Public Administrative and Cease-and-Desist Proceedings Pursuant to Section 8a of the Securities Act of 1933, §§ 4c and 2lc of the Securities Exchange Act of 1934, and Rule 102(e) of the Commission's Rules of Practice, *In the Matter of Miller Resources, Inc., et al.*, SEC Admin. Proc. File No. 3-16729 (Aug. 6, 2015), the SEC's Order Making Findings and Imposing a Cease-and-Desist Order and Penalties Pursuant to § 8a of the Securities Act of 1933 and § 21c of the Securities Exchange Act of 1934 as to

Miller Energy Resources, Inc., *In the Matter of Miller Resources, Inc., et al.*, SEC Admin. Proc. File No. 3-16729 (Jan. 12, 2016), filings in *ln re Miller Energy Resources, Inc., et al.*, No. 15-00313 (D. Alaska Bankr. Ct.), media reports about Miller Energy, Miller Energy officers, executives, and board members, and KPMG.

In March 2016, Gordon Ball PLLC commenced the first action on behalf of owners of Miller Energy common shares in this Court and published notice of the filing on Business Wire on March 30, 2016. Since that time, Ball has fielded telephone calls, emails, and other communications from over 100 Miller Energy investors, many of whom would be members of the proposed Class. The firm currently represents more than forty (40) individual purchasers of Miller Energy common shares, all putative members of the proposed Class – ranging from an investor with 3,400,000 shares to an investor of just 172 shares.

Ball possesses extensive experience litigating complex class actions and has been appointed as lead counsel in landmark class actions, including *Cox v. Shell Oil Company, et al.*, in which Ball and other attorneys alleged Shell Oil Co., E.I. du Pont de Nemours, and Hoescht Celanese with making defective polybutylene pipes and plumbing systems. A settlement was ultimately reached that provided a minimum of $950 million to consumers, the largest award in Tennessee history; *Spartanburg Regional Health Services District, Inc. v. Hillenbrand Industries, Inc.*, Ball represented a South Carolina hospital in a class action against Hillenbrand Industries in a first of its kind direct purchaser class action challenging

-12-

monopoly-bundling of medical devices. The parties reached a settlement providing nearly $490 million in relief, including a cash payment to the class of $337.5 million (representing the sixth largest amount ever recovered in an antitrust class action).

Over the past 25 years, Ball has been involved as lead or co-counsel for plaintiffs in dozens of class actions which have resulted in the recovery of billions of dollars for consumers across the United States. Currently, Ball is lead counsel in *In re Southeastern Milk Antitrust Litigation,* No. 07-cv-188 (E.D. Tenn.) (price-fixing violations) (currently co-lead counsel); *Hale v. State Farm Mut. Auto. Ins. Co.,* No. 3:12-cv-00660-DRH-SCW (S.D. Ill.) (co-lead counsel for class of 4.7 million policyholders in RICO action against nation's largest insurer); and *Jaynes v. American Express Co.,* No. 1:15-cv-01598 (E.D. N.Y.) (co-chair for Executive Committee for nationwide class of consumers in antitrust action regarding Am-Ex's anti-steering rules). *See also* Ball Decl., Exh. 1 to Motion.

For these reasons, the Court should approve Movants' selection of Gordon Ball of Gordon Ball PLLC as lead counsel.

## IV. CONCLUSION

For the foregoing reasons, the Court should appoint Movants as Co-Lead Plaintiffs and approve their selection of Gordon Ball of Gordon Ball PLLC as Lead Counsel for the class.

Respectfully submitted, this 31st day of May, 2016.

                                          */s/ Gordon Ball*
                                          Gordon Ball, TN BPR#:001135
                                          **GORDON BALL PLLC**
                                          Ste. 600, 550 Main Street
                                          Knoxville, TN 37902
                                          Tel: (865) 525-7028
                                          Fax: (865) 525-4679
                                          Email: gball@gordonball.com

                                          *Counsel for Plaintiff, Lewis Cosby*
                                          *and Kenneth R. Martin*

**CERTIFICATE OF SERVICE**

 I do hereby certify that a copy of the foregoing was submitted electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

 This 31st day of May, 2016.

          /s/ Gordon Ball
          Gordon Ball