# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### KNOXVILLE DIVISION

-------------------------------------------------------------X
                                                             :
LEWIS COSBY, KENNETH R. MARTIN, as          :    No. 3:16-cv-121
beneficiary of the Kenneth Ray Martin Roth IRA,   :
and MARTIN WEAKLEY on behalf of themselves  :
and all others similarly situated,                        :
                                                             :
                                  Plaintiffs,            :
                                                             :
                    v.                                     :
                                                             :
KPMG, LLP,                                              :
                                                             :
                                  Defendant.          :
-------------------------------------------------------------X

## REPLY BRIEF IN SUPPORT OF KPMG LLP's
## MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Paul S. Davidson (TN BPR # 011789)
Tera Rica Murdock (TN BPR #028153)
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, TN 37219
Phone: 615-244-6380
Email: paul.davidson@wallerlaw.com
Email: terarica.murdock@wallerlaw.com

Gary F. Bendinger (admitted pro hac vice)
Gregory G. Ballard (admitted pro hac vice)
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Telephone: +1 212 839-5300
Facsimile: +1 212 839-5599
Email: gbendinger@sidley.com
Email: gballard@sidley.com

Attorneys for Defendant KPMG LLP

## TABLE OF CONTENTS

ARGUMENT ...........................................................................................................................1

    I.      The Section 10(b) claims must be dismissed .............................................................1

          A.      Plaintiffs fail to plead scienter ......................................................................1

          B.      Plaintiffs fail to plead loss causation ............................................................5

          C.      The Section 10(b) claims are barred by the two-year statute of limitations 6

          D.      Count One fails to allege an actionable misstatement ................................6

          E.      Count Two fails to allege an actionable scheme.........................................7

    II.     The Section 11 claim must be dismissed ..................................................................8

          A.      Mr. Weakley was not appointed lead plaintiff for preferred stock purchasers ......................................................................................................8

          B.      The Section 11 claim is time-barred ..............................................................9

                1.      The claim does not relate back to the date of the Original Complaint........................................................................................... 9

               2.      The claim is barred by the three-year statute of repose ............... 10

                3.      The claim is barred by the one-year statute of limitations........... 11

                4.      *American Pipe* tolling does not apply......................................... 12

          C.      Plaintiffs fail to plead an actionable misstatement or omission.................12

    CONCLUSION.....................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*111 Debt Acquisition Holdings, LLC v. Six Ventures Ltd.*,
    413 Fed. Appx. 824 (6th Cir. 2011)....................................................................10

*In re Am. Realty Capital Properties, Inc. Litig.*,
    No. 15-MC-40-AKH, 2015 WL 6869337 (S.D.N.Y. Nov. 6, 2015)......................14

*American Pipe & Construction Co. v. Utah*,
    414 U.S. 538 (1974)...........................................................................................12

*Asher v. Unarco Material Handling, Inc.*,
    596 F.3d 313 (6th Cir. 2010) ..............................................................................10

*Blue Chip Stamps v. Manor Drug Stores*,
    421 U.S. 723 (1975).............................................................................................8

*City of Ann Arbor Emples. Ret. Sys. v. Citigroup Mortg. Loan Trust, Inc.*,
    703 F. Supp. 2d 253 (E.D.N.Y. Apr. 6, 2010) .........................................................8

*City of Omaha, Neb. Empl. Ret. Sys. v. CBS Corp.*,
    679 F.3d 64, 69 (2d Cir. 2012)...............................................................................5

*City of Roseville Emples. Ret. Sys. v. Sterling Fin. Corp.*,
    963 F. Supp. 2d 1092 (E.D. Wash. Aug. 5, 2013) ....................................................4

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    MDL No. 12–2389, 2013 WL 4399215 (S.D.N.Y. Aug. 13, 2013)..........................9

*Frank v. Dana Corp.*,
    646 F.3d 954 (6th Cir. 2011) ...........................................................................2, 3

*In re Lehman Bros. Sec. & ERISA Litig.*,
    799 F. Supp. 2d 258 (S.D.N.Y. 2011).....................................................................13

*Louisiana Sch. Emps.' Ret. Sys. v. Ernst & Young*,
    LLP, 622 F.3d 471 (6th Cir. 2010) ........................................................................3

