UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

LEWIS COSBY, KENNETH R. MARTIN,        )
as beneficiary of the Kenneth Ray Martin    )
Roth IRA, and MARTIN WEAKLEY on       )
behalf of themselves and all others          )
similarly situated,                              )
                                                 )
    Plaintiffs,              )
                                                 )
v.                                               )  No.: 3:16-CV-121-TAV-DCP
                                                 )
KPMG, LLP,                                       )
                                                 )
    Defendant.               )

## MEMORANDUM OPINION AND ORDER

This civil matter is before the Court on defendant KPMG LLP's ("KPMG") Motion to Dismiss [Doc. 46] and defendant KPMG's Motion to Dismiss the Second Amended Complaint [Doc. 63]. Defendant KPMG seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I. Factual Background

This case is a securities class action, whereby plaintiffs allege claims pursuant to Section 10(b) of the Securities Exchange Act and Rule 10b-5, promulgated thereunder, and Section 11 of the Securities Act [Doc. 59]. Miller Energy Resources, Inc. ("Miller Energy") was "an independent exploration and production company that explored for, developed, and operated oil and gas wells in south-central Alaska and Tennessee" [*Id.* ¶ 22]. Plaintiffs are Lewis Cosby, Kenneth Martin, and Martin Weakley, who represent a class of individuals who purchased Miller Energy stock [*Id.* ¶¶ 14–16]. Specifically, Cosby

and Martin purport to represent a class of common stock shareholders, and Weakley purports to represent a class of preferred stock shareholders [*Id.*]. Individuals who purchased common or preferred stock between August 29, 2011, and October 1, 2015, are members of the "Section 10(b) Class" [*Id.* ¶32]. Individuals who purchased preferred shares pursuant to or traceable to the offering documents are members of the "Section 11 Class" [*Id.* ¶33]. Defendant is KPMG, which is an international accounting firm with an office in Knoxville, Tennessee [*Id.* ¶ 17]. Defendant was retained by Miller Energy as the Company's independent auditor on February 1, 2011 [*Id.* ¶ 18].

Ultimately, plaintiffs claim that Miller Energy grossly overstated the value of its oil and gas interests in Alaska (the "Alaska Assets"), which caused harm to shareholders. Before Miller Energy purchased the Alaska Assets, they had been the subject of a public bankruptcy court sponsored auction, but no bidders closed on the sale [*Id.* ¶ 45]. The bankruptcy court approved the abandonment of the Alaska Assets because they were "of no value or other benefit" to the former owner [*Id.*]. This abandonment order was rescinded, however, after Miller Energy expressed interest in acquiring the Alaska Assets [*Id.* ¶ 46]. Miller Energy then obtained the Alaska Assets in a bidding auction [*Id.*].

After the purchase of the Alaska Assets, Scott Boruff was named the CEO of Miller Energy, although he lacked oil and gas experience [¶¶ 41–42]. In the first reserves report, the Alaska Assets were estimated at $368 million; however, the engineering firm that prepared the report expressly stated that this estimate was not an estimate of fair value for reporting purposes [*Id.* ¶ 50]. Despite the express warning, Boruff included this figure in

Miller Energy's Form 10-Q as the estimate of fair value [*Id.* ¶ 51]. Boruff also included a separate figure of $110 million for acquired fixed assets, but this had actually already been included in the $368 million estimate, and thus recording it separately double-counted its value [*Id.* ¶ 52]. In a later, independent investigation by the SEC, the SEC found other, similar errors, and that starting in 2010 many of Miller Energy's financial reports materially misstated the value of its assets [*Id.* ¶ 56].

On February 1, 2011, Miller Energy hired KPMG as its independent auditor [*Id.* ¶ 63]. The KPMG team was also led by individuals with no oil and gas industry experience [*Id.* ¶ 64]. On April 14, 2011, the SEC sent a letter to Miller Energy inquiring about the Alaska Assets and their reported value of the Alaska Assets [*Id.* ¶ 66]. Again, on June 7, 2011, the SEC sent a second letter asking how Miller Energy had estimated the value of certain assets within the Alaska Assets [*Id.*]. Later that same year, on July 28, 2011, *TheStreetSweeper*, a financial website, published an investigative report on Miller Energy, claiming that the company had overvalued the Alaska Assets [*Id.* ¶ 68]. Boruff publicly denied this accusation and claimed that the valuations and financial reports were accurate [*Id.* ¶ 69].

Defendant issued audit reports on Miller Energy's financial statements for fiscal years 2011 through 2014 [*Id.* ¶ 73]. The audit reports were included in the Miller Energy Form 10-K filings that contained the allegedly inflated asset values [*Id.*]. KPMG reviewed Miller Energy's quarterly financial statements, and plaintiff argues that these reviews were not in compliance with generally accepted accounting principles ("GAAP"), generally

3

accepted auditing standards ("GAAS") and the standards set forth by the Public Company Accounting Oversight Board ("PCAOB"). [*Id.* ¶ 75]. Plaintiffs bring this action, asserting that defendant fraudulently made material misrepresentations in relation to the sale or purchase of securities in violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5, promulgated thereunder. Plaintiffs also assert a series of strict liability and negligence claims under Section 11 of the Securities Act. Plaintiffs filed a second amended complaint [Doc. 59], which defendant now moves to dismiss [Doc. 63]. Plaintiffs responded in opposition [Doc. 68] and defendant replied [Doc. 69].

## II.     Standard of Review

### A.     Rule 12(b)(6) Motions

A party may make a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asserting that the second amended complaint fails to state a claim upon which relief may be granted. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted). In ruling on a Rule 12(b)(6) motion to dismiss, a court must construe the second amended complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. *Id.* at 555, 570. Detailed factual allegations are not required, but a party's "obligation to

provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Id.*

The Court's task is to determine whether the second amended complaint contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). Unless a complaint contains sufficient factual matter to state a plausible claim, it will not survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 663, 678 (2009).

