IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

------------------------------------------------------------------X
                                                                  :
LEWIS COSBY, KENNETH R. MARTIN, as                                :  No. 3:16-cv-00121-TAV-DCP
beneficiary of the Kenneth Ray Martin Roth IRA,                   :
and MARTIN WEAKLEY on behalf of themselves                        :
and all others similarly situated,                                :
                                                                  :
                              Plaintiffs,                         :
                                                                  :
            v.                                                    :
                                                                  :
KPMG, LLP,                                                        :
                                                                  :
                              Defendant.                          :
------------------------------------------------------------------X

## EMERGENCY MOTION TO EXTEND CLASS CERTIFICATION DATES
### (EXPEDITED TREATMENT REQUESTED)

On Friday, April 12, 2019, during the deposition of Chad Coffman, the purported expert offered by Plaintiffs in support of Plaintiffs' class certification motion (Doc. 107, Exhibit B), Mr. Coffman admitted that the report and exhibits that Plaintiffs filed with the Court on March 15, 2019 contain <u>*numerous errors*</u> in data, methodology, and analysis such that Plaintiffs must prepare a new report and new exhibits, after which Mr. Coffman must return for another deposition. On April 12, 2019, Mr. Coffman was unable to predict how long it would take for him to attempt to correct the errors in his report and exhibits (as well as any additional errors he might find). Plaintiffs' counsel, however, has stated that Mr. Coffman will provide his revised report by April 19, 2019 (35 days after the original due date of March 15, 2019) and that Mr. Coffman will be made available for a deposition on the new report and exhibits during the week of April 22, 2019.

If Plaintiffs are to be permitted to serve a revised expert report in support of class certification on April 19, 2019, then the remaining class certification dates in the Modified Scheduling Order (Doc. 96) which are an exception to the current stay (Doc. 109) must be adjusted, as follows:

| Event | Requested Revised Due Date | Citation to Modified Scheduling Order |
|---|---|---|
| Plaintiffs' (revised) expert report in support of class certification | April 19, 2019| | ¶ 2(e)(ii) & ¶ 2(e)(v) |
| Deposition of Plaintiffs' experts | At least 14 days before opposition | ¶ 2(e)(vi) |
| KPMG's papers and expert report in opposition to class certification | June 3, 2019 | ¶ 2(e)(iii) & ¶ 2(e)(vii) |
| Deposition of KPMG's experts | At least 14 days before reply | ¶ 2(e)(viii) |
| Plaintiffs' reply | June 24, 2019 | ¶ 2(e)(iv) |

The above dates were obtained by merely extending the dates in the current Modified Scheduling Order by the same number of days (35) by which Mr. Coffman's report will be late if served on April 19, 2019, keeping all intervals between events the same length as before. For example, in the revised schedule, KPMG still has 45 days from the date of Mr. Coffman's report to accomplish all of the following: depose Mr. Coffman; evaluate and analyze the data, methodology, and conclusions contained in Mr. Coffman's reports, exhibits, and back-up data; prepare a rebuttal expert report; prepare a motion to exclude Mr. Coffman's report and testimony under Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); and prepare KPMG's memorandum of law in opposition to the motion for class certification).[1]

---

[1] Mr. Coffman's initial report was 50 pages, with 31 exhibits and 3 appendices, and he produced voluminous backup data (1.38 gigabytes). With respect to his back-up data, for example, one of his spreadsheets contains 23 columns and 988 rows of data in a single Tab called Regression CS, in a spreadsheet that contains 50 separate Tabs. And that spreadsheet (size 6.848 megabytes) is not even close to the largest of the many spreadsheets of backup data he produced (largest spreadsheet is 1377.576 megabytes). It is unclear at this point how much of Mr. Coffman's data, analyses, and conclusions will be revised, and whether he will find errors in addition to the many errors that he admitted during his deposition.

