# EXHIBIT D

Exhibits:   19-24          Volume 1, Pages 1-117

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TENNESSEE

KNOXVILLE DIVISION

-----------------------------

LEWIS COSBY, KENNETH R. MARTIN, as
beneficiary of the Kenneth Ray
Martin Roth IRA, and MARTIN
WEAKLEY on behalf of themselves
and all others similarly situated

Plaintiffs

vs.                    Docket No. 3:16 CV 00121

KPMG, LLP

Defendant

-----------------------------

VIDEOTAPED DEPOSITION OF ERIC MONTAGUE

Friday, April 5, 2019, 8:04 a.m.

Sidley Austin LLP

60 State Street

Boston, Massachusetts


--------Reporter:  David A. Arsenault, RPR--------

Farmer Arsenault Brock LLC

Boston, Massachusetts

617.728.4404

1  Q. When did this friend reach out to you about
2  the lawsuit?
3  A. I think it was early February 2018.
4  Q. At that time when he reached out around
5  February --
6       Did you say 2018?
7  A. 2018.
8  Q. -- 2018, had you heard anything about the
9  lawsuit before?
10 A. No, I hadn't.
11 Q. Did he tell you anything about the lawsuit
12 at that time?
13 A. No.
14 Q. Can you describe the circumstances that led
15 your actually becoming involved in the lawsuit?
16       MS. POSNER: Objection. Don't convey
17 any attorney-client privileged communications.
18 A. Can you explain what you mean by the
19 question?
20 Q. You know what, I'll rephrase it.
21       Why do you want to sue KPMG?
22 A. As a former auditor, I have had a lot of
23 integrity. I believe people relied on those
24 financial statements, and they misled the entire

1  investor group and they should be held accountable
2  for that.
3     Q.  What is your basis for saying that KPMG
4  misled investors?
5     A.  It's my understanding that there was assets
6  that they paid about $2 million for, they reported
7  on financial statements over $400 million.  And they
8  issued clean opinions related to the value of those
9  assets.
10    Q.  Do you know anything about KPMG's audits?
11    A.  No, I don't.
12    Q.  So when you heard from your friend about
13 this case, what was the next thing that happened in
14 terms of your getting involved in it?
15         MS. POSNER:  Just don't disclose any
16 attorney-client privileged communications.
17    A.  I communicated with Gordon Ball, put my
18 name on the list.
19    Q.  I'm not asking about the conversation.
20         MS. POSNER:  Don't convey the
21 conversation.
22    A.  I put my name on the list and then I hadn't
23 heard back from him, other than he let me know there
24 was a motion to dismiss at one point in time.

1  Q. I'm not going to ask about your
2  communications with the attorneys. I'm assuming the
3  privilege will be asserted for that. It is okay to
4  tell me that you had a conversation. I'm not going
5  to ask you about what you talked about.
6  A. That was about it. But then recently they
7  were looking for new class reps because the previous
8  class reps apparently had conflicts and weren't able
9  to represent anymore, so I said I was happy to help.
10  Q. Have you spoken to anyone other than
11  lawyers for the plaintiffs about your involvement in
12  this case?
13  A. I have not.
14  Q. So at what point in time did you decide
15  that you do want to be a plaintiff in this lawsuit?
16  A. Like I said, as a former auditor I felt, I
17  almost feel a duty to the shareholders. Working
18  towards the CPA exam and passing that and becoming
19  certified was something I didn't take for granted.
20  And when asked if I would fill the role, I said I
21  was happy to.
22  Q. I'm asking when that was.
23  A. Oh, when. I thought you said -- I think
24  that was February or early March 2019.

1  Q.  Do you have a plan for periodically
2  speaking with Mr. Cosby and Mr. Ziesman about this
3  case?
4  A.  We do not have a specific plan.
5  Q.  In Exhibit 5 you indicate that you will
6  actively monitor your counsel in this litigation.
7  How will you do that?
8  A.  I plan on reaching out to Laura from time
9  to time to see how the case is progressing.  At this
10 point Laura has kept us apprised of any motions or
11 things that have happened in the case, so just open
12 communication.
13 Q.  If you are allowed to become a class
14 representative in this case, what do you understand
15 that your duties will be?
16 A.  My duties will be to represent the
17 shareholder group and to try to get the best
18 settlement that's best for everyone involved and to
19 oversee the attorneys to make sure they are acting
20 in the best interest of the shareholder group.
21 Q.  Have you ever served as a representative of
22 a class in any prior case?
23 A.  No, I haven't.
24 Q.  Have you ever applied to be considered to

1  Q. Did you ever hear an allegation that
2 management of Miller Energy acted in a
3 self-interested manner?
4  A. No.
5  Q. Did you ever hear an allegation that Miller
6 Energy failed to communicate candidly with all
7 shareholders on an even playing field?
8  A. No.
9  Q. Did you ever hear an allegation that Miller
10 Energy engaged in reckless and chaotic behavior?
11  A. No.
12  Q. Did you ever hear an allegation that Miller
13 Energy made spectacularly poor decisions?
14  A. No.
15  Q. Would it surprise you to hear that all of
16 these allegations were made in SEC filings that were
17 filed publicly prior to when you purchased the
18 stock?
19  A. Not based on what I know today.
20  Q. If you had known about those things, would
21 you have still bought the stock?
22         MS. POSNER: Objection.
23  A. Probably not.
24  Q. Did you ever hear of the allegation that

1  MR. BALLARD: Objection to the form.
2  A. No.
3  Q. At any point in time when you were holding
4  Miller Energy stock or electing to purchase Miller
5  Energy stock, did you have a reason to believe that
6  the valuation of Miller Energy's Alaska Assets were
7  overvalued?
8  A. No.
9  Q. Would you have purchased Miller Energy
10 stock if you had known its financial statements were
11 inaccurate?
12 MR. BALLARD: Objection to form.
13 A. Probably not.
14 Q. If you had known that Miller Energy's
15 financial statements were fraudulent, would you have
16 purchased?
17 MR. BALLARD: Objection.
18 A. Probably not.
19 MS. POSNER: I have no further questions
20 pending anything from counsel.
21 MR. BALLARD: We are done. Thank you.
22 THE VIDEOGRAPHER: The time is 11:13
23 a.m. The deposition is concluded. We are off the
24 record.