UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| LEWIS COSBY, KENNETH MARTIN, as beneficiary of the Kenneth Ray Martin Roth IRA, and MARTIN WEAKLEY on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>     v.<br><br>KPMG, LLP<br><br>                Defendant. | No.: 3:16-cv-00121-TAV-DCP |

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO SUBSTITUTE

**I.     INTRODUCTION**

KPMG does not object to the substitution of proposed Class Representatives, Messrs. Montague and Ziesman—who, together with Court-appointed Lead Plaintiff, Lewis Cosby, have already moved for and fully briefed Class Certification—into this matter. *See* Def.'s Resp. to Mot. to Substitute ("Opp'n"), ECF No. 115. Nor does KPMG object to the withdrawal of Messrs. Martin and Weakley (the "proposed absent Class members") as named plaintiffs in this matter. *See id.* Rather, KPMG seeks to condition withdrawal on the imposition of highly burdensome discovery on Messrs. Martin and Weakley as if they moved to serve as Class Representatives in connection with Plaintiffs' Motion for Class Certification. *See* Order Granting Def.'s Request for Conference at 5, ECF No. 145 ("it appears to the Court that the primary issue is not whether Martin Ziesman and Eric Montague should be substituted but whether Plaintiffs Kenneth Martin and Martin Weakley should respond to discovery prior to withdrawing"). This is contrary to both the letter and spirt of the law in this Circuit, which establishes a liberal standard for parties seeking to withdraw from class litigation (*See Newberry v. Silverman*, 789 F.3d 636, 645 (6th Cir. 2015)),

and severely disfavors taking discovery from absent class members. *Groth v. Robert Bosch Corp.*, No. 1:07-CV-962, 2008 WL 2704709, at *1 (W.D. Mich. July 9, 2008). For those reasons alone, Plaintiffs' Motion to Substitute ("Motion"), ECF No. 101, should be granted.

Moreover, the discovery KPMG seeks from the proposed absent Class members is irrelevant to both class certification—which is now fully briefed—and to the merits of the Classes' claims. If anything, the discovery sought by KPMG is relevant only to individual issues specific to the proposed absent Class members. Such discovery is inappropriate in a class action like this one, particularly when all fact discovery is stayed and Plaintiffs are unable to litigate the Classes' claims against KPMG. *See* Order Referring Mot. for Class Certification, ECF No. 109. Finally, KPMG fails to meet its burden of showing particularized need for the discovery sought, or that its discovery requests are narrowly tailored to meet a particularized need for information. Accordingly, KPMG has no basis on which to insist that this Court impose a set of its highly burdensome, preferred conditions as a precursor to substitution. The Motion should be granted.

## II. ARGUMENT

### A. Federal Rules of Civil Procedure 15 and 21 Govern This Motion and Withdrawal Should be Freely Granted

As set forth in Plaintiffs' Motion to Substitute, ECF No. 101, Rules 15 and 21 govern the Motion. *See Thorn v. Bob Evans Farms, LLC*, No. 12-768, 2013 WL 2456336, at *2 (S.D. Ohio June 6, 2013) (plaintiffs seeking to substitute named plaintiffs "correctly br[ought] their motion pursuant to both Rules 21 and 15(a)(2).").[1] Absent "any apparent or declared reason—such as

---

[1] *See also Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 96-97 (S.D.N.Y. 2010) (citations and internal quotation marks omitted) ("To the extent a proposed amendment would add new parties, the motion is technically governed by Rule 21, which provides that the court may at any time, on just terms, add or drop a party, rather than Rule 15(a). However, the same standard of liberality applies under either Rule.").

undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should as the rules require, be 'freely given.'" *Parchman v. SLM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). While the decision to grant substitution is in the Court's discretion, that discretion "is limited by Rule 15's liberal policy of permitting amendments." *Sun Life Assurance Co. of Canada v. Conestoga Tr. Servs., LLC*, 263 F. Supp. 3d 695, 697 (E.D. Tenn. 2017), *aff'd*, 717 F. App'x 600 (6th Cir. 2018), *cert. denied*, *Conestoga Tr. Servs., LLC v. Sun Life Assur. Co. of Canada*, 139 S. Ct. 378 (2018).[2]

