Laura H. Posner
(212) 220-2925
lposner@cohenmilstein.com

February 3, 2020

The Honorable Judge Varlan
The Honorable Magistrate Judge Poplin
United States District Court for the Eastern
District of Tennessee
800 Market Street, Suite 130
Knoxville, TN 37902

Re: *Cosby, et. al. v. KPMG LLP*, 3:16-cv-00121-TAV-DCP
**Notice of Supplemental Authority**

Dear Judge Varlan and Magistrate Judge Poplin:

We are Co-Lead Counsel in the above-captioned matter and write on behalf of Plaintiffs to notify the Court of a recent decision from Chief United States District Judge Waverly D. Crenshaw, Jr. in *Weiner, et al. v. Tivity Health, Inc.* ("*Tivity*"), *et al.*, 3:17-cv-01469 (M.D. Tenn. Jan. 29, 2020) (ECF No. 98) (attached hereto as Exhibit A) that is directly relevant to Plaintiffs' Corrected Motion to Certify the Classes, Appoint Class Representatives, and Appoint Class Counsel ("Class Certification Motion") (ECF No. 108-1) and Plaintiffs' Opposition to KPMG's Motion to Exclude the Reports and Testimony of Chad Coffman ("Plaintiffs' Opposition to KPMG's Motion to Exclude) (ECF No. 150). In *Tivity*, the Court certified the proposed class despite defendants' opposition on several grounds, including the adequacy of the proposed class representative and whether common questions predominate, as well as defendants' claim that the expert report of Chad Coffman (the same expert relied on by Plaintiffs here) was "flawed" and should not be credited. Given that KPMG makes nearly identical challenges to Plaintiffs' Class Certification Motion here, *Tivity* is directly on point.

First, Tivity argued that the lead plaintiff was not an adequate class representative because its stock purchases "after the alleged 'truth' of [Tivity's] 'fraud' was revealed" subjected it to "unique defenses." *Tivity*, at 5-6. The Court rejected this argument, concluding that "a proposed class representative 'is [not] as a matter of law categorically precluded from meeting the requirements of Rule 23(a) simply because of a post-disclosure purchase of the defendant company's stock.'" *Id*. at 6-7. Additionally, the Court rejected Tivity's authority purporting to support its position, finding that cases such as *Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131

(S.D.N.Y. 2007) (also relied upon by KPMG here) express views against "the weight of authority." *Id.* at 7 (internal citation omitted). For the same reasons, KPMG's argument that the proposed representatives here are atypical or subject to unique defenses because of the timing of stock purchases, should similarly be rejected. As Chief Judge Crenshaw affirmed, "courts routinely certify a class with representatives who purchase stock during and after a class period." *Id*. (internal citation omitted).

Second, Tivity argued that individual issues would predominate because certain class members might have known about the alleged fraud resulting in individual inquiries. *Id*. at 16. The Court rejected this argument, finding that Tivity "presented no proof that any investor knew, or likely would have known" about the alleged fraud prior to the corrective disclosures, and had instead only pointed to a "hodgepodge" of information that was "out there and publicly available." *Id*. at 18. For the same reasons, KPMG's nearly identical argument here is also meritless, particularly given that KPMG continued to assure investors throughout the Class Period that Miller Energy's financial statements were accurate and in accordance with Generally Accepted Accounting Principles.

Third, Tivity argued that individual issues would predominate because the lead plaintiff did not establish that Tivity common stock met *Cammer* Factor 5 (the cause-and-effect test). *Id.* at 12. While the Court examined the evidence submitted by the parties pursuant to the factors set forth in *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989), it made clear that the *Cammer* factors are "not a catechism for determining market efficiency" (*id*. at 13), and that there is no requirement that a plaintiff demonstrate that the security at issue meets *Cammer* Factor 5 in order to find market efficiency: "[n]ot even the *Cammer* court said that an event study was required to satisfy the fifth factor. . . . In fact, there generally 'is no reason to burden the court with a review of an event study and the opposing expert's attack of it,' unless 'defendants present evidence of lack of price impact or that the market was inefficient." *Id.* at 14-15 (internal citations omitted). Like the defendant in *Tivity*, KPMG neither presents evidence of lack of price impact nor that the market was inefficient, attempting instead to just unsuccessfully poke holes in Plaintiffs' expert's analysis.[1] Thus,

---

[1] Indeed, KPMG effectively concedes that the market for Miller Energy Common Stock was efficient, and that Miller Energy Series C and D meets many of the factors courts use to assess efficiency. *See* Pls.' Reply in Supp. of Mot. to Certify the Classes, Appoint Class Representatives, and Appoint Class Counsel ("Class Cert. Reply") (ECF No. 141) at 1-2, 4-7; Ex. B (attached hereto) (Exhibit 2 to Plaintiffs' December 10, 2019 hearing presentation).

