# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## KNOXVILLE DIVISION

-------------------------------------------------------------X
:
LEWIS COSBY, KENNETH R. MARTIN, as : No. 3:16-cv-00121-TAV-DCP
beneficiary of the Kenneth Ray Martin Roth IRA, and :
MARTIN WEAKLEY on behalf of themselves and :
all others similarly situated, :
:
      Plaintiffs, :
:
    v. :
:
KPMG, LLP, :
:
      Defendant. :
-------------------------------------------------------------X

## RESPONSE TO OBJECTIONS OF KPMG LLP TO THE MEMORANDUM AND ORDER OF MAGISTRATE JUDGE DEBRA C. POPLIN ON DEFENDANT'S MOTION TO EXCLUDE THE REPORTS AND TESTIMONY OF CHAD COFFMAN

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

I.     STANDARD OF REVIEW ....................................................................................... 2

II.    COFFMAN'S MARKET EFFICIENCY OPINIONS ARE RELEVANT AND RELIABLE AND THERE IS NO BASIS FOR OVERTURNING MAGISTRATE JUDGE POPLIN'S ORDER DENYING THEIR EXCLUSION ....................................................................................................... 3

      A.    Magistrate Judge Poplin Correctly Found Coffman's Market Efficiency Methodology for Analyzing Miller Energy Common Stock Reliable ....................................................................................... 4

            1.    Magistrate Judge Poplin Correctly Found Coffman's Selection of News Days Reliable .................................... 6

            2.    Magistrate Judge Poplin Correctly Found Coffman's Use of the ICE WTI Oil Price Index is a Reliable Control ....................... 8

      B.    Magistrate Judge Poplin Correctly Found Coffman's Market Efficiency Methodology for Analyzing Miller Energy Preferred Stock Reliable ..................................................................................... 111

            1.    Magistrate Judge Poplin Correctly Found that Inclusion of Dividend Payments in the Computation of Returns Did Not Render Coffman's Analysis Unreliable ...................................... 11

            2.    Magistrate Judge Poplin Correctly Found That the Time Period and Events Analyzed in Coffman's Preferred Stock Event Study are Reliable ............................................................ 13

            3.    Magistrate Judge Poplin Correctly Found that Coffman's Autocorrelation Test is Reliable .................................. 14

      C.    Magistrate Judge Poplin Correctly Found Coffman's Methodologies for Calculating Damages are Reliable ..................................... 15

            1.    Magistrate Judge Poplin Correctly Found that Coffman's Methodology for Determining Section 11 Damages is Reliable ....................................................................................... 15

i

2. Magistrate Judge Poplin Correctly Found that Coffman's Methodology for Determining Section 10(b) Damages is Reliable ........................................................................................ 16

D. There is No Requirement that the Court Must Hold an Evidentiary Hearing ........................................................................................ 177

CONCLUSION ............................................................................................ 17

ii

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re ARIAD Pharm. Inc. Sec. Litig.*,
No. 13-cv-12544 (D. Ma. Jan. 19, 2018), ECF No. 245 ...........................................................6

*In re Barrick Gold Sec. Litig.*,
314 F.R.D. 91 (S.D.N.Y. 2016) .............................................................................................16

*Bisig v. Time Warner Cable, Inc.*,
940 F.3d 205 (6th Cir. 2019) ..................................................................................................3

*Brooks v. Invista (Koch Indus.)*,
528 F. Supp. 2d 785 (E.D. Tenn. 2007).................................................................................3

*Buck v. Ford Motor Co*,
810 F. Supp. 2d 815 (N.D. Ohio 2011)...................................................................................4

*Cammer v. Bloom*,
711 F. Supp. 1264 (D.N.J. 1989) ..............................................................................4, 11, 14

*Clabo v. Johnson & Johnson Health Care Sys., Inc.*,
No. 3:19-cv-154, 2020 WL 60244 (E.D. Tenn. Jan. 6, 2020) ..................................................3

*Clay v. Ford Motor Co.*,
215 F.3d 663 (6th Cir. 2000) ................................................................................................17

*In re Countrywide Fin. Corp. Sec. Litig.*,
273 F.R.D. 586 (C.D. Cal. 2009) ..........................................................................................14

*Daubert v. Merrell Dow Pharma., Inc.*,
509 U.S. 579 (1993)..........................................................................................................4, 12

*Devereux v. Knox Cty., Tenn.*,
No. 3:17-cv-197, 2019 WL 4865192 (E.D. Tenn. June 17, 2019) ..........................................8

*EEOC v. City of Long Branch*,
866 F.3d 93 (3d. Cir. 2017)....................................................................................................3

*In re Enron Corp. Sec.*,
529 F.Supp. 2d 644 (S.D. Tex. 2006) ...................................................................................14

*Equal Empt. Opportunity Comm'n. v. Dolgencorp, LLC*,
277 F. Supp. 3d 932 (E.D. Tenn. 2017) (Varlan, J.)........................................................3, 11

iii

*Forsta AP-Fonden v. St. Jude Med., Inc.*,
    312 F.R.D. 511 ......................................................................................................5

*Hagaman v. Comm'r of Internal Revenue*,
    958 F.2d 684 (6th Cir. 1992) ..............................................................................3

