# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### KNOXVILLE DIVISION

-----------------------------------------------------------------X

LEWIS COSBY, KENNETH R. MARTIN, as     :    No. 3:16-cv-00121-TAV-DCP
beneficiary of the Kenneth Ray Martin Roth IRA,    :
and MARTIN WEAKLEY on behalf of themselves    :
and all others similarly situated,                  :
                                       :
                Plaintiffs,          :
                                        :
              v.               :
                                        :
KPMG LLP,                         :
                                       :
              Defendant.      :

-----------------------------------------------------------------X

## REPLY IN FURTHER SUPPORT OF KPMG LLP'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CLASS CERTIFICATION

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT ...............................................................................................................................1

    I.    KPMG'S OBJECTIONS HAVE BEEN PRESERVED .............................................1

    II.    CERTIFICATION OF THE SECTION 10(B) CLASS MUST BE DENIED...........4

        A.    Individual issues of reliance will overwhelm common issues......................4

            1.    The fraud-on-the-market presumption does not apply......................4

                a.    The markets were not efficient ..............................................4

                b.    KPMG rebutted the presumption ...........................................7

            2.    The *Affiliated Ute* presumption does not apply .............................10

        B.    Individual issues of damages will overwhelm common issues ..................11

        C.    Individual issues of timeliness will overwhelm common issues ...............12

        D.    The proposed class representatives' claims are not typical .........................13

    III.    CERTIFICATION OF THE SECTION 11 CLASS MUST BE DENIED.............14

        A.    The claims of Martin Ziesman are not typical .............................................14

        B.    Plaintiffs have not proven numerosity ........................................................17

        C.    Individual issues of reliance will overwhelm common issues....................18

        D.    Individual issues of damages will overwhelm common issues ..................18

        E.    Individual issues of timeliness will overwhelm common issues ...............18

    IV.    NO CLASS OF SERIES D PURCHASERS MAY BE CERTIFIED ....................19

CONCLUSION..........................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affiliated Ute Citizens v. U.S.*,
  406 U.S. 128 (1972)................................................................................................10, 11

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)......................................................................................................16

*Angley v. UTi Worldwide Inc.*,
  311 F. Supp. 3d 1117 (C.D. Cal. 2018) .........................................................................5

*Brooks v. Invista (Koch Indus.)*,
  528 F. Supp. 2d 785 (E.D. Tenn. 2007)......................................................................2, 4

*In re Carrier IQ, Inc.*,
  78 F. Supp. 3d 1051 (N.D. Cal. 2015) .....................................................................15, 16

*Carter v. Hickory Healthcare Inc.*,
  905 F.3d 963 (6th Cir. 2018) .........................................................................................2

*In re Computer Scis. Corp. Sec. Litig.*,
  288 F.R.D. 112 (E.D. Va. 2012) ...................................................................................10

*In re Direct Gen. Corp.*,
  2006 WL 2265472 (M.D. Tenn. Aug. 8, 2006) .............................................................16

*Dura Pharma. Inc. v. Broudo*,
  544 U.S. 336 (2005) ......................................................................................................14

*EEOC v. Dolgencorp, LLC*,
  277 F. Supp. 3d 932 (E.D. Tenn. 2017)...........................................................1, 2, 3, 4

*Första AP-Fonden v. St. Jude Med., Inc.*,
  312 F.R.D. 511 (D. Minn. 2015).....................................................................................5

*In re Freddie Mac*,
  281 F.R.D. 174 (2012) ....................................................................................................5

*Gaynor v. Miller*,
  273 F. Supp. 3d 848 (E.D. Tenn. 2017).................................................................16, 19

*George v. China Automotive Sys., Inc.*,
  2013 WL 3357170 (S.D.N.Y. July 3, 2013) ............................................................5, 13

*Grae v. Corr. Corp. of Am.*,
   329 F.R.D. 570 (M.D. Tenn. 2019) ...................................................................... 10

*Halliburton Co. v. Erica P. John Fund, Inc. (Halliburton II)*,
   573 U.S. 258 (2014) ................................................................................................ 9, 13

*Hoffman v. UBS-AG*,
   591 F. Supp. 2d 522 (S.D.N.Y. 2008) ...................................................................... 15

*Howard v. Sec'y of Health & Human Servs.*,
   932 F.2d 505 (6th Cir. 1991) .................................................................................. 2, 4

*IBEW Local 98 Pension Fund v. Best Buy Co.*,
   818 F.3d 775 (8th Cir. 2016) ...................................................................................... 8

*Ludlow v. BP, P.L.C.*,
   800 F.3d 674 (5th Cir. 2015) ................................................................................ 11, 12

*McIntire v. China MediaExpress Holdings, Inc.*,
   38 F. Supp. 3d 415 (S.D.N.Y. 2014) .......................................................................... 5

*Merck & Co. v. Reynolds*,
   559 U.S. 633 (2010) .................................................................................................. 19

*Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*,
   278 F.R.D. 454 (D. Minn. 2011) ................................................................................ 6

*NECA-IBEA Health & Welfare Fund v. Goldman Sachs & Co.*,
   693 F.3d 145 (2d Cir. 2012) ................................................................................ 16, 19

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
   2018 WL 3861840 (N.D. Ohio Aug. 14, 2018) ...................................................... 5, 8

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) .................................................................................................. 16

*Pennsylvania Pub. Sch. Emps' Ret. Sys. v. Bank of Am. Corp.*,
   874 F. Supp. 2d 341 (S.D.N.Y. 2012) ...................................................................... 19

*Plumbers' & Pipefitters' Local No. 562 Supp. Plan & Tr. v. JP Morgan Acceptance Corp. I*,
   2012 WL 601448 (E.D.N.Y. Feb. 23, 2012) ............................................................ 15

*Potter v. Colvin*,
   2013 WL 4857731 (E.D. Tenn. Sept. 11, 2013) .................................................... 1, 3

*In re Prison Realty Sec. Litig.*,
   117 F. Supp. 2d 681 (M.D. Tenn. 2000) .................................................................. 16

iii

*Rocco v. Nam Tai Elecs., Inc.*,
    245 F.R.D. 131 (S.D.N.Y. 2007) ...................................................................13

