# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE

LEWIS COSBY, KENNETH MARTIN, as
beneficiary of the Kenneth Ray Martin Roth IRA,
and MARTIN WEAKLEY on behalf of
themselves and all others similarly situated,

                  Plaintiffs,

      v.

KPMG, LLP

                  Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No.: 3:16-cv-00121-TAV-DCP

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............................................ 2

I.   Factual Background ................................................................................................. 2

    A.   The September 6, 2012 Registration Statement ..................................................... 2

    B.   The Prospectus Supplements ................................................................................ 4

    C.   KPMG Consents to the Incorporation By Reference of its July 15, 2013
        Audit Report to the Registration Statement .......................................................... 5

II.  Procedural Background ............................................................................................ 5

    A.   KPMG Moves to Dismiss the Section 11 Claim on Statute of Repose
        Grounds, and Concedes that Plaintiffs Adequately Alleged Standing ................... 5

    B.   The Court Denies KPMG's Motion to Dismiss, Rejecting KPMG's Lead
        Plaintiff and Statute of Repose Arguments .......................................................... 7

    C.   KPMG Files its Answer to the SAC ...................................................................... 8

    D.   Plaintiffs File Motion to Certify the Classes and, at KPMG Demand,
        Motion to Substitute ............................................................................................. 8

    E.   In Violation of the Court's Orders, KPMG Files its Third Motion to
        Dismiss on Grounds Identical to its Second Motion to Dismiss ........................... 9

LEGAL STANDARDS .................................................................................................. 10

    A.   Reconsideration of Prior Orders ......................................................................... 10

    B.   Motions to Dismiss Under Rule 12(b)(6) and Section 11 of the Securities
        Act ...................................................................................................................... 10

ARGUMENT ................................................................................................................ 11

I.   KPMG's Third Motion to Dismiss Should Be Stricken or Denied as Duplicative,
    Untimely, and Unauthorized .................................................................................. 11

II.  In the Alternative, the Court Should Deny the Motion to Dismiss ............................ 17

    A.   The TAC Adequately Alleges that Mr. Ziesman Has Standing to Assert
        the Section 11 Claim ........................................................................................... 17

        1.   Legal Standards for Section 11 Standing .................................................... 17

i

2.      KPMG Concedes That the Allegations Are Sufficient to Allege Section 11 Standing ...................................................................... 18

B.      Plaintiffs' Section 11 Claim is Timely................................................ 20

1.      Standard of Repose for Section 11 Claims .............................. 20

2.      The Section 11 Claim was Filed Less Than Three Years After the Preferred Securities Were Bona Fide Offered .......................... 21

CONCLUSION ........................................................................................................ 25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adkisson v. Jacobs Eng'g Group, Inc.*,
No. 3:13-CV-505, 2018 WL 4006782 (E.D. Tenn. Aug. 22, 2018) ......................................10

*In re Am. Int'l. Grp., Inc.*,
741 F.Supp.2d 511 (S.D.N.Y.)................................................................20

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
No. 10-cv-275, 2011 WL 4538428 (S.D.N.Y. Sept. 29, 2011) .................................5

*In re Bear Stearns Mortg. Pass-Through Certificates Litig.*,
851 F.Supp.2d 746 (S.D.N.Y. 2012).........................................................20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................10

*Berry v. U. Sch. of Nashville*,
3:19-CV-00830, 2020 WL 3268732 (M.D. Tenn. June 17, 2020) .........................................18

*Birmingham Steel Corp. v. Tennessee Valley Auth.*,
353 F.3d 1331 (11th Cir. 2003) ...........................................................8

*Busby v. Bonner*,
No. 20-CV-2359-SHL, 2020 WL 4668756 (W.D. Tenn. July 24, 2020) ...................... *passim*

*Christianson v. Colt Indus. Operating Corp.*,
486 U.S. 800 ..............................................................................12

*In re Citigroup Bond Litig.*,
723 F. Supp. 2d 568 (S.D.N.Y. 2010)......................................................20

*De Vito v. Liquid Holdings Group, Inc.*,
CV156969KMJBC, 2018 WL 6891832 (D.N.J. Dec. 31, 2018) ...........................................19

*Dowell v. Bernhardt*,
No. 3:19-CV-00105, 2019 WL 6909461 (M.D. Tenn. Dec. 19, 2019) .................................17

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
No. 98CIV.4318(HB), 2000 WL 1357509 (S.D.N.Y. Sept. 20, 2000)....................................18

*Edmonds v. Smith*,
922 F.3d 737 (6th Cir. 2019) ............................................................12

iii

*In re Electrobras Sec. Litig.*,
    245 F. Supp. 3d 450 (S.D.N.Y. 2017) ...................................................................20

*Ent. Prods., Inc. v. Shelby Cty., Tenn.*,
    721 F.3d 729 (6th Cir. 2013) .........................................................................10

*In re EveryWare Glob., Inc. Sec. Litig.*,
    175 F.Supp.3d 837 (S.D. Ohio 2016) ...........................................................18

*In re FirstEnergy Corp. Secs. Litig.*,
    316 F. Supp. 2d 581 (N.D. Ohio 2004) ..........................................................3

*Gaynor v. Miller*,
    273 F. Supp. 3d 848 ............................................................................. *passim*

*Gaynor v. Miller*,
    No. 3:15-CV-545, 2019 WL 7899695 (E.D. Tenn. Dec. 6, 2019) ........................10

*Howard v. Wilkes & McHugh, P.A.*,
    No. 06-2833, 2008 WL 11410066 (W.D. Tenn. Mar. 18, 2008) ..........................16

*J & R Marketing, SEP v. General Motors Corp.*,
    549 F.3d 384 (6th Cir. 2008) .........................................................................11

*Johnson v. Dollar Gen. Corp.*,
    No. 2:06-CV-173, 2007 WL 2746952 (E.D. Tenn. Sept. 20, 2007) .......................10

*Limbright v. Hofmeister*,
    5:09-CV-107-KSF, 2010 WL 3385346 (E.D. Ky. Aug. 25, 2010) ....................2, 13

*Limbright v. Hofmeister*,
    No. 5:09-cv-107-KSF, 2010 WL 1740905 (E.D. Ky Apr. 27, 2010) ....................16

*Loc. 295/Loc. 851 IBT Emp'r Grp. Pension Tr. and Welfare Fund v. Fifth Third
    Bancorp.*,
    731 F. Supp. 2d 689 (S.D. Ohio 2010) ...........................................................11

*Louisville/Jefferson County Metro Govt. v. Hotels.com, L.P.*,
    590 F.3d 381 (6th Cir. 2009) .........................................................................10

*Natl. Bankers Tr. Corp. v. Peak Logistics LLC*,
    No. 12-2268-STA-TMP, 2013 WL 3070843 (W.D. Tenn. June 17, 2013) .............15

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    693 F. 3d 145 (2d Cir. 2012) .........................................................................19

*New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp.*,
    PLC, 709 F. 3d 109 (2d Cir. 2013) .................................................................20

*Peak v. Zion Oil & Gas, Inc.*,
　　3:18-CV-02067-X, 2020 WL 1047894 (N.D. Tex. Mar. 3, 2020) .........................................19

*Phillips v. Ford Motor Co.*,
　　435 F.3d 785 (7th Cir. 2006) .......................................................................................8

*Pinkerton's Inc. v. Shelly Pinkerton Corp.*,
　　No. 980-1609, 1999 WL 777683 (6th Cir. Sept. 15, 1999) .........................................9