*Lynn v. Helf*,
    2014 U.S. Dist. LEXIS 151437, Fed. Sec. L. Rep. (CCH) P98 (M.D. Tenn.
    Oct. 24, 2014) .....................................................................................................3

*Omnicare, Inc. v. Laborers District Counsel Construction Industry Pension Fund*,
    135 S. Ct. 1318 (2015).........................................................................................14

*P. Stolz Family P'ship v. Daum*,
    355 F.3d 92 (2d Cir. 2004) ...........................................................................10

*Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*,
    555 U.S. 438 (2009) ......................................................................................10

*Power & Tel. Supply Co. v. SunTrust Banks, Inc.*,
    447 F.3d 923 (6th Cir. 2006) .........................................................................12

*PR Diamonds, Inc. v. Chandler*,
    364 F.3d 671 (6th Cir. 2004) .......................................................................3, 4

*In re Refrigerant Compressors Antitrust Litigation*,
    731 F.3d 586 (6th Cir. 2013) .........................................................................10

*Saltz v. First Frontier, LP*,
    782 F. Supp. 2d. 61 (S.D.N.Y. 2010) ..............................................................5

*SEPTA v. Orrstown Financial Services, Inc.*,
    No. 12-CV-993, 2015 WL 3833849 (M.D. Pa. June 22, 2015) .......................14

*Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*,
    243 F. Supp. 3d 1109 (E.D. Cal. 2017) ......................................................13, 14

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*,
    552 U.S. 148 (2008) ........................................................................................7

*Tellabs Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. ....................................................................................................1, 2

*USM Holdings, Inc. v. Simon*,
    No. 15-14251, 2017 U.S. Dist. LEXIS 146913 (E.D. Mich. Sept. 12, 2017) ...........14

*W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*,
    845 F.3d 384 (8th Cir. 2016) ...........................................................................7

**Statutes**

15 U.S.C. § 77k(a) ...............................................................................................8

15 U.S.C. §§ 77z-1(c) and 78u-4 (c) ....................................................................8

Plaintiffs' Memorandum of Law in Opposition to KPMG's Motion to Dismiss (the "Opposition") largely ignores or misconstrues the arguments in the Memorandum of Law in Support of KPMG LLP's Motion to Dismiss the Second Amended Complaint (the "Opening Brief"). Nothing in the Opposition warrants denial of KPMG's motion to dismiss. Indeed, it is evident that Plaintiffs' claims at issue are time-barred and subject to dismissal on multiple grounds. For each of the reasons set forth in the Opening Brief, the Second Amended Complaint (the "SAC") must be dismissed. KPMG respectfully submits this reply memorandum in further support of its motion to dismiss in order to make the additional points set forth below.

## ARGUMENT

### I. The Section 10(b) claims must be dismissed

#### A. Plaintiffs fail to plead scienter

Plaintiffs' suggestion that KPMG failed to recognize the applicable "holistic" standard (Opposition at 18) is incorrect. KPMG invoked the standard in the first paragraph of its scienter argument, citing the leading Supreme Court decision (*Tellabs Inc. v. Makor Issues & Rights, Ltd.*), quoting the standard (court is to view the complaint "holistically" and "in its entirety" and ask "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard"), and thereafter applying that standard in its ensuing argument. (Opening Brief at 8.) The holistic approach does not mean that the particular allegations of the complaint are to be ignored, or that a defendant is prohibited from discussing them. There would be no way of assessing a complaint holistically if the parties and the Court were forbidden from discussing the complaint's allegations. As set forth in KPMG's opening brief, the facts alleged in the Complaint, viewed holistically and in their entirety, do not give rise to a strong inference of scienter.

4844-0009-8136.1

In evaluating the allegations of the Complaint holistically, the Court may, of course, evaluate the allegations "quickly" and efficiently, without "conducting an individual review of myriad allegations," as the Sixth Circuit explained in *Frank v. Dana Corp.*, 646 F.3d 954, 961 (6th Cir. 2011). But again, the Supreme Court requires that courts evaluate "all" of the alleged facts: "The inquiry, as several Courts of Appeals have recognized, is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. at 322-23 (emphasis in original). Consequently, while the Sixth Circuit's decision in *Frank* endorses a quick and efficient evaluation of the facts, it does not modify the Supreme Court's dictate that *all* of the facts alleged be considered in the holistic approach.