## B. Securities Claims

Section 10(b) of the Securities Exchange Act and Rule 10b-5, promulgated thereunder, prohibit fraudulent, material misrepresentations in relation to the sale or purchase of securities. *Ind. State Dist. Council of Laborers and Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942 (6th Cir. 2009). To succeed on a private cause of action for violations thereof, a plaintiff must prove six elements: "(1) a material misrepresentation or omission . . . ; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37–38 (2011) (internal quotation marks and citation omitted). Recklessness satisfies § 10(b)'s scienter element if the plaintiff demonstrates that the defendant engaged in "highly unreasonable conduct which is an extreme departure from the standards of ordinary care." *La. Sch. Emps. Ret. Sys. v. Ernst*

5

*& Young, LLP*, 622 F.3d 471, 478 (6th Cir. 2010) (internal quotation marks and citation omitted).

No party disputes that the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §§ 78u-4 *et seq.*, which was enacted "[a]s a check against abusive litigation by private parties," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007), applies to this case. The PSLRA "imposes more exacting pleading requirements than Federal Rules of Civil Procedure 8(a) and 9(b)." *Ricker v. Zoo Entm't, Inc.*, 534 F. App'x 495, 499 (6th Cir. 2013) (citations omitted).

PSLRA's "exacting pleading requirements" obligate a plaintiff to "state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.*, the defendant's intention 'to deceive, manipulate, or defraud.'" *Tellabs*, 551 U.S. at 313 (citation omitted). To plead "the facts constituting the alleged violation," the complaint "must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (internal quotation marks and citation omitted).

For a pleading to qualify as raising a strong inference of scienter, the inference "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314. In making this analysis, a court must accept all factual allegations in the complaint as true, consider the complaint in its entirety, including documents incorporated into the complaint

6

by reference and matters of which a court may take judicial notice, and "take into account plausible opposing inferences." *Id.* at 322–24. A complaint failing to comply with PSLRA's pleading requirements "shall" be dismissed. 15 U.S.C. § 78u-4(b)(3)(A).

## III.    Judicial Notice

Before addressing the motion to dismiss, the Court notes that plaintiffs have asked the Court to take judicial notice of the recent indictments and SEC charges against KPMG executives [Doc. 71].  Plaintiffs urge the Court to take judicial notice of documents relating to "KPMG's theft of confidential audit inspection information from the Public Company Accounting Oversight Board ("PCAOB")" [*Id.* p. 1].  Defendant responded in opposition, arguing: first, that the SEC order instituting proceedings ("OIP") was not relevant; second, that the indictment and the OIP are not subject to judicial notice; and third, that the OIP submitted by plaintiffs is not a true and correct copy [Doc. 73].

Federal  Rule of Evidence 201 permits the Court to take judicial notice of facts that are "not subject to reasonable dispute in that [they are] either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  If certain statements or documents are not referenced or relied upon in the complaint, the Court may consider taking judicial notice of them if they are public records or are otherwise appropriate for judicial notice.  *See In re Unumprovident Corp. Secs. Litig.*, 396 F. Supp. 2d 858, 876 (E.D. Tenn. 2005).  In securities fraud cases, specifically, courts may consider the "full text of SEC filings, prospectuses, and analysts' reports not attached to a plaintiff's

complaint if they are integral statements within the complaint." *In re FirstEnergy Corp. Secs. Litig.*, 316 F. Supp. 2d 581, 591 (N.D. Ohio 2004). When considering such documents, the Court may not use them to decide disputed facts, but rather may use them to determine what statements the documents contain. *Id.* at 592. Courts may take judicial notice of SEC filings when considering Rule 12(b)(6) motions when the documents are submitted to establish their contents rather than the truth of the statements contained therein. *See Murray Energy Holdings Co. v. Mergermarket USA, Inc.*, No. 2:15-CV-2844, 2016 WL 3365422, at *6 n.5 (S.D. Ohio June 17, 2016).

In this case, as defendant notes, it is not obvious to the Court that the SEC indictment and the OIP are related to this lawsuit, and plaintiffs have not shown how they are integral to the second amended complaint. Additionally, these filings are being used to assert the truth of the matters contained within—i.e., that certain KPMG executives engaged in "conduct even more egregious than would be necessary for scienter here" [Doc. 71 p. 2]. Thus, the Court finds that it is not appropriate to take judicial notice of the indictments and SEC charges as plaintiffs request.

## IV. Securities and Exchange Act 10(b) Allegations

In the motion to dismiss, defendant argues that for Counts I and II, the 10(b) allegations, plaintiffs have failed to plead scienter, they have failed to plead loss causation, and the two-year statute of limitations bars the claims.

## A. Scienter

First, defendant argues that plaintiffs failed to plead scienter. Defendant asserts that plaintiffs are required to plead facts giving rise to a "strong inference," 15 U.S.C. § 78u-4(b)(2), of an "intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). Defendant argues that plaintiffs failed to meet this standard because plaintiffs only make conclusory assertions that defendant acted "knowingly or recklessly" [Doc. 64 p. 9].

In response, plaintiffs argue that their pleadings demonstrate defendant ignored red flags and refused to acknowledge obvious warning signs [Doc. 68 p. 13]. These warning signs included, among others, justifying "baseless" broker reports, double counting above-ground infrastructure, and reading *The StreetSweeper* article criticizing the Alaska Assets' valuation [*See e.g.*, Doc. 59 ¶¶ 52, 116, 124, 145]. Plaintiffs also assert that KPMG knew that Miller Energy's accounting department had little or no accounting experience [*Id.* ¶¶ 42, 64–65, 83] and that Miller Energy failed to form an internal audit group [*Id.* ¶¶ 85, 98] or make sure the SEC filings were made on time [*Id.* ¶¶ 87, 98, 181].