For the Court's information, below are some of the errors in Mr. Coffman's data, methodology, and conclusions that came out during his deposition on Friday, April 12, 2019:

- The errors in Mr. Coffman's report are so numerous and so significant that Mr. Coffman will have to prepare a new report. (Deposition Transcript of Chad Coffman, April 12, 2019 ("Coffman Dep.") 217-18 ("I think given what you have shown me, I will likely prepare a corrected version of the report and so at that point I believe I will have given you the full basis that I'm using to conclude that the market is efficient.").)[2]

- The errors in Mr. Coffman's data and methodology will require that he revise the exhibits to his report. (Coffman Dep. 218 ("Based on what you have shown me there will likely be revisions to my exhibits, yes.").)

- As of April 12, 2019, Mr. Coffman was unable to assess how long it would take to attempt to fix all the errors in his data and methodology, and in his report and exhibits. (Coffman Dep. 218.)

- In connection with Miller Energy's common stock, Mr. Coffman evaluated 17 events, looking "carefully to make sure [he was] getting the right dates . . . "[b]ecause that's important to [his] analysis," (Coffman Dep. 73), and yet he admitted at his deposition that his methodology did not cause him to get the dates right (Coffman Dep. 197-202).

- In connection with the "event study" on Miller Energy's common stock in his expert report, Mr. Coffman evaluated 17 events and found that 4 of them led to statistically significant movements in the price of the common stock, but at his deposition Mr.

---

[2] The cited pages from the transcript of Mr. Coffman's deposition are attached as Exhibit A hereto.

3

Coffman admitted that all of his data, analysis, and conclusions for at least 1 of these 4 events were wrong. (Coffman Dep. 197-202.)

- For this event (1 of the 4 events that purportedly led to a statistically significant price movement), Mr. Coffman incorrectly treated the event date as July 16, 2013 when it should have been July 15, 2013. (Coffman Dep. 202.)

- Mr. Coffman incorrectly used July 17, 2013 as the "market date" when it should have been July 16, 2013 for the stock price reaction analysis. (Coffman Dep. 195, 202.)

- Mr. Coffman used the wrong "closing price" for his analysis of this event. (Coffman Dep. 203.)

- Mr. Coffman calculated an incorrect "raw return" for this event. (Coffman Dep. 203.)

- Mr. Coffman provided an incorrect "volume" number for trading in the common stock on the date in question. (Coffman Dep. 203.)

- Mr. Coffman calculated an incorrect "abnormal return" percentage. (Coffman Dep. 203.)

- Mr. Coffman calculated an incorrect "abnormal dollar change." (Coffman Dep. 203.)

- Mr. Coffman gave the wrong t-statistic in his statistical analysis of this event. (Coffman Dep. 203.)

- And, Mr. Coffman admits that he reached the *wrong conclusion* – that the market price of Miller Energy's common stock reacted in a statistically significant way to the event in question – when in fact the correct data and analysis shows that the market price of Miller Energy's common stock did *not* react in a statistically significant way to this event. (Coffman Dep. 203-04.)

- Mr. Coffman testified that while he concluded in his report that 4 out of 17 events in his events study of the common stock led to statistically significant price movements, in fact based on the errors uncovered in his work during the deposition, he would conclude that he was wrong and that only 3 of those 17 events led to statistically significant price movements. (Coffman Dep. 204.)

- Exhibit 7 of Mr. Coffman's report contains multiple errors and must be revised. (*See* Coffman Dep. 202-04.)

- Exhibit 8 of Mr. Coffman's report contains multiple errors and must be revised. (Coffman Dep. 204-05.)

- The text of Mr. Coffman's report contains inaccurate data, analysis, and conclusions including on pages 29 through 32 where the most critical conclusions of the event study are addressed (Coffman Dep. 205-08.)

- The bar chart on page 30 of Mr. Coffman's report is wrong. (Coffman Dep. 205-06.)