KPMG does not claim—because it cannot—that Plaintiffs' Motion does not meet these liberal standards. Rather, in an attempt to sidestep the principle that leave to substitute should be "freely given", KPMG weakly asserts that Plaintiffs "are essentially asking . . . for the voluntary dismissal of Messrs. Martin and Weakley under Rule 41[.]" Opp'n at 3. This is incorrect. Federal Rule of Civil Procedure 41 applies when plaintiffs seek to ***dismiss*** an action. Here, Plaintiffs seek to ***substitute*** additional proposed Class Representatives—who have now moved for and fully briefed Class Certification—into this action, and withdraw Messrs. Martin and Weakley as named representatives without prejudice to Messrs. Martin's and Weakley's rights to remain absent Class

---

[2] *See also Schubert v. Lay*, No. 06-cv-0092, 2007 WL 470408, at *1 (E.D. Tenn. Feb. 12, 2007) ("Although the decision to permit amendment of pleadings is committed to the discretion of district courts, their discretion is 'limited by Rule 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on their merits.'"); *Goldman Servs. Mech. Contracting, Inc. v. Citizens Bank & Tr. Co. of Paducah*, 812 F. Supp. 738, 743 (W.D. Ky. 1992), *aff'd.*, *Goldman Servs. Mech. Contracting, Inc. v. Citizens Bank & Tr. Co. of Paducah*, 9 F.3d 107 (6th Cir. 1993) ("The trial court's discretion is not total, but is limited by Rule 15(a)'s liberal policy . . .") (citation and internal quotation marks omitted).

members. KPMG acknowledges as much when it explains that Messrs. Martin and Weakley would "still attempt to recover damages as members of the proposed class." Opp'n at 6. Accordingly, Rule 41 is irrelevant to the Motion.

Furthermore, KPMG does not object to Messrs. Montague and Ziesman's substitution into this matter or even Messrs. Martin's and Weakley's withdrawal as named plaintiffs. Rather, it seeks to condition Messrs. Martin's and Weakley's withdrawal on obtaining significantly burdensome discovery from them. However, like substitution motions, motions to withdraw are freely granted in securities class actions, and they certainly are not conditioned on obtaining the very same discovery the withdrawing party would be subjected to if he or she remained a named plaintiff. *See e.g., Endress v. Gentiva Health Servs., Inc.*, 278 F.R.D. 78, 81 (E.D.N.Y. 2011) (permitting the withdrawal of a named plaintiff in a putative securities fraud class action pursuant to Federal Rule of Civil Procedure 21); *Forrester v. Forterra, Inc.*, No. 2:17-cv-04763-JS-GRB, 2018 WL 3614113, at *1 (E.D.N.Y. July 27, 2018) (permitting the withdrawal of three named plaintiffs in a putative securities class action); *Roberts v. Electrolux Home Prod., Inc.*, No. 12-cv-1644, 2013 WL 4239050, at *3 (C.D. Cal. Aug. 14, 2013) (granting withdrawal of named plaintiffs and finding that they "need not sit for a deposition prior to withdrawal" while noting that "absent a good reason ... a plaintiff should not be compelled to litigate if it doesn't wish to."); *Thorn v. Bob Evans Farms, LLC*, No. 2:12-cv-768, 2013 WL 2456336, at *2 (S.D. Ohio June 6, 2013) ("Finding that substitution . . . will serve the ends of justice in this case, and also serve to conserve judicial resources and the resources of the Parties without prejudicing Bob Evans . . .").

Since none of the discovery sought has any bearing on the issue of withdrawal, it is irrelevant to whether the Motion should be granted. Furthermore, as discussed more fully below, the discovery sought is not even relevant to class certification or the merits of the Classes' claims

4

or particularized to a specific need for information. As such, Plaintiffs' Motion should be "freely granted."

### B. The Discovery Sought by KPMG Is Irrelevant to Class Certification or the Merits of the Classes' Claims

On March 19, 2019, the Court stayed this case "pending resolution of plaintiffs' motion to certify, with the exception that the parties may file their respective response and reply associated with that motion." Order, ECF No. 109. While KPMG claims, without any basis, that the burdensome discovery it seeks is relevant to class certification,[3] it is not. *See In re Navistar MaxxForce Engines Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 14-cv-10318, 2018 WL 316369, at *3 (N.D. Ill. Jan. 4, 2018) ("when a potential class representative drops out before certification, questions of whether that plaintiff satisfies the requirements of Rule 23(a), such as adequacy, become moot, so . . . some other justification for discovery from the plaintiff on those issues must exist."); *Young v. LG Chem Ltd.*, No. 13-md-02420, 2015 WL 8269448, at *6 (N.D. Cal. Dec. 9, 2015) ("The departing individuals will no longer be class representatives; therefore, the question of whether they can establish Rule 23(a) requirements is moot."); *In re Urethane Antitrust Litig.*, No. 04-md-1616, 2006 WL 8096533, at *2 (D. Kan. June 9, 2006) (holding, where the defendant sought a Rule 30(b)(6) deposition on a withdrawing plaintiff's standing, that standing "is not an issue that needs to be determined prior to the class certification hearing if [the withdrawing plaintiff] is not a class representative."); *Redmond v. Moody's Inv'r Serv.*, No. 92-