KPMG's assertion here that individual issues will predominate because Plaintiffs purportedly did not satisfy *Cammer* Factor 5 is wrong.[2]

Notably, the lead plaintiff's expert in *Tivity,* Mr. Chad Coffman, CFA, is also Plaintiffs' expert here. Not only did Judge Crenshaw credit Mr. Coffman's expert testimony, but he found Tivity's criticisms of Mr. Coffman's event study and autocorrelation analysis "unpersuasive." *Id*. at 15. For example, Tivity argued that Coffman used an artificial time period in conducting his analyses in order to reach a predetermined result. *Id*. at 18. But, as the Court held in rejecting that argument, Tivity did not "adequately explain" why the time period Coffman used was wrong and failed to cite to any academic study or legal authority in support of its position. *Id*. at 18-19. KPMG's similar criticism that Mr. Coffman wrongly used a purportedly artificial time period in his event study and autocorrelation analysis of the Series C and Series D securities in order to get to a specific result – also without citing any academic studies or legal authority – likewise should be given no weight. Further, like Tivity's expert, KPMG's expert "could have submitted rebuttal evidence in the form of an affirmative event study" but did not do so. *Id.* at 19.[3]

Thus, like in *Tivity*, "analysis of the factors that are generally employed [in analyzing market efficiency] lead unerringly to the conclusion that [the Miller Energy Securities] traded in an efficient market, and did so during the proposed class period." *Id*. at 20-21.

---

[2] The Court found that the market for Tivity was efficient based on facts that, like in *Tivity*, are largely uncontested here, including that: (1) Tivity traded on a national exchange; (2) Tivity had a higher than average weekly trading volume; (3) Tivity was covered by analysts; (5) Tivity was eligible to file an S-3 registration statement; (6) Tivity's market capitalization was sufficiently high; (7) the bid-ask spread in Tivity's common stock was relatively low; (8) institutions owned Tivity common stock; and (9) there was sufficient option trading in Tivity common stock. *Compare Tivity* at 14-15 *with* Class Cert. Reply at 4-7. *See also* Ex. B.

[3] While true that Mr. Coffman's event study in *Tivity* demonstrated that Tivity's common stock reacted to earnings releases at a higher rate than the Miller Energy Securities, that finding was neither dispositive to the Court's holding that the market for Tivity common stock was efficient nor to Mr. Coffman's finding of market efficiency. *Id*. at 15, n. 4. Rather, what experts analyze and courts look at is the comparison between "news days" and "non-new days", which for both Tivity common stock and Miller Energy Securities are statistically significant at the 95% level. *See* Expert Report of Chad Coffman, CFA, July 1, 2019, *Tivity*, ECF No. 83-6, at Ex. 9; Corrected Expert Report of Chad Coffman, ECF No. 121 ("Coffman Rep."), at Exs. 8, 10, and 12. This is particularly true where, like here and for Tivity Common Stock, the average magnitude of stock price movement on earnings days was "higher than on no news days." Mem. Op., *Tivity*, at 15, n. 4; Coffman Rep. at Exs. 8, 10, 12.

Finally, Tivity, relying heavily on *Comcast Corp. v. Behrend,* 569 U.S. 27 (2013), argued that the lead plaintiff did not demonstrate it could meet the predominance requirement because damages could not be calculated on a class-wide basis pursuant to the out-of-pocket model proposed by Mr. Coffman. *Id*. at 21. The Court rejected this argument, finding that the "[u]se of the out-of-pocket damages model in securities case is hardly new or novel – it 'is the standard measurement of damages in Section 10(b) securities cases[,]'" and "*Comcast* did not change this, or render the model improper." *Id*. at 22 (internal citations omitted). Furthermore, the Court found that Tivity's specific criticisms of the out-of-pocket methodology, such as failing to "account for different investors' knowledge", were premature and even *Comcast* did not "suggest that damage calculations must be so precise at this juncture." *Id.* at 23. KPMG's criticism of Mr. Coffman's use of the same out-of-pocket damages model here and the fact that he did not account for different investors' risk tolerances in that model is similarly unpersuasive.[4]

Accordingly, for the foregoing reasons and those set forth in Plaintiffs' previously submitted briefs and supporting materials, the Court should consider Mr. Coffman's testimony and grant Plaintiffs' Motion for Class Certification.

Respectfully submitted,

*/s/ Laura H. Posner*

Laura H. Posner

Attachment

---

[4] The fact that the lead plaintiff did not allege a "materialization of the risk" theory of damages in *Tivity* is irrelevant. As explained in Plaintiffs' Class Cert. Reply and Plaintiffs' Opposition to KPMG's Motion to Exclude, "materialization of the risk" cases also regularly and properly employ the standard "out of pocket" methodology without accounting for investors' different risk tolerances. *See* Class Cert. Reply at 18-19.