*In re HealthSouth Corp. Sec. Litig.*,
    261 F.R.D. 616 (N.D. Ala. 2009).........................................................................14

*Hemmings v. Tidyman's, Inc.*,
    285 F.3d 1174 (9th Cir. 2002) ............................................................................12

*Johnson v. Manitowoc Boom Trucks, Inc.*,
    484 F.3d 426 (6th Cir. 2007) ........................................................................2, 7, 8

*Krogman v. Sterritt*,
    202 F.R.D. 467 (N.D. Tex. 2001) ...................................................................4, 11

*Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery*,
    179 F.R.D. 450 (D.N.J. 1998)...............................................................................5

*Ludlow v. BP, P.L.C.*,
    800 F.3d 674 (5th Cir. 2015) ..............................................................................16

*McIntire v. China MediaExpress Holdings, Inc.*,
    38 F. Supp. 3d 415 (S.D.N.Y. 2014).....................................................................5

*Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*,
    278 F.R.D. 454 (D. Minn. 2011)...........................................................................5

*In re Northfield Labs., Inc. Sec. Litig.*,
    26,7 F.R.D. 536 (N.D. Ill. 2010)...........................................................................5

*Potter v. Colvin*,
    No. 3:12–cv–202, 2013 WL 4857731 (E.D. Tenn. Sept. 11, 2013) (Varlan, J.) ......................6

*Rowe v. Marietta*,
    172 F.3d 49 (6th Cir. 1999) ................................................................................16

*In re Schering-Plough Corp./ENHANCE Sec. Litig.*,
    No. 08-cv-397, 2012 WL 4482032 (D.N.J. Sept. 25, 2012)..................................6

*In re Scrap Metal Antitrust Litig.*,
    527 F.3d 517 (6th Cir. 2008) .................................................................7, 8, 10, 12

*Stuckey v. Online Res. Corp.*,
    No. 2:08-cv-1188, 2012 WL 1808943 (S.D. Ohio May 17, 2012)..........................9

*Teamsters Local 445 Freight Div. Pension Fund v. Bombadier, Inc.*,
546 F.3d 196 (2d Cir. 2008)...................................................................................14

*Toyota Motor Corp. Sec. Litig.*,
No. 10-cv-922 (C.D. Cal. Jan. 3, 2013), ECF. No. 311 ............................................6

*Trollinger v. Tyson Foods, Inc.*,
No. 4:02-CV-23, 2008 WL 305032 (E.D. Tenn. Jan. 31, 2008) ............................12

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
No. 15-cv-1249, 2017 WL 2062985 (S.D.N.Y. May 15, 2017) ................................5

*Walter v. Auto-Owners Mut. Ins. Co*.,
No. 3:15-cv-535-TAV-DCP, 2018 WL 4102244 (E.D. Tenn. Aug. 28, 2018) ........3

*Weiner v. Tivity Health, Inc.*,
334 F.R.D. 123 (M.D. Tenn. Jan. 29, 2020), affirmed on appeal, *In re Tivity
Health, Inc.*, No. 20-0501, 2020 WL 4218743 (6th Cir. Jul. 23, 2020)....................1

# <u>INTRODUCTION</u>

KPMG's objections to Magistrate Judge Debra C. Poplin's Memorandum and Order issued on June 29, 2020, (ECF No. 171) ("Daubert Order") are nothing more than a regurgitation of precisely the same failed arguments it previously advanced in its original motion to exclude, just repackaged in a different pleading (the "Objections"). The Objections do not raise any new facts or legal theories, nor provide any basis for overturning Magistrate Judge Poplin's well-reasoned 64-page Memorandum and Order. KPMG does not and cannot demonstrate that the Daubert Order was clearly erroneous or contrary to law, and its arguments amount to nothing more than disagreement with the Court's well-founded findings. As such, the Objections have no merit and should be summarily dismissed.

Additionally, KPMG's misguided Objections arise from its continued failure to grasp the fundamental purpose of a motion to exclude expert testimony. KPMG conflates the concepts of challenging an expert's methodology with a disagreement with the ultimate conclusions reached. The former is an appropriate basis for a motion to exclude and the latter – the sole basis of KPMG's motion and objections – is not.

Plaintiffs' expert, Chad Coffman, CFA, has over 25 years of experience conducting efficiency and damages analyses in securities fraud litigation, like the present case, and courts routinely accept his testimony and opinions as reliable, including most recently Chief Judge Waverly D. Crenshaw in *Weiner v. Tivity Health, Inc.*, 334 F.R.D. 123 (M.D. Tenn. Jan. 29, 2020), affirmed on appeal, *In re Tivity Health, Inc.*, No. 20-0501, 2020 WL 4218743 (6th Cir. Jul. 23, 2020).[1] The market efficiency and damages methodologies he employs have been utilized by

---

[1] KPMG's assertion that Coffman's methodology was devised solely for *litigation* ignores the work of experts in nearly every securities case litigated over the past 20 years based upon the same

experts and credited by courts around the country for many years.  Indeed, KPMG and its purported expert do not seriously challenge the vast majority of Coffman's conclusions, and do not argue with the methodology itself, but rather certain aspects of the data used in the analysis.  Not able to present any legitimate fact or argument that demonstrates that Coffman's opinions do not meet the requirements for admissibility, KPMG resorts to disguising disagreement with the results reached and attacks on the merits of class certification as a motion to exclude Coffman's expert testimony. The underlying Motion to Exclude the Reports and Testimony of Chad Coffman, and supporting memorandum, (ECF Nos. 126 and 127) lacked merit, as does the effort to overturn Magistrate Judge Poplin's thorough and well-reasoned Daubert Order denying KPMG's motion. Accordingly, the Objections of KPMG LLP to the Memorandum and Order of Magistrate Judge Debra C. Poplin on Defendant's Motion to Exclude the Reports and Testimony of Chad Coffman ("Objections") (ECF No. 179) should be denied.