*In re Schering-Plough Corp./ENHANCE Sec. Litig.*,
    2012 WL 4482032 (D.N.J. Sept. 25, 2012) ...........................................6, 16

*Smoot v. United Transp. Union*,
    246 F.3d 633 (6th Cir. 2001) .....................................................................2

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
    546 F.3d 196 (2d Cir. 2008)...........................................................6, 10, 11

*Thomas v. Arn*,
    474 U.S. 140 (1985)....................................................................................3

*In re Valence Tech. Secs. Litig.*,
    1996 WL 119468 (N.D. Cal. Mar. 14, 1996)...........................................13

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
    2017 WL 2062985 (S.D.N.Y. May 15, 2017) ...........................................6

*Wallace v. IntraLinks*,
    302 F.R.D. 310 (S.D.N.Y. 2014) .............................................................16

*In re Wells Fargo Mortg.-Backed Certificates Litig.*,
    712 F. Supp. 2d 958 (N.D. Cal. 2010) .....................................................16

*In re Winstar Commc'ns Sec. Litig.*,
    290 F.R.D. 437 (S.D.N.Y. 2013) ...............................................................5

*In re WorldCom*,
    219 F.R.D. 267 (S.D.N.Y. 2003) .......................................................17, 19

**Statutes**

11 U.S.C. § 77m.........................................................................................18

28 U.S.C. § 636(b)(1)(C)..............................................................................3

KPMG LLP submits this reply in further support of its objections to the Magistrate Judge's Report[1] on class certification (ECF No. 179 ("Obj." or the "Objections")) and in response to Plaintiffs' Opposition Brief (ECF No. 195, "Opp." or the "Opposition").

## PRELIMINARY STATEMENT

Plaintiffs urge this Court to adopt the Magistrate Judge's Report without conducting a *de novo* review, notwithstanding the multiple errors KPMG has identified in the Report. That argument is misguided. KPMG timely objected and preserved its arguments in accordance with the Sixth Circuit's procedural rules. In these circumstances, the district court is required to conduct a *de novo* review of the objected-to portions of the Report. Plaintiffs' request that this Court should shirk that responsibility and avoid a serious review must be rejected. Further, KPMG has showed that Plaintiffs have not met their burden of proving several of the elements needed for class certification. Plaintiffs' arguments to the contrary in their Opposition are without merit.

## ARGUMENT

### I.   KPMG'S OBJECTIONS HAVE BEEN PRESERVED.

Plaintiffs begin their Opposition with an astonishing assertion—that despite more than forty pages of detailed briefing citing a litany of cases with which the Report is inconsistent, KPMG's Objections are too "perfunctory" and "general" to preserve its objections. (Opp. at 3.) Quoting snippets of judicial opinions taken out of context, Plaintiffs assert that a party objecting to a magistrate judge's report and recommendation may not "restate" the same arguments raised before the magistrate judge, lest the magistrate judge's efforts be "duplicated" by this Court. (Opp. at 3 (quoting *Potter v. Colvin*, 2013 WL 4857731, at *1-2 (E.D. Tenn. Sept. 11, 2013), and *EEOC v. Dolgencorp, LLC*, 277 F. Supp. 3d 932, 965 (E.D. Tenn. 2017) (Varlan, J.)).)

---

[1] Capitalized terms not defined herein are as defined in KPMG's initial objections to the Report dated July 27, 2020.

Plaintiffs are confused. A party's objecting to a report and recommendation not only _may_, but _must_, "restate" the grounds upon which it believes it is entitled to an order in its favor. That is what seeking review of a magistrate judge's report is all about—obtaining a "fresh look" of the arguments raised before the magistrate judge. *Carter v. Hickory Healthcare Inc*., 905 F.3d 963, 967 (6th Cir. 2018). Surely Plaintiffs do not mean to suggest that a party raising Rule 72(b)(2) objections is supposed to raise only all new arguments not briefed before the magistrate judge. *Cf.*, *e.g.*, *Smoot v. United Transp. Union*, 246 F.3d 633, 648 n.7 (6th Cir. 2001) ("Ordinarily, an appellate court does not give consideration to issues not raised below.") (internal citation omitted).

Plaintiffs complain not only that KPMG has "restated" the same arguments in its Objections that it raised earlier before the magistrate judge, but also that KPMG "cribbed" from its prior briefing and did not sufficiently vary the language that it used to present its objections. (*See* Opp. at 1-2.) That position is hard to take seriously.

To be sure, a "general objection" that "does not sufficiently identify alleged errors on the part of the magistrate judge" is inadequate to preserve an objection. *Dolgencorp*, 277 F. Supp. 3d at 965. In other words, "a district judge should not have to guess what arguments an objecting party depends on when reviewing a magistrates [sic] report." *Brooks v. Invista (Koch Indus.)*, 528 F. Supp. 2d 785, 788 (E.D. Tenn. 2007) (internal citation omitted). An objecting party's obligation is therefore "to pinpoint those portions of the magistrate's report that the district court must specially consider" and to "explain[] the source of the [magistrate judge's] error." *Dolgencorp*, 277 F. Supp. 3d at 965 (quoting *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)).

KPMG has done just that: it filed timely objections, in writing.[2] In those objections, it identified specific portions of the Report with which it takes issue, by topic and page numbers, and even went so far as to identify the portions of the Report to which it does _not_ object. (*See* Obj. at 1 n.1.) It then detailed the bases for its objections with the specificity and detail of more than forty pages of briefing. (*See id*. at 5-44.) It would defy logic to characterize detailed objections like this as the equivalent of "[a] general objection to the entirety of the magistrate's report," lacking "focus[] on any specific issues." *Potter*, 2013 WL 4857731, at *2.