*Premier Dealer Services, Inc. v. Allegiance Adm'rs, LLC*,
　　No. 2:18-CV-735, 2019 WL 1981864 (S.D. Ohio May 3, 2019) .............................16

*Rauch v. Day and Night Manufacturing Corp.*,
　　576 F.2d 697 (6th Cir.1978) ........................................................................................13

*Roan Valley, LLC v. Tennille & Assocs., Inc.*,
　　No. 2:12-CV-218, 2013 WL 12123536 (E.D. Tenn. Aug. 7, 2013) ..........................16

*Rowley v. McMillan*,
　　502 F.2d 1326 (4th Cir. 1974) ...................................................................................16

*Sherwood v. Tennessee Valley Auth.*,
　　3:12-CV-156, 2013 WL 2147180 (E.D. Tenn. May 16, 2013) ..................................9

*Stein v. U.S. Xpress Enterprises, Inc.*,
　　No. 1:19-CV-98, 2020 WL 3584800 (E.D. Tenn. June 30, 2020) ...........................11

*Williamson v. Recovery Ltd. P'ship*,
　　No. C2-06-292, 2009 WL 3172648 (S.D. Ohio Sept. 30, 2009) .............................16

### OTHER AUTHORITIES

17 C.F.R. § 230.430B ......................................................................................................25

17 C.F.R. § 230.439(a) ...................................................................................................21

5C Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1388.....................16

# INTRODUCTION

Defendant KPMG LLP's ("KPMG")'s Third Motion to Dismiss (ECF 187) ("Motion" or "3d MTD") conjures déjà vu. Nearly three years ago, KPMG filed a motion to dismiss raising the same arguments, based on nearly identical facts, as it now asserts in its latest improper motion to dismiss – arguments that this Court rejected in full. Undeterred, KPMG's claims that it is entitled to renew its baseless arguments "based on the new and revised allegations of the Third Amended Complaint", ECF No. 188 at 1 n.1 ("TAC"), filed at KPMG's request, which purportedly reflect "significant changes" from the Second Amended Complaint ("SAC"), ECF No. 192 at 3. This is nonsense. The only changes in the TAC are the substitution of Martin Ziesman and Eric Montague for Martin Weakley and Eric Montague as named plaintiffs, and the conformance of the class definitions to those agreed upon by the parties and that Magistrate Judge Poplin recommended be certified. As KPMG's counsel previously told the Court, "now, they're not amending. They're just trying to add new plaintiffs and remove old plaintiffs." ECF No. 164 at 9:25-10:2.

Based solely on the substitution of Mr. Ziesman for Mr. Weakley as a named plaintiff, KPMG claims again that Plaintiffs' Section 11 claims should be dismissed. *First,* KPMG seizes on the removal of "on or traceable to the Offerings," from one sentence in the TAC to argue that Plaintiffs have not adequately alleged standing. But that language was removed only because it is *superfluous* of identical language included later in the TAC. *See* TAC ¶ 313 ("[P]laintiffs . . . acquired securities in or traceable to the Shelf Registration Statement."). As the Court previously held, and KPMG admits, such an allegation is sufficient to confer Section 11 standing. 3d MTD at 10 n.5 (quoting *Gaynor v. Miller,* 273 F. Supp. 3d 848, 861-62). *Second*, KPMG again argues that the statute of repose bars Plaintiffs' claims on behalf of Series C preferred shareholders. But in its prior motion, KPMG made the very same argument. The Court rejected this argument and held that the statute of repose does not bar the Section 11 claim. ECF No. 76 ("MTD Order") at

1

30-31. Nothing about the substation of the named plaintiffs could or should change that result. "Even a casual observer would conclude that the present motion[] w[as] filed solely for the purposes of delay." *Limbright v. Hofmeister*, 5:09-CV-107-KSF, 2010 WL 3385346, at *3 (E.D. Ky. Aug. 25, 2010). Indeed, in an effort to prolong these proceedings even further, KPMG asked that the Court stay the proceedings on account of this motion, assuring the Court that their arguments were "new" and "were not raised in prior motions to dismiss." ECF No. 192 at 3. This is false. KPMG's arguments are, in fact, virtual carbon copies—often, word for word—of the arguments it raised in its prior motion to dismiss. And, as the Court has already decided, those arguments are also meritless. KPMG's Motion should be denied.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### I. Factual Background

#### A. The September 6, 2012 Registration Statement

On September 6, 2012, Miller Energy filed with the SEC a Form S-3 registration statement and prospectus (the "Registration Statement") using a "shelf" registration, or continuing registration process, through which Miller Energy would sell classes of securities on an ongoing basis. TAC ¶ 284; SAC ¶ 285. Pursuant to the Registration Statement, Miller Energy would file a prospectus supplement each time a class of securities was offered for sale and that prospectus supplement would provide the necessary disclosures about that particular offering of securities. *Id.* On September 18, 2012, the SEC declared the Registration Statement effective. *Id.*

In Item 12 of the Registration Statement, titled "Information Incorporated by Reference," Miller Energy told investors that the SEC rules permitted it to "incorporate by reference" certain

2

disclosures that Miller Energy filed with the SEC,[1] which would be "deemed to be part of this prospectus from the date of filing of such document."[2] In addition to a number of prior annual and quarterly filings, the information incorporated by reference included any "document or reports," including any audit reports, that Miller Energy subsequently filed under Section 13 of the Exchange Act:[3]

> Each document or report subsequently filed by us pursuant to [Section 13 of the Exchange Act] 1934 after the date hereof and prior to the termination of the offering of the securities shall be deemed to be incorporated by reference into this prospectus and to be a part of this prospectus from the date of filing of such document, unless otherwise provided in the relevant document. Any statement contained herein, or in a document all or a portion of which is incorporated or deemed to be incorporated by reference herein, shall be deemed to be modified or superseded for purposes of the registration statement and this prospectus to the extent that a statement contained herein or in any other subsequently filed document which also is or is deemed to be incorporated by reference herein modifies or supersedes such statement.

Miller Energy Form S-3, dated Sept. 6, 2012, at 12.[4]

In addition, in Item 17 of the Registration Statement, titled "Undertakings," Miller Energy told investors that any prospectus or reports incorporated by reference would be considered "post-effective amendments" to the Registration Statement, and for "the purpose of determining any liability" under Section 11 of the Securities Act, "deemed to be a new registration statement

---

[1] Citations in the form "Ex. __" are to the exhibits to the Declaration of Gordon Ball, filed concurrently with Plaintiffs' opposition, which are "SEC filings . . . not attached to a plaintiff's complaint . . . [that are] integral statements within the complaint.'" MTD Order at 7-8 (quoting *In re FirstEnergy Corp. Secs. Litig*., 316 F. Supp. 2d 581, 591 (N.D. Ohio 2004)). "Courts may take judicial notice of SEC filings when considering Rule 12(b)(6) motions when the documents are submitted to establish their contents rather than the truth of the statements contained therein." *Id.* (citation omitted).

[2] Ex. A (Miller Energy Form S-3, dated Sept. 6, 2012) at 12.

[3] *Id.*

[4] *See also id. at* II-2, II-3.

3

relating to the securities offered," and "the offering of such securities at that time shall be deemed to be the initial bona fide offering."[5]

As part of the Registration Statement, Miller Energy filed an exhibit titled "Consent of Independent Registered Public Accounting Firm", signed by KPMG, which read as follows:[6]

> We consent to the use of our reports dated July 16, 2012, with respect to the consolidated balance sheets of Miller Energy Resources, Inc. and subsidiaries as of April 30, 2012 and 2011, and the related consolidated statements of operations, stockholders' equity, and cash flows for the years then ended, and the effectiveness of internal control over financial reporting as of April 30, 2012, incorporated by reference herein and to the reference to our firm under the heading "Experts" in the prospectus.