Indeed, the decision in *Frank v. Dana Corp.*, and in particular its analysis of the facts and its reasoning based on those facts, is instructive. In that case, the Sixth Circuit addressed fraud allegations against a chief executive officer (Michael Burns) and a chief financial officer (Robert Richter) of Dana Corp. and concluded that the inference that the CEO and CFO recklessly ignored the falsity of their statements about positive projected earnings was at least as plausible as the inference that their false statements were the product of faulty accounting. The Court's reasoning, addressing the alleged facts quickly and efficiently, was as follows:

> "Burns and Richter were the top two executives of an auto parts manufacturer, and they reported gangbuster earnings during a period of time when the entire auto industry was spiraling toward bankruptcy. They filed these reports, made positive public statements, and asserted the veracity of their financials to government authorities all while one of their key product lines was operating at fifty percent of earnings, multiple factories failed to meet their budgets, and the price of steel rose seventy-five to 120 percent. It is difficult to grasp the thought that Burns and Richter really had no idea that Dana was on the road to bankruptcy. From the first public statement that Dana's earnings statements might be false, the company fell to its demise in a matter of nine months. Burns and Richter only appear more culpable when considering the loan obtained by Dana, which almost surely would have been denied if the company's true financial status was publicly reported, and the bonuses that Burns and Richter stood to earn."

4844-0009-8136.1

646 F.3d at 961-62.

The allegations of the present case are not comparable. Unlike the "top executives" at issue in *Frank*, KPMG was an outside auditing firm, and it is easy to grasp the thought that KPMG in the course of its audit work did not detect and did not intentionally or recklessly join in the fraud allegedly committed by Miller Energy's top executives. A similarly succinct evaluation of the present Complaint would be as follows:

> KPMG served as outside independent auditors of Miller Energy's financial statements, not as a member of the Company's management team. Plaintiffs allege that KPMG's audit procedures fell short of professional standards and that KPMG failed to discover Miller Energy's fraudulent inflation of the value of its Alaska Assets, but failing to live up to professional standards is not automatically tantamount to securities fraud. The question is whether the alleged violations of professional standards, and KPMG's alleged failure to uncover the Company's fraud, were the product of recklessness or fraudulent intent (which may be sufficient for liability under Section 10(b)), or the product of negligence (which is never sufficient for liability under Section 10(b)). The most plausible inference that can be drawn from the Complaint's allegations, viewed holistically, is that KPMG's audits and its failure to uncover the Company's fraud were, at most, the product of negligence, not intentional or reckless conduct. The Company, as Plaintiffs admit, had obtained expert evidence that the Alaska Assets had tremendous value, even if the reports at issue were not formal valuation reports, and the SEC after an extensive investigation found that KPMG acted negligently, not fraudulently and not recklessly.

Significantly, the decision in *Frank v. Dana Corp.* does not alter the Sixth Circuit's prior conclusion that the scienter standard is "especially stringent" in cases against outside auditors. *See Louisiana Sch. Emps.' Ret. Sys. v. Ernst & Young*, LLP, 622 F.3d 471, 481 (6th Cir. 2010); *Lynn v. Help*, 2014 U.S. Dist. LEXIS 151437, at *38, Fed. Sec. L. Rep. (CCH) P98, 229 (M.D. Tenn. Oct. 24, 2014). One of the cases Plaintiffs cite extensively, *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 693-94 (6th Cir. 2004), emphasizes that "to allege that an independent accountant or auditor acted with scienter, the complaint must allege specific facts showing that the deficiencies in the audit were so severe that they strongly suggest that the auditor must have

4844-0009-8136.1

been aware of the corporation's fraud." *Id*. at 694. To try meet this standard, Plaintiffs' devote page after page of material from the SEC's investigation, discussing what KPMG LLP did during the engagement. Yet, Plaintiffs ignore the SEC's own conclusions that KPMG's conduct was negligent, not fraudulent and not reckless. (Ex. 47.) Plaintiffs do not, and cannot, dispute that the SEC found only that KPMG committed negligent violations of professional standards and securities laws, and that it did not find that KPMG violated any anti-fraud provisions. (Ex. 47.) Thus, Plaintiffs are asking this Court to take the factual findings made by the SEC about KPMG's audit work, but to reject the SEC's conclusions and legal findings that the conduct amounted to mere negligence. The Court should not follow this suggestion.