The requisite state of mind for a Section 10(b) claim is the "intent to deceive, manipulate or defraud." *Hochfelder*, 425 U.S. at 193 n.12. The plaintiff must allege facts that, taken together, raise a "strong inference" of scienter. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007). The Court must consider competing inferences, including "plausible, nonculpable explanations for the defendant's conduct." *Id.* at 324. If two explanations are given, one showing intent to deceive and one showing innocent

9

activity, the Court should deny the motion to dismiss. *Frank v. Dana Corp.*, 547 F.3d 564, 571 (6th Cir. 2008) ("*Frank I*").

A plaintiff alleging recklessness can also satisfy the scienter requirement as long as the plaintiff shows that the defendant's actions were "highly unreasonable" and represented an "extreme departure from the standards of ordinary care." *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 481 (6th Cir. 2010). In securities cases regarding an outside auditor, however, the "recklessness requires a mental state 'so culpable that it approximate[s] an actual intent to aid in the fraud being perpetrated by the audited company." *Id.* (quoting *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 693 (6th Cir. 2004), *abrogated on other grounds*, *Beydoun v. Sessions*, 871 F.3d 459 (6th Cir. 2017)). The plaintiff must show that the outside auditor deliberately ignored "highly suspicious facts." *Id.* at 479. For example, plaintiff

> must prove that the accounting practices were so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts.

*PR Diamonds, Inc.*, 364 F.3d at 693–94 (quoting *In re Worlds of Wonder Secs. Litig.*, 35 F.3d 1407, 1426 (9th Cir. 1994).

Plaintiffs in this case have satisfied the scienter requirement by pleading that the defendant deliberately ignored "highly suspicious facts." *See La. Sch. Emps.' Ret. Sys.*, 622 F.3d at 479. Construing all reasonable inferences in plaintiff's favor, plaintiff has adequately alleged that defendant's conduct was an "egregious refusal to see the obvious,

10

or to investigate the doubtful." *PR Diamonds, Inc.*, 364 F.3d at 693–94 (quoting *In re Worlds of Wonder Secs. Litig.*, 35 F.3d at 1426).

Plaintiffs allege that Boyd made a series of mistakes in preparing Miller Energy's reports before defendant was hired [Doc. 59 ¶¶ 49–52]. These reports were later found to have "materially misstated the value of [the Alaska] assets" [*Id.*]. When Miller Energy hired defendant in February 2011, defendant did not complete an independent audit but relied on previous reports and defended the valuation of the assets [*Id.* ¶ 67]. Even after a report from *TheStreetSweepers* questioned the valuation of Miller Energy's assets, defendant represented to shareholders that the valuation was accurate and that the article was inaccurate [*Id.* ¶¶ 68–69].

Plaintiffs further allege that the audit reports contained unqualified opinions on Miller Energy's annual financial statements for fiscal years 2011–2014 [*Id.* ¶ 73]. Plaintiffs assert that the use of these reports, among other things, constituted violations of GAAP, GAAS, and PCAOB. Plaintiffs assert that defendant knew that Miller Energy's CEO lacked experience and that the accounting department was inadequately staffed [*Id.* ¶¶ 84–85]. In fact, plaintiffs point to several instances where defendant identified the fact that errors were being made and that there were weaknesses in internal control over financial reporting [*Id.* ¶¶ 89–93]. For example, defendant did not have industry-trained experts conducting the audits, which violates standards set forth by PCAOB [*Id.* ¶ 103]. Defendant knew that certain reports had been prepared for purposes other than estimating fair value,

and yet defendant relied on the reports to issue an unqualified opinion on Miller Energy's financial statements [*Id.* ¶ 117].

Although "the failure to follow GAAP is, by itself, insufficient to state a securities fraud claim," plaintiffs have shown more than mere GAAP violations. *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 553 (6th Cir. 1999). Plaintiffs, here, have alleged facts to show that defendant knew or could have known of its errors—plaintiffs have stated that defendant knew the partner-in-charge was unqualified and that the reports being relied on for a fair value estimate were prepared for a different purpose. Plaintiffs have alleged facts to show that defendant's "regular procedures should have alerted defendant to the errors sooner than they actually did." *Id.*

Plaintiffs have also shown numerous "red flags," such as the article published by *TheStreetSweepers* and the inquiries by the SEC, which should have put defendant on notice of possible violations. In *PR Diamonds, Inc.*, plaintiffs only identified the fact that accounts receivable increased at a greater rate than the operating revenues, and they argued that this constituted a red flag and thus put defendant on notice. 364 F.3d at 693. The court held that this allegation was not significant enough to "cry out scienter." *Id.* (internal quotation omitted). Here, plaintiffs have alleged numerous red flags including, among others, GAAP, GAAS, and PCAOB violations as well as SEC investigations and public inquiries into Miller Energy. Because of the number of alleged red flags, and because defendant admits to knowing of several alleged red flags, plaintiffs have sufficiently pled scienter to survive the motion to dismiss stage in the proceedings.

12

### B.     Loss Causation

Second, defendant asserts that plaintiffs fail to show loss causation. Defendant argues that while plaintiffs allege that they purchased shares at inflated prices and later suffered an economic loss, plaintiffs fail to show a causal link between the two [Doc. 69 p. 17]. Defendant asserts that loss causation is an "essential element that must be pleaded with particularity" [*Id.* at 18]. Defendant argues that plaintiffs have failed to plead that the defendant's conduct caused the loss.