- Footnote 61 of Mr. Coffman's report, asserting a conclusion about statistical significance, contains incorrect information (Coffman Dep. 206-07), and as of April 12, 2019, Mr. Coffman was unable to ascertain whether the ultimate conclusion stated there is correct or incorrect (Coffman Dep. 214-15).

- Footnote 63 of Mr. Coffman's report, also asserting a conclusion about statistical significance, contains incorrect information, and as of April 12, 2019, Mr. Coffman was unable to ascertain whether the ultimate conclusion stated there is correct or incorrect. (Coffman Dep. 207.)

- Given that Mr. Coffman admitted at his deposition that his analysis and conclusion on at least 1 of the 17 events in his event study of the common stock was flat out

wrong, he further testified that he needed to go back and reexamine *all* 17 of the events in his event study to determine whether he made additional errors (Coffman Dep. 231-32), and based on some preliminary considerations he believes that his analysis of at least 1 more of the 17 events was also incorrect (Coffman Dep. 230-31). In other words, his data, analysis, and conclusions are likely incorrect for *at least* 2 of the 17 events he studied.

Other errors in data, methodology, and conclusions that came out during Mr. Coffman's deposition on April 12, 2019 include the following:

- Mr. Coffman claims that whether a "significant" number of analysts covered Miller Energy's securities is an important factor in evaluating market efficiency, but his methodology does not provide a threshold for determining whether the number of analysts actually covering a security is significant or insignificant. (Coffman Dep. 76-79.)

- Mr. Coffman's methodology for determining how many analysts were covering Miller Energy and how many reports the "analysts" issued does not accurately and reliably determine (a) whether the purported analysts he identified were living human beings who were analyzing Miller Energy (Coffman Dep. 81-82); (b) whether the purported "analyst reports" he identified were not analyst reports but rather machine-generated text (Coffman Dep. 82-83); (c) whether the purported "analyst reports" he identified were merely word-for-word transcripts of management interviews that contain no analyst's analysis whatsoever and that even according to Mr. Coffman are not "traditional" analyst reports (Coffman Dep. 83-85); or (d) whether his tally of analysts double-counted some of the purported analysts (Coffman Dep. 86).

- Mr. Coffman admits that if there was only one analyst covering the stock then the factor would *not* support a finding of market efficiency (Coffman Dep. 76 ("I certainly think it would not weigh toward efficiency if there weren't any analysts covering a stock or there was only one.")), but Mr. Coffman's methodology did not require him to learn how many analysts were covering, or to know whether there was more than one analyst covering, Miller Energy at the start of or over the first year of the proposed class period (Coffman Dep. 87-88).
- Mr. Coffman claims that the existence of market-makers for Miller Energy's securities is an important factor, but he is unable to name a single such market-maker for Miller Energy's securities. (Coffman Dep. 103.)
- Mr. Coffman claims that a company's eligibility or ineligibility to use SEC Form S-3 for filings is an important factor in his analysis, but his methodology does not provide him a means of assessing with accuracy the periods of time when Miller Energy was eligible and when it was ineligible to use Form S-3. (Coffman Dep. 105-107.)
- Mr. Coffman's report states that the factor of eligibility to file a Form S-3 supports a finding of efficiency, but in his deposition he admitted that the factor does not support a finding of efficiency for the entirety of the proposed class period. (Coffman Dep. 108-09.)
- Mr. Coffman's methodology required him to divide the trading days in the proposed class period into days when news was released ("news days") and days when no news was released ("no news days"), but his methodology did not contain an accurate and reliable mechanism for determining whether a particular day was a news day or a no

news day, and did not even capture accurately the days identified in the complaint as news days. (Coffman Dep. 156-161.)

- Mr. Coffman constructed an alternative methodology for his event study of Miller Energy's Series C and Series D preferred stock. (Coffman Dep. 277-78.) If he had used the same methodology as he used for the common stock, the data would have forced him to conclude that there was no cause-and-effect relationship between earnings releases and movements in the securities' prices, meaning that this factor would weigh heavily *against* finding that the markets for the two preferred securities were efficient. (Coffman Dep. 279-80.)