---

[3] Opp'n at 6 ("discoverable information . . . about issues that will be central to the upcoming class certification motion."); Opp'n of KPMG LLP to Pls.' Mot. for Class Certification ("Class Certification Opp'n"), ECF No. 129, at 14 n. 9 ("[a]dditional documents and information supporting KPMG's opposition to the motion for class certification is in the hands of Kenneth Martin and Martin Weakley").

5

cv-9161, 1995 WL 276150, at *1 (S.D.N.Y. May 10, 1995) ("discovery of absent class members regarding individual issues, as opposed to common questions, is inappropriate.").

KPMG makes only two arguments regarding why the extensive discovery it seeks is relevant to class certification. First, KPMG claims that the proposed absent Class members "likely" have information about whether "individual issues predominate over common issues." Opp'n at 6, 11. Specifically, KPMG argues that Messrs. Martin and Weakley are supposed "insiders" who had knowledge of the fraud at the heart of this—a pure conjecture that is belied by the fact that both sustained large, multi-million dollar losses on their investments in Miller Energy. Opp'n at 3; Class Certification Opp'n at 18 n.15. KPMG's speculation that Messrs. Martin and Weakley are "insiders" with knowledge of the fraud is solely based on the fact that Messrs. Martin and Weakley continued to purchase Miller Energy Securities after certain partial disclosures and that Mr. Martin ███████████████████████████ *See* Opp'n at 6-10. KPMG hypothesizes that ███████████████████████████████████████████████████████████████████████ and then goes even further to hypothesize that this due diligence must have tipped him off to the fraud. *Id.* at 9.[4] This speculation does not come close to showing that Messrs. Martin and Weakley had knowledge of the Miller Energy fraud, and sits in uncomfortable tension with KPMG's argument that glaring red flags were insufficient to put *it*—a public accounting firm—on notice of fraud.

---

[4] Relatedly, KPMG points to the fact that Messrs. Martin and Weakley were related to another individual who "was in frequent contact with" Miller Energy officers. Opp'n at 7. It then speculates that this third individual knew of the fraud and then further speculates that this third individual then told Messrs. Martin and Weakley of the fraud. *See id*. Again, there is no basis to assume either this third individual or Messrs. Martin or Weakley were aware of the fraud. To the contrary; given that this third individual apparently was a large shareholder in Miller Energy, he too likely suffered a huge loss on his investment in Miller Energy Securities.

KPMG argues that this purported knowledge of the fraud demonstrates that Messrs. Martin and Weakley's claims are barred by the statute of limitations, and could result in separate mini-trials on each Class member's knowledge. *Id*. However, as explained in Plaintiffs' Class Certification Reply Brief, Messrs. Martin and Weakley's purported knowledge is irrelevant to Class Certification. Messrs. Martin and Weakley did not move to be appointed as Class Representatives and, regardless of what they knew or did not know, their ostensible individual issues cannot predominate. *See* Pls.' Reply to Resp. to Mot. for Class Certification ("Class Certification Reply"), ECF No. 141, at 12 n.16, 15. Deposing Messrs. Martin and Weakley and obtaining their documents will shed no light on the thousands of other Class members' claims or the suitability of certification of the Classes. Indeed, even if KPMG could somehow demonstrate that Messrs. Martin and Weakley knew of the fraud, the only result would be that they would be excluded from the Class—a result that typically occurs in connection with the claims administration process at settlement or judgment.