## ARGUMENT

### I.      STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a), a district court should only "modify or set aside" a Magistrate Judge's non-dispositive pretrial order if it is "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  "This standard requires the District Court to review findings of fact for clear error and to review matters of law

---

type of market efficiency analysis performed here.  Tellingly, KPMG does not cite to a single instance where a court subjected this type of testimony to any further scrutiny then what is regularly required pursuant to Federal Rule of Evidence 702.  Moreover, KPMG ignores the Sixth Circuit standard cited by Magistrate Judge Poplin which sets forth that heightened scrutiny applies only when the expert does not have familiarity with the subject about which he or she is offering an opinion.  Daubert Order at 49-50 (citing *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 434 (6th Cir. 2007).  Here, the Court reviewed Coffman's background and experience and correctly concluded – like every other court before it – that his report flows naturally from his background, experience and line of work.  *Id*.

2

de novo." *Bisig v. Time Warner Cable, Inc.,* 940 F.3d 205, 219 (6th Cir. 2019) (quoting *EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d. Cir. 2017)). "A finding of fact is 'clearly erroneous' when the reviewing court is 'left with the definite and firm conviction that a mistake has been committed.'" *Clabo v. Johnson & Johnson Health Care Sys., Inc.,* No. 3:19-cv-154, 2020 WL 60244, at *2 (E.D. Tenn. Jan. 6, 2020) (quoting *Hagaman v. Comm'r of Internal Revenue*, 958 F.2d 684, 690 (6th Cir. 1992)). "A decision is contrary to law 'if the magistrate has misinterpreted or misapplied applicable law.'" *Walter v. Auto-Owners Mut. Ins. Co.*, No. 3:15-cv-535-TAV-DCP, 2018 WL 4102244, at *1 (E.D. Tenn. Aug. 28, 2018) (Varlan J.) (citation omitted).

Additionally, "[a]n objection that does nothing more than disagree with a magistrate judge's findings, 'without explaining the source of the error' is not considered a valid objection." *Equal Empt. Opportunity Comm'n. v. Dolgencorp, LLC*, 277 F. Supp. 3d 932, 965 (E.D. Tenn. 2017) (Varlan, J.). Without specific objections, "[t]he functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrate's Act." *Brooks v. Invista (Koch Indus.)*, 528 F. Supp. 2d 785, 788 (E.D. Tenn. 2007).

## II.   COFFMAN'S MARKET EFFICIENCY OPINIONS ARE RELEVANT AND RELIABLE AND THERE IS NO BASIS FOR OVERTURNING MAGISTRATE JUDGE POPLIN'S ORDER DENYING THEIR EXCLUSION

In support of Plaintiffs' Motion for Class Certification, Plaintiffs previously submitted to the Court the Corrected Expert Report of Chad Coffman, CFA ("Rep."), ECF No. 121, and the Expert Rebuttal Report of Chad Coffman, CFA ("Rebuttal Rep."), ECF No. 142-1.[2] In these

---

[2] Rather than file these documents with the Court a second time, Plaintiffs refer to the reports as previously filed with the Court by referencing the ECF filing numbers.

3

reports, Coffman examined each of the many factors set forth in *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989) and in *Krogman v. Sterritt*, 202 F.R.D. 467 (N.D. Tex. 2001), to assess the efficiency of the markets for Miller Energy Securities and determined that they were efficient. *See generally* Rep; Rebuttal Rep. KPMG's only criticism of Coffman's extensive work and reports relates to the cause-and-effect analysis he conducted pursuant to just one of the numerous factors - *Cammer* factor 5. As such, even if that portion of Coffman's analysis were excluded - which it should not be - Coffman's undisputed conclusions regarding the remainder of the *Cammer* and *Krogman* factors support a finding that Miller Energy's securities were efficient during the Class Period. Further, as demonstrated by its initial motion papers and in the Objections, KPMG does not actually challenge the reliability of Coffman's cause-and-effect analysis under *Cammer* factor 5, but rather improperly attacks the ultimate conclusions he reached. KPMG further fails to establish that any portion of the Daubert Order is factually clearly erroneous or contrary to the law as it must in order to establish that it must be overturned.