A contrary conclusion—that is, deeming objections waived on the ground that they are supported by the same formulation of arguments that were presented to the magistrate judge— would violate the Federal Magistrates Act. That is because "a district court may refer dispositive motions to a magistrate for a recommendation [only] so long as 'the entire process takes place under the district court's total control and jurisdiction' and the judge 'exercises the ultimate authority to issue an appropriate order.'" *Thomas v. Arn*, 474 U.S. 140, 153 (1985) (quoting *U.S. v. Raddatz*, 447 U.S. 667, 681-682 (1980)). And declining to review objections on the ground that they too closely resemble the arguments drafted in earlier proceedings would offend this basic premise for magistrate review. *See id*. at 154 ("Any party that desires plenary consideration by the Article III judge of any issue need only ask.").

Neither *Dolgencorp* nor *Potter* suggests otherwise; rather, those cases say only that "perfunctory arguments" that invite a "rehashing" of the parties' prior briefs without elaboration— that is, without "pinpoint[ing]" the bases for objection and "explaining the source of the error"—

---

[2] The statute provides that objections are due within fourteen days and as provided by court rules. 28 U.S.C. § 636(b)(1)(C). This Court extended that deadline to twenty-eight days by order entered July 2, 2020. (ECF No. 173.) KPMG timely filed its Objections to the July 29, 2020 Report on July 27, 2020. (ECF No. 178.)

are insufficient. *Dolgencorp*, 277 F. Supp. 3d at 965. Illustrative of the point is *Howard v. Sec'y of Health & Human Services*, where the plaintiff stated merely that "Plaintiff now specifically objects to the determination of the Magistrate denying Plaintiff's request for relief" and that, "[i]n support of Plaintiff's Objections, Plaintiff relies on the Brief in support of its Motion for Summary Judgment." 932 F.2d at 508. The Sixth Circuit concluded there that "it is hard to see how a district court," presented with such a general, cursory objection, "would know what [the plaintiff] thought the magistrate had done wrong," and thus held the objections too general to preserve any specific argument. *Id.* at 508-10.

Again, that does not remotely describe this case. KPMG's arguments are laid out fully and in detail for the Court's consideration. The Court plainly does not have to "guess what arguments" KPMG is relying on for its objections. *Brooks*, 528 F. Supp. 2d at 788. The Court, accordingly, should reject Plaintiffs' waiver argument.

## II.     CERTIFICATION OF THE SECTION 10(B) CLASS MUST BE DENIED.

### A.     Individual issues of reliance will overwhelm common issues.

#### 1.     The fraud-on-the-market presumption does not apply.

##### a.     The markets were not efficient.

Plaintiffs' argument that proof of a cause-and-effect relationship between events and statistically significant stock price movements (*Cammer* factor number five) is unnecessary is incorrect. (Opp. at 5-6.) Plaintiffs cite cases for the proposition that market efficiency may be established without proof of a cause-and-effect relationship, whereas KPMG has cited cases establishing the contrary. (Opp. at 6-7.) The existence of a split among authorities makes it all the more necessary for this Court to review, *de novo* as required, the unchallenged expert testimony from Dr. Attari and the challenged testimony of Coffman, and to determine which view is more sound.

4

KPMG pointed to well-reasoned decisions holding that statistically significant price reactions at _higher_ rates than Plaintiffs showed here were not adequate to establish a cause-and-effect relationship, and that therefore, Plaintiffs did not establish market efficiency.[3] Significantly, these courts held that plaintiffs failed to show market efficiency based on the failure to establish _Cammer_ factor number five; and in each case, the other _Cammer_ and _Krogman_ factors supported a finding of efficiency. _George_, 2013 WL 3357170, at *9 ("defendants do not contest any of the _Cammer_ factors except for the last—the cause and effect relationship"); _In re Fed. Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig._, 281 F.R.D. 174, 182 (S.D.N.Y. 2012) ("Although the less important _Cammer_ and _Krogman_ factors support an inference of efficiency, these factors cannot substitute for evidence of a cause-and-effect relationship between unexpected news and market price.").

The cases cited by Plaintiffs are readily distinguishable, as they involved higher percentages.[4] Plaintiffs falsely imply that courts have held that price movements at rates of 16.2%, 30%, and 21% are sufficient to demonstrate market efficiency. (Opp. at 9-10.) The cases Plaintiffs cite say no such thing. They do not discuss what percentages at all, and they do not express any opinion on what percentage might be sufficient to show market efficiency. The percentages

---

[3] _George v. China Automotive Sys., Inc._, 2013 WL 3357170, at *12 (S.D.N.Y. July 3, 2013) (seven of sixteen events followed by statistically significant price changes not adequate); _In re Freddie Mac_, 281 F.R.D. at 182 (sixteen of fifty-seven events followed by statistically significant price changes not adequate); _Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp._, 2018 WL 3861840, at *5 (N.D. Ohio Aug. 14, 2018) (four of nine events followed by statistically significant price changes not adequate).

[4] _See Första AP-Fonden v. St. Jude Med., Inc_., 312 F.R.D. 511, 521 (D. Minn. 2015) (finding statistically significant price reaction to 36.4% of the events studied); _McIntire v. China MediaExpress Holdings, Inc_., 38 F. Supp. 3d 415, 433 (S.D.N.Y. 2014) (finding statistically significant price reaction to 42% of the events studied); _In re Winstar Commc'ns Sec. Litig._, 290 F.R.D. 437, 448 (S.D.N.Y. 2013) (finding statistically significant price reaction to 40%, two out of five, of the events studied). Only _Angley v. UTi Worldwide Inc._, 311 F. Supp. 3d 1117, 1121 (C.D. Cal. 2018), involved a lower percentage.

asserted by Plaintiffs do not even appear in the decisions. In each of these cases, the defendants did not dispute that the markets were efficient. *See In re Virtus Inv. Partners, Inc. Sec. Litig.*, 2017 WL 2062985, at *4 (S.D.N.Y. May 15, 2017) (*not* stating that 30% is sufficient; defendants "conced[ed] that Virtus Partner's stock traded on an efficient market"); *In re Schering-Plough Corp./ENHANCE Sec. Litig.*, 2012 WL 4482032, at *5 (D.N.J. Sept. 25, 2012) (*not* stating that 21% is sufficient; "Schering has not challenged that the stock was traded on an efficient market"); *Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*, 278 F.R.D. 454, 457 (D. Minn. 2011) (*not* stating that 16.2% is sufficient; "Defendants do not address any of the substantive requirements of Rule 23, aside from contending that Plaintiffs' counsel is inadequate.").