**B.      The Prospectus Supplements**

Under the Registration Statement, from February 13, 2013 to August 21, 2014, Miller Energy issued three offerings of 10.75% Series C Cumulative Redeemable Preferred Stock ("Series C") and three offerings of 10.5% Series D Fixed Rate/Floating Rate Cumulative Redeemable Preferred Stock ("Series D"). TAC ¶ 285; SAC ¶ 286. For each of those six Offerings, Miller Energy issued a separate Prospectus Supplement, each of which told investors that the prospectus supplements incorporated by reference certain financial statements, including any audit reports and representations regarding internal controls signed by KPMG, that Miller Energy had filed with the SEC. TAC ¶ 28, 292-94; SAC ¶¶ 286, 293-95. Each prospectus supplement included a section titled "Experts," stating that the current and prior annual financial statements had been "incorporated by reference [] in reliance upon the reports of KPMG" and "upon the authority of such firm as experts in accounting and auditing." TAC ¶ 295; SAC ¶ 295.

---

[5] *Id.* at II-2, II-3.

[6] Ex. B (Ex. 23.1 to Miller Energy, Form S-3, dated Sept. 6, 2012).

4

**C. KPMG Consents to the Incorporation By Reference of its July 15, 2013 Audit Report to the Registration Statement**

On behalf of KPMG, Miller Energy filed a number of additional "Consent[s] of Independent Registered Public Accounting Firm" with the SEC, which incorporated KPMG's newly issued audit reports into the Registration Statement. For example, on July 15, 2013, Miller Energy filed the following Consent on behalf of KPMG:

> We [KPMG] consent to the incorporation by reference in the registration statements (No. 333-171106 and 333-184133) on Form S-8 and (No. 333-183750[7] and 333-184315) on Form S-3 of Miller Energy Resources, Inc. of our report dated July 15, 2013, with respect to the consolidated balance sheets of Miller Energy Resources, Inc. and subsidiaries as of April 30, 2013 and 2012, and the related consolidated statements of operations, stockholders' equity, and cash flows for each of the years in the three-year period ended April 30, 2013, and the effectiveness of internal control over financial reporting as of April 30, 2013, which report appears in the April 30, 2013 annual report on Form 10-K for Miller Energy Resources, Inc.

Ex. C (Consent of KPMG, LLP, dated July 15, 2013, Ex. 23.2 to 2013 Form 10-K).

**II. Procedural Background**

**A. KPMG Moves to Dismiss the Section 11 Claim on Statute of Repose Grounds, and Concedes that Plaintiffs Adequately Alleged Standing**

On October 20, 2017, KPMG filed its motion to dismiss the SAC. ECF No. 63. In that motion, KPMG argued that Plaintiffs' Section 11 claim brought on behalf of a proposed class of Preferred Stock (the "preferred shares") purchasers (the "Section 11 Claim" or "Count III")[8] should be dismissed because Martin Weakly, then a named plaintiff in this action, "had no authority to bring claims on behalf of" the preferred shareholders because he "lacked standing to bring such claims." ECF No. 64 at 23 n.18 (citing *In re Bank of Am. Corp. Sec., Derivative, &*

_____

[7] No. 333-183750 is the SEC identifier for the September 12, 2012 Registration Statement.

[8] KPMG conceded in its second motion to dismiss, and still concedes now (as it must), that Plaintiffs' have standing for their Section 10(b) claims on behalf of all common and preferred shareholders.

5

*Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 10-cv-275, 2011 WL 4538428 (S.D.N.Y. Sept. 29,

2011). *See also id*. at 38 n.22. Specifically, KPMG argued that Mr. Weakley could not establish

standing because he "did not purchase directly in any of the relevant offerings" and "[a]s an after-

market purchaser, he cannot show that the particular shares he purchased are traceable to any of

the particular securities offerings on which he sues." *Id.* Notably, however, KPMG conceded that,

as the Court held in *Gaynor*, "the standard for pleading traceability for Section 11 is more lenient

than the standard applicable to Section 12" and "that an allegation that a plaintiff purchased shares

'pursuant to and/or traceable to' the offerings is adequate at the pleading stage." *Id.*

KPMG also argued that the Section 11 Claim should be dismissed as barred by the statute

of repose.  Specifically, KPMG argued that both the Series C and Series D preferred shares were

"bona fide offered more than three years prior to the filing of the [complaint]." *Id* at 1.  KPMG

acknowledged that for auditors, the SEC rules provide the relevant date for purposes of the statute

of limitations is the "date that the original registration statement was declared effective, not the

date of the prospectus supplement." *Id.* at 27-28 (citing 17 C.F.R. § 230.430B(f)(5)(i)). It further

acknowledged that, as the Court explained in *Gaynor*, if a prospectus supplement "contains new

audited financial statements " the effective date for purposes of auditor liability is the date of that

prospectus supplement. *Id.* at 28 (citing 17 C.F.R.§ 230.430B(f)(5)(i)). But it argued that this rule

did not apply in this case, because "Plaintiffs acknowledge that the May 7, 2013 and June 27, 2013

prospectus supplements [for the Series C Preferred Stock] did *not* incorporate new audited

financial statements beyond those incorporated into the Registration Statement." *Id.*[9]

---

[9] KPMG also acknowledged that Plaintiffs alleged that the September 25, 2013 and
October 17, 2013 prospectus supplements [for the Series D Preferred Stock] incorporated new
audited financial statements, but KPMG argued that those prospectus supplements were "still more
than three years prior to the date of the SAC." *Id.* at 28.

**B. The Court Denies KPMG's Motion to Dismiss, Rejecting KPMG's Lead Plaintiff and Statute of Repose Arguments**

On August 2, 2018, the Court denied KPMG's motion to dismiss the Section 11 Claim.[10] MTD Order at 25-32. The Court rejected KPMG's argument that the Section 11 should be dismissed because Mr. Weakley was "not authorized to serve as lead plaintiff[,]" explaining that raising the issue was "premature" as Plaintiffs "have yet to move to certify the class." *Id.* at 27. For that reason, the Court stated that KPMG "may move for leave to refile the motion to dismiss the Section 11 claim on this basis alone after the issue of class certification has been raised by the parties or ruled on by this Court." *Id.* And, because KPMG conceded Mr. Weakley's standing to bring Section 11 claims based on Plaintiffs' allegation that he purchased his Series C and Series D shares pursuant or traceable to the Series C and Series D Offerings, the Court did not need to specifically address KPMG's standing argument.

The Court likewise rejected KPMG's repose argument. *Id.* at 28-30. As the Court explained, while the SAC added new allegations regarding the preferred shares and were a "new claim" for purposes of Rule 15, the preferred shares arose out of the same offering document, the Registration Statement, as alleged in the original complaint and thus satisfied the "relation back" requirements of Rule 15. *Id.* at 29-30. Because the SAC "relates back" to the original complaint, the Court held that the Section 11 claim was not barred by the statute of repose. *Id.* at 31. As Plaintiffs alleged that the September 25, 2013, October 27, 2013, and August 20, 2014 prospectus supplements "incorporated new audited financial statements," the Court held that the relevant date for repose purposes was the date of the prospectus supplements. *Id.* at 31. Because the original

---

[10] The Court granted KPMG's motion to dismiss only with respect to Count II. ECF No. 76 at 25, at 24-25. In accordance with that ruling, Plaintiffs are no longer (and have not been) pursuing that claim and, thus, do not address KPMG's argument with regard to Count II here.