Plaintiffs discuss their purported "red flags" at length, but Plaintiffs do not dispute that all of the alleged red flags were publicly disclosed or otherwise part of the public record. Plaintiffs state that "there is no principle in law, logic, or accounting that says that only non-public facts can trigger an auditor's duty to investigate more closely" (Opposition at 24), but there is clear precedent from multiple circuits that purported "red flags" that are publicly disclosed cannot support an inference of scienter. Plaintiffs assert that the *Longtop* and *Special Situation Fund* cases cited in KPMG's opening brief are "outliers and should not be followed" (Opposition at 25 n.18), but the logic of those cases is inescapable—facts that are disclosed to the markets and known to plaintiffs and investors generally cannot form the basis for a strong inference that a defendant knew something more than was publicly disclosed and hid it from them. And, other cases have reached similar conclusions showing these cases are not as much of an outlier as Plaintiffs suggest. *See, e.g.*, *City of Roseville Emples. Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1132 (E.D. Wash. Aug. 5, 2013) (denying Plaintiff's scienter allegations because "all of the information alleged to constitute 'red flags' . . . were matters of public knowledge.")

(quoting *City of Omaha, Neb. Empl. Ret. Sys. v. CBS Corp.*, 679 F.3d 64, 69 (2d Cir. 2012));

*Saltz v. First Frontier, LP*, 782 F. Supp. 2d. 61, 72 (S.D.N.Y. 2010). The only case Plaintiffs cite

for a contrary proposition, *Sun v. Han*, observes that "Defendant has not directed this Court to

any case law in the Third Circuit or elsewhere, nor is the Court aware of any cases, holding that

'red flags' that are disclosed to the public cannot, as a matter of law, result in an inference of

scienter," which suggests that even that Court might have reached a different conclusion had the

above case law been brought to its attention. Thus, the weight of authority lies with KPMG's

argument that publicly-disclosed facts cannot support an inference of scienter and Plaintiffs'

claims should be dismissed.

**B.      Plaintiffs fail to plead loss causation**

Plaintiffs' assert that KPMG does not challenge and so concedes the "vast majority" of

their loss causation allegations and that KPMG "specifically challenges only a single disclosure."

(Opposition at 29.) This is false. KPMG clearly challenged all of Plaintiffs' loss causation

allegations set forth in SAC paragraphs 197-237 on the ground that they do not tie Plaintiffs'

alleged losses to any conduct of KPMG. (Opening Brief at 17.) KPMG offered paragraph 199 as

an "example." (Opening Brief at 17.)

Plaintiffs disavow any need to plead that it was *KPMG's* conduct that caused their losses.

(Opposition at 29-30 (arguing that KPMG "cites no authority for this proposition—and none

exists").) But all of the cases hold that Plaintiffs must plead that it was the defendant that caused

their losses. Plaintiffs need look no further than the leading Supreme Court case, cited and

quoted in KPMG's opening brief at page 17, where KPMG observed that "Plaintiffs must show

'that *the defendant's* misrepresentation (or other fraudulent conduct) proximately caused the

plaintiff's economic loss." (Opening Brief at 17 (quoting *Dura Pharmaceuticals, Inc. v. Brouda*)

(emphasis added).) And this is true no matter what loss causation theory Plaintiffs rely on. Regardless of whether Plaintiffs invoke a "corrective disclosure" or a "materialization of the risk" theory, Plaintiffs must plead that it was *the defendant's* conduct that caused their losses. As they have failed to do so, their claims must be dismissed.