In response, plaintiffs assert that they have adequately pled loss causation. They argue that they are only required to give an "indication of the loss and the casual connection." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). Plaintiffs note that in the Sixth Circuit, loss causation can be shown through a "corrective disclosure" theory and through a "materialization of risk theory." *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 830 F.3d 376, 384–85 (6th Cir. 2016). Under the corrective disclosure theory, "the market reacts negatively to a disclosure of facts and truth concealed by the alleged fraud," and under the materialization of risk theory, "the market reacts negatively to the materialization of foreseeable risks concealed by the alleged fraud" [Doc. 68 pp. 27–28]. Plaintiffs argue that the occurrence of an event or a disclosure need not show the exact nature of the fraud. *See Pub. Emps. Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313, 322 (5th Cir. 2014). The loss causation theory only needs to be plausible to survive a motion to dismiss. *Ohio Pub. Emps. Ret. Sys.*, 830 F.3d at 388. Plaintiffs allege that defendant's "misconduct concealed the massive and foreseeable risk of Miller's inevitable collapse, causing equally

13

massive and foreseeable losses as that risk, and the truth, materialized and leaked out in various ways" [Doc. 68 p. 28; Doc. 59 ¶¶ 197–248]. Plaintiffs thus assert that they have properly pled loss causation required to survive a motion to dismiss.

Loss causation is the causal link between the loss and the misrepresentation. *Dura Pham. Inc.*, 544 U.S. at 342. Plaintiffs are required to allege both causation and loss to put defendants on notice regarding the relevant economic loss and the causal link to defendant's conduct. *Id.* at 346–47. This is not a high burden—a plaintiff who has suffered economic loss should be able to provide a defendant with some information about the loss and the plaintiff's causal theory. *Id.* at 348. The plaintiff must show how or when defendant's misconduct was disclosed or when certain risks materialized. *See Ind. State Dist. Council of Laborers,* 583 F.3d at 945.

In this case, plaintiffs have properly pled loss causation. Plaintiffs primarily set forth a materialization of risk theory [Doc. 68 p. 28], and assert that "the risks concealed by that fraud, including by [defendant]'s participation in it, leaked out, were revealed, and materialized" [Doc. 59 ¶ 198]. Plaintiffs assert that a variety of sources began questioning defendant's valuation of the Alaska Assets [*Id.* ¶¶ 199–204]. In addition, plaintiffs point to several events, including a dramatic fall in stock prices, which were triggered by the revelation and leaking of defendant's fraud [*See, e.g.*, *id.* ¶¶ 205–217].

For example, in December 2013, a published report questioned Miller Energy's stability, and shortly thereafter, the stock prices fell for Miller Energy's stock, Series C preferred stock, and Series D preferred stock [*Id.* ¶¶ 200–205]. In March 2014, Miller

14

Energy filed a Form 8-K, which announced that it had experienced an operating loss [*Id.* ¶ 206]. Around this same time, stock prices fell again [*Id.* ¶ 208]. In July 2014, Miller Energy filed its Form 10-K, which included defendant's unqualified audit report and presented valuations that were based on fraudulent cost figures [*Id.* ¶ 209]. Around this same time, Miller Energy filed a Form 8-K, which reported an increase in net loss [*Id.* ¶ 210]. After stock fell yet again, Miller Energy stock became the subject of margin calls, which plaintiffs argue were a foreseeable consequence of defendant's fraud [*Id.* ¶ 215]. Stock prices continued to drop. This pattern of activity continued until April 2015 when Miller Energy revealed that it had received a "Wells Notice" from the SEC [*Id.* ¶ 223]. In August 2016, the SEC commenced an administrative proceeding, alleging fraudulent overvaluation of the Alaska Assets [*Id.* ¶ 228].

Based on the second amended complaint, plaintiffs have shown a causal link between the loss and the alleged misrepresentation. *See Dura Pharm. Inc.*, 544 U.S. at 342. Plaintiffs have provided detailed allegations of loss, and they have clearly asserted that this loss was a direct result of disclosures regarding Miller Energy's operating loss and questionable cost figures. At this stage, plaintiffs are not required to articulate an exact chain of evidence leading from the alleged fraud to the loss. They are only required to put defendant on notice and provide information about their causal theory. To require anything more from plaintiffs at this stage would raise the standard beyond what the Supreme Court held in *Dura Pharmaceuticals, Inc. v. Broudo* by requiring plaintiffs to have their entire case supported by clear evidence without the benefit of conducting discovery. The

heightened standard at the motion to dismiss stage in securities litigation under the PSLRA was intended to "check against abusive litigation," not to eliminate litigation entirely. *Tellabs, Inc.*, 551 U.S. at 313 (2007).

## C.    Statute of Limitations

Finally, defendant asserts that the two-year statute of limitations has run on the Section 10(b) claims.  Defendant argues that these claims are time-barred pursuant to 28 U.S.C. § 1658(b) because plaintiffs filed the initial complaint more than two years after any violations could have been uncovered through reasonably diligent investigation [Doc. 69 p. 18].  Defendant argues that based on the allegations set forth in the initial complaint, plaintiffs knew of or should have discovered the alleged wrongdoing before March 14, 2014.  Defendant asserts that the alleged facts giving rise to the securities fraud claim were known for many years as they had been the basis for previous lawsuits against Miller Energy and its chief executives.  Defendant points out that the plaintiffs in those cases had discovered facts necessary to file a complaint in 2011, and this Court denied the motions to dismiss on February 4, 2014.  Defendant further argues that plaintiffs' allegations are based on publicly disclosed documents dating back to before February 14, 2014.

Plaintiffs assert that the Court must first determine whether the Section 11 claims are timely because if they are, the 10(b) claims are necessarily timely as well given the longer statute of limitations for 10(b) claims [Doc. 68 p. 17 n.12].[1]  Plaintiffs argue that

---

[1] The Court addresses the Section 11 statute of limitations issue separately.  *Infra* Section V.D.