- While Mr. Coffman's report states that Section 11 damages can be calculated based on a statutory formula on a class-wide basis, Mr. Coffman at his deposition admitted that he cannot accurately calculate damages even for Martin Ziesman, the one and only proposed Section 11 class representative (Coffman Dep. 284-91), much less for the entire proposed class. (Coffman Dep. 291-97.)

In short, the report and exhibits of Mr. Coffman served on March 15, 2019, which are central to Plaintiffs' class certification motion, are filled with errors in data, methodology, analysis, and conclusions. Mr. Coffman is not willing to stand by his report and exhibits without further analysis, and he will be revising them. He testified, as noted above, that he expects to find additional errors beyond the many errors identify by KPMG's counsel, which he will attempt to fix in his new report. At present, there is no way to know what additional errors he might find or what his revised report and exhibits will contain. There is no way to predict with any certainty whether Mr. Coffman will be able to complete his work and issue a new report and exhibits or to predict what they may contain,

and KPMG should not be compelled to prepare its papers in opposition to the class certification motion based on guesswork.

Further, given the current stay, this request will not prejudice Plaintiffs in any way. For these reasons, the class certification schedule must be modified as stated above. According to this Court's Electronic Case Filing Rules and Procedures, a proposed form of order will be e-mailed to the judge's chambers.

Due to the impending deadlines contained in the Modified Scheduling Order, KPMG requests that the Court treat this emergency motion on an expedited basis. Plaintiffs should be required to file their response to this motion, if any, by April 18, 2019, which is two business days from the date of filing. (KPMG is filing this motion two business days after the deposition of Mr. Coffman, and within one business day of receiving the final transcript of Mr. Coffman's deposition.) A proposed form of order granting an expedited briefing schedule will also be e-mailed to the judge's chambers.

## CERTIFICATE OF CONSULTATION

Counsel for KPMG has conferred with counsel for Plaintiffs, and Plaintiffs oppose this motion. Plaintiffs have offered a one-week extension, which is not adequate for the reasons listed above and also because KPMG's expert will be travelling out of the country visiting family in India from May 13, 2019 to May 24, 2019.

Dated: April 16, 2019                    Respectfully submitted,

                                                          s/ Paul S. Davidson
WALLER LANSDEN DORTCH & DAVIS, LLP
Paul S. Davidson (TN BPR # 011789)
Tera Rica Murdock (TN BPR #028153
511 Union Street, Suite 2700
Nashville, TN 37219
Phone: 615-244-6380
Email: paul.davidson@wallerlaw.com
Email: terarica.murdock@wallerlaw.com

MCDERMOTT WILL & EMERY LLP
Gregory G. Ballard (admitted pro hac vice)
340 Madison Avenue
New York, New York 10173
Telephone: +212-547-5330
Email: gballard@mwe.com

SIDLEY AUSTIN LLP
Gary F. Bendinger (admitted pro hac vice)
787 Seventh Avenue
New York, New York 10019
Telephone: +1 212 839-5300
Email: gbendinger@sidley.com

Counsel for Defendant KPMG LLP

# CERTIFICATE OF SERVICE

      I hereby certify that on April 16, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be served by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

>Gordon Ball
>W. Gordon Ball, Attorney At Law
>7001 Old Kent Drive
>Knoxville, TN 37919
>gball@gordonball.com
>
>Steven J. Toll
>Cohen, Milstein, Sellers Toll PLLC
>1100 New York Avenue NW
>Fifth Floor
>Washington, DC 20005-3934
>stoll@cohenmilstein.com
>
>Laura H. Posner
>Cohen, Milstein, Sellers Toll PLLC
>88 Pine Street, 14th Floor
>New York, NY 10005
>lposner@cohenmilstein.com

                                        s/ Paul S. Davidson

11

Case 3:16-cv-00121-TAV-DCP   Document 120   Filed 04/16/19   Page 11 of 11   PageID #: 7374