KPMG next argues that Messrs. Martin and Weakley's trading somehow "'severs the link' between the alleged misrepresentations and 'the decision to trade at the fair market price." Class Certification Opp'n at 14. But, as explained in Plaintiffs' Class Certification Reply, ***and as this Court has held on two separate occasions***, there is no evidence that Miller Energy investors were put on notice of KPMG's fraud prior to the end of the Class Period. *See* Class Certification Reply at 14-15; Memorandum Op. and Order, ECF No. 76, at 17-18 (holding that KPMG "failed to show that the statute of limitations had clearly run prior to plaintiffs' filing their initial complaint."); *Gaynor v. Miller*, No. 3:15-cv-545-TAV-DCP, 2018 WL 3751606, at *15 (E.D. Tenn. Aug. 6, 2018) ("Gaynor R&R") ("The Court finds Defendants' affirmative defense of knowledge does not defeat class certification."); *id*. at 14-16. Even so, any such discovery could only illuminate the

circumstances surrounding the purchases of Messrs. Martin and Weakley, not the circumstances of the purchases of the thousands of other Class members, who lack even any hypothesized "insider" knowledge or status.[5] Accordingly, the discovery KPMG seeks from Messrs. Martin and Weakley is irrelevant to class certification.

On the merits, KPMG fares no better. First, the information relied on by KPMG does not come close to indicating—much less demonstrating—that Messrs. Martin or Weakley had actual or constructive knowledge of Miller Energy's fraud or, critically, KPMG's role in it. Second, KPMG's insinuation is belied by Messrs. Martin and Weakley's trading in Miller Energy. If Messrs. Martin or Weakley knew of the fraud, they certainly would not have continued to purchase Miller Energy Securities after certain of the alleged partial disclosures, or to continue to hold their Miller Energy Securities until the end of the Class Period, causing them both to lose millions. *See* Class Certification Opp'n at 14 (noting that he continued to purchase throughout the Class Period); *see also* Decl. of Kenneth R. Martin, ECF No. 11-3 (showing that Mr. Martin lost over $6 million in connection with the purchase and sale of Miller Energy Securities). Finally, and most critically, even if Messrs. Martin or Weakley did know of the fraud (which they did not), it would have no impact on the claims of the Classes or this action. The only result would be that Messrs. Martin and Weakley could not participate in the action and would fall outside the definition of the Classes. That hardly necessitates subjecting them to burdensome discovery, particularly when all non-Class related discovery is stayed.[6]

---

[5] KPMG does not, because it cannot, plausibly argue that the proposed absent Class members' testimony or documents would be relevant to numerosity, adequacy or typicality.

[6] KPMG cites *Thorn v. Bob Evans Farms, LLC*, No. 2:12-CV-768, 2013 WL 2456336, (S.D. Ohio June 6, 2013) as an example of a case where "the claims of the plaintiff [were] substituted out with prejudice and . . . the plaintiffs provided the defendant . . . with discovery." Opp'n at 10-11. But

8

### C. The Court Should Not Impose Broad Discovery Obligations on Proposed Absent Class Members as a Precondition to Substitution

Citing cases from outside the Sixth Circuit, KPMG argues that the Court should condition withdrawal of the proposed absent Class members on their *full* participation in discovery, including answering document requests and sitting for depositions. Opp'n at 3, 4 n.2. This conflicts with a wealth of authority that counsels against squandering the advantages of class litigation by subjecting absent class members to discovery. *See*, *e.g.*, *Groth*, 2008 WL 2704709, at *1; *Rogers v. Baxter Int'l Inc.*, No. 04-6476, 2007 WL 2908829, at *1 (N.D. Ill. Oct. 4, 2007); Manual for Complex Litigation, Fourth, § 21.41; *accord Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 n.2 (1985) (noting that "an absent class-action plaintiff is not required to do anything" but "sit back and allow the litigation to run its course," and further noting that "burdens" like discovery are "rarely imposed upon plaintiff class members").[7]

---

the court's decision in *Thorn* did not hinge on the withdrawing plaintiff dismissing her claims with prejudice or subjecting herself to discovery. Indeed, the court noted in a throwaway line the relevance of dismissal with prejudice to a single factor in the Rule 15 analysis—that it was an indication of Thorn's "good faith." *Id.* at *2. The issue of discovery only arose because Bob Evans argued that it had been prejudiced by expending resources deposing Thorn and moving for summary judgment prior to her motion to withdraw. *See id.* at *2-3.