A. **Magistrate Judge Poplin Correctly Found Coffman's Market Efficiency Methodology for Analyzing Miller Energy Common Stock Reliable**

With respect to Coffman's analysis of Miller Energy Common Stock, KPMG argues that Coffman's opinion is not reliable and should be excluded because he did not find that at least 50 percent of the earnings announcements had a statistically significant common stock price reaction when conducting his cause-and-effect test. Objections at 8. KPMG clearly mistakes the purpose of a challenge pursuant to *Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579 (1993). As Magistrate Judge Poplin noted, "[t]he important thing is not that experts reach the right *conclusion, but that they reach it via a sound methodology*." Daubert Order at 27 (citing *Buck v. Ford Motor Co*, 810 F. Supp. 2d 815, 831 (N.D. Ohio 2011)). KPMG argues that a few courts have **rejected** expert opinions that market efficiency had been established when the percentages of statistically

significant price movements were similar to the present case. However, the rejection of an opinion on its merit is not the same as excluding expert testimony due to a flaw in the method by which the work was conducted. Indeed, after a review of all of the materials submitted by the experts and the legal briefs, Magistrate Judge Poplin gave credence to Coffman's work and methodology and concluded, "a disagreement with the expert's conclusion is not grounds for exclusion." Daubert Order at 26. Thus, KPMG has not provided any support for overturning this ruling.

Even if couched in terms of attacking Coffman's methodology, KPMG's arguments fail. There is no requirement that at least 50 percent of earnings releases must result in a statistically significant price movement in order to demonstrate that a market is efficient. *See, e.g.*, *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 430 (S.D.N.Y. 2014) (rejecting argument that a finding of market efficiency can only occur when there is a stock price reaction to news events at least 50 percent of the time); *Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*, 278 F.R.D. 454 (D. Minn. 2011).[3] Indeed, numerous courts have certified cases securities cases despite not reaching this made-up threshold. *See, e.g.*, *Forsta AP-Fonden v. St. Jude Med., Inc.*, 312 F.R.D. 511, 521-22 (36.4% of dates statistically significant; class certified); *In re Virtus*

---

[3] KPMG also asserts that Magistrate Judge Poplin incorrectly concluded that Coffman's methodology controlled for market reactions caused by non-Miller Securities related events and disclosures. Objections at 11. Magistrate Judge Poplin credited Coffman's testimony that he performed the controls he believed were necessary and appropriate and that the control KPMG was suggesting was not economically appropriate. Daubert Order at 40-41. KPMG provides nothing to refute Coffman's testimony and blankly claims Magistrate Judge Poplin was wrong and Coffman's opinion is unsupported. Moreover, KPMG's purported legal support for the notion that Coffman failed to control for confounding events is inapposite. *In re Northfield Labs., Inc. Sec. Litig.*, 26,7 F.R.D. 536, 548-49 (N.D. Ill. 2010) discusses the propriety of the use of dummy variables in a market efficiency study which is not at issue here. Likewise, *Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery*, 179 F.R.D. 450, 460 (D.N.J. 1998) is not even a securities fraud case and the expert testimony in question related to the length of a customer and distributor relationship which has no bearing on the present issues.

5

*Inv. Partners, Inc. Sec. Litig.*, No. 15-cv-1249, 2017 WL 2062985 (S.D.N.Y. May 15, 2017) (30% of dates statistically significant; class certified); *In re Schering-Plough Corp./ENHANCE Sec. Litig.*, No. 08-cv-397, 2012 WL 4482032 (D.N.J. Sept. 25, 2012) (21% of dates statistically significant; class certified).[4]   Moreover, this argument relies on the same facts and same purported legal support that Magistrate Judge Poplin already reviewed and rejected.  KPMG merely disagrees with the Court's conclusion and fails to elucidate any way in which Magistrate Judge Poplin's findings were clearly erroneous, as it must, in order to overturn the findings of fact.  Therefore, KPMG's objections must be rejected. *Potter v. Colvin*, No. 3:12–cv–202, 2013 WL 4857731, at *1-2 (E.D. Tenn. Sept. 11, 2013) (Varlan, J.) (when objections merely restate arguments "previously addressed by the magistrate judge, the Court may deem the objections waived.").

1.    Magistrate Judge Poplin Correctly Found Coffman's Selection of News Days Reliable

KPMG again complains that Coffman's use of certain databases and websites for identifying news days caused his entire event study methodology to be unreliable because it caused him to mis-identify certain dates and times of news relating to Miller Energy entering the market. Objections at 10.   First, these arguments pertain to Coffman's original report which was superseded by his Corrected Report and are, therefore, completely irrelevant to the testimony and opinions presented in support of Plaintiffs' Motion for Class Certification.  Second, substitution of the information used neither altered Coffman's methodology nor impacted Coffman's ultimate conclusions or opinions in any way.   Such clerical or data entry errors do not amount to a flaw in

[44] *See also* Preliminary Order For Notice and Hearing in Connection with Settlement Proceedings, *In re ARIAD Pharm. Inc. Sec. Litig.*, No. 13-cv-12544 (D. Ma. Jan. 19, 2018), ECF No. 245 (20% of dates statistically significant; certified for settlement purposes); Order Preliminarily Approving Settlement, Certifying Class, Providing Notice and Scheduling Settlement Hearing, *Toyota Motor Corp. Sec. Litig.*, No. 10-cv-922 (C.D. Cal. Jan. 3, 2013), ECF. No. 311 (10.9% statistically significant; certified for settlement purposes).