The cases cited by KPMG represent the better-reasoned view, not only on the price reaction necessary to establish a cause-and-effect relationship (each holding that percentages higher than that found by Coffman, three of seventeen events, or 17.65%, were inadequate), but also on the point that where an event study does not establish a cause-and-effect relationship under *Cammer* factor number five, the presence of other factors suggesting efficiency is of no consequence. *Cammer* factor number five is the only factor that directly measures whether a market is efficient. *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 207-08 (2d Cir. 2008). The expert evidence from Dr. Attari confirms that from an economic perspective these courts reached the correct conclusion. (Attari Report (attached as Appendix A to KPMG's Objection (ECF No. 178-1) ¶116 ("the most important indicator of market efficiency is the presence of a cause-and-effect relationship between news arrival and price changes (also referred to as the fifth '*Cammer* Factor').) Even Plaintiffs' expert, Coffman, agrees that *Cammer* factor number five is the most direct test of efficiency. (Coffman Dep. Tr. (April 12, 2019) (attached as Appendix C to KPMG's *Daubert* Objections) (ECF No. 179-3) at 121-22 ("Q.

Do you agree that th[e *Cammer* five factor] is one of the most convincing ways to demonstrate market efficiency? A. I think it's one of the most direct methods of showing it, so yes . . . *it is the most direct test*") (emphasis added).) When the evidence does not show stock price movements in response to news, and accordingly the direct evidence supports a finding of inefficiency, not efficiency, arguments about indirect factors are irrelevant. For this reason, it is of no consequence that KPMG did not challenge Coffman's conclusions about the other *Cammer* and *Krogman* factors.

As for Miller Energy's preferred stock, Plaintiffs argue that KPMG ignores the Magistrate Judge's consideration and reasoning concluding that Plaintiffs established the efficiency of the market for the preferred stock. (Opp. at 10; Report at 35-36.) But, nowhere in the Magistrate Judge's report does she analyze, weigh, discuss, or otherwise compare Coffman's "economic explanation for why his Preferred Stock event study" used a different approach and looked at news rather than the earnings releases he previously used for the common stock. Instead, the Magistrate Judge conclusorily states that "Defendant's argument[] [is] not well taken." (Report at 36.) With this unsupported conclusion, the Magistrate ignored the fact that none of the earnings releases during the proposed class period were followed by statistically significant movements in the price of the preferred stock, as well as Dr. Attari's well-reasoned explanation of why Plaintiffs have not established the efficiency of the market for the preferred stock. (Attari Report (ECF No. 178-1) ¶¶ 125-154.)

### b.   KPMG rebutted the presumption.

Plaintiffs' assertion that "Defendant's expert conceded he had no opinion on whether Miller Energy's share price fell in response to the alleged corrective disclosures" misses the point. (Opp. at 11.) KPMG did not argue that Dr. Attari's work demonstrated that there was no price impact; rather, KPMG argued that the work of Plaintiffs' own expert, Coffman, demonstrated that

there was no price impact. (Obj. at 9-10.) Such a showing, relying on the Plaintiffs' expert's work, is sufficient to sustain a defendant's burden on price impact, as the Eighth Circuit has convincingly held. *See IBEW Local 98 Pension Fund v. Best Buy Co.*, 818 F.3d 775, 782 (8th Cir. 2016) (where the plaintiffs' expert's event study showed that the alleged misrepresentations in a conference call "had no additional price impact," "[t]his overwhelming evidence of no 'front-end' price impact rebutted the *Basic* presumption"). Here, Coffman admitted that based on the work on his initial expert report, none of KPMG's four audit reports was followed by a statistically significant increase in the price of Miller Energy's securities.[5] His attempt to offer a new opinion that one of the four audit reports might have caused a price increase was appropriately excluded by the Magistrate Judge. (Report at 48-49 & n.11.)

Plaintiffs' argument that KPMG is required to show not only that KPMG's audit reports did not inflate the price, but also that the alleged disclosure events did not result in price deflation (Opp. at 12) is dependent on the Court's accepting the "price maintenance" theory, which suggests that a misstatement might maintain an already artificially inflated price and therefore not be followed by a price increase. But, as KPMG pointed out in its Objections, courts in this circuit are split on the validity of the price maintenance theory, and the better-reasoned view is that the theory is not legitimate. As the Eighth Circuit held in *IBEW Local 98 Pension Fund*, 818 F.3d at 782, and the District Court for the Northern District of Ohio held in *Ohio Pub. Emps. Ret. Sys.*,

---

[5] (Coffman Dep. Tr. (Apr. 25, 2019) (ECF No. 179-3) at 212-213 ("Q. You understand that plaintiffs' theory in this case is that KPMG's audit opinions helped artificially inflate the price of Miller Energy securities? A. That's my understanding of their claim, yes. Q. And in Exhibit 7, and in our discussion today on Miller Energy's common stock, you evaluated whether there was a statistically significant price movement in response to the disclosure of Miller Energy's year-end results for each of those years ending April 30, 2011, '12, '13 and '14; correct? A. Yes. Q. And in each instance, you found no statistically significant increase in the price of the common stock; right? . . . A. Based on what you've shown me, I believe that's correct. Q. Well, in two instances there was a movement but it was down, not up; right? A. Correct.").)

2018 WL 3861840, at *18, defendants may rebut the presumption of reliance with evidence of a lack of front-end price impact in response to their alleged misstatements, without having to prove also that there was no decline in response to the allegedly corrective disclosures. This kind of evidence is in fact the first of two examples offered by the Supreme Court as to how a defendant may rebut the presumption. *Halliburton Co. v. Erica P. John Fund, Inc. (Halliburton II)*, 573 U.S. 258, 269 (2014).