7

complaint was filed on March 14, 2016, which is less than three years after the September 25, 2013 prospectus supplement, "the statute of repose does not bar the Section 11 claim." *Id.*

### C.     KPMG Files its Answer to the SAC

On September 7, 2018, KPMG filed an answer to the SAC asserting a number of "affirmative and other defenses," including (1) "[t]he SAC fails to state any claim upon which relief can be granted"; (2) "[t]he claims are barred by the applicable statutes of limitation and statutes of repose"; (3) "Plaintiffs lack standing to assert the claims"; and (4) "Plaintiffs cannot trace the Securities they purchased to the registration statement." ECF No. 78. at 41 (the "First Answer").

### D.     Plaintiffs File Motion to Certify the Classes and, at KPMG Demand, Motion to Substitute

In March 2019, Plaintiffs filed a motion for class certification and, at KPMG's demand,[11] a motion to substitute two of the named plaintiffs—Kenneth Martin and Martin Weakley—by naming Eric Montague and Martin Ziesman as Class Representatives. ECF No. 101.[12] On June 29, 2020, Magistrate Judge Poplin issued an Order granting the Motion to Substitute. ECF No. No. 167 (the "Substitution Order").   In the Substitution Order, Magistrate Judge Poplin ordered

---

[11] As is regular practice in securities class actions, Plaintiffs would have only filed a motion to certify with the names of their requested class representatives, reflecting any necessary substitutions. *See, e.g.*, *Phillips v. Ford Motor Co.*, 435 F.3d 785, 787 (7th Cir. 2006) (holding that "[s]ubstitution of unnamed class members for named plaintiffs who fall out of the case because of settlement or other reasons is a common and normally an unexceptionable ("routine") feature of class action litigation . . . in the federal courts[.]" and collecting cases); *Birmingham Steel Corp. v. Tennessee Valley Auth.*, 353 F.3d 1331, 1342 (11th Cir. 2003) (holding that a district court abused its discretion by refusing to permit substitution of a class representative after discovery had been completed, numerous pretrial motions had been resolved, and the case was ready for trial).

[12] In the Motion to Substitute, Plaintiffs explained that Mr. Cosby would "remain a Lead Plaintiff in this Action." *Id.* at 1 n.1.

Plaintiffs to file an amended complaint within 15 days to reflect the change of Plaintiffs. KPMG did not appeal the Substitution Order.[13]

The same day, Magistrate Judge Poplin also issued a Report & Recommendation (the "R&R") that the Court grant the Motion to Certify. ECF No. 172. In the R&R, Magistrate Judge Poplin found that the Plaintiffs were adequate and typical class representatives. *Id*. at 64-69. She also held that the Plaintiffs had standing to represent the Section 11 Class, explaining that "Defendant's argument is not well taken" because the issue "is better addressed through dispositive motion practice as opposed to an issue for class certification." *Id.* at 74.

On July 13, 2020, in accordance with the Substitution Order, Plaintiffs filed a Third Amended Complaint (the "TAC") to reflect the substitution of Mr. Ziesman and Mr. Montague for Mr. Weakley and Mr. Martin. ECF No. 174. Aside from substituting the parties, the only other substantive change in the TAC was to conform the class definitions to reflect language negotiated by the parties and included in Plaintiffs' motion to certify, and which Magistrate Judge Poplin recommended be certified.

### E. In Violation of the Court's Orders, KPMG Files its Third Motion to Dismiss on Grounds Identical to its Second Motion to Dismiss

On July 27, 2020, despite the Court's order denying KPMG's motion to dismiss, as well as the Court's orders staying the proceedings and limiting the scope and timing of any renewed motion to dismiss, KPMG filed a third motion to dismiss, ECF No. 181, relying on the same grounds and factual allegations in its prior motion to dismiss. *See infra* 13-15, 18, 21-23.

---

[13] Because KPMG did not appeal the Substitution Order, KPMG "waive[d] the claim that the magistrate judge erred." *Sherwood v. Tennessee Valley Auth.*, 3:12-CV-156, 2013 WL 2147180, at *1 (E.D. Tenn. May 16, 2013) (citing *Pinkerton's Inc. v. Shelly Pinkerton Corp.,* No. 980-1609, 1999 WL 777683, at *4 (6th Cir. Sept. 15, 1999)).

## LEGAL STANDARDS

### A.     Reconsideration of Prior Orders

Under the law-of-the-case doctrine, "a decision on an issue made by a court at one stage of a case should be given effect in successive stages of the same litigation." *Gaynor v. Miller*, No. 3:15-CV-545, 2019 WL 7899695, at *3 (E.D. Tenn. Dec. 6, 2019) (Varlan, J.); *Adkisson v. Jacobs Eng'g Group, Inc.*, No. 3:13-CV-505, 2018 WL 4006782, at *1 (E.D. Tenn. Aug. 22, 2018) (Varlan, J.) (The law-of-the-case doctrine "generally 'precludes reconsideration of issues decided at an earlier stage of the case.'"). Thus, the Court should reconsider its prior order only to the extent Defendant shows "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Ent. Prods., Inc. v. Shelby Cty., Tenn.*, 721 F.3d 729, 742 (6th Cir. 2013) (citing *Louisville/Jefferson County Metro Govt. v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009)); *accord Hammer,* No. 3:04–CV–392, 2014 WL 3507339, at *4 (E.D. Tenn. July 14, 2014).

### B.     Motions to Dismiss Under Rule 12(b)(6) and Section 11 of the Securities Act

"Assuming the Court decides to reconsider its original ruling, in reviewing the motion for reconsideration of a motion to dismiss, the Court will use the standard for the underlying motion, namely the Rule 12(b)(6) standard." *Johnson v. Dollar Gen. Corp.*, No. 2:06-CV-173, 2007 WL 2746952, at *2 (E.D. Tenn. Sept. 20, 2007).  "In ruling on a Rule 12(b)(6) motion to dismiss, a court must construe the second amended complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and draw all reasonable inferences in favor of the plaintiff." MTD Order at 4 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Detailed factual allegations are not required, but a party's 'obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions.'" *Id.* (citation omitted). "The

10

Court's task is to determine whether the second amended complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.*

Section 11 of the Securities Act of 1993 "imposes liability on persons who sign securities registration statements containing untrue statements of material fact or omissions of material fact." *Loc. 295/Loc. 851 IBT Emp'r Grp. Pension Tr. and Welfare Fund v. Fifth Third Bancorp.*, 731 F. Supp. 2d 689, 704 (S.D. Ohio 2010) (citing *J & R Marketing, SEP v. General Motors Corp.,* 549 F.3d 384, 390 (6th Cir. 2008)). If a material misstatement or omission can be established, "[l]iability ... is virtually absolute, even for innocent misstatements' because § 11 does not require proof 'that the defendant acted with scienter.'" *Stein v. U.S. Xpress Enterprises, Inc.*, No. 1:19-CV-98, 2020 WL 3584800, at *9 (E.D. Tenn. June 30, 2020) (citation omitted). "In order to state a claim for relief under Section 11, the plaintiff must allege facts showing that: (1) he purchased a registered security, either directly from the issuer or in the aftermarket following the offering; (2) the defendant participated in the offering in a manner sufficient to give rise to liability under Section 11; and (3) the registration statement contained an untrue statement of a material fact or omitted either a material fact required to be stated therein or a material fact necessary to make the statements therein not misleading." *Gaynor*, 273 F. Supp. 3d at 859–60 (citation omitted).