### C.     The Section 10(b) claims are barred by the two-year statute of limitations

KPMG argued in its Opening Brief that the Section 10(b) claims are barred by the two-year statute of limitations. (Opening Brief at 18-20.) KPMG discussed the Supreme Court's opinion in the leading case, *Merck & Co. v. Reynolds*, including its conclusion that the limitations period does not begin to run until a plaintiff discovers, or a reasonably diligent plaintiff would discover, the facts constituting the violation, including scienter. (Opening at 19.) KPMG further argued that all of the alleged facts on which Plaintiffs base their scienter allegations were publicly disclosed before February 14, 2014. (Opening at 20.)

Plaintiffs' response (Opposition at 40 n.35) ignores *Merck* and KPMG's argument that all of the alleged facts on which Plaintiffs base their scienter allegations were publicly disclosed more than two years prior to the filing of the original complaint in this case. Instead, Plaintiffs point to other alleged facts, derived from the SEC's findings regarding KPMG's negligence, that are *not* included in the SAC's scienter (or falsity) allegations. (Opposition at 40 n.35.)

### D.     Count One fails to allege an actionable misstatement

As discussed in the Opening Brief and below (*infra* at II.C), Plaintiffs have not alleged an actionable misstatement or omission. KPMG will not repeat its arguments here, but incorporates them by reference.

### E.    Count Two fails to allege an actionable scheme

Plaintiffs do not dispute that they were unaware of the alleged conduct that forms the basis for their "scheme" liability claim, arguing instead that their unawareness of the conduct is not fatal. (Opposition at 31.) They rely on the Eighth Circuit's decision in *W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 845 F.3d 384 (8th Cir. 2016). Plaintiffs are wrong. The Supreme Court held, as noted in the Opening Brief, that plaintiffs must plead knowledge of the defendant's allegedly deceptive conduct or else they "cannot show reliance." *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 159 (2008). Having admitted that they were not aware of the allegedly deceptive conduct (SAC ¶ 279), Plaintiffs cannot proceed with their scheme liability claim, under controlling Supreme Court authority.

Moreover, the *Medtronic* case does not help Plaintiffs. In *Medtronic*—a case directly against the company, not an outside auditor—the company paid physicians conducting a clinical trial "to conceal adverse effects and to overstate the disadvantages of alternative procedures." This, according to the Eighth Circuit, "directly caused the production of *the information on which the market relied*." 845 F.3d at 394 (emphasis added). In other words, in Medtronic, the plaintiffs were allegedly aware of, and relied on, the allegedly deceptive conduct.

Plaintiffs argue that they may rely on the fraud-on-the-market theory to establish reliance, and assert that KPMG did not challenge their ability to rely on the theory. (Opposition at 31.) Again, Plaintiffs are mistaken, as KPMG explained why Plaintiffs are not entitled to rely on the fraud-on-the-market theory (Opening Brief at 22 n.16). The fraud-on-the-market theory only applies in omission cases; the scheme liability claim here is not a misstatement or omission case, but rather a claim based on alleged conduct. That is what makes it a scheme liability claim—it is based on conduct, not an alleged omission of material fact where there was a disclosure duty.

## II.   The Section 11 claim must be dismissed

### A.   Mr. Weakley was not appointed lead plaintiff for preferred stock purchasers

KPMG argued in its Opening Brief that Mr. Weakley, the only plaintiff who purchased preferred stock, was not appointed lead plaintiff for preferred stock purchasers and is not authorized to assert the Section 11 claim in the SAC. Plaintiffs ignore, and therefore concede this argument. Plaintiffs and their counsel do not even bother to explain how they came to assert this claim that they were not authorized to assert.[1]

Instead, Plaintiffs now assert that the two plaintiffs who did not purchase preferred stock were also asserting the Section 11 claim on behalf of preferred stock purchasers. (Opposition at 35.) The assertion is false. Nothing in the SAC stated or implied that Messrs. Cosby and Martin, who did not purchase preferred shares, were asserting the Section 11 claim on behalf of preferred shareholders. The paragraphs of the SAC Plaintiffs cite for their assertion that Messrs. Cosby and Martin were asserting the Section 11 claim for preferred stock purchasers (¶¶ 1-16) (Opposition at 35) say no such thing; instead, they state that these two individuals purchased the common stock, *not* the preferred stock, of Miller Energy. Nor could Messrs. Cosby and Martin assert a claim on behalf of preferred stock purchasers; not having purchased those securities, they have no standing to assert such claims. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730 (1975); *City of Ann Arbor Emples. Ret. Sys. v. Citigroup Mortg. Loan Trust, Inc.*, 703 F. Supp. 2d 253, 260 (E.D.N.Y. Apr. 6, 2010) ("Section 11 requires a plaintiff to show that he was a purchaser of the security at issue"); 15 U.S.C. § 77k(a) (restricting Section 11 claims to "any person acquiring such security")). Given their obvious lack of standing, it would require an