"[defendant]'s potential complicity remained significantly obscured" before February 14, 2014 [Doc. 68 p. 39]. Plaintiffs argue that most of the facts relied on to show that defendant was culpable of Section 11 claims only came after March 14, 2015 [*Id.*]. Specifically, the plaintiffs argue that the SEC's investigation of Miller Energy in 2015 created a clearer picture of the alleged recklessness of defendant's conduct [*Id.*].

In civil actions, the statute of limitations only starts to run upon "discovery of the facts constituting the violation." *Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010) (citing 28 U.S.C. § 1658(b)(1)). In securities fraud litigation, facts that "constitute" part of the violation are facts that go to the essential elements of a claim. For example, in a 10b claim, scienter is a fact that is necessary and constitutes a violation. *Id.* "Discovery" of these essential facts means that the facts were actually discovered or that a reasonably diligent individual would have discovered the facts constituting the violation. *Id.* at 653. This means the statute of limitations period cannot begin to run before a reasonable plaintiff would have started to investigate the facts. *Id.* A plaintiff need not actually investigate the facts—the standard is whether a reasonable person in the same situation would have done so. *Id.*

When determining whether a reasonable plaintiff would have investigated, the Court can consider factors like whether the plaintiff was on "inquiry notice" or whether there were "storm warnings" that should have prompted the plaintiff. *Merck*, 559 U.S. at 653. However, mere knowledge of suspicious facts does not equal "inquiry notice"; the facts must have triggered a duty to investigate. *In re EveryWare Global, Inc. Secs. Litig.*, 175

17

F. Supp. 3d 837, 862 (S.D. Ohio 2016). Deciding that certain facts triggered a duty to investigate is a factual question that the plaintiff bears the burden of proving. *Id.* Plaintiffs are on inquiry notice if the "uncontroverted evidence irrefutably demonstrates when plaintiff discovered or should have discovered." *Gaynor v. Miller*, 273 F. Supp. 3d 848, 867 (E.D. Tenn. 2017) (quoting *Newman v. Warnaco Grp., Inc.*, 335 F.3d 187, 194–95 (2d Cir. 2003)). Determining whether a plaintiff was on inquiry notice of a 10b-5 claim "is a question of fact, and as such is often inappropriate for resolution on a motion to dismiss under Rule 12(b)(6)." *In re EveryWare Global,* 175 F. Supp. 3d at 862. (quoting *Marks v. CDW Comp. Ctrs., Inc.*, 122 F.3d 363, 367 (7th Cir. 1997)).

At this stage in the litigation, defendant has failed to show that the statute of limitations had clearly run prior to plaintiffs' filing their initial complaint. As noted in *Everyware Global*, it is typically "inappropriate" to determine the issue of statute of limitations at the motion to dismiss stage. *See id.* Even if plaintiffs were aware of the previous lawsuits, these lawsuits are not enough to conclude at this point in the proceedings that the statute of limitations period was triggered. *See Gaynor*, 273 F. Supp. 3d 848. The Court will now turn to the specific counts alleged in the second amended complaint.

### D. Count I: Violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5(b) Promulgated Thereunder

Plaintiff brings Count I under the provisions of Rule 10b-5(b). Plaintiff alleges that defendant fraudulently concealed material information about Miller Energy that caused Miller Energy to misstate and omit material facts in its financial reporting [Doc. 59 ¶ 257]. Plaintiffs allege that from April 30, 2011, through April 30, 2014, defendant knew, or was

18

reckless in not knowing, that the annual financial results were misleading because they were materially overstated and were not in accordance with GAAP [*Id.* ¶ 258]. In addition, plaintiffs allege that the audits were not in accordance with the GAAS, and so the audit reports were false and misleading [*Id.*]. Plaintiff alleges that because Miller Energy relied on these fraudulent valuations and material misstatements, Miller Energy's quarterly and annual filings materially misstated its assets, which artificially inflated the market price of the Miller Energy's securities [*Id.* ¶¶ 260–61]

The Court will now turn to defendant's assertion that plaintiffs have failed to allege an actionable misstatement [Doc. 64 p. 20]. Specifically, defendant argues that plaintiffs must show in the pleadings that defendant did not believe the opinions contained in the audit report to be true [*Id.*]. In order to sufficiently plead an actionable misstatement or omission of material fact, the plaintiff must allege "the misstatement or omission of a material fact, made with scienter, upon which the plaintiff justifiably relied and which proximately caused the plaintiff's injury." *In re Comshare Inc. Securities Litig.*, 183 F.3d 542, 548 (6th Cir. 1999). Opinions are actionable under Section 10(b) if "the speaker does not believe the opinion and the opinion is not factually well-grounded." *Mayer v. Mylod*, 988 F.2d 635, 639 (6th Cir. 1993). The Court must determine whether "plaintiff has pleaded particular facts sufficient to demonstrate that [defendant] did not believe" the statements at the time they were made.

In plaintiffs' second amended complaint, plaintiffs allege that the annual financial results and audits were misleading statements and that defendant knew or should have

19

known that they were misleading. Plaintiffs assert that these statements were obvious violations of GAAP and GAAS principles. While violations of GAAP and GAAS principles are not alone sufficient to meet the pleading standard for alleging scienter, showing gross violations is sufficient to meet the pleading standard for alleging a misstatement. *See In re Comshare Inc. Securities Litig.*, 183 F.3d 542, 548 (6th Cir. 1999). Plaintiff must only plead the misstatements with "particularity." Fed. R. Civ. P. 9(b). Here, plaintiffs have alleged that the defendant knew or should have known that the Form 8-Ks, Form 10-Ks, and Form 10-Qs contained material misstatements about the value of the Alaska Assets. Taking the allegations as true, and viewing the second amended complaint as a whole, a reasonable person could conclude that defendant was aware that the financial statements and audits were misleading because defendant consistently failed to follow GAAP and GAAS principles as well as defendant's own internal policies. Accordingly, the Court finds that plaintiffs have sufficiently pled a claim under Section 10(b) and Rule 10b-5(b).