[7] In case after case, courts prohibit taking discovery from absent class members when the defendant fails to make the requisite showing of particularized need. *See*, *e.g.*, *In re Carbon Dioxide Indus. Antitrust Litig.*, 155 F.R.D. 209, 212 (M.D. Fla. 1993) (denying leave to take discovery of absent class members for failure to show "particularized need" for information that could not be obtained from class representatives); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02-cv-5893, 2005 WL 3801463, at *3 (N.D. Ill. Apr. 18, 2005) (denying discovery on unnamed plaintiff's investment history as irrelevant to class certification); *Garden City Employees' Ret. Sys. v. Psychiatric Sols., Inc.*, No. 09-cv-882, 2012 WL 4829802, at *4 (M.D. Tenn. Oct. 10, 2012) ("[d]iscovery of absent class members' investment history is not relevant" at class certification"); *In re Publication Paper Antitrust Litig.*, No. 04-cv-1631, 2005 U.S. Dist. LEXIS 13681, at *6-7 (D. Conn. Jul. 5, 2005) (barring discovery of unnamed class members absent a showing of particularized need); *In re Worlds of Wonder Sec. Litig.*, No. 87-cv-5491, 1992 U.S. Dist. LEXIS 10503, at *16-17 (N.D. Cal. Jul. 9, 1992) (granting plaintiffs' motion to quash

For example, KPMG attempts to rely on *In re Wellbutrin XL*, 268 F.R.D. 539, 543-44 (E.D. Pa. 2010) and *Dysthe v. Basic Research, L.L.C.*, 273 F.R.D. 625, 628-29 (C.D. Cal. 2011). Neither case is applicable. Both *In re Wellbutrin* and *Dysthe* involved plaintiffs who sought to *dismiss* an action pursuant to Rule 41, not substitution pursuant to Rules 15 and 21. *See* 268 F.R.D. at 543; 273 F.R.D. at 628. Further, in *Dysthe*, the Court found that the named plaintiff's testimony was "highly likely to be relevant to class certification issues[.]" 273 F.R.D. at 628. Here, as explained above, the proposed absent Class members' testimony has no bearing on class certification issues whatsoever.[8]

That KPMG insists on deposing the proposed absent Class members further highlights the weakness of their position. Courts only allow discovery of absent class members upon a strong showing of particularized need, and only when such discovery is **narrowly tailored** to the particularized need. *See Boynton v. Headwaters, Inc.*, No. 02-1111, 2009 WL 3103161, at *1-2 (W.D. Tenn. Jan. 30, 2009).[9] In *Boynton*, the court rejected a proposed discovery plan, which like

---

defendants' subpoena on absent class members because defendants failed to make a clear showing of necessity for "highly irregular discovery").

[8] *Colorado Cross-Disability Coalition v. Abercrombie & Fitch Co.*, No. 09-cv-02757, 2011 WL 5865059, at *2-3 (D. Colo Nov. 22, 2011) is similarly inopposite. In *Abercrombie*, the claims of the plaintiff seeking to withdraw and the newly proposed plaintiff were "not at all identical[,]" and there was "no suggestion that the deposition will take undue advantage of other putative class members or be unduly burdensome." *Id*. at *2. Here, the claims of Messrs. Montague and Ziesman are identical to those of Messrs. Martin and Weakley, and the depositions will both unduly disadvantage the Classes by forcing the parties to re-brief class certification and retake class certification related discovery, and be unduly burdensome to the Messrs. Martin and Weakley, who are withdrawing because they have work and familial conflicts that prevent them from being able to participate in discovery or represent the Classes.

[9] *See* Manual for Complex Litigation (Fourth) § 21.14 ("If precertification discovery of unnamed class members is appropriate, the court should consider imposing limits beyond those contemplated by the Federal Rules of Civil Procedure. Such limits might include the scope, subject matter, number, and time allowed for depositions, interrogatories, or other discovery directed to

here, included depositions, interrogatories, and requests for production from absent class members, when the defendant failed to demonstrate "any attempt to tailor the information it seeks, in spite of the fact that when courts have determined that discovery from unnamed class members is appropriate, it must be clear, concise, necessary and limited rather than burdensome." *Id.* at *2. The court explained that "the party seeking discovery of unnamed class members bears the burden of proof as to why the discovery is necessary. The burden is heavy to justify asking questions by interrogatories, even heavier to justify depositions." *Id.* at *1.[10] The court additionally concluded that the defendant had "failed to persuade the Court that the information sought is relevant to the decision of common questions rather than individual questions, and has failed to demonstrate that the information sought is not available from other sources." *Id.* at 2. So too here.

KPMG has not come close to meeting its burden of showing particularized need for discovery from the proposed absent Class members, much less that its discovery is narrowly targeted to a particularized need, especially where—as here—all discovery outside of class certification is stayed and class certification has been fully briefed.[11] In *Khaliel v. Norton*

---

class representatives or unnamed class members, and might limit the period for completing certification-related discovery.").