6

the methodology or form a basis for excluding expert testimony. As Magistrate Judge Poplin noted, the Sixth Circuit has ruled "that an error in the data or missing data go to the weight of the opinion and not to its admissibility." Daubert Order at 53 (citing *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008)). Moreover, Magistrate Judge Poplin reviewed both Coffman's Corrected Report and Rebuttal Report and credited his explanation that the issues with the data were not errors "in the general methodology [] employed to analyze market efficiency," that the errors were readily admitted and corrected, that the Corrected Report "empirically demonstrated that [the] ultimate conclusions and opinions were unaffected by the errors," and that his "overall methodology was unaltered." Daubert Order at 39 (quoting Rebuttal Rep. at ¶ 2). Thus, KPMG's claim that Magistrate Judge Poplin did not offer an explanation for why its arguments "were not well taken" is belied by the record.

Further, KPMG again misconstrues the requirements for excluding expert testimony and misrepresents its purported support for its arguments. There is a difference between a flaw in methodology and an error in the application of a methodology. KPMG urges that "a high known or potential rate of error" in an expert's methodology requires exclusion. Objections at 10 (quoting *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 429 (6th Cir. 2007)). Yet KPMG fails to identify any error in the actual event study methodology and focuses solely on the data Coffman used. *Id*. Coffman admitted to the errors and explained why the faulty data did not amount to errors in the methodology as well as how the changed data did not affect any of his conclusions. Daubert Order at 39. Moreover, even if the Court follows KPMG's nonsensical argument and considers Coffman's source of news events as the methodology itself, KPMG provides no support for the notion that news from the Factiva database or the SEC's EDGAR website – the sources of Coffman's "news" days data – are known to be or have a high potential for being inaccurate or

unreliable. To the contrary; they are regularly used by experts conducting events studies in securities cases and credited by courts. Thus, the "methodology" would stand as sufficient. Additionally, contrary to KPMG's assertion, the Court in *Johnson* examined only whether the expert's opinions had been tested, whether the expert's opinions had been subject to peer review, and the extent to which the expert's theory had gained general acceptance in his peer community. *Johnson*, 484 F.3d at 430. None of those issues are at issue here.

Finally, KPMG fails to provide any evidence – as it must – that Coffman's methodology rests upon speculation rather than a strong foundation to support exclusion of Coffman's testimony (*see In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529-530), and KPMG's reliance on *Devereux v. Knox Cty., Tenn.*, No. 3:17-cv-197, 2019 WL 4865192 (E.D. Tenn. June 17, 2019) on this issue falls flat. In *Devereux*, plaintiff's medical expert opined regarding the timing of the plaintiff's stroke which relied upon the expert's opinion of the timing of the performance of plaintiff's CT scan. *Id.* at *12. The Court excluded the expert's testimony based on its finding that the expert's timing opinion did not comport with the undisputed evidence provided by defendants of the actual timing of the CT scan and, therefore, the expert's opinion on this issue was unreliable. *Id.* Here, KPMG cannot provide the same type of uncontested evidence and has not provided any evidence that refutes the reliability of Coffman's methodology or opinion.

> 2. <u>Magistrate Judge Poplin Correctly Found Coffman's Use of the ICE WTI Oil Price Index is a Reliable Control</u>

KPMG also asserts that Coffman's inadvertent use of one oil index (the ICE WTI Light Sweet Crude Oil Futures Index ("ICE Oil Index")) for another (the NYMEX WTI Light Sweet Crude Oil Futures Index ("NYMEX Oil Index")) as a control in his study renders his methodology unreliable. Objections at 12 - 13. This argument was also correctly rejected by Magistrate Judge Poplin, and KPMG asserts no new facts or legal support which demonstrate the Court's analysis

was clearly erroneous. Again, KPMG misconstrues, at best, a clerical, irrelevant error with no substantive impact on the testing results, with a flaw in the methodology used and analysis conducted. At no time does KPMG argue that using an oil price index as a control in the event study is incorrect or unreliable. Nor does KPMG argue that the NYMEX Oil Futures Index was the only reliable index that could be used. In fact, KPMG does not even argue that Coffman's methodology changes with the use of one index in place of the other. Rather, KPMG urges the Court to discard the entirety of Coffman's opinion because the inadvertent substitution of one substantively identical index control for another changed a series of numbers in the report. Coffman has explained that the substitution of one index for the other had no impact on the method by which he conducted his analysis or on the conclusions reached and that either index was methodologically sound and appropriate to use in this context. Thus, KPMG's claim that Coffman "did not properly apply the methodology he claimed was appropriate" (Objections at 14) is nonsensical.

Moreover, the Court reviewed all of the reports and testimony and found that because both the ICE Oil Index and the NYMEX Oil Index "trace the same underlying commodity," "are both constructed using reference prices for short term futures contracts covering the same commodity," have highly consistent prices and "simply use different exchanges to track the futures price," and that there is no evidence that use of one index over the other in the event study renders it unreliable. Daubert Order at 44. *See also*, *Stuckey v. Online Res. Corp.*, No. 2:08-cv-1188, 2012 WL 1808943, at *6 (S.D. Ohio May 17, 2012) (challenging the data input into a formula is not a proper ground for exclusion of expert testimony). The Court further pointed out that KPMG can, and did, cross examine Coffman on this point. Daubert Order at 44. KPMG has, therefore, failed to demonstrate any basis upon which to exclude Coffman's opinion or overrule the Daubert Order.