In any event, KPMG additionally showed that the allegedly corrective disclosures, at least those that are indisputably most relevant to the case against KPMG, were not followed by statistically significant price declines. Plaintiffs do not deny that the December 10, 2014 announcement of a $265.3 million impairment charge on the Alaska Assets, and the March 12, 2015 announcement of another $149.1 million impairment charge (increasing total impairment to $414.4 million)—the two allegedly corrective disclosures that are more relevant to KPMG—were not followed by statistically significant declines in Miller Energy's securities prices. Again, KPMG did not need to submit opinion testimony from its expert, Dr. Attari on this point; rather, Plaintiffs' own expert admitted that these two key disclosures were *not* followed by statistically significant price declines. (Coffman Dep. Tr. (Apr. 25, 2019) (ECF No. 179-3) at 250-253.)[6]

As for KPMG's argument that it also rebutted the presumption by showing that plaintiffs would have bought even if aware that the price was tainted by fraud, Plaintiffs argue that purchases by plaintiffs after the allegedly corrective disclosures do not show that plaintiffs were aware that the price had been tainted by fraud. (Opp. at 14.) But, this argument is contradicted by Plaintiffs' own Complaint. Plaintiffs allege that there were sixteen events and disclosures that

---

[6] In addition, the Magistrate Judge acknowledged that these disclosures "are tied closely to the overvaluation of the Alaska Assets." (Report at 51.)

allegedly leaked the "truth" out to the market. (Obj. at 12 n.17 (listing the sixteen alleged events and disclosures with citation to the complaint).) The case cited by Plaintiffs acknowledges that courts have reached different conclusions about the impact of post-disclosure purchases by plaintiffs. *In re Computer Scis. Corp. Sec. Litig.,* 288 F.R.D. 112, 124 n.13 (E.D. Va. 2012).

In sum, KPMG has successfully rebutted the presumption. Contrary to the Magistrate Judge and Plaintiffs' opinion, KPMG brought forward evidence which shows that neither KPMG's alleged misrepresentation artificially inflated the price of the securities in question, nor were the corrective disclosures followed by a statistically significant decline in the price of Miller Energy's securities.

## 2. The *Affiliated Ute* presumption does not apply.

Plaintiffs fail to acknowledge KPMG's point that, based on Supreme Court jurisprudence, the *Affiliated Ute* presumption only applies in cases based "primarily" on omissions—which is not the case here. *Affiliated Ute Citizens v. U.S.*, 406 U.S. 128, 153-154 (1972). Plaintiffs merely argue that they have alleged both misstatements and omission, but they do not even attempt to argue that their Complaint is based "primarily" on omissions. Plaintiffs also ignore KPMG's argument, and the case law behind it, that alleged omissions that are merely the flip-side of alleged misstatements do not qualify for the presumption. Plaintiffs attempt to distinguish those cases on the grounds that they did not involve audit reports, but whether the alleged misstatements and omissions are included in an audit report, or some other document, is irrelevant to the reasoning of those opinions.[7]

---

[7] *Grae v. Corr. Corp. of Am.*, 329 F.R.D. 570, 583-585 (M.D. Tenn. 2019), *vacated on reconsideration on other grounds*, 330 F.R.D. 481 (M.D. Tenn. 2019) ("while this case is capable of being characterized in reference to omissions, the core of "the case is "what [defendant] said, not what it failed to say" and so "does not present the kind of situation that *Affiliated Ute* was intended to address"); *Teamsters Local 445*, 2006 WL 2161887, at *9 (omissions were "simply the flip side" of the misstatements; "[b]ecause positive statements, not omissions, are central to the

Here, Plaintiffs' claims have never been primarily based on omissions. Therefore, Plaintiffs' attempt to invoke a presumption of reliance based on *Affiliated Ute* must fail. Similarly, the Magistrate Judge's rationale that Plaintiffs alleged "omissions and representations," was and continues to be mistaken. Plaintiffs' base their case "primarily [on] a failure to disclose," which never invokes the *Affiliated Ute* presumption. *Affiliated Ute Citizens v. U.S.*, 406 U.S. at 153-154. Plaintiff's desperate attempt to change that by adding citation to various paragraphs in their Third Amended Complaint does not change the fact that the claims alleged by Plaintiffs primarily allege a failure to disclose—namely the alleged falsity of the only public statements ever issued by KPMG on Miller Energy: its audit reports.[8] Accordingly, this Court should disregard the Magistrate Judge's recommendations and deny Plaintiffs' attempt to invoke the *Affiliated Ute* presumption.

**B.**  **Individual issues of damages will overwhelm common issues.**

KPMG demonstrated in its Objections that individual issues of damages will overwhelm common issues. In response, Plaintiffs argue that *Ludlow v. BP, P.L.C.*, 800 F.3d 674 (5th Cir. 2015), is not on point, but it is the one case that has closely examined damages theories in a case where plaintiffs allege a materialization of risk theory, and it was a securities, not an antitrust, case. The reasoning of that decision, as it relates to the proposed pre-spill class, and to plaintiffs' materialization-of-risk theory, applies equally in the present case. Notwithstanding Plaintiffs' protestations, their Complaint clearly asserts a materialization-of-risk theory, which gives rise to

---

alleged fraud, Teamsters cannot not rely on the *Affiliated Ute* presumption."), *aff'd*, 546 F.3d 196 (2d Cir. 2008).

[8] The other cases cited by Plaintiffs do not refer to alleged omissions (TAC ¶¶ 160, 168), are primarily tied to a "statement" (*id.* ¶¶ 193, 193f. ("KPMG's statement regarding …"), or include unspecified and vague allegations to omissions (*id.* ¶¶ 248, 251, 254, 256, 259, 292, 309, 313, 318). They do not alter the fact that the case is primarily about KPMG's alleged misstatements—the four audit reports it issued, as alleged in the Complaint, and as analyzed by their expert.

the problems detailed by the Fifth Circuit with regard to high- and low-risk investors. Plaintiffs do not dispute KPMG's arguments that in the present case there is clear evidence of the existence of both types of investors (Obj. at 20 n.26) and that Coffman has admitted that his damages approach has no means of distinguishing between the two classes of investors (Obj. at 20). Plaintiffs' self-serving assurance that they are not seeking consequential damages is beside the point. The reasoning of *Ludlow* was premised on the existence of the two types of investors and the inability of Coffman to distinguish between the two, not on whether plaintiffs sought consequential damages. And, in the present case, Plaintiffs and their expert have not even conducted a damages analysis; Coffman has merely asserted that he could conduct such an analysis if asked to do so. (Obj. at 19 n.15; s*ee also* Coffman Report (ECF No. 121) ¶¶ 97-103.)