## **ARGUMENT**

### I.  **KPMG's Third Motion to Dismiss Should Be Stricken or Denied as Duplicative, Untimely, and Unauthorized**

KPMG's motion is untimely, duplicative, and unauthorized, and thus should be stricken or denied as a matter of law.

KPMG's motion "runs afoul of the caution against redundancy and the doctrine of the 'law of the case.'" *Busby v. Bonner*, No. 20-CV-2359-SHL, 2020 WL 4668756, at *2 (W.D. Tenn. July

11

24, 2020); Fed. R. Civ. P. 12(g)(2) ("[A] party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.");[14] *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 815–16 ("[T]he doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"); *Edmonds v. Smith*, 922 F.3d 737, 739 (6th Cir. 2019) (noting that "findings made at one stage in the litigation should not be reconsidered at subsequent stages of that same litigation").

KPMG's third motion to dismiss raises the exact same arguments, based on virtually identical facts and allegations, as its second motion to dismiss—arguments this Court considered and rejected. *See infra* 13-15, 18, 21-23. Specifically, in its second motion to dismiss, KPMG asserted that Mr. Weakley, then a named plaintiff in this case, "lack[ed] standing to assert the Section 11 claim." 2d MTD at 38 n.22; *see also id.* at 23 n.18 (arguing that Mr. Weakley was not "authorized to serve as lead plaintiff" on behalf of "a proposed class of purchasers of the preferred stock of Miller Energy," because he "lacked standing to bring such claims."). KPMG claimed that because Mr. Weakley was an "after-market purchaser," he could not "show that the particular shares he purchased are traceable to any of the particular securities offerings on which he sues." *Id.* Despite these assertions, KPMG conceded that it was "not seeking dismissal for Plaintiffs' lack of standing at this time," because the allegation in the SAC that "a plaintiff purchased shares 'pursuant to and/or traceable to' the offerings is adequate at the pleading stage." *Id.* at 38 n.22. Now, in its third motion to dismiss, KPMG asserts the same arguments, based on the same allegations, against Mr. Ziesman, as shown in the following chart:

---

[14] Under Rule 12(h)(2), successive motions to dismiss under Rule 12(b)(6) may only be raised in (a) a pleading, (b) a motion for judgment on the pleadings, or (c) at trial. Fed. R. Civ. P. 12(h)(2).

| **SECOND MOTION TO DISMISS** | **THIRD MOTION TO DISMISS** |
|---|---|
| "Mr. Weakley lacks standing to assert the Section 11 claim." p. 38 n.22. | "Mr. Ziesman lacks standing to assert the Section 11 claim." p. 9. |
| "[Mr. Weakley] did not purchase directly in any of the relevant offerings . . ."p. 38 n.22. | Mr. Ziesman made a single purchase of 1,000 Series C shares on June 4, 2014, which is not the date of any of the offerings at issue here." p. 9. |
| "As an after-market purchaser, he cannot show that the particular shares he purchased are traceable to any of the particular securities offerings on which he sues." p. 38 n.22. | In other words, Mr. Ziesman purchased in the aftermarket. In fact, Mr. Ziesman cannot trace his shares to either of the two Series C offerings at issue in this case . . ." p. 9. |
| "Given that he is not even attempting to bring a claim based on the February 13, 2013 Offering [], he cannot deny that there were pre-existing preferred shares in the market at the time of his purchases." p. 38 n.22. | Mr. Ziesman has admitted that there were multiple prior offerings of Series C preferred stock and that his shares could have come from any one of those offerings that are not at issue in the case . . ." p. 9. |

Given that KPMG relies on the same arguments and allegations as it did in its prior motion, "[t]he defense[] [KPMG] raise[s] now were available at that time" and "the filing of the [TAC] did "not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading." *Limbright v. Hofmeister*, No. 5:09-CV-107-KSF, 2010 WL 3385346, at *3 (E.D. Ky. Aug. 25, 2010) (quoting *Rauch v. Day and Night Manufacturing Corp.,* 576 F.2d 697, 701, n. 3 (6th Cir.1978)).

KPMG also argued in its second motion to dismiss that Plaintiffs' Section 11 claim violated the three-year statute of repose. Specifically, KPMG argued that the Section 11 claim was barred since the effective date of the shelf registration statement, which KPMG claimed was September 18, 2012, was more than three years before Plaintiffs' initial complaint was filed. 2d MTD at 27-28. KPMG acknowledged that, under SEC regulations, in certain circumstances, the "effective date" of a registration statement is deemed to be the date of a subsequent prospectus supplement.

13

*Id.* For instance, under 17 C.F.R. § 230.430B(f)(5)(i), for claims against auditors, the repose period is measured from the date of a prospectus supplement if it includes "new audited financial statements." *Id.* But KPMG argued that provision did not apply to the prospectus supplements offering the Series C Preferred Stock, because those supplements "did not incorporate new audited financial statements beyond those incorporated into the Registration Statement." *Id.* at 28 (citing SAC ¶ 189). KPMG raises the exact same argument in its third motion to dismiss, as shown in the following chart:

| **SECOND MOTION TO DISMISS** | **THIRD MOTION TO DISMISS** |
|---|---|
| "Second, as the preferred shares were bona fide offered more than three years prior to the filing of the SAC, the claim is barred by the three-year statute of repose." p. 1. | "First, because the Series C preferred shares that Mr. Ziesman purchased were bona fide offered to the public . . . more than three years prior to the filing of the initial complaint in this case, the claim is barred by the three-year statute of repose." p. 1. |
| "[T]he Section 11 claim is barred by both the three-year statute of repose . . ." p. 25. | "Mr. Ziesman's Section 11 claim . . . is barred by the statute of repose . . ." p. 4. |
| "The Section 11 claim in the SAC is barred by the three-year statute of repose in Section 13 of the Securities Act, which provides that "[i]n no event shall any such action be brought to enforce a liability created under Section 11 . . . more than three years after the security was bona fide offered to the public." p. 27. | "Mr. Ziesman's Section 11 claim is untimely . . . under the statute of repose. . . Section 13 of the Securities Act provides that "[i]n no event shall any such action be brought to enforce a liability created under Section 11 . . . more than three years after the security was bona fide offered to the public." p. 4 |
| "[T]he SEC rules provide that the date on which securities are bona fide offered to the public for purposes of a Section 11 claim against an accounting firm is the date that the original registration statement was declared effective, not the date of the prospectus supplement." pp. 27-28. | "Under SEC rules, the date on which securities are bona fide offered to the public for purposes of a Section 11 claim against an accounting firm is the date that the original registration statement was declared effective, not the date of a prospectus supplement." p. 5. |

14

| **SECOND MOTION TO DISMISS** | **THIRD MOTION TO DISMISS** |
|---|---|
| "The rule contains an exception for a prospectus supplement that 'contains new audited financial statements or other financial information as to which the accountant is an expert and for which a new consent is required pursuant to section 7 of the Securities Act,'", but the exception does not help Plaintiffs." p. 28. | "There is an exception, but only where a prospectus supplement "contains new audited financial statements or other financial information as to which the accountant is an expert and for which a new consent is required pursuant to section 7 of the Securities Act." That exception does not apply." p. 5. |
| "Plaintiffs acknowledge that the May 7, 2013 and June 27, 2013 prospectus supplements did not incorporate new audited financial statements beyond those incorporated into the Registration Statement." p. 28. | "Plaintiffs allege . . . that the prospectus supplements . . . dated February 13, 2013, May 7, 2013, and June 27, 2013 did not incorporate any new audited financial statements beyond those that had been included in the registration statement." p. 6. |

The Court rejected that argument, holding that the "statute of repose does not bar the Section 11 claim", because "Plaintiffs allege that the September 25, 2013, October 17, 2013, and August 20, 2014, prospectus statements incorporated new audited financial statements," rendering September 25, 2013 to be effective date of the registration statement, which was well within the three-year repose period. MTD Order at 30-31. Accordingly, KPMG's request that it "should be able to raise the same legal arguments as to new Plaintiffs directly contradicts the doctrine of 'the law of the case,'" and should be rejected. *Busby*, 2020 WL 4668756, at *2 (declining to revisit its prior dismissal order because "Defendants are not merely raising those defenses again, but they are repeating the same case law, facts and legal theories").