---

[1] Under the PSLRA, enacted to curtail abusive securities lawsuits, upon final adjudication of securities class actions, courts are required to assess whether Rule 11(b) sanctions are warranted. 15 U.S.C. §§ 77z-1(c) and 78u-4 (c).

unnatural and strained reading of the SAC to conclude that they were attempting to assert the Section 11 claim for preferred purchasers.

Plaintiffs' assertion that KPMG concedes that Mr. Cosby and Mr. Martin may assert the Section 11 claim on behalf of preferred stock purchasers (Opposition at 35) is similarly false. KPMG did not mention Mr. Cosby and Mr. Martin in this section of its Opening Brief not because KPMG concedes their ability to assert the claim (KPMG does not concede that they can), but rather because there was no reason to believe that those two plaintiffs were attempting to assert that claim in the SAC. All of KPMG's arguments as to why Mr. Weakley cannot assert the claim on behalf of preferred stock purchasers (for example, they did not seek appointment to serve as lead plaintiffs for preferred stock purchasers, they were not so appointed, and other plaintiffs—the *Gaynor* Plaintiffs—were appointed to serve as lead plaintiffs for such purchasers) apply to Mr. Cosby and Mr. Martin as well as Mr. Weakley. Mr. Cosby and Mr. Martin, like Mr. Weakley, did not contest this Court's decision appointing the Gaynor Plaintiffs.[2]

**B.       The Section 11 claim is time-barred**

Plaintiffs' Section 11 claim—no matter who it is asserted by—is barred by both the three-year statute of repose as well as the one-year statute of limitations.

**1.       The claim does not relate back to the date of the Original Complaint**

Mr. Weakley's Section 11 claim, which plaintiffs have tacitly abandoned in the face of KPMG's arguments, was clearly added by a plaintiff who was not an original party to the

---

[2] Plaintiffs' cited authorities are of no use, as the choice to bring class claims related to preferred stock does not belong to them. Only the Gaynor Plaintiffs can choose to assert class claims on behalf of preferred shareholders. *See, e.g.*, *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, MDL No. 12–2389, 2013 WL 4399215, at *3 (S.D.N.Y. Aug. 13, 2013) (appointed lead plaintiff "has the sole authority to determine what claims to pursue on behalf of the class").

lawsuit, therefore creating a new cause of action. Accordingly, *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010) clearly applies, and dismissal is appropriate.

Moreover, Plaintiffs' attempt to use the original complaint to cure defects in the SAC also fails. An amended complaint supersedes an earlier complaint for all purposes. *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 456 n.4 (2009); *In re Refrigerant Compressors Antitrust Litigation*, 731 F.3d 586, 589 (6th Cir. 2013). "An amended pleading ordinarily supersedes the prior pleading. The prior pleading is in effect withdrawn as to all matters not restated in the amended pleading, and becomes *functus officio*." *111 Debt Acquisition Holdings, LLC v. Six Ventures Ltd.*, 413 Fed. Appx. 824, 831-32 (6th Cir. 2011). As Plaintiffs only asserted Section 10(b) claims in the First Amended Complaint, and did not reassert their Section 11 claims, that portion of the original complaint cannot be used for purposes of relating back. Mr. Cosby and Mr. Martin made a tactical decision—of their own volition—to not replead a Section 11 claim and to focus efforts on the Section 10(b) claims related to the securities they each purchased, which cannot be undone. *Id*. Thus, Plaintiffs' Section 11 claim in the SAC is a newly asserted claim and the date for statute of limitation purposes and statute of repose analysis is September 15, 2017.