E.    **Count II: Violation of Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) Promulgated Thereunder**

Plaintiffs bring a scheme liability claim under the provisions of Rule 10b-5(a) and (c). Plaintiffs allege that defendant performed bookkeeping, appraisal, and valuations to justify misleading valuations of the Alaska Assets [Doc. 59 ¶ 278]. Additionally, plaintiffs assert that defendant defended the valuation to the SEC and met with potential investors to boost Miller Energy's credibility [*Id.*]. Plaintiffs assert that they purchased Miller Energy securities because they were not aware of defendant's conduct [*Id.* at 279].

20

Defendant argues that plaintiffs fail to allege an actionable scheme. Defendant argues that plaintiffs' scheme liability claim is based on deceptive conduct rather than misstatements or omissions. Defendant argues that its role in the alleged misstatements was indirect and was "too remote for liability." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 159 (2008). Defendant asserts that plaintiffs had no knowledge of defendant's conduct and thus cannot show that they relied on defendant's actions. Furthermore, defendant argues that it did not actually "make" the alleged misstatement but simply contributed to its preparation. Defendant cites *Janus Capital Group, Inc. v. First Derivative Traders* where the Supreme Court considered what it means to "make" a statement. 564 U.S. 135. In *Janus*, the Supreme Court considered whether a company could be held liable for misrepresentations made by its investment advisor—the Supreme Court held that it could not. *Id.* Defendant further argues that its activity was "behind-the-scenes" and that it was not the "maker" of the statement [Doc. 64 p. 22].

Scheme liability originates from *Central Bank of Denver, N.A. v. First Interstate Bank of Denver. N.A.*, where the Supreme Court noted that secondary actors could be held liable under the securities acts. 511 U.S. 164, 191 (1994). Under this theory, a court must determine what role the alleged secondary actor played in disseminating faulty information. *Id.* In *Janus*, the Supreme Court held that "[o]ne 'makes' a statement by stating it." 564 U.S. at 142. The Court went on to say that "[f]or the purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Id.* The Court held that

even a speechwriter who drafts a speech is not in control of its content—rather, it is the person who actually delivers the speech who is in control. *Id.*; *see also Central Bank of Denver, N.A.*, 511 U.S. at 180. Previously, in *Stoneridge Investment Partners, LLC,* the Court held that the entity that actually filed fraudulent financial statements was responsible because, while the defendants acted "in connection" with those statements, they did not make it "inevitable" that the entity would actually record the transactions. 552 U.S. 148, 161 (2008). Without "authority over the content of the statement and whether and how to communicate it," *Janus Capital Group, Inc.*, 564 U.S. at 144, it is not "necessary or inevitable" that a false statement would actually be made, *Stoneridge Inv. Partners, LLC,* 552 U.S. at 161.

After determining that a secondary actor made a statement, a plaintiff must next establish a causal link, showing that the shareholders relied on the statement. *Id.* at 159; *see also W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 845 F.3d 384, 393–94 (8th Cir. 2016) ("[U]nder *Stoneridge*, a plaintiff asserting a scheme liability claim must demonstrate that the causal connection between the defendants' alleged deceptive act and the information on which the market relied is not too remote to support a finding of reliance."). In *Medtronic*, Medtronic had allegedly manipulated clinical trials and, in speaking with investors, had told investors of the favorable results, which the investors then relied on. 845 F.3d at 394. The court held that the causal connection was not too remote. *Id*.

While the question of who made the alleged misstatement and the question of causal connection between the statement and plaintiffs' reliance on the statement are separate questions, they each require the Court to determine the roles of each party—determining who said what, when, and to whom. In this case, defendant made a statement to Miller Energy in the form of an independent audit and prepared financial statements. Miller Energy then turned around and made a statement to its shareholders and the SEC in the form of its public filings. The question this Court must decide is whether defendant or Miller Energy had ultimate authority over the public filings that were relied upon by the shareholders. *See Janus*, 564 U.S. at 142.

The relationship between a company and its independent auditor is not distinct from the relationship between a speaker and a speechwriter. Just as a speaker is ultimately free to say whatever he or she chooses, regardless of what the speechwriter drafted, a company is free to present whatever financial statements it chooses, regardless of an auditor's opinion. *See* Auditing Standards of the Public Company Accounting Oversight Board, Public Company Accounting Oversight Board, 4 (Dec. 15, 2017). One of the reasons that companies hire auditors is because of their independence—auditors must be "qualified and independent of their audit clients both in fact and in appearance." 17 C.F.R. § 210.2–01. This is to ensure that the financial statements given to shareholders conform with GAAS.

The Court recognizes that the auditor is to "express an opinion on the financial statements" whereas company management is responsible for establishing internal controls over the company's accounting. Auditing Standards of the Public Company Accounting

23

Oversight Board, Public Company Accounting Oversight Board, 4 (Dec. 15, 2017). The Court also recognizes that it is the management's responsibility to present the financial statements, and it is the auditor's job to make suggestions about the form or content of the financial statements or draft them, in whole or in part. *Id.* at 4–5. An auditor's "responsibility for the financial statements . . . is confined to the expression of his or her opinion on them." *Id.* at 5.