[10] *See also Garden* City, 2012 WL 4829802, at *3 ("Because of the intrusive nature of depositions, the burden confronting the party seeing deposition testimony should be more severe than that imposed on the party requesting permission to use interrogatories.")

[11] If discovery outside of class certification is lifted, certainly Plaintiffs and the Classes – who have been waiting three years for their day in court – should be entitled to fact discovery into KPMG's wrongdoing. Notably, just last week, the SEC settled claims against KPMG arising out of two separate, but related, schemes: (1) KPMG's theft of confidential regulatory information in order to cheat on audit inspections; and (2) KPMG's scheme to cheat on internal tests related to mandatory ethics, integrity and compliance training, including the sharing of answers with other partners and staff to help them attain passing scores and manipulating the exam system to lower the scores required to pass. As a result of the severity of these schemes, the SEC issued its largest penalty every against a public accounting firm. *See* KPMG Paying $50 Million Penalty for Illicit Use of PCAOB Data and Cheating on Training Exams, Securities and Exchange Commission

*Healthcare, Inc. Retirement Plan*, No. 08-cv-69, 2012 WL 6554714, *1 (W.D. Ky. 2012), the court was confronted with nearly identical circumstances; it observed that "the motion papers filed reveal little of the nature of the anticipated testimony of either proposed, unnamed class member." Noting the "stringent standard imposed on those who seek to depose unnamed class members," the court granted the plaintiffs' motion to quash subpoenas to force the testimony of unnamed class members. *Id.*

Accordingly, KPMG has not met its extraordinary burden of showing particularized need and narrowly tailored discovery before subjecting the proposed absent Class members to a full complement of burdensome discovery obligations. KPMG's attempt to condition withdrawal on such discovery is baseless and should be rejected.

## III.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion to substitute Eric Montague and Martin Ziesman, as Co-Trustee for the Carolyn K. Ziesman Revocable Trust, for Kenneth Martin and Martin Weakley, as named Plaintiffs in the above-captioned action, ECF No. 101.

---

Press Release (June 17, 2019), https://www.sec.gov/news/press-release/2019-95; Dave Michaels, *KPMG to Pay as Much as $50 Million to Settle SEC Probe*, Wall St. J. (June 13, 2019), https://www.wsj.com/articles/kpmg-to-pay-as-much-as-50-million-to-settle-sec-probe-11560474967 ("The fine would be one of the highest ever imposed on an auditor in a Securities and Exchange Commission action."). In its Order, the SEC noted the connection between those frauds and KPMG's role in the Miller Energy fraud. *See* Order of June 17, 2019, *In the Matter of KPMG LLP*, at 3, n. 4 (attached hereto as Ex. A) ("In August 2017, KPMG agreed to settle charges it engaged in improper professional conduct with respect to the audit of the financial statements of an oil and gas client and caused the company's reporting violations. As part of the settlement, the Commission ordered KPMG to ensure its audit staff complete specific training programs in various areas related to the Commission's findings in that proceeding. KPMG LLP and John Riordan, CPA, Exchange Act Release No. 81396 (Aug. 15, 2017).").

| | |
|---|---|
| Dated: June 28, 2019 | Respectfully submitted,<br><br>*/s/ Laura H. Posner* |
| Gordon Ball<br>GORDON BALL PLLC<br>550 W. Main Street<br>Suite 600<br>Knoxville, TN 37902<br>Tel: (865) 525-7029<br>Fax: (865) 525-4678<br>gball@gordonball.com<br>lkb@gordonball.com<br><br>*Lead Counsel for Plaintiffs* | Laura H. Posner<br>COHEN MILSTEIN SELLERS & TOLL PLLC<br>88 Pine Street, 14th Floor<br>New York, New York 10005<br>Tel: (212) 838-7797<br>Fax: (212)838-7745<br>lposner@cohenmisltein.com<br><br>Steven J. Toll<br>Allen Dreschel<br>COHEN MILSTEIN SELLERS & TOLL PLLC<br>1100 New York Ave NW, Suite 500<br>Washington, DC 20005<br>Tel: (202) 408-4600<br>Fax: (202) 408-4699<br>stoll@cohenmilstein.com<br>adreschel@cohenmisltein.com<br><br>*Co-Lead Counsel for Plaintiffs* |

## CERTIFICATE OF SERVICE

      I hereby certify that on June 28, 2019, I caused the foregoing to be filed using the Court's CM/ECF System, which in turn sent notice to counsel of record.

Dated: June 28, 2019                              */s/ Laura H. Posner*
                                                          Laura H. Posner