9

KPMG's related argument that Coffman purportedly incorrectly calculated returns for some dates in his event study is equally unavailing. Objections at 14. KPMG argues that Coffman was **required** to identify the futures contract on any given day and calculate the percentage change in price of that same futures contract in order to correctly calculate the return on the oil price index. *Id*. On this issue, the experts disagree as to the proper process and nothing more. KPMG has not provided any authority for its assertion that its expert's method is correct or that Coffman's method is wrong. Nor has KPMG countered Coffman's assertion in his Rebuttal Report that even if he had used Dr. Attari's proposed method for calculating the returns, it would not have impacted his conclusion. *See* Rebuttal Rep. at ¶ 43. Indeed, the Court reviewed the reports of both experts and noted that Dr. Attari's criticisms relate to the data for 55 out of 1,106 days used in Coffman's calculations and that even if this data was "wrong" it is not a basis for excluding the opinion. Daubert Order at 47-48 (citing *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530 and its progeny). The Court also noted that KPMG has not even asserted what the impact is if the numbers in Coffman's backup materials would have to change upon conducting his calculations according to Dr. Attari's method, and that a change in the data alone does not render the methodology or the opinion unreliable. Daubert Order at 49 ("The issue for Defendant, however, is that it insists that Coffman's methodology is wrong and points to incorrectly computed returns, but Defendant does not argue that such alleged incorrections produce inconsistent results."). For this reason, among others, Magistrate Judge Poplin determined that KPMG's failure to demonstrate that there was any "significant methodological error" in Coffman's report did not support exclusion of his opinion. Daubert Order at 47-49. Contrary to KPMG's assertion, the Court is not shifting the burden on the motion to exclude, but rather stating that Plaintiff sufficiently rebutted KPMG's arguments that the methodology was unreliable and without more, KPMG's objection fails.

**B.**     **Magistrate Judge Poplin Correctly Found Coffman's Market Efficiency Methodology for Analyzing Miller Energy Preferred Stock Reliable**

Coffman also performed an event study with respect to the Preferred Securities which followed the same well-accepted methodology he utilized with respect to the Common Stock, but with appropriate adjustments to account for the differences in how preferred securities operate differently from common stock. KPMG does not assert that utilizing this overall methodology was incorrect in any way, but rather argues with the data used and the results reached.[5] These are improper bases for a motion to exclude expert testimony in the first instance. Moreover, its objections fail to establish any new facts or arguments in support of overturning Magistrate Judge Poplin's Order and merely blankly assert that the Court was incorrect in its conclusions. These arguments must be rejected and the objections overruled. *Dolgencorp, LLC*, 277 F. Supp. 3d at 965.

1.     <u>Magistrate Judge Poplin Correctly Found that Inclusion of Dividend Payments in the Computation of Returns Did Not Render Coffman's Analysis Unreliable</u>

KPMG argues that Coffman's error in calculating the returns on the Preferred Stock renders his methodology unreliable and argues that Magistrate Judge Poplin's conclusion to the contrary was incorrect. Objections at 17-18. KPMG ignores, however, that in response to KPMG's criticism, Coffman acknowledged the error of inadvertently including dividend payments in his computations; and established with conclusive evidence – uncontroverted by KPMG and Dr. Attari – that this ministerial error had only a negligible effect on the data output and did not change his

---

[5] KPMG reasserts its argument that the earnings releases were not followed by a change in stock price at least 50% of the time as a basis for excluding Coffman's opinion. Not only is there no legal support for this argument as discussed above in § II.A., but it also ignores the significant evidence Coffman presented regarding all of the other market-efficiency *Cammer* and *Krogman* factors. Rep. at ¶¶ 35, 84, and 90; Rebuttal Rep. at ¶¶ 29, n.64, 33, and 35.

ultimate conclusion. KPMG's and Dr. Attari's failure to set forth any evidence to contradict Coffman's statement that the conclusions were unaffected by the error establishes that it is not actually the methodology with which KPMG disagrees, but rather the result reached. Indeed, KPMG's entire objection references the data and the changes in calculations that result when the data is modified. This is the same "garbage in, garbage out" argument rejected by the Sixth Circuit. *In re Scrap Metal*, 527 F.3d at 529.