### C. Individual issues of timeliness will overwhelm common issues.

Plaintiffs acknowledge the applicable legal principle—that "an affirmative defense, _standing alone_, does not compel a finding that common liability issues do not predominate." (Opp. at 20 (quoting *In re HCA Holdings, Inc.*, 2015 WL 10575861, at *2 (6th Cir. Feb. 26, 2015) (emphasis added)).) And, there is no dispute that KPMG did not merely assert the affirmative defense that the claim is time-barred without more. The only dispute on the point relates to whether KPMG provided enough evidence that the defense will give rise to individual issues that overwhelm common issues. Yet, KPMG presented evidence relating to current lead plaintiff Mr. Cosby as well as evidence relating to previous lead plaintiff Mr. Martin, establishing that they were aware of facts that Plaintiffs themselves allege constitute evidence of fraud years before this lawsuit was filed. (Obj. at 25.) Given that the parties in this case have only conducted discovery relating to class certification, and the case was stayed by the Court before any significant merits discovery was commenced, KPMG has not had the opportunity to collect evidence regarding other potential members of the class who are not named plaintiffs. In these circumstances, the evidence

presented by KPMG is remarkable. At least two of the current or former lead plaintiffs in this case were aware of facts, more than two years prior to the commencement of this action, that according to Plaintiffs' own allegations, evidence KPMG's scienter. Significantly, Plaintiffs do not respond to KPMG's argument that they cannot have it both ways; that if the alleged "red flags" were enough to plead scienter against KPMG, as Plaintiffs argued and this Court held, then they were enough to trigger inquiry notice for purposes of the statute of limitations. (Obj. at 26.)

        **D.**    <u>**The proposed class representatives' claims are not typical.**</u>

With respect to KPMG's arguments regarding typicality, again Plaintiffs acknowledge that the cases are split on whether plaintiffs who purchase after corrective disclosures can be typical. Here again, the Court is called upon to decide which of the cases are better-reasoned. KPMG respectfully asserts that the cases finding such plaintiffs atypical are better-reasoned, as they do justice to the Supreme Court's dictate that, to invoke the necessary fraud-on-the-market presumption, a plaintiff must have "traded the stock between the time the misrepresentations were made and when the truth was revealed." *Halliburton II*, 573 U.S. at 277-78. Plaintiffs who make purchases outside of this window, and after the "truth" was allegedly revealed, are subject to unique defenses that make them atypical. *See, e.g.*, *George*, 2013 WL 3357170, at *6-7; *Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131, 135 (S.D.N.Y. 2007) (proposed class representative having purchased post disclosure "clearly atypical of the rest of the proposed class."); *In re Valence Tech. Secs. Litig.*, 1996 WL 119468, at *4 (N.D. Cal. Mar. 14, 1996) (fact that two out of four proposed class representatives "continued to trade in the stock . . . after [they] learned of the alleged misrepresentations of defendants severs the link") (internal quotations omitted).

As for KPMG's separate argument that Mr. Cosby is not typical because he bought and quickly sold before any relevant corrective disclosure was made, Plaintiffs claim that the small decline in the stock price that occurred during the short period he held the stock might have been

caused by KPMG's audit reports, and they dismiss KPMG's argument to the contrary as "nonsense." (Opp. at 24.) On the contrary, the argument is sensible, and indeed based on Supreme Court guidance, which indicates that a purchaser who sells "before the relevant truth begins to leak out" has no loss. *Dura Pharma. Inc. v. Broudo*, 544 U.S. 336, 342 (2005). If, as KPMG maintains, the three alleged corrective disclosures that were issued during the period when Mr. Cosby held the stock were not, in fact, corrective disclosures, then Mr. Cosby has no recoverable loss. In fact, the case cited by Plaintiffs, *Winslow v. BancorpSouth, Inc.*, acknowledges as much: "to establish loss causation th[e] disclosed information must reflect part of the 'relevant truth'—the truth obscured by the fraudulent statement." 2011 WL 7090820, at *12 (M.D. Tenn. 2011).

Finally, with respect to KPMG's argument that Mr. Montague and Mr. Ziesman are not typical because they have admitted that they likely would not have purchased had they known what was in Miller Energy's disclosure documents at the time, Plaintiffs assert, incorrectly, that with this argument KPMG "concedes Messrs. Ziesman and Montague's reliance." (Opp. at 26.) KPMG in no way concedes that they can prove reliance, but rather argues the opposite, that they cannot prove the element of reliance and that therefore they are not typical of the proposed class. (Obj. at 34-35.)

## III.  CERTIFICATION OF THE SECTION 11 CLASS MUST BE DENIED.

### A.  The claims of Martin Ziesman are not typical.

Plaintiffs do not dispute that Martin Ziesman is not a member of the proposed Section 11 class. They do not dispute that he did not purchase in any of the offerings at issue, and they do not dispute that he is unable to trace his shares to any of those offerings. Plaintiffs' argument boils down to the bald assertion that tracing arguments are not appropriate at the class certification stage, but as explained in the Objections, the present case is unusual in that none of the named plaintiffs is actually a member of the proposed Section 11 class. The other two named plaintiffs,

Mr. Cosby and Mr. Montague, did not even purchase the preferred stock that is at issue in the Section 11 claim, much less preferred stock that was issued in or traceable to those offerings.