Further, under Rule 12(b), a motion to dismiss "must be made *before pleading* [answer] if a responsive pleading is allowed." *Natl. Bankers Tr. Corp. v. Peak Logistics LLC*, No. 12-2268-STA-TMP, 2013 WL 3070843, at *3 (W.D. Tenn. June 17, 2013). Following the Court's denial of its second motion to dismiss, KPMG answered the SAC on September 7, 2018. ECF No. 78.

15

Thus, having filed their answer first, Defendants' 12(b)(6) motion is untimely and unauthorized." *Limbright v. Hofmeister*, No. 5:09-cv-107-KSF, 2010 WL 1740905, *3 (E.D. Ky Apr. 27, 2010).

It makes no difference that Plaintiffs subsequently filed the TAC, because that amendment was made solely at Magistrate Poplin's request to effectuate only the substitution of Mr. Ziesman for Mr. Weakley and all of the remaining allegations remain unchanged.[15] *Busby*, 2020 WL 4668756, at *2 (holding filing of amended complaint to include new named plaintiffs and to modify the definition of the classes did "not excuse Defendants' needless filing," added no claims or legal theories, and thus changed nothing as to the previous ruling"); *Premier Dealer Services, Inc. v. Allegiance Adm'rs, LLC*, No. 2:18-CV-735, 2019 WL 1981864, at *3 (S.D. Ohio May 3, 2019) ("[T]he filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in a timely fashion prior to the amendment of the pleading.") (quoting 5C Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1388).[16]

Further, even if KPMG's successive motion were otherwise permissible, KPMG violated this Court's order on its second motion to dismiss. As KPMG acknowledged in its response to Plaintiffs' motion to substitute, this Court ordered that KPMG would be permitted to seek "leave to refile the motion to dismiss" *only after* "the issue of class certification has been raised" and *only*

---

[15] Further, Defendants also filed an answer to the Third Amended Complaint. ECF No. 182.

[16] *Roan Valley, LLC v. Tennille & Assocs., Inc.*, No. 2:12-CV-218, 2013 WL 12123536, at *2 (E.D. Tenn. Aug. 7, 2013) ("[T]he filing of an amended complaint does not revive the available but not previously timely asserted defenses."); *Limbright v. Hofmeister*, 2010 WL 1740905, at *2-3; *Williamson v. Recovery Ltd. P'ship*, No. C2-06-292, 2009 WL 3172648, at *2-3 (S.D. Ohio Sept. 30, 2009); *Howard v. Wilkes & McHugh, P.A.*, No. 06-2833, 2008 WL 11410066, at *3 (W.D. Tenn. Mar. 18, 2008) ("Filing an amended complaint will not automatically revive the right to raise defenses and objections that were available but not asserted in a timely fashion prior to the amendment.") (citing *Rowley v. McMillan*, 502 F.2d 1326, 1333 (4th Cir. 1974)).

16

as to the suitability of the lead plaintiff to represent the class—and that "*basis alone*." ECF No. 115 at 13-14 (quoting MTD Order at 27 ("[KPMG] may move for leave to refile the motion to dismiss the Section 11 claim on this basis alone after the issue of class certification has been raised by the parties or ruled on by this Court.")). The "suitability of the lead plaintiffs" does not include whether the Plaintiffs have standing, since KPMG conceded that they do in its second motion to dismiss on the same grounds that they assert here or whether the statute of repose has run.

For these reasons, Defendant's successive motion to dismiss is improper and unauthorized and should be denied or stricken. *Dowell v. Bernhardt*, No. 3:19-CV-00105, 2019 WL 6909461, at *6 (M.D. Tenn. Dec. 19, 2019) (striking successive motion to dismiss under the court's "inherent authority to strike any filed paper which it determines to be abusive *or otherwise improper* under the circumstances").

## II.     In the Alternative, the Court Should Deny the Motion to Dismiss

Even if the Court considers KPMG's successive motion to dismiss, it should be denied. First, KPMG's standing argument fails because KPMG has conceded (twice) that the allegations in the TAC are sufficient at the pleading stage. Second, KPMG's statute-of-repose argument fails for the same reasons set forth in this Court's prior order.

### A.     The TAC Adequately Alleges that Mr. Ziesman Has Standing to Assert the Section 11 Claim

#### 1.     *Legal Standards for Section 11 Standing*

"To have standing to bring suit under Section 11, a plaintiff must have purchased stock in the offering at issue, or trace later-purchased stock back to that offering." *Gaynor*, 273 F. Supp. 3d at 860 (Varlan, J.) (citation omitted). A Section 11 claim "'can be brought by anyone who purchased stock under a registration statement, regardless of when the purchase was made,' *including aftermarket purchasers*." *Id*. (emphasis added; citation omitted). "Thus, '[t]o have

17

standing under Section 11, a plaintiff who has purchased a security must plead traceability, meaning that she must show that the securities she purchased were registered under, or traceable to, the false and misleading registration statement at issue.'" *Id.* (quoting *In re EveryWare Glob., Inc. Sec. Litig.*, 175 F.Supp.3d 837, 864 (S.D. Ohio 2016)).

      2.    *KPMG Concedes That the Allegations Are Sufficient to Allege Section 11 Standing*

As KPMG has twice acknowledged, "an allegation that a plaintiff purchased shares 'pursuant to and/or traceable to' the offerings is adequate at the pleading stage" to establish standing. 3d MTD at 10 n.5 (quoting *Gaynor,* 273 F. Supp. 3d at 861-62); 2d MTD at 38 n.22 (same).[17] Plaintiffs do exactly that in the TAC, alleging (as in the SAC) that Plaintiffs "acquired securities *in or traceable to* the Shelf Registration Statement." TAC ¶ 313; *see* SAC ¶ 314. As this Court held in *Gaynor,* and as KPMG concedes, that is all that is required. 3d MTD at 10 n.5 (quoting *Gaynor,* 273 F. Supp. 3d at 861-62).

Undeterred, KPMG now curiously claims that Plaintiffs omitted the "pursuant to and/or traceable to" allegation from the TAC. *Id.*[18] According to KPMG, in the SAC, Plaintiffs alleged

---

[17] It is also sufficient to establish standing at the class certification stage. *See* R&R at 74 n.17 ("Courts have repeatedly certified classes where the class representatives had not invested in all of the subject securities.") (quoting *In re Dreyfus Aggressive Growth Mut. Fund Litig.,* No. 98CIV.4318(HB), 2000 WL 1357509, at *3 (S.D.N.Y. Sept. 20, 2000).