## 2.    The claim is barred by the three-year statute of repose

As set forth in the Opening Brief, the Section 11 claim in the SAC is barred by the three-year statute of repose. Plaintiffs do not dispute KPMG's arguments as to the dates on which the preferred shares were *bona fide* offered to the public. Nor do Plaintiffs dispute that all of the shares at issue were *bona fide* offered to the public more than three years prior to the filing of the SAC. The claims is therefore barred by the statute of repose, which is an absolute bar to asserting the claim. *See, e.g., P. Stolz Family P'ship v. Daum*, 355 F.3d 92, 102-03 (2d Cir. 2004).

### 3. The claim is barred by the one-year statute of limitations

Plaintiffs argue that the one-year statute of limitations does not require dismissal because statute of limitations arguments are difficult to resolve on motions to dismiss (Opposition at 38-39), but a statute of limitations question can be resolved on a motion to dismiss where, as here, the plaintiffs plead facts that make clear that the statute has run. Plaintiffs do not respond to KPMG's argument that a Section 11 claim does not contain a scienter element and that consequently the facts that are required to give rise to inquiry notice are more limited than for scienter-based claims. Nor do Plaintiffs dispute any of the many items recited in the Opening Brief that allegedly occurred over the period from December 2013 through March 2016 which unquestionably put Plaintiffs on notice of their claim. The facts alleged in the SAC clearly demonstrate that Plaintiffs' had actual notice, or at least inquiry notice, more than one year prior to September 15, 2017 (one year prior to the date of the SAC). Plaintiffs have pleaded themselves out of court, and dismissal is proper.

Moreover, if Plaintiffs' statement on page 39-40 of their response is to be taken seriously, and only paragraphs 282-315 should be considered as incorporated into the Section 11 claims, then the Section 11 claim would be nonsensical. The Section 10(b) claim begins with an incorporation of all preceding paragraphs (¶¶ 1-273) (*see* SAC ¶ 274), while the Section 11 claims begins with a statement that only ¶¶ 282 through 315 are incorporated by reference (*see* SAC ¶ 316). But surely Plaintiffs meant to incorporate ¶¶ 1 through 273 as well into their Section 11 claim, or else the claim would make no sense. All of the allegations about the individual plaintiffs, what they purchased, and all of the background facts are set forth in ¶¶ 1-273. Without those allegations, for example, the Section 11 claim would have no plaintiff, as the allegations regarding all three of the named plaintiffs (regardless of which claims they are

4844-0009-8136.1

purporting to assert) are at paragraphs 14-16. All of the events that KPMG described as evidencing inquiry notice are set forth in the paragraphs ¶¶ 1 through 273, not in the section devoted exclusive to Section 10(b) (¶¶ 274-315). Consequently, Plaintiffs cannot escape the fact that they have pleaded extensive factual allegations that conclusively show that they were on notice of their claim years ago, and their claim is time-barred.

### 4. *American Pipe* tolling does not apply

Plaintiffs do not contest that they cannot take advantage of equitable tolling under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 550 (1974).

### C. Plaintiffs fail to plead an actionable misstatement or omission

Plaintiffs' initial response to KPMG's argument under *Omnicare* is that auditor's opinions are in fact statements of fact, not opinion. (Opposition at 33.) This position is at odds with the language of the audit reports, which state that they express the auditor's opinion, as well as years upon years of precedent and practice. (*See, e.g.*, Ex. 9 at F-2.) Moreover, not only do auditors express opinions regarding whether their audit clients' financial statements are materially misstated, their statements that their audits were conducted in accordance with professional standards are similarly statements of opinion. Whether any professional has complied with professional standards is necessarily a statement of opinion, as evidenced by the fact that the question of whether auditors (or attorneys or engineers or other professionals) have complied with professional standards in any particular situation is generally a matter, in litigation, for experts to opine on. *See, e.g., Power & Tel. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 932 (6th Cir. 2006) ("[T]he standard of care may be established from expert witness testimony regarding banking industry standards.").