Companies are required to file audited financial statements to encourage public confidence in investment. *United States v. Arthur Young & Co.*, 465 U.S. 805, 819 n.15 (1984). The independent auditor is responsible for verifying that the financial reports comply with GAAS and GAAP. *Id.* at 811. The auditor then issues an opinion about the financial statements, noting whether the financial statements appear to be accurate or whether there are material concerns with the representations made by the financial statements. *Id.* This encourages the public to invest by assuring people that they are relying on accurate information when making investment decisions. *Id.*

While auditors assist in the preparation of financial statements, they do not have ultimate authority over the statements and are therefore only secondary actors. *See Janus*, 564 U.S. at 142. In *Pacific Investment Management Col, LLC v. Mayer Brown LLP,* the Second Circuit held that merely identifying someone involved in a transaction behind the scenes is insufficient to create Rule 10b-5 liability. 603 F.3d 144, 155 (2nd Cir. 2010). Although not binding on this Court, this holding is consistent with the Supreme Court's holding in *Janus*. Only the actor that disseminates the statement is the "maker" of the

24

statement for purposes of Rule 10b-5 liability—thus, the mere creation of a statement or contribution to a statement is not sufficient. *Id.*; *see also Janus*, 564 U.S. at 142.

The alleged misstatements in this case were the annual financial results and audits prepared by defendant and publicly filed by Miller Energy. The information that shareholders relied on was distributed by Miller Energy by way of its public filings. The information was not shared or distributed by defendant. Defendant assisted in its preparation, but any information that the shareholders claimed to have relied on was contained in the public filings made by Miller Energy. Defendant performed a job similar to that of a speechwriter, but ultimately it was Miller Energy's decision to file specific financial statements and make a public statement about the company's assets. The shareholders only became aware of the annual financial results and audits when Miller Energy filed them, not when defendant prepared them. Applying the standard set forth in *Janus*, defendant did not have "ultimate control" over the alleged misstatements, so issuing those statements was not "necessary or inevitable." 564 U.S. at 142. Thus, the Court finds that Count II, that is, scheme liability, fails.

## V. Count III: Violation of Section 11 of the Securities Act

Plaintiffs bring Count III under Section 11 of the Securities Act. 15 U.S.C. § 77k. Plaintiffs allege that the offering documents[2] were materially misleading, which demonstrates a breach of a duty of care owed to the purchasers [Doc. 59 ¶¶ 319–21]. Plaintiffs allege that defendant consented to the incorporation of its unqualified auditor's

---

[2] As defined in the second amended complaint [Doc. 59].

reports [*Id.* ¶ 318]. Plaintiffs assert that members of the Section 11 class relied on the false information [*Id.* ¶ 326].

In its motion to dismiss, defendant first argues that Mr. Weakley is not authorized to serve as lead plaintiff in bringing the Section 11 claim on behalf of a proposed class of purchasers of the Miller Energy preferred stock. Defendant argues that others applied to be co-lead plaintiffs to represent purchasers of the common stock, but that Mr. Weakley and his counsel failed to do so for the preferred stock. Defendant next argues that the Section 11 claim is time barred because it does not relate back to the date of the original complaint, it was brought more than three years after the security was a *bona fide* offer, and it was brought more than one year after the discovery of the untrue statements.

Plaintiffs responded, asserting that Mr. Weakley was not the only individual who brought the Section 11 claims, and since defendant did not challenge the other individuals' authority to bring Section 11 claims, defendant's argument fails [Doc. 68 pp. 35–36]. Plaintiff also argues that its Section 11 claims relate back to statements or documents in the original complaint, which put defendant on notice [*Id.* at 37]. Finally, plaintiffs argue that the statute of limitations question cannot be decided on a motion to dismiss because it is factual in nature [*Id.* at 39].[3]

---

[3] The issue of the statute of limitations has already been addressed for Section 10(b) claims. *Supra* Section IV.C.

## A. Serving as Lead Plaintiff

The Court finds that defendant's motion to dismiss the Section 11 claim on the basis that Mr. Weakley is not authorized to serve as lead plaintiff is premature because the parties have yet to move to certify the class. Accordingly, the Court denies the motion to dismiss the Section 11 claim on this basis. The parties may move for leave to refile the motion to dismiss the Section 11 claim on this basis alone after the issue of class certification has been raised by the parties or ruled on by this Court.

## B. Relation Back

In the original complaint, plaintiff Cosby only asserted a Section 11 claim against all defendants on behalf of "Miller Energy common shares traceable to the September 6, 2012 Registration Statement" [Doc. 1 ¶ 138]. Later, in the first amended complaint, plaintiffs Martin and Weakley joined the action; however, no Section 11 claim was asserted against defendants [*See* Doc. 35]. Finally, in the second amended complaint, plaintiffs Cosby, Martin, and Weakley asserted a Section 11 claim against remaining defendant KPMG on behalf of the Section 11 Class, which only included shareholders of Series C and Series D preferred stock [Doc. 59 ¶ 322].

Federal Rule of Civil Procedure 15(c)(1) allows the relation back of an amendment in one of three situations: (A) when allowed by statute; (B) when the asserted claim arises out of the same conduct, transaction, or occurrence in the original complaint; and, (C) when a new party against whom a claim is asserted is added and that claim arises out of the same

conduct, transaction, or occurrence.  The amendment is only required to satisfy one of these requirements.  *Brown v. Shaner*, 172 F.3d 927, 932 (6th Cir. 1999).