As Magistrate Judge Poplin correctly noted, this argument is not about the methodology used, but that certain numbers were not computed using the correct data input which "fundamentally confuses the credibility and accuracy of [the expert's] opinion with its reliability." Daubert Order at 53. *See also Hemmings v. Tidyman's, Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002) (defendant seeking to exclude expert cannot rely on "unsubstantiated assertions[s] of error. Rather, the defendant must produce credible evidence that curing the alleged flaws would also cure the statistical disparity."); *id.* ("[A] defendant challenging the validity of a multiple regression analysis [must] make a showing that the factors it contends ought to have been included would weaken the showing . . . made by the analysis.") (alterations in original). Thus, requiring KPMG to demonstrate how Coffman's data errors render the methodology unreliable (which, despite KPMG's assertion to the contrary, it has not done) before excluding his opinion is not shifting the burden under *Daubert*, but rather appropriately requiring something more than the Defendant simply stating that the Plaintiffs' expert is wrong. Moreover, as Magistrate Judge Poplin concluded, KPMG had the opportunity to cross-examine Coffman twice relating to his work on this issue and will have the ability to cross-examine him again and present its own evidence to refute his opinions at trial. Daubert Order at 54 (citing *Trollinger v. Tyson Foods, Inc.*, No. 4:02-CV-23, 2008 WL 305032, at *10 (E.D. Tenn. Jan. 31, 2008) ("defendants' 'opportunity to argue

12

how and to what extent [the expert's] analysis and conclusions are incorrect is provided through cross-examination and the presentation of their own expert and evidence at trial'").

2.    Magistrate Judge Poplin Correctly Found That the Time Period and Events Analyzed in Coffman's Preferred Stock Event Study are Reliable

KPMG next argues that Coffman's event study for the Preferred Securities followed a non-standard practice and Magistrate Judge Poplin was incorrect to conclude that his methodology was reliable. KPMG, however, has not supplied the Court with academic research, caselaw or any other basis to support its claim that Coffman's method was "non-standard," inappropriate or unreliable. KPMG blankly claims that the time period Coffman used in conducting his Preferred Stock event study is without legitimate basis, but fails to provide any rebuttal to the well-accepted economic rationale behind why Coffman conducted his analysis in the manner chosen.

Coffman determined the news events to test by reference to clearly identified and objective criteria that follow naturally from the differences in preferred and common stocks and the type of news that would be expected to affect each. Rep. ¶¶ 74-75; Rebuttal Rep. ¶ 11-12. Coffman's criteria were "firm-specific events that clearly updated the market regarding the ability of the Company to continue paying dividends or for the securities to continue trading on the exchange." Rep. ¶ 52; Rebuttal Rep. ¶ 15. KPMG claims these are not legitimate factors, but fails to provide support for how this method is "unsupported by basic economics" or varies from "accepted statistical methodology." Objections at 20. Magistrate Judge Poplin reviewed KPMG's argument that rather than follow the undescribed "accepted methodology," Coffman actually chose certain news events to include in his event study in order to produce biased results in Plaintiff's favor. With no proof in support, Magistrate Judge Poplin rejected this argument. Daubert Order at 31. The Court's thorough review of the record and reasoned conclusion should not be overturned simply because KPMG is unhappy with the result.

13

Further, KPMG's assertion that Plaintiffs did not provide any support for using a different approach for the event studies of preferred securities than that used for common stock is absurd. As Plaintiffs previously argued, and as Coffman explained in his reports, economic scholarship and numerous cases make clear that modifying the *Cammer* factors, including event studies, for securities with debt like components, like the Preferred Securities here, is entirely appropriate. Rep. ¶¶ 68-78; Rebuttal Rep. ¶¶ 11-13. *See also Teamsters Local 445 Freight Div. Pension Fund v. Bombadier, Inc.*, 546 F.3d 196, 204 fn. 11 (2d Cir. 2008) (applying the *Cammer* factors in modified form "to bond markets with a recognition of the differences between the manner in which debt bonds and equity securities trade."); *In re Enron Corp. Sec.*, 529 F.Supp. 2d 644, 747-49 (S.D. Tex. 2006) (applying the *Cammer* factors in modified form to debt securities); *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 615 (C.D. Cal. 2009) (modifying the *Cammer* factors to account for the unique attributes of stocks and bonds); *In re HealthSouth Corp. Sec. Litig.*, 261 F.R.D. 616, 635-36 (N.D. Ala. 2009) (same).

3.   Magistrate Judge Poplin Correctly Found that Coffman's Autocorrelation Test is Reliable

KPMG's claim that Magistrate Judge Poplin did not appropriately consider Coffman's autocorrelation analysis (Objections at 21) is flat wrong.  The Daubert Order makes clear that Magistrate Judge Poplin reviewed Coffman's reports, KPMG and Dr. Attari's criticism of those reports and Coffman's response to those criticisms, as well as the deposition testimony on the issue in reaching the decision that Coffman's autocorrelation analysis was reliable.  *See generally*, Daubert Order at 56-60.

KPMG's specific criticism is that Coffman's test was purportedly too simple and could not support his conclusion.  KPMG ignores that not only have numerous courts recognized the validity of the autocorrelation methodology Coffman employed, but its own expert, Attari, relied on the

14

same method when testifying in another matter. *See* Rebuttal Rep. at ¶ 23, n.50. Moreover, as Magistrate Judge Poplin noted, KPMG "cites no authority that autocorrelation must be tested as Dr. Attari has proposed." Daubert Order at 59. As such, the Court correctly found no basis upon which to exclude Coffman's opinion. *Id.* The Court further noted, that KPMG's real challenge – whether Coffman's opinion ultimately established market efficiency – was not an appropriate basis for a motion to exclude expert testimony, but rather was a merits based argument that "is an issue for this Court in determining whether the Basic presumption applies during class certification*." Id.* KPMG's disagreement with this conclusion is not an adequate reason to overrule the decision.