Plaintiffs' characterization of typicality as "a routine element of class action practice" (Opp. at 29) does not relieve them of their burden of proving that the named plaintiffs' claims are in fact typical of those of the class. Nothing in Plaintiffs' Opposition explains how the three named plaintiffs, who admittedly did not purchase preferred stock in, or traceable to, the offerings at issue, and who therefore are not members of the proposed Section 11 class, can have claims that are typical of the class they purport to represent.

Notwithstanding Plaintiffs' plea for the Court to defer consideration of fatal standing defects, the Court must consider the standing issue before certifying any class. *Hoffman v. UBS-AG*, 591 F. Supp. 2d 522, 532 (S.D.N.Y. 2008) ("Standing concerns the scope of the courts' power in the first instance. The standing question is antecedent to the class certification issue to the extent that a court can only certify a class for claims over which it has power.") (internal citation omitted) (citing *Lewis v. Casey*, 518 U.S. 343, 357 (1996)); *Plumbers' & Pipefitters' Local No. 562 Supp. Plan & Tr. v. JP Morgan Acceptance Corp. I*, 2012 WL 601448, at *6 (E.D.N.Y. Feb. 23, 2012) ("It is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim. . . . [A] claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim.") (quoting *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279-80 (11th Cir. 2000)).[9]

_____

[9] The Magistrate Judge cites to *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1074 (N.D. Cal. 2015) to support the proposition that courts have the discretion to defer questions of standing until after class certification. (Report at 74.) *In re Carrier IQ*, however, is a consumer class action

This Court has held that, to have standing to assert a Section 11 claim, a plaintiff must allege that he purchased shares in, or traceable to, the offerings at issue. *Gaynor v. Miller*, 273 F. Supp. 3d 848, 861 (E.D. Tenn. 2017) (Varlan, J.). None of the named plaintiffs here purchased the preferred stock in, or traceable to, any of the offerings at issue.

The cases Plaintiffs cite (Opp. at 34 n.38, 35) are inapposite. "These cases did not address whether plaintiffs in a class action may bring suit on behalf of persons who have purchased securities through different offerings stemming from distinct offering documents." *In re Wells Fargo Mortg.-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 965 (N.D. Cal. 2010).[10] Simply put, Messrs. Ziesman, Cosby, and Montague cannot represent a class in which they are not members.[11]

---

case. It cites to Supreme Court precedent in which the Court found that class certification questions could be addressed first if they were "logically antecedent" to the standing question. *Id.* at 1071 (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612 (1997)). However, "most courts have interpreted *Amchem* and *Ortiz* narrowly, holding that those cases stand for a limited exception that class certification can be considered before standing in global settlement-only mass tort actions" and lower courts have only expanded this to include cases in which the outcome of class certification will affect the standing determination. *Id.* at 1071 (internal citation and quotation omitted).

[10] Plaintiffs highlight *Fallick v. Nationwide Mut. Ins. Co.*, a 1998 ERISA case that has not been used in any securities case in the Sixth Circuit to hold that plaintiffs need only have individual standing before the court must consider Rule 23. 162 F.3d 410, 421(6th Cir. 1998). Plaintiffs also cite to *In re Electrobras Sec. Litig.*, which relies on *NECA-IBEA Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012), a case that has been repeatedly rejected by several courts as inconsistent with Supreme Court precedent and which the Magistrate Judge acknowledged has been widely criticized. (Report at 74 n.16.).

[11] Plaintiffs' cases are unavailing. (Opp. at 28-29.) *See In re Direct Gen. Corp.*, 2006 WL 2265472, at *4 (M.D. Tenn. Aug. 8, 2006) (certifying class of purchasers of common stock, of which proposed representative was a member); *In re Prison Realty Sec. Litig.*, 117 F. Supp. 2d 681, 691 (M.D. Tenn. 2000) ("Therefore, the Court finds that the Plaintiffs who obtained shares issued *pursuant to and traceable to* the Joint Proxy have standing to assert § 11 claims.") (emphasis added); *Wallace v. IntraLinks*, 302 F.R.D. 310, 319 (S.D.N.Y. 2014) (does not suggest plaintiffs themselves did not purchase in the offering in question and were not members of the class they sought to represent); *In re Schering-Plough Corp./ENHANCE Sec. Litig.*, 2012 WL 4482032, at *11 (D.N.J. Sept. 25, 2012) (does not suggest lead plaintiffs did not purchase in the offering in question and were not members of the class they sought to represent).

As for KPMG's argument that Mr. Ziesman is not typical for the additional reason that he is subject to a unique statutory defense, Plaintiffs merely rely on the *In re WorldCom* decision, which, as explained in the Objections, is not on point. WorldCom admitted that its earnings releases were false, and consequently the court in *WorldCom* found that the statutory exception requiring proof of reliance from plaintiffs who purchased after the release of twelve months of earnings following the registration statement inapplicable. Here, while Plaintiffs assert that KPMG "had admitted" that its audit reports were false (Opp. at 30), the assertion is incorrect. KPMG has not admitted any such thing. Presumably, Plaintiffs based this assertion on the fact that KPMG settled with the SEC, but as KPMG made clear in its Objections, KPMG settled with the SEC without admitting any wrongdoing. (Obj. at 4 n.5.)

### B.  Plaintiffs have not proven numerosity.

Plaintiffs' arguments on numerosity similarly lack merit. Contrary to Plaintiffs' assertion, KPMG's argument does not "rest almost exclusively on . . . speculation" based on "the high weekly turnover of the Series C and Series D shares." (Opp. at 27.) Significantly, Plaintiffs offer no response to KPMG's argument that Mr. Ziesman, the only named plaintiff who purchased the preferred stock, is not a member of the proposed Section 11 class, as he did not purchase in, or traceable to, any of the offerings at issue. The other two named plaintiffs also did not purchase preferred stock in, or traceable to, any of the offerings. If the members of the proposed class are so numerous, why have Plaintiffs and their counsel in this case been unable to identify a single person who is a member of the proposed Section 11 class? Plaintiffs offer no response to this question in the Opposition. Again, the question was posed at the class certification argument before the Magistrate Judge; there also, Plaintiffs were unable to name a single person or entity that is in fact a member of the proposed class that they claim is so numerous. In short, Plaintiffs have not sustained their burden of proving numerosity.