[18] KPMG also claims that in their depositions, Mr. Ziesman and Plaintiffs' expert for class certification, Chad Coffman, "agreed" with KPMG's expert, Dr. Attari, that Mr. Ziesman's shares "cannot be traced to the particular offerings that are at issue in this litigation." 3d MTD at 9. This purported evidence is outside the pleadings and thus should not be considered. *Berry v. U. Sch. of Nashville*, 3:19-CV-00830, 2020 WL 3268732, at *2 (M.D. Tenn. June 17, 2020) ("As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under [Rule] 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56."). It is also false. Mr. Ziesman merely testified that he did not recall which offerings he was aware of when he purchased the securities, not that his purchases *could not be* traced to the registration statement, especially with the benefit of discovery. Ziesman Dep Tr. at 59:5-10. And when asked about Mr. Ziesman's purchases, Mr. Coffman testified that Mr. Ziesman's purchases "had to come

18

in an introductory paragraph (¶ 16) identifying the parties that Mr. Weakley purchased his shares "on or traceable to the offerings at issue. *Id.* (citing SAC ¶ 16). KPMG claims that in the TAC, Plaintiffs "deleted" this language and thus "do not allege that Mr. Ziesman purchased 'on or traceable to' the offerings at issue." *Id.*

This is incorrect, of course, because Plaintiffs *did* allege that. TAC ¶ 313 ("[P]laintiffs . . . acquired securities in or traceable to the Shelf Registration Statement."). To be sure, Plaintiffs removed the "on or traceable" language from the introductory paragraph, but this was only because it was superfluous of *identical existing language* that appears later in the substantive section of the complaint addressing the Section 11 claim.[19] Because KPMG concedes both in its second motion to dismiss and third motion to dismiss – as it must – that the allegation that the plaintiff purchased or acquired securities *in or traceable to* the Shelf Registration Statement, is sufficient to allege standing for Section 11, KPMG's motion to dismiss on this ground should be denied.[20]

---

from one of the offerings" but that he did not know from which offering at this time because it was "not an issue [he'd] investigated" yet. Coffman Dep. Tr. at 266:11-267:5. Nor did KPMG's expert, Dr. Attari, make any statement in his report; in fact, Dr. Attari acknowledged that Mr. Ziesman "might be a member of the proposed Section 11 Class (if he can trace his shares to [the] offering)." Attari Rep. ¶ 85d-e.

[19] This language was removed during the process of making changes to reflect the substitution of Mr. Ziesman for Mr. Weakley. *Compare* TAC ¶ 16 *with* SAC ¶ 16.

[20] For the same reason, it is irrelevant that "no current plaintiff in this case purchased the Series D preferred stock." 3d MTD at 8. As KPMG's own cited cases explain, "*every* 'party named 'lead plaintiff' under the PSLRA need not have standing to sue on each individual claim asserted in the complaint so long as other named plaintiffs have standing to pursue the claims at issue." *De Vito v. Liquid Holdings Group, Inc.*, CV156969KMJBC, 2018 WL 6891832, at *14 n.13 (D.N.J. Dec. 31, 2018); *Peak v. Zion Oil & Gas, Inc.*, 3:18-CV-02067-X, 2020 WL 1047894, at *6 (N.D. Tex. Mar. 3, 2020) (dismissing Section 11 claim where none of the named plaintiffs had standing in their own right). Indeed, courts routinely hold that a class representative has standing to represent class members who have purchased a different security where all of the securities issued involve the same registration statement or misleading statements or omissions. *See, e.g., NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F. 3d 145, 162 (2d Cir. 2012) ("a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct

### B.     Plaintiffs' Section 11 Claim is Timely

#### 1.     *Standard of Repose for Section 11 Claims*

The Securities Act provides that, "[i]n no event shall any such action be brought to enforce

a liability created under section 77k or 77l(a)(1) of this title more than three years after the security

was bona fide offered to the public." 15 U.S.C. § 77m. Under SEC rules, the meaning of the "bona

fide offering date" is either (1) the effective date of the initial registration, or (2) the date of a post-

effective registration statement amendment. *See* 17 C.F.R. § 230.430B(f). Determining which of

these two dates applies depends on the identity of the defendant and the circumstances, involving

several overlapping regulations, two of which govern claims against auditors.

*First*, under Rule 430B(f)(5), the relevant date is the date of any offering document at issue,

whether a registration statement or prospectus supplement, for which the auditor is required to

---

implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants."); *In re Electrobras Sec. Litig.*, 245 F. Supp. 3d 450, 461 (S.D.N.Y. 2017) (holding that a plaintiff who only purchased American Depository Shares, akin to common stock, could bring claims on behalf of bondholders, despite not being bondholders themselves); *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp.*, PLC, 709 F. 3d 109, 162-64 (2d Cir. 2013) (holding that where an issuer had issued multiple securities under the same shelf registration statement, a plaintiff who had invested in only some of those securities could bring claims based on securities in which it had not invested so long as all of the relevant claims implicated the same set of concerns); *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 851 F.Supp.2d 746, 778 (S.D.N.Y. 2012) (finding that a plaintiff need not further establish tranche standing to represent a class whose members invested in traches in which the lead plaintiff did not invest); *In re Am. Int'l. Grp., Inc*., 741 F.Supp.2d 511, 538 (S.D.N.Y.) (holding that a named plaintiff can represent purchasers from the offerings the named plaintiff did not purchase in when the plaintiffs "do not rely on the information furnished in the prospectus and pricing supplements unique to each of the  . . . offerings but rather on the alleged material misstatements and omissions found in the common elements of the . . . different registration statements."); *In re Citigroup Bond Litig*., 723 F. Supp. 2d 568, 584085 (S.D.N.Y. 2010) (holding that "where a plaintiff alleged untrue statements in the shelf registration statements or the documents incorporated therein – as opposed to an alleged untrue statement in a supplemental prospectus unique to a specific offering – then that plaintiff has standing to raise claims on behalf of all purchasers from the shelf").

provide consent under the Securities Act. 17 C.F.R. § 230.430B(f)(5)(i). Because a registration statement must include, to be effective, audited financial statements and an auditor's report which requires the consent of the auditor, the date of the registration statement is automatically the first relevant date. But if a prospectus supplement includes "new audited financial statements or other financial information," for which consent is required, then the date of the prospectus supplement is the relevant date. *Id.*

*Second,* under Rule 430B(f)(3), the relevant date for any registration statement is the date of any annual Form 10-K filed subsequently to the effective date so long as any shares remain unsold under the registration statement. *Id.* § 230.430B(f)(3) (relevant date is the "date at the time of [any] report or opinion of any person . . . whose consent would be required" is "deemed to be part of the registration statement"). Under Item 512 of Regulation S-K, any registration statement filed on Form S-3 must incorporate by reference all periodic and current reports filed under the Exchange Act subsequent to the effective date of the registration statement. 17 C.F.R. § 229.512(b). Typically, a Form 10-K, which must include audited financial statements and an auditor's report, does not also have to include an auditor's consent. Rule 439(a) and Item 601 of Regulation S-K both require the consent of experts to be filed with a Form 10-K. Regulation S-K, Item 601, Exhibit Table, footnote 2, 17 C.F.R. § 229.601. Thus, when an auditor's opinion is included in a Form 10-K, as it has to be, and is incorporated by reference into a previous Form S-3, Item 512 of Regulation S-K requires that the registration statement is deemed effective as of the filing of the Form 10-K.