Plaintiffs' assertion, relying on *Special Situations Fund*, that auditors' opinions are not the same as the opinions addressed in *Omnicare* is not persuasive. The Supreme Court in *Omnicare* addressed the appropriate methodology for assessing allegations that a statement of opinion is false or misleading; it did not carve out opinion statements from auditors as an exception from the general rule or in any way suggest that auditors' statements of opinion are immune from the required analysis. The reasoning of *Special Situations Fund*, moreover, is not compelling. As Plaintiffs note, the court in that case focused on the fact that the *Omnicare* court addressed hypotheticals involving statements of opinion from a CEO of a company, and the court found that auditors' opinions are somehow different. 243 F. Supp. 3d 1109, 1116 (E.D. Cal. 2017). But, auditors' opinions are more, not less, likely to constitute statements of opinion than those of CEOs. It is the responsibility of a company's management, including its CEO, to prepare the company's financial statements, (PCAOB AU § 508.08), and it is the responsibility of the company's outside auditors' to express an opinion on the company's financial statements based on an audit, (PCAOB AU § 508.08). In other words, if the Supreme Court viewed statements of a CEO as potentially constituting statements of opinion rather than fact, then it is more, not less, likely that the statements of an independent auditor would constitute statements of opinion rather than fact.

Plaintiffs' assertion that Miller Energy's "financial statements are embedded facts" in KPMG's audit opinions (Opposition at 34) is contrary to the language of the audit reports (Ex. 9 at F-2 ("Our responsibility is to express an opinion on these consolidated financial statements based on our audit.")), long-established auditing standards, and law (*In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258, 300-03 (S.D.N.Y. 2011) (holding auditor's GAAS and GAAP assertions are statements of professional judgment and opinion, not verifiable fact)). Even the

case Plaintiffs rely heavily on, *Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*, 243 F. Supp. 3d 1109 (E.D. Cal. 2017), stands for the proposition that financial statements are not embedded in audit opinions under *Omnicare*, *id*. at 1119; *see also In re Am. Realty Capital Properties, Inc. Litig.*, No. 15-MC-40-AKH, 2015 WL 6869337, at *2 (S.D.N.Y. Nov. 6, 2015).

Finally, Plaintiffs' claim that KPMG's audit reports omitted contradictory facts is without basis. As explained by the Court in *SEPTA v. Orrstown Financial Services, Inc.*, No. 12-CV-993, 2015 WL 3833849, at *34 (M.D. Pa. June 22, 2015), merely stating that a defendant "omitted to state facts necessary to make the statements made not misleading" and "reasonable grounds for the belief" are not sufficient to impose liability under *Omnicare*. And, as courts in the Sixth Circuit have held, "[a]n opinion statement does not become actionable merely because the speaker 'knows, but fails to disclose, some fact cutting the other way.'" *USM Holdings, Inc. v. Simon*, No. 15-14251, 2017 U.S. Dist. LEXIS 146913, at *12 (E.D. Mich. Sept. 12, 2017) (quoting *Omnicare*, 135 S. Ct. at 1326-27 (2015)).

## CONCLUSION

For the foregoing reasons, KPMG renews its request that the Court grant its motion to dismiss.

Dated: December 15, 2017

Respectfully submitted,

s/ Paul S. Davidson
Paul S. Davidson (TN BPR # 011789)
Tera Rica Murdock (TN BPR #028153)
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, TN 37219
Phone: 615-244-6380
Email: paul.davidson@wallerlaw.com

Email: terarica.murdock@wallerlaw.com

Gary F. Bendinger (admitted pro hac vice)
Gregory G. Ballard (admitted pro hac vice)
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Telephone: +1 212 839-5300
Email: gbendinger@sidley.com
Email: gballard@sidley.com

Attorneys for Defendant KPMG LLP

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2017, a copy of the foregoing was filed
electronically and served via the Court's CM/ECF system on the following:

Gordon Ball
Gordon Ball PLLC
550 West Main Street, Suite 600
Knoxville, TN 37902

Lance Kristopher Baker
The Baker Law Firm
550 West Main Street, Suite 600
Knoxville, TN 37902

Steven J Toll
Times Wang
Laura Posner
Cohen, Milstein, Sellers & Toll PLLC
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005-3934

*Attorneys for Plaintiffs*

s/ Paul S. Davidson