Rule 15(c)(1)(C) allows relation back when an amendment changes a party, but this rule is limited to changes in defendants, not plaintiffs.  *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010).  Adding a new plaintiff establishes a new cause of action that does not relate back to the original filing.  *Id.*  Plaintiffs argue that *Asher* is inapplicable because plaintiff Crosby asserted a Section 11 claim against defendant in the original complaint [Doc. 68 p. 37].  Plaintiffs argue that "*Asher* was about the addition of claims that had *not* been originally [sic] asserted, by plaintiffs who were *not* original parties" [*Id.* (emphasis in original)].  However, in this case, while plaintiff Crosby did assert a Section 11 claim in the original complaint, it was on behalf of the common stock shareholders [Doc. 1].  In the second amended complaint, this claim was asserted only on behalf of the preferred stock shareholders, who had been added in the first amended complaint.  Thus, a new plaintiff was added, and allowing the preferred stock shareholders to assert a Section 11 claim would allow potentially "untimely plaintiffs to ride piggyback on the claims of timely plaintiffs."  *Asher*, 596 F.3d at 318.  In this case, because plaintiff Cosby added plaintiffs Martin and Weakley after the original complaint was filed, and plaintiff Weakley purports to represent an entirely new class of shareholder [Doc. 59], Rule 15(c)(1)(C) does not apply.

Determining whether Federal Rule of Civil Procedure 15(c)(1)(B) applies is a bit trickier.  Rule 15(c)(1)(B) establishes that amendments relate back to the date of the

28

original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." "In a securities fraud action, courts examine whether the allegations relate to the same statements and/or documents referenced in the original complaint." *In re Enron Corp.*, No. H-01-3624, 2005 WL 1638039, at *4 (S.D. Tex. June 21, 2005) (internal quotation marks omitted). The Court should ask "whether the party asserting the statute of limitations defense had been placed on notice that he could be called to answer for the allegations in the amended pleading." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 516 (6th Cir. 2007).

The second amended complaint asserts a new Section 11 claim for damages based on the decline of Miller Energy's Series C and Series D Preferred Stock [Doc. 59 ¶¶ 317–322], while the original complaint asserted a Section 11 claim based on the decline of Miller Energy's common stock [Doc. 1 ¶¶ 133–140]. While this distinction is relevant to the Rule 15(c)(1)(C) new party analysis, it is also relevant to determining whether plaintiffs asserted a new claim. Because the purported damages stemmed from different harm in the original complaint and the second amended complaint, it is a separate claim for purposes of Rule 15(c)(1)(B). The Court next turns to the question of whether this new claim "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). In the original complaint, plaintiff Cosby argued that the Section 11 claim arose from the September 6, 2012, Registration Statement, which was later utilized for all the stock offerings [Doc. 1 ¶ 52]. In the second amended

complaint, plaintiffs argue that the Section 11 claim also arose from September 6, 2012, Registration Statement and the future offerings incorporated therein [Doc. 59 ¶¶ 285–86]. Regardless of whether plaintiffs are now asserting damages stemming from the sales of preferred stock as opposed to damages stemming from the sales of common stock, both claims are rooted in the September 6, 2012, Registration Statement as outlined in both the original complaint and the second amended complaint. Thus, the Section 11 claims arose from the same documents, which satisfies the Rule 15(c)(1)(B) requirement.

## C. Statute of Repose

As plaintiffs note in their response brief, defendant's argument that the Section 11 claims are barred by the Securities Act's three-year statute of repose hinges on the success of their relation back argument [Doc. 69 p. 38 n. 32]. Because the Court finds that the second amended complaint relates back to the original complaint under Rule 15, the Court also finds that the Section 11 claim is not barred by the statute of repose. Section 13 of the Securities Act states that "[i]n no event shall any such action be brought to enforce a liability created under Section 11 . . . more than three years after the security was *bona fide* offered to the public." 15 U.S.C. § 77m (2006). Defendant argues, and plaintiffs do not dispute, that the securities were *bona fide* offered on September 18, 2012, which is the date the registration statement was declared effective by the SEC [Doc. 64 p. 28]. The date of the prospectus supplement is only relevant if it "contains new audited financial statements or other financial information as to which the accountant is an expert and for which a new consent is required pursuant to section 7 of the Securities Act." 17 C.F.R.

30

§ 230.430(B)(f)(5)(i). Plaintiffs allege that the September 25, 2013, October 17, 2013, and August 20, 2014, prospectus statements incorporated new audited financial statements. The original complaint was filed on March 14, 2016, which is less than three years after the September 25, 2013 prospectus statement. Thus, the exception to the rule that the date of the prospectus supplement does not trigger the statute of repose applies in this case, and the Court finds that the statute of repose does not bar the Section 11 claim.

### D.   Statute of Limitations

Finally, the Court turns to the statute of limitations question. Defendant claims that plaintiffs' duty to investigate was triggered in December 2013 by leaked information about defendant's alleged fraud [Doc. 64 p. 33]. The Sixth Circuit has held that "knowledge of suspicious facts—'storm warnings,' they are frequently called—merely triggers a duty to investigate, and that the limitation period begins to run only when a reasonably diligent investigation would have discovered the fraud." *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003). This inquiry, however, is fact specific, and "a motion to dismiss on statute of limitations grounds should be granted when the statement of the claim affirmatively shows that the plaintiff can prove *no* set of facts that would entitle him to relief." *Id.* (internal quotations omitted) (emphasis in the original). In this case, the parties dispute when plaintiffs should have started to investigate the information related to defendant's conduct. The Court notes that the "red flags" raised by plaintiff in support of its argument that defendant should have been aware of material misrepresentations also supports defendant's argument that plaintiff was on

31

inquiry notice as a result of the red flags.  But this is a factual question that cannot be decided at this stage in the proceedings

## VI.    Conclusion

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** defendant's motion to dismiss the second amended complaint [Doc. 63].  The Court finds that plaintiffs have sufficiently pled Counts I and III in the SAC.  However, the Court finds that plaintiffs have failed to plead Count II, that is, scheme liability.  In addition, the Court **DENIES AS MOOT** defendant's original motion to dismiss [Doc. 46].

IT IS SO ORDERED.

s/ Thomas A. Varlan_____
CHIEF UNITED STATES DISTRICT JUDGE