C. **Magistrate Judge Poplin Correctly Found Coffman's Methodologies for Calculating Damages are Reliable**

1. Magistrate Judge Poplin Correctly Found that Coffman's Methodology for Determining Section 11 Damages is Reliable

Defendant asserts that Magistrate Judge Poplin wrongly concluded that Coffman's Section 11 damages methodology is reliable, but offers no additional argument or evidence in support of its attempt to overturn the Court's ruling. Objections at 22-23. In fact, KPMG's own words reveal the impropriety of both the objection and the underlying attempt to exclude Coffman's testimony. Specifically, it states, "KPMG did not argue that reliance on the statutory formula makes [Coffman's] opinion unreliable," and goes on to state its position is actually that "there is no way to calculate any investor's potential damages even under the statutory formula." Objections at 23. This circular reasoning makes clear that their argument does not provide an appropriate basis to exclude Coffman's testimony. Indeed, the exact same statutory methodology is used and accepted by courts in every Section 11 case that has ever been certified. It is also clear that Magistrate Judge Poplin was correct to rule that, "[d]efendant's criticism is better suited in determining whether the Section 11 Class should be certified." Daubert Order at 61.

2. <u>Magistrate Judge Poplin Correctly Found that Coffman's Methodology for Determining Section 10(b) Damages is Reliable</u>

KPMG also asserts that Magistrate Judge Poplin's conclusion affirming the reliability of Coffman's methodology for ascertaining Section 10(b) damages was wrong. Again, KPMG fails to provide any additional fact, law or reason for overturning Magistrate Judge Poplin's Daubert Order. It ignores that Coffman's method to calculate Section 10(b) damages is well-established and accepted, and instead merely argues that Coffman's "proposed methodology is not capable of distinguishing between high-and low-risk investors," without providing any authority that such a distinction is required. Objections at 23. As Magistrate Judge Poplin aptly noted, "[C]offman's method to calculate Section 10(b) damages has been approved in a number of cases." Daubert Order at 64 (citing *In re Barrick Gold Sec. Litig.,* 314 F.R.D. 91, 105 (S.D.N.Y. 2016); *Rowe v. Marietta*, 172 F.3d 49 (6th Cir. 1999)). Indeed, it is accepted in virtually every Section 10(b) case, regardless of whether the plaintiff alleges loss causation under a materialization of the risk theory or not.

Moreover, Magistrate Judge Poplin even went a step further and rejected KPMG's improper merits-based argument that Coffman was required to distinguish among investors in his damages model according to *Ludlow v. BP, P.L.C.*, 800 F.3d 674 (5th Cir. 2015). *See* Daubert Order at 64 (citing *Rougier v. Applied Optoelectronics*, Inc., No. 4:17-CV-02399, 2019 WL 6111303, at *16 (S.D. Tex. Nov. 13, 2019), report and recommendation adopted, No. 4:17-CV-02399, 2019 WL 7020349 (S.D. Tex. Dec. 20, 2019). Magistrate Judge Poplin appropriately ruled that, at most, KPMG's arguments attacked the weight that should be afforded Coffman's opinion, but not its admissibility. Daubert Order at 64. KPMG's disappointment in the result is not grounds to overturn the Court's decision.

16

**D.     There is No Requirement that the Court Must Hold an Evidentiary Hearing**

KPMG misconstrues Magistrate Judge Poplin's statements in the Daubert Order that KPMG may cross examine Coffman on its criticisms which go to the weight of Coffman's opinion to mean that an evidentiary hearing must take place at this juncture.  KPMG made a request for a hearing in its papers that was rejected.  As there is no requirement that an evidentiary hearing must be held in order to adjudicate a motion to exclude expert testimony, KPMG's assertion that Magistrate Judge Poplin erred in not holding one comes up short.  *Clay v. Ford Motor Co.*, 215 F.3d 663, 667 (6th Cir. 2000) ("The district court is not obligated to hold a Daubert hearing."). Moreover, KPMG had the opportunity to cross-examine Coffman twice.  The fact that it failed to elicit the testimony it desired does not establish that an evidentiary hearing is now required.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs respectfully submit that KPMG's Objections should be rejected.

17

August 24, 2020

Steven J. Toll
Jan Messerschmidt (*pro hac vice pending*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Suite 500
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
stoll@cohenmilstein.com
jmesserschmidt@cohenmilstein.com

Laura H. Posner
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Tel: (212) 220-2925
Fax: (212) 838-7745
lposner@cohenmilstein.com

*Co-Lead Counsel for Plaintiffs*

Respectfully submitted,

/s/ *Gordon Ball*
Gordon Ball
TN BPR #001135
**GORDON BALL PLLC**
7001 Old Kent Drive
Knoxville, TN 37919
Tel: (865) 525-7028
Fax: (865) 525-4679
gball@gordonball.com

18

**CERTIFICATE OF SERVICE**

I hereby certify that on August 24, 2020, I caused the foregoing to be filed using the

Court's CM/ECF system, which in turn sent notice to counsel of record.


Dated:     August 24, 2020                          /s/ *Gordon Ball*
                                                           Gordon Ball