C. **Individual issues of reliance will overwhelm common issues.**

KPMG established that individual issues of reliance will overwhelm common issues. (Obj. at 37-38.) Plaintiffs do not respond to, and therefore concede, this point.

D. **Individual issues of damages will overwhelm common issues.**

In its Objections, KPMG explained clearly why, in the circumstances of this case (multiple offerings at different prices, not all of those offerings at issue, statutory damages formula requires knowing the initial offering price), it is not possible to calculate damages on a class-wide basis. (Obj. at 28-40.) It is not even possible to calculate Mr. Ziesman's Section 11 damages. (Obj. at 39.) Plaintiffs' response, that calculating damages is a matter of "simple arithmetic" (Opp. at 37-38), is simply false. It is not possible to solve even a simple arithmetic problem where, as here, one of the essential variables in the mathematical formula (the initial offering price) is admittedly unknown. Plaintiffs do not meaningfully respond to KPMG's arguments on this point. Plaintiffs do not explain how Mr. Ziesman's damages could be calculated. They do not explain how any plaintiffs' damages could be calculated. Here too, Plaintiffs have not met their burden.

E. **Individual issues of timeliness will overwhelm common issues.**

Plaintiffs' response to KPMG's argument that individual issues of timeliness will overwhelm common issues (Obj. at 40) is that it "lands even further in left field" (Opp. at 38) and is outlandish (Opp. at 39 n.42). It is not, however, outlandish to argue that knowledge of facts calling into question the accuracy of financial statements triggers the statute of limitations. The statutory language refers to when "discovery should have been made by the exercise of reasonable diligence." 11 U.S.C. § 77m. And, Plaintiffs allege in their Complaint that numerous facts that purportedly evidenced KPMG's scienter were known years ago. (Obj. at 23.) Moreover, Section 11 does not even contain a scienter requirement, and so it takes much less to trigger the statute of

18

limitations under Section 11 than under Section 10(b).[12] The proposed class representatives and counsel are not adequate.

KPMG's argument on adequacy is based on the fact that a different set of plaintiffs in a different federal securities case, *Gaynor v. Miller*, sought and obtained the right to represent the purchasers of Miller Energy's preferred stock, pursuant to the mandatory PSLRA processes, and the named plaintiffs here did not object to their appointment. Under *WorldCom*, it may well be that the *Gaynor* plaintiffs, as the duly appointed lead plaintiffs for the preferred stock purchasers, might have been allowed to add Mr. Ziesman as a named plaintiff in the *Gaynor* case (they did not do so), but that does not mean that plaintiffs in this case,[13] who did not obtain the right to represent a class of preferred stock purchasers under the PSLRA, may represent preferred stock buyers.[14]

## IV.    NO CLASS OF SERIES D PURCHASERS MAY BE CERTIFIED.

Plaintiffs rely on *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (Opp at 36), which the Magistrate Judge recognized has been roundly criticized and rejected. (Obj. at 43-44.) Indeed, in *F.D.I.C. v. Countrywide Fin. Corp.*, cited by Plaintiffs (Opp. at 36), the court wrote, "[t]his Court, consistent with the majority of federal courts outside the Second Circuit, therefore does not find the court's decision in *NECA–IBEW*

---

[12] *Compare Pennsylvania Pub. Sch. Emps' Ret. Sys. v. Bank of Am. Corp.*, 874 F. Supp. 2d 341, 364 (S.D.N.Y. 2012) (statute begins to run when plaintiff had inquiry notice of the facts underlying its Section 11 claim, which does not include scienter) *with Merck & Co. v. Reynolds*, 559 U.S. 633, 634 (2010) (statute begins to run under scienter-based Section 10(b) when plaintiff discovers or a reasonably diligent plaintiff would discover the facts constituting the violation, including scienter).

[13] *See In re WorldCom*, 219 F.R.D. at 286.

[14] It its decision on KPMG's motion to dismiss, this Court held that the question is an open one, and that KPMG "may move for leave to refile the motion to dismiss the Section 11 claim on this basis alone after the issue of class certification has been raised by the parties or ruled on by this Court." (ECF No. 76 at 27.) Nothing in the Opposition (or in the Report) appropriately addresses the issue or explains how Plaintiffs may circumvent the provisions of the PSLRA on the appointment of lead plaintiffs and usurp the role sought and obtained by the *Gaynor* plaintiffs.

persuasive." 2012 5900973, at *12 (C.D. Cal. Nov. 21, 2012). This Court should follow the better-reasoned majority position and hold that the named plaintiffs—who did not purchase Miller Energy's preferred stock—may not assert claims based on Miller Energy's preferred stock or serve as representatives of a class of people who purchased those securities.

## **CONCLUSION**

For the foregoing reasons, the Report and Recommendation must be rejected, and the Motion must be denied.

Dated: September 3, 2020

Respectfully submitted,

*/s/ Gregory G. Ballard*

MCDERMOTT WILL & EMERY LLP
Gregory G. Ballard (admitted pro hac vice)
Ludwig von Rigal (admitted pro hac vice)
340 Madison Avenue
New York, New York 10173
Telephone: 212-547-5330
Email: gballard@mwe.com
Email: lvonrigal@mwe.com

Allyson E. Riemma (admitted pro hac vice)
444 West Lake Street
Chicago, IL 60606
Telephone: 312-372-2000
Email: ariemma@mwe.com

WALLER LANSDEN DORTCH & DAVIS, LLP
Paul S. Davidson (TN BPR # 011789)
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: 615-244-6380
Email: paul.davidson@wallerlaw.com

LEWIS ROCA ROTHGERBER CHRISTIE LLP
Gary F. Bendinger (admitted pro hac vice)
201 East Washington Street, Suite 1200
Phoenix, AZ 85004
Telephone: 602-262-5353
Email: gbendinger@lrrc.com

*Counsel for Defendant KPMG LLP*