2. *The Section 11 Claim was Filed Less Than Three Years After the Preferred Securities Were Bona Fide Offered*

"This Court has already decided this question," admits KPMG, 3d MTD at 6—and indeed it has. In its order denying KPMG's motion to dismiss, this Court held that "the Section 11 claim

21

is not barred by the statute of repose." MTD Order at 30. Because "Plaintiffs allege that the September 25, 2013, October 17, 2013, and August 20, 2014, prospectus statements incorporated new audited financial statements," the statute of repose would expire, at the earliest, on September 25, 2016. MTD Order at 31. As the original complaint was filed on March 14, 2016, "the statute of repose does not bar the Section 11 claim." *Id.*

Despite this order, KPMG raises the identical argument, relying on the exact same factual allegations, as their prior motion to dismiss. 3d MTD at 6; 2d MTD at 28. In both motions, KPMG argues that the "prospectus supplements . . . [dated] May 7, 2013 and June 27, 2013, did <u>*not*</u> incorporate new financial statements." 3d MTD at 6 (emphasis in original); *see* 2d MTD at 28 ("[T]he May 7, 2013 and June 27, 2013 prospectus supplements did *not* incorporate new audited financial statements").

There is one difference between the two motions: KPMG's *reasoning* for why the Court should ignore the three prospectus supplements—September 25, 2013, October 17, 2013, and August 20, 2014—that, as KPMG admits, incorporated "new audited financial statements." In its prior motion, KPMG relied solely on its relation back argument, arguing that any claims based on those prospectus supplements would be barred, because the relevant date was the date of the SAC (September 15, 2017), not the date of the original complaint (March 14, 2016). 2d MTD at 28 ("[T]he dates of those prospectus supplements are still more than three years prior to the date of the SAC (September 15, 2017)."). But the Court rejected KPMG's relation back argument, which the Court concluded was fatal to KPMG's repose argument, and KPMG does not raise it again here. *See* MTD Order at 30 ("Because the Court finds that the second amended complaint relates back to the original complaint under Rule 15, the Court also finds that the Section 11 claim is not barred by the statute of repose.").

22

Unable to rely on its relation back argument, KPMG grasps for another reason that the Court should ignore those prospectus supplements (and the Court's own opinion and law of the case). This time, KPMG argues that those prospectus supplements are irrelevant because they "were for offerings of *Series C* preferred stock and [] the offerings after that date were for *Series D* preferred stock." 3d MTD at 5. KPMG even suggests that the Court's opinion was limited solely to "the offerings of Series D preferred stock, which the then-named plaintiff Martin Weakly purchased, . . . that incorporated new audited financial statements." 3d MTD at 7. But the Court made no such distinction between the Series C and Series D stock in its opinion. Nor, for that matter, did KPMG. 2d MTD at 28 ("The Section 11 claim is barred in its entirety…"). In any event, such a distinction would not have made sense, because Mr. Weakley purchased *both* Series C and Series D shares. SAC ¶ 16. If KPMG in fact believed that claims based on Series C and Series D shares had to be treated as two distinct claims, each having different repose periods, "there is no reason [KPMG] could not have raised [this] argument[] in their original Motion to Dismiss." *Busby*, 2020 WL 4668756, at *2. But it did not—and there are no mulligans in federal court.

Even if the Court were to reconsider its prior ruling, KPMG's argument would still fail, because the relevant date for purposes of the statute of repose is the date of Miller Energy's 2013 Form 10-K, July 15, 2013, which was incorporated by reference into the Registration Statement. The Registration Statement was filed on Form S-3, SAC ¶ 284, and thus, as Miller Energy told its investors, any subsequent annual Form 10-K that the Company filed would be "deemed to be incorporated by reference into this prospectus and to be a part of this prospectus *from the date of filing of such document.*" Ex. A at 12 (emphases added). In Item 17 of the Registration Statement, in the section titled "Undertakings," Miller Energy explained that,

> [F]or purposes of *determining any liability under the Securities Act of 1933*, each
> filing of the registrant's *annual report* pursuant to [the Exchange Act] . . . that is

incorporated by reference in the registration statement *shall be deemed to be a new registration statement r*elating to the securities offered therein, and the *offering of such securities at that time shall be deemed to be the initial bona fide offering thereof.*

Ex. A at II-3 (emphases added). And when Miller Energy filed its next Form 10-K in 2013, KPMG filed its consent to the incorporation by reference of its audit report in the Registration Statement, identified by its SEC registration number (No. 333-183750), stating as follows:

> We consent to the incorporation by reference in the registration statements (No. 333-171106 and 333-184133) on Form S-8 and (No. 333-183750 and 333-184315) on Form S-3 of Miller Energy Resources, Inc. of our report dated July 15, 2013, with respect to the consolidated balance sheets of Miller Energy Resources, Inc. and subsidiaries as of April 30, 2013 and 2012, and the related consolidated statements of operations, stockholders' equity, and cash flows for each of the years in the three-year period ended April 30, 2013, and the effectiveness of internal control over financial reporting as of April 30, 2013, which report appears in the April 30, 2013 annual report on Form 10-K for Miller Energy Resources, Inc.

Ex. C.[21] Because KPMG's audit reports were included in Miller Energy's 2013 Form 10-K, those reports were incorporated by reference in the Registration Statement, with KPMG's consent, and the relevant date for purposes of the statute of repose is the date of the 2013 Form 10-K, September 15, 2017 – less than three years before the filing of the initial complaint. 17 C.F.R. § 230.430B(f)(3).[22]

---

[21] In support of its second motion to dismiss, KPMG filed a declaration by counsel, attaching Miller Energy's 2013 Form 10-K as an exhibit, which counsel represented, "under penalty of perjury," was a "true and correct cop[y]" of that filing. ECF No. 65-1. However, counsel _omitted_ KPMG's consent to the incorporation by reference of its 2013 audit reports into the Registration Statement from that exhibit. *See* Ex. 11 to Murdock Decl., ECF No. 65-12. The omission does not appear to be accidental, because KPMG *included* the consent of Miller Energy's other expert, Ralph E. Davis Associates, Inc. (Ex. 23.1 to the Form 10-K), *id.* at 102-03, as well as the consent of the Company's *prior* auditor, Sherb & Co., LLP (Ex. 23.3 to the Form 10-K), *id.* at 104, but *excluded* KMPG's consent. *Compare id.* 102-04 *with* Ex. C.

[22] Under Rule 430B(f)(3),

"[i]f a registration statement . . . is deemed to include, through incorporation by reference[,] . . . a report or opinion of any person . . . .whose consent would be required, . . . . then . . . for liability purposes under section 11 of the Act, the part of the registration

24

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court deny Defendant's Partial

Motion to Dismiss Count Three of the Third Amended Complaint.

September 25, 2020

Respectfully submitted,

Steven J. Toll
Jan Messerschmidt (*pro hac vice pending*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Suite 500
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
stoll@cohenmilstein.com
jmesserschmidt@cohenmilstein.com

Laura H. Posner
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Tel: (212) 220-2925
Fax: (212) 838-7745
lposner@cohenmilstein.com

*Co-Lead Counsel for Plaintiffs*

/s/ *Gordon Ball*
Gordon Ball
TN BPR #001135
**GORDON BALL PLLC**
7001 Old Kent Drive
Knoxville, TN 37919
Tel: (865) 525-7028
Fax: (865) 525-4679
gball@gordonball.com

---

statement for which liability against such person is asserted shall be considered as having become effective with respect to such person as of the time the report or opinion is deemed to be part of the registration statement and a consent required pursuant to section 7 of the Act has been provided as contemplated by section 11 of the Act.

17 C.F.R. § 230.430B.

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2020, I caused the foregoing to be filed using the Court's CM/ECF system, which in turn sent notice to counsel of record.


Dated: September 25, 2020                    /s/ *Gordon Ball*
                                             Gordon Ball