**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**KNOXVILLE DIVISION**

```
--------------------------------------------------------------X
                                                              :
LEWIS COSBY, KENNETH R. MARTIN, as         :   No. 3:16-cv-00121-TAV-DCP
beneficiary of the Kenneth Ray Martin Roth IRA,  :
and MARTIN WEAKLEY on behalf of themselves  :
and all others similarly situated,                  :
                                                              :
                              Plaintiffs,             :
                                                              :
                    v.                                   :
                                                              :
KPMG, LLP,                                           :
                                                              :
                              Defendant.            :
--------------------------------------------------------------X
```

**REPLY IN FURTHER SUPPORT OF KPMG LLP's**
**<u>PARTIAL MOTION TO DISMISS THE THIRD AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ............................................................................................................3

I.      The Section 11 Claim (Count Three) Must Be Dismissed. ...............................3

         A.      Mr. Ziesman's claim is barred by the statute of repose. .........................3

         B.      Mr. Ziesman lacks standing. ...............................................................8

II.     The Section 10(B) Scheme Liability Claim (Count Two) Must Be Stricken. ...................13

III.    Plaintiffs' Remaining Arguments Lack Merit. ...................................................14

CONCLUSION...........................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Alstom SA*,
454 F. Supp. 2d 187 (S.D.N.Y. 2006)......................................................................13

*In re Am. Int'l. Grp., Inc.*,
741 F.Supp.2d 511 (S.D.N.Y. 2010).........................................................................8

*In re Bear Stearns Mortg. Pass-Through Certificates Litig.*,
851 F.Supp.2d 746 (S.D.N.Y. 2012)........................................................................8

*Busby v. Edgington*,
2020 WL 4668756 (W.D. Tenn. July 24, 2020) ....................................................15

*Carden v. Klucznik*,
775 F. Supp. 2d 247 (D. Mass. 2011) ....................................................................13

*In re Citigroup Bond Litig.*,
723 F. Supp. 2d 568 (S.D.N.Y. 2010).......................................................................8

*Davis v. City of Dearborn*,
2010 WL 3476242 (E.D. Mich. Sept. 2, 2010).......................................................14

*De Vito v. Liquid Holdings Grp., Inc.*,
2018 WL 6891832 (D. N.J. Dec. 31, 2018)..............................................................7

*Graves v. Mahoning Cty.*,
2015 WL 403156 (N.D. Ohio Jan. 28, 2015)..........................................................17

*Howard v. Wilkes & McHugh, P.A.*,
2008 WL 11410066 (W.D. Tenn. Mar. 18, 2008) ..................................................15

*Limbright v. Hofmeister*,
2010 WL 1740905 (E.D. Ky. Apr. 27, 2010) .........................................................15

*Nat'l Bankers Tr. Corp. v. Peak Logistics LLC*,
2013 WL 3070843 (W.D. Tenn. June 17, 2013) ....................................................14

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
693 F. 3d 145 (2d Cir. 2012)....................................................................................8

*Peak v. Zion Oil & Gas Inc.*,
2020 WL 1047894 (N.D. Tex. Mar. 3, 2020) ...........................................................8

Case 3:16-cv-00121-TAV-DCP   Document 204   Filed 10/02/20   Page 3 of 22   PageID #: 20639

*Premier Dealer Servs., Inc. v. Allegiance Adm'rs, LLC,*
  2019 WL 1981864 (S.D. Ohio May 3, 2019) ........................................................15

*Roan Valley, LLC v. Tennille & Assocs., Inc.,*
  2013 WL 12123536 (E.D. Tenn. Aug. 7, 2013) ..................................................15

*Williamson v. Recovery Ltd. P'ship,*
  2009 WL 3172648 (S.D. Ohio Sept. 30, 2009) ..................................................15

**Statutes**

15 U.S.C. § 77m (2006) ................................................................................................7

15 U.S.C. § 78u-4(b)(3) .............................................................................................15

**Other Authorities**

11 C.F.R. § 230.430B(f)(2) ...................................................................................2, 4, 5

Fed. R. Civ. P. 12 .................................................................................................13, 15

Fed. R. Civ. P. 15 .......................................................................................................15

KPMG LLP ("KPMG") respectfully submits this reply in further support of its partial motion to dismiss ("Motion" or "Mot.") the Third Amended Class Action Complaint dated July 13, 2020 (ECF No. 174) ("Third Amended Complaint" or "TAC").

## PRELIMINARY STATEMENT

The arguments in Plaintiffs' opposition to the Motion (ECF No. 202, "Opposition" or "Opp.") lack merit. Plaintiffs assert—falsely—that the Motion raises arguments that were previously raised by KPMG and rejected by this Court. In the Motion, KPMG made three arguments—first, that Mr. Ziesman's Section 11 claim is barred by the statute of repose (Point I.A.), second, that Mr. Ziesman lacks standing to assert a Section 11 claim (Point I.B.), and third, that the "scheme liability" claim under Section 10(b) must be stricken (Point II). The standing argument was not raised in KPMG's prior motion to dismiss; on the contrary, KPMG explicitly stated in the prior motion to dismiss that it was _not_ moving based on this ground. (ECF No. 64, Def.'s Mot. to Dismiss, Oct. 20, 2017, at 38 n.22.) The statute of repose argument does not seek to re-argue a point that KPMG raised and lost on the prior motion; rather, the Motion seeks to apply this Court's prior determination that the _bona fide_ offered date for prospectus supplements that do not incorporate new audited financial statements is the effective date of the original Registration Statement. (ECF No. 76, Mem. Op. at 30.) Finally, the Section 10(b) argument likewise seeks to enforce, not re-argue, a prior determination of this Court, specifically, that the "scheme liability" claim lacks merit and must be dismissed. (_Id._ at 25.) To their credit, Plaintiffs at least concede that they inappropriately reasserted the "scheme liability" claim in the Third Amended Complaint and thereby acknowledge that the Motion must be granted at least in part. As explained below, this Court should grant KPMG's Motion in full.

On the statute of repose, Plaintiffs merely offer a mix of incoherent sentences that appear designed to obfuscate. What Plaintiffs gloss over is the clear statutory language providing that, in a Section 11 claim against an accounting firm, the *bona fide* offered date is the date the original registration statement was declared effective, unless a prospectus contains new audited financial statements. 11 C.F.R. § 230.430B(f)(2) & (5). Plaintiffs also ignore, and seek to circumvent, this Court's prior determination that "the securities were *bona fide* offered on September 18, 2012, which is the date the registration statement was declared effective" and that "[t]he date of the prospectus supplement is only relevant if it 'contains new audited financial statements'" (ECF No. 76, Mem. Op. at 30.) Mr. Ziesman purchased Series C preferred stock. By Plaintiffs' own admission in the TAC, the offerings of the Series C securities at issue in this case did *not* incorporate new audited financial statements (TAC ¶ 118), and so they were *bona fide* offered on September 18, 2012, more than three years prior to the filing of this lawsuit. Consequently, Mr. Ziesman's Section 11 claim is barred by the three-year statute of repose.

On Mr. Ziesman's lack of standing, Plaintiffs' argument is based primarily on the flat-out misrepresentation that KPMG previously argued, and this Court decided, the issue. In support of Plaintiffs' assertion that KPMG previously sought dismissal based on lack of standing, Plaintiffs repeatedly cite (Opp. at 5-6, 12-13) to footnote 22 on page 38 of KPMG's prior motion to dismiss, where KPMG clearly stated that it was "*not* seeking dismissal for Plaintiffs' lack of standing" (ECF No. 64, Mot. to Dismiss, Oct. 20, 2017, at 38 n.22 (emphasis added).) Plaintiffs' present argument is nothing short of astonishing. Plaintiffs' counsel must know that KPMG and the Court are aware, and can readily confirm, that Plaintiffs' assertion is false.

Other than this weak attempt to mislead the Court, Plaintiffs have little to say about standing, just three short paragraphs toward the end of their lengthy brief, where they claim that

<2

they actually *intended* to allege that Mr. Ziesman can trace his Series C shares to one of the offerings at issue in the complaint. They advance this argument even though Plaintiffs undeniably deleted the traceability allegation from the complaint, and even though Mr. Ziesman and Plaintiffs' expert have admitted that the securities he purchased cannot be traced. Plaintiffs assert that they deleted the tracing allegation in paragraph sixteen of their complaint not because Mr. Ziesman's shares cannot be traced, but rather because it was superfluous. That assertion is not credible. The obvious reason for deleting the traceability allegation was that Mr. Ziesman's shares, in fact, cannot be traced, as he has readily admitted. Therefore the most likely and charitable conclusion to draw is that Plaintiffs omitted the allegation that Mr. Ziesman's shares can be traced because Mr. Ziesman's shares, in fact, cannot be traced. The alternative would be to conclude that Plaintiffs intended to allege that his shares can be traced while knowing the allegation to be false, and notwithstanding that intention they deleted, either accidentally or because they thought it superfluous, the allegation that he can trace his shares to a relevant offering. Regardless, one thing is clear: Mr. Ziesman lacks standing to assert a Section 11 claim.

## ARGUMENT

## I. THE SECTION 11 CLAIM (COUNT THREE) MUST BE DISMISSED.

In its opening brief, KPMG demonstrated that Mr. Ziesman's Section 11 claim must be dismissed because (1) it is barred by the statute of repose, and (2) Mr. Ziesman lacks standing. Plaintiffs' arguments to the contrary, which begin at page seventeen of their Opposition, are without factual or legal basis.

### A. Mr. Ziesman's claim is barred by the statute of repose.

Plaintiffs' do not dispute that under Section 11 of the Securities Act, an action is time-barred if brought more than three years after the security was *bona fide* offered to the public. (Mot. at 5.) Plaintiffs concede the relevance of 17 C.F.R. § 230.430B(f)(2) and (3), which

provide that, in a Section 11 claim against an accounting firm, the *bona fide* offered date is the effective date of the original Registration Statement, and not the date of any subsequent prospectus supplement, unless the prospectus incorporates new audited financial statements. (Mot. at 5; Opp. at 20-21.) Plaintiffs concede that the prospectus supplements dated February 13, 2013, May 7, 2013, and June 27, 2013, which were for Series C preferred stock, did not incorporate new audited financial statements, and Plaintiffs concede that all subsequent prospectus supplements were for Series D preferred stock. (Mot. at 6.) Consequently, Plaintiffs cannot legitimately dispute that the Series C preferred stock was *bona fide* offered as of September 18, 2012. (*Id.*)

While Plaintiffs' Opposition attempts to obfuscate the issue, Plaintiffs do not dispute that this Court has already held that September 18, 2012 was the *bona fide* offered date for the Series C preferred stock. As this Court wrote: "Defendant argues, and plaintiffs do not dispute, that the securities were *bona fide* offered on September 18, 2012." (ECF No. 76, Mem. Op. at 30.) This Court held that "[t]he date of the prospectus supplement is only relevant if it 'contains new audited financial statements or other financial information as to which the accountant is an expert and for which a new consent is required.'" (*Id.*) And, this Court further held that the prospectus supplements dated September 25, 2013, October 17, 2013, and August 25, 2013, which were all for Series D securities, incorporated new audited financial statements. This Court did not hold that the prospectus supplements dated February 13, 2013, May 7, 2013, and June 27, 2013, which were for Series C preferred stock, incorporated new audited financial statements, because those prospectus supplements in fact did not incorporate new audited financial statements. By this Court's clear and sound reasoning, therefore, the *bona fide* offered date for the Series C shares issued pursuant to these prospectus supplements was September 18, 2012.

Plaintiffs' reliance on Rule 430B(f)(3) to support a contrary conclusion is misplaced. Nothing in subsection Rule 430B(f)(3) contradicts or supplants the clear standards set forth in Rule 430B(f)(2) & (5) regarding the *bona fide* offered date for claims against accounting firms. Moreover, Plaintiffs' argument would render (f)(5) meaningless. Plaintiffs suggest that every time an issuer files a new annual report on Form 10-K with the required audited financial statements, any previous registration statement automatically is deemed to incorporate the new financial statements. But, this directly contradicts (f)(5) as well as Plaintiffs' own complaint, which clearly alleges that the February 13, 2013, May 7, 2013, and June 27, 2013 prospectus supplements for Series C preferred stock *did not* incorporate new audited financial statements, while the September 25, 2013, October 17, 2013, and August 25, 2013 prospectus supplements for Series D preferred stock *did* incorporate new audited financial statements. (TAC ¶ 118; Mot. at 6.) Finally, Plaintiffs' position, that an issuer's filing of subsequent annual reports on its Form 10-K automatically extends the statute of limitations for previously-issued securities is plainly contrary to the express terms and purpose of the statute, which provides for a three-year period of repose barring claims asserted more than three years after the *bona fide* offered date. 11 C.F.R. § 230.430B(f)(2).

In their Opposition, Plaintiffs argue that the Court did not distinguish between the Series C and Series D preferred stock in ruling on KPMG's motion to dismiss the Second Amended Complaint. (Opp. at 23.) That argument is misguided. In ruling on the prior motion to dismiss, this Court did not address in detail the Series C securities because the lead plaintiff at the time, Mr. Weakley, had purchased both the Series C and D securities. The Court specifically stated that "Plaintiffs allege that the September 25, 2013, October 17, 2013, and August 20, 2014, prospectus supplements incorporated new audited financial statements" and that "[t]he original

complaint was filed on March 14, 2016, which is less than three years after the September 25, 2013 prospectus supplement." (ECF No. 76, Mem. Op. at 31.) The Court's holding, quoted in the preceding sentence, only referred to the prospectus supplements for the Series D preferred stock, and calculated the statute of repose from the prospectus supplement for the offering of Series D preferred stock on September 25, 2013. (*Id*.) The Series C preferred stock was not offered in the September 25, 2013 prospectus supplement (or any prospectus thereafter). (TAC ¶ 118.) Rather, the prospectus supplements for the Series C preferred stock on February 13, 2013, May 7, 2013, and June 27, 2013 did not incorporate any new financial statements. Under this Court's stated reasoning, the Series C preferred stock purchased by Mr. Ziesman was *bona fide* offered as of September 18, 2012, the effective date of the registration statement.

Plaintiffs contend that "the relevant date for purposes of the statute of repose is the date of Miller Energy's 2013 Form 10-K, July 15, 2013, which was incorporated by reference into the Registration Statement." (Opp. at 23.) Again, this contention is false. And it is directly contradicted by Plaintiffs' own complaint, which alleges that the July 15, 2013 Form 10-K was <u>not</u> incorporated into the February 13, 2013, May 7, 2013, and June 27, 2013 prospectus supplements for the Series C securities:

|  | Registration Statement dated September 6, 2012 | Prospectus supplement dated February 13, 2013 | Prospectus supplement dated May 7, 2013 | Prospectus supplement dated June 27, 2013 | Prospectus supplement dated September 25, 2013 | Prospectus supplement dated October 17, 2013 | Prospectus supplement dated August 20, 2014 |
|---|---|---|---|---|---|---|---|
| KPMG's August 29, 2011 Report | x | x | x | x | x | x | x |
| KPMG's July 16, 2012 Reports | x | x | x | x | x | x | x |
| KPMG's July 15, 2013 Reports |  |  |  |  | x | x | x |
| KPMG's July 15, 2014 Reports |  |  |  |  |  |  | x |

(TAC ¶ 188.) The Series C preferred stock were issued prior to July 17, 2013, with the last offering of the Series C preferred stock occurring on June 27, 2013. (TAC ¶ 285.) No offering of the Series C preferred stock incorporated new financial statements. Indeed, it would defy logic for the statute of repose to be triggered by financial information that was never considered by purchasers of Series C preferred stock.

Plaintiffs do not dispute that the new Section 11 plaintiff, Mr. Ziesman, purchased the Series C preferred stock (and that he did not purchase the Series D securities). Mr. Ziesman's claim, therefore, is barred by the statute of repose, which ran on September 18, 2015, before the filing of the original complaint in this litigation.[1] Mr. Ziesman's Section 11 claim, which is based on his purchase of Series C preferred stock, is time-barred. 15 U.S.C. § 77m (2006).[2]

---

[1] Plaintiffs do not dispute that the other two named plaintiffs – Mr. Cosby and Mr. Montague—did not purchase either the Series C or the Series D. They are not members of the proposed Section 11 class, and they cannot assert the Section claim set forth in the TAC.
[2] The law is clear: at least one named plaintiff has to have purchased the securities at issue. Plaintiffs' attempt to suggest otherwise is mistaken. *De Vito v. Liquid Holdings Grp., Inc*., 2018 WL 6891832, at *14 (D. N.J. Dec. 31, 2018) ("other *named plaintiffs* have standing to

## B.  **Mr. Ziesman lacks standing.**

In its opening brief, KPMG demonstrated that Mr. Ziesman lacks standing to assert a

Section 11 claim. He made a single purchase of Series C shares in the secondary market, not in

any of the offerings at issue in the case, and he cannot trace his shares to any of those offerings.

His shares could have come from any number of prior offerings of Series C shares that are not at

issue in this case. For example, Mr. Ziesman's shares could have come from the February 13,

2013 offering, which is not at issue in this case. (TAC ¶ 316.) In fact, there were five offerings of

Series C preferred stock (ECF No. 127-1, Attari Report (report of KPMG's expert Mukarram

Attari) at ¶ 82), only two of which are at issue in this case (TAC ¶ 316). Furthermore, KPMG

pointed out that, unlike the Second Amended Complaint which had alleged that former named

plaintiff Mr. Weakley could trace his shares to an offering, the Third Amended Complaint does

not allege that Mr. Ziesman can trace his shares to an offering at issue. (*Id*. at 10-11.)

Mr. Ziesman, therefore, is not even a member of the proposed Section 11 class as defined by

Plaintiffs. (Mot. at 9-11.)

In their Opposition, Plaintiffs respond with a three-paragraph argument (Opp. at 18-19),

which contains two points, each incorrect. First, Plaintiffs assert, falsely, that KPMG previously

---

pursue the claims at issue") (emphasis added); *Peak v. Zion Oil & Gas Inc*., 2020 WL 1047894,
*5 (N.D. Tex. Mar. 3, 2020) (none of the _named plaintiffs_ had standing in their own right).
Plaintiffs cite *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co*., 693 F. 3d 145, 162
(2d Cir. 2012), a decision in mortgage backed securities litigation that was immediately
"criticized" as inconsistent with Supreme Court precedent as acknowledged by Magistrate Judge
Poplin. (ECF No. 172, Rep. & Rec., Jun. 29, 2020, at 74 n.16.) Other cases cited by Plaintiffs
acknowledge that at least one of the named plaintiffs must have standing. *See In re Bear Stearns
Mortg. Pass-Through Certificates Litig*., 851 F.Supp.2d 746, 778 (S.D.N.Y. 2012) (it was
"_uncontested_ here that _at least one named Plaintiff_ purchased [mortgage-backed securities] from
every offering") (emphasis added); *In re Am. Int'l. Grp., Inc*., 741 F.Supp.2d 511, 538 (S.D.N.Y.
2010) (involving mortgage-backed securities and at least one plaintiff who was a member of the
class); *In re Citigroup Bond Litig*., 723 F. Supp. 2d 568, 584-85 (S.D.N.Y. 2010) ("Complaint
alleges that _at least one named plaintiff_ purchased bonds pursuant to each of those allegedly
actionable shelf registration statements.") (emphasis added).

raised, and this Court decided, this standing issue. To support their argument that KPMG raised the standing issue, Plaintiffs cite to footnote 22 on page 38 of KPMG's motion to dismiss the Second Amended Complaint, which plainly stated exactly the opposite—that KPMG was *not* raising the standing issue. (Opp. at 5-6, 12-13.) In the footnote that is the sole basis for Plaintiffs' contention that KPMG previously asserted this standing argument, KPMG wrote that it "is *not* seeking dismissal for Plaintiffs' lack of standing at this time." (ECF No. 64, Def.'s Mot. to Dismiss, Oct. 20, 2017, at 38 n.22 (emphasis added).) KPMG further explained why it was not moving on the basis of lack of standing, specifically because the Second Amended Complaint alleged that former plaintiff Mr. Weakley could trace (unlike the Third Amended Complaint which does not allege that Mr. Ziesman can trace) and because this Court had previously held in *Gaynor* that such an allegation is sufficient at the pleading stage. (*Id.*) Plaintiffs' assertion that KPMG previously raised, and that this Court previously ruled on, the standing argument is, in a word, false.

Second, asserting that they deleted the allegation that the lead plaintiff can trace from paragraph sixteen of the complaint because it was superfluous, Plaintiffs argue that Mr. Ziesman in fact can trace his shares to one of the relevant offerings and that they actually intended to allege as much in the Third Amended Complaint. (Opp. at 18-19.) Plaintiffs are wrong.

As an initial matter, it is important to recognize that Plaintiffs in fact deleted the allegation that the lead plaintiff's shares are traceable. Here is the key paragraph as reflected on the comparison provided by Plaintiffs' counsel:

> 16.    Named ~~Plaintiff~~Court-appointed Class Representative, Martin ~~Weakley~~
> ~~("Weakley~~Ziesman, as Co-Trustee for the Carolyn K. Ziesman Revocable Trust ("Ziesman"),
> purchased shares of Miller Energy Series C Preferred Stock ~~and Miller Energy Series D Preferred~~
> ~~Stock on or traceable to the Offerings (see ¶ 284)~~ during the Class Period and was damaged
> thereby.

(App. A at ¶ 16.) Clearly, Plaintiffs deleted the "on or traceable to" allegation. As a matter of

fact, therefore, Plaintiffs do not allege that Mr. Ziesman's shares are traceable.

Plaintiffs fall back on the generic allegation in paragraph 313 of the TAC that "[i]n each

of the six offerings alleged in Counts [*sic*] III below, plaintiffs and members of the Section 11

Class acquired securities in or traceable to the Shelf Registration Statement" (Opp. at 19), but

that allegation does not help Mr. Ziesman. The allegation that unidentified plaintiffs in the

proposed class acquired shares in or traceable to the offerings does not bear on whether

Mr. Ziesman can trace his shares to one of those offerings. KPMG's Motion is directed at

Mr. Ziesman's claim. His claim must be dismissed because *he* cannot trace his shares to a

relevant offering, regardless of whether there might be other members of the proposed class who

can trace.

Furthermore, it is a fact that Mr. Ziesman's shares are not traceable. Notwithstanding

Plaintiffs' disingenuous citation of snippets of testimony to suggest otherwise (Opp. at 18 n.18),

Mr. Ziesman testified that he has "no way" of tracing his shares to any particular offering that is

at issue in this case (as opposed to a prior offering that is not at issue in this case). Here is

Mr. Ziesman's unambiguous testimony:

Q.    And you see that there are different prices for each of these offerings.

A.    Yes.

Q.      Do you know which of these offerings your shares came from?

A.      No, I don't.

Q.      There's no way to know, right?

A.      No.

Q.      In fact, your shares could have come from more than one of these offerings; isn't that right? […]

A.      If I don't know I would have to think anything is possible.

Q.      Do you know whose shares were sold to you, who the seller was?

A.      I have no way of knowing.

Q.      Do you have any way of knowing how many times those 1,000 shares changed hands before they made their way to you?

A.      No.

(ECF No. 169-11, Martin Ziesman Dep. Tr. (Apr. 16, 2019), at 58-59.)

Again, despite Plaintiffs' misleading assertion to the contrary (Opp. at 18-19 n.18), Plaintiffs' own expert also admitted that he does not know whether Mr. Ziesman's shares came from one of the offerings at issue, or from an offering that is not at issue, in this case:

Q.      He did not buy his shares in the original offering in October 2012; right?

A.      That seems unlikely, yes.

Q.      It was years later.

A.      And at a different price. Yes, that doesn't seem right.

Q.      He didn't buy them in the at-the-market offering that began in October 2012 either; correct?

A.      It doesn't appear so, but I haven't studied how long that at-the-market offering took place, but given that it's almost two years later, I would agree with that.

Q.      Mr. Ziesman didn't buy in the February 2013 offering; correct?

A.     No.

Q.     And he didn't buy in the May 7, 2013 offering; right?

A.     No.

Q.     He didn't buy in the June 27, 2013 offering; right?

A.     No.

Q.     Mr. Ziesman obviously bought in the aftermarket; correct?

A.     Well, when you say aftermarket, do you mean in the secondary market?

Q.     Yes.

A.     I don't know that for -- well, give me just a second. That appears to be the case, yes, or that would be an inference I would likely draw from this.

Q.     Do you know if the 1,000 Series shares that Mr. Ziesman acquired in June of 2014 came from the batch that was offered originally in October of 2012?

A.     I don't know that.

Q.     Do you know if they came from the February 2013 offering?

A.     I don't know that.

Q.     Do you know if they came from the May 10, 2013 offering?

A.     It had to come from one of the offerings, but I don't know which offering it came from.

Q.     It could have come from the at-the-market or any of the other offerings, right, you just don't know which one?

A.     I don't know.

(ECF No. 169-12, Chad Coffman Dep. Tr. (Apr. 12, 2019) (testimony of Plaintiffs' expert Chad Coffman) at 264-266.) The fact that Mr. Ziesman's shares "had to come from one of the offerings" does not save his Section 11 claim. (*Id.*) Only two of the five offerings for the Series C preferred stock are at issue in this case. (TAC ¶ 316; *see also* ECF No. 127-1, Attari Report at

¶ 82.) If Mr. Ziesman's shares cannot be traced back to either of those two offerings, then he has

no standing to assert a Section 11 claim (and is not even a member of the proposed Section 11

class as defined by Plaintiffs).

And, contrary to Plaintiffs' assertion (Opp. at 19 n.18), Dr. Attari clearly opined in his

report that Mr. Ziesman's shares are not traceable:

> Mr. Ziesman is an example. As discussed above, he does not know whom his shares
> came from *and cannot trace them to any of the five offerings pursuant to which Series C*
> *Preferred Stock were issued, much less to the two offerings that are at issue in this case*.

(ECF No. 127-1, Attari Report at ¶ 79 (emphasis added).)[3]

## II.     THE SECTION 10(B) SCHEME LIABILITY
##          CLAIM (COUNT TWO) MUST BE STRICKEN.

In their Opposition, Plaintiffs do not dispute, as KPMG argued in its Motion, that Count

Two of the Third Amended Complaint is identical to Count Two of the Second Amended

Complaint, which this Court dismissed. (Mot. at 11.) Plaintiffs do not dispute that, as KPMG

argued, it is improper to re-plead dismissed claims in an amended complaint. (*Id.*) Plaintiffs do

not dispute the case law cited by KPMG or that the proper course is to strike the claim from the

amended pleading. (*Id.*) Rather, Plaintiffs concede that Count Two is not viable and must be

dismissed. (Opp. at 7 n.10.)

---

[3] Notwithstanding Plaintiffs argument to the contrary (Opp. at 18 n.18), the Court may consider Mr. Ziesman's and Plaintiffs' admissions and the above evidence on the present Motion. *In re Alstom SA*, 454 F. Supp. 2d 187, 193 n.2 (S.D.N.Y. 2006) ("The Court notes that in evaluating Plaintiffs' claims it may consider these depositions because Plaintiffs have relied upon them in crafting their allegations in the SAC."); *see also Carden v. Klucznik*, 775 F. Supp. 2d 247, 249 (D. Mass. 2011) ("On a motion to dismiss, a court must accept all factual allegations in the complaint as true. But a court will not accept as true any facts that are conclusively contradicted by plaintiffs' concessions or otherwise."). Even if the Court were to conclude that this evidence should not be considered on a motion to dismiss, the Court may treat the motion as one for summary judgment. Fed. R. Civ. P. 12(d).

### III. PLAINTIFFS' REMAINING ARGUMENTS LACK MERIT.

Plaintiffs' contention that the Motion is for "reconsideration" of prior decisions of this Court (Opp. at 10) is incorrect. KPMG moved to dismiss the TAC, not for reconsideration of the decision on the motion to dismiss the SAC. As discussed in the Motion and above, KPMG has not re-argued any point that was previously decided against it. Specifically, KPMG makes three arguments in the Motion—(1) a statute of repose argument under Section 11 that merely seeks to enforce, not upset, this Court's prior determination that the *bona fide* offered dates of prospectus supplements that did not incorporate new audited financial statement is the effective date of the original registration statement; (2) a standing argument under Section 11 that KPMG expressly did not raise in its prior motion to dismiss; and (3) an argument seeking to enforce, not change, the Court's prior ruling dismissing the "scheme liability" claim of Count Two. The standards governing reconsideration cited by Plaintiffs are irrelevant.

Plaintiffs' invocation of the law of the case doctrine (Opp. at 10-12) is similarly misplaced. Given that the Court has not ruled on the standing question, there is no law of the case on that question. As for KPMG's arguments on the statute of repose and on the "scheme liability" claim, KPMG is asking this Court to follow, not contradict, its prior rulings, and so the law of the case favors KPMG's, not Plaintiff's, position.

Plaintiffs' argument that KPMG's filing of an answer to the SAC bars it from moving to dismiss the TAC (Opp. at 15-16) is incorrect. The fact that a court has ruled on a motion to dismiss a complaint does not preclude a defendant from moving to dismiss a subsequent, amended complaint that contains different parties and allegations. *Davis v. City of Dearborn*, 2010 WL 3476242, at *4 (E.D. Mich. Sept. 2, 2010). The cases Plaintiffs cite (Opp. at 15-16, 16 n.16) are not to the contrary. *See, e.g., Nat'l Bankers Tr. Corp. v. Peak Logistics LLC*, 2013 WL 3070843, at *3 (W.D. Tenn. June 17, 2013) (defendant filed answer to the first amended

complaint five months before moving to dismiss the same first amended complaint).[4] Here, in contrast, KPMG does not seek to re-argue any issue that was decided against KPMG in any prior motion to dismiss.[5]

Plaintiffs' argument that the Motion is unauthorized and barred by this Court's prior orders (Opp. at 16-17) is incorrect. The Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act ("PSLRA") govern KPMG's right to move to dismiss, and the timing thereof. Fed. R. Civ. P. 12, 15; 15 U.S.C. § 78u-4(b)(3). KPMG filed the present Motion in accordance with the applicable rules of procedure and the PSLRA. Furthermore, this Court has already addressed this issue, setting a briefing schedule for the Motion and noting the Court's

---

[4] *See also Limbright v. Hofmeister*, 2010 WL 1740905, at *3 (E.D. Ky. Apr. 27, 2010) (parties agreed that the allegations in the amended complaint were identical to the allegations in the initial complaint); *Busby v. Edgington*, 2020 WL 4668756, at *2-3 (W.D. Tenn. July 24, 2020) (defendant asserted arguments in its second motion to dismiss that it could have asserted in its original motion, but the court still considered the arguments "out of an abundance of caution"); *Premier Dealer Servs., Inc. v. Allegiance Adm'rs, LLC*, 2019 WL 1981864, at *4 (S.D. Ohio May 3, 2019) (finding defendant's motion to dismiss the second amended complaint timely because it raised a 12(b)(6) defense in its original pre-answer motion); *Roan Valley, LLC v. Tennille & Assocs., Inc.*, 2013 WL 12123536, at *1 (E.D. Tenn. Aug. 7, 2013) (defendants conceded that they waived their argument that venue was improper after they failed to raise it in their initial motion to dismiss); *Williamson v. Recovery Ltd. P'ship*, 2009 WL 3172648, at *3 (S.D. Ohio Sept. 30, 2009) (finding defendants' previous motion to dismiss for lack of proper venue or subject matter jurisdiction barred defendants from asserting another 12(b) defense that they could have initially asserted); *Howard v. Wilkes & McHugh, P.A.*, 2008 WL 11410066, at *3 (W.D. Tenn. Mar. 18, 2008) (finding defendants were barred from reasserting identical claims in subsequent motion to dismiss that had previously been addressed and denied by the court).

[5] Additionally, Plaintiffs note that KPMG filed an answer to the TAC (Opp. at 16 n.15), without making any argument regarding this fact. As KPMG stated in its Motion, KPMG filed an answer to the TAC out of an abundance of caution, as it only partially moved to dismiss the TAC, and the Sixth Circuit has not yet addressed the issue of whether filing a partial motion to dismiss relieves the defendant of answering the amended complaint (Mot. at 1 n.1).

understanding "that it was _procedurally necessary_ for defendant to file the instant motion" to dismiss. (ECF No. 201, Order, Sept. 15, 2020, at 2 (emphasis added).)[6]

Finally, Plaintiffs' attempt to bolster their faulty arguments with snarky language (_see, e.g.,_ Opp. at 1 (KPMG's motion "conjures déjà vu"); Opp. at 18 Opp. at 23 ("there are no mulligans in federal court")) is unavailing. Colorful rhetoric is no substitute for substance, and a dead-on-arrival argument cannot be resurrected with a glib turn of phrase.

---

[6] Plaintiffs note (Opp. at 16-17) that this Court previously held that, after class certification has been addressed, KPMG may seek leave to refile its prior motion to dismiss on the ground that the plaintiffs in this case are not authorized to pursue the Section 11 claim here because the _Gaynor_ plaintiffs followed the procedures mandated under the PSLRA to obtain the right to serve as lead plaintiffs for the purchasers of the preferred securities, because the lead plaintiffs here did not do so, and because the lead plaintiffs here did not object to the _Gaynor_ plaintiffs' motion for appointment. (ECF No. 76, Mem. Op. at 27.) The present Motion does not raise this issue. The class certification motion is still pending. KPMG reserves the right to pursue the issue, if necessary, after class certification is addressed in accordance with the Court's instructions.

16

## CONCLUSION

For the foregoing reasons, the Court should grant KPMG's motion to dismiss the Section 11 claim (Count Three). Because the Third Amended Complaint is Plaintiffs' fourth iteration of their complaint in this case, pending since 2016, and further amendment would be futile, the dismissal should be with prejudice. *See Graves v. Mahoning Cty.*, 2015 WL 403156, at *7 n.10 (N.D. Ohio Jan. 28, 2015), *aff'd*, 821 F.3d 772 (6th Cir. 2016). In addition, the Court should strike Count Two, the Section 10(b) claim previously dismissed from the Second Amended Complaint which Plaintiffs conceded they improperly re-pleaded in the Third Amended Complaint.

Dated: October 2, 2020

Respectfully submitted,

 */s/ Greg G. Ballard*
MCDERMOTT WILL & EMERY LLP
Gregory G. Ballard (admitted pro hac vice)
Ludwig von Rigal (admitted pro hac vice)
340 Madison Avenue
New York, New York 10173
Telephone: 212-547-5330
Email: gballard@mwe.com
Email: lvonrigal@mwe.com

Allyson E. Riemma (admitted pro hac vice)
444 West Lake Street
Chicago, IL 60606
Telephone: 312-372-2000
Email: ariemma@mwe.com

WALLER LANSDEN DORTCH & DAVIS, LLP
Paul S. Davidson (TN BPR # 011789)
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: 615-244-6380
Email: paul.davidson@wallerlaw.com

LEWIS ROCA ROTHGERBER CHRISTIE LLP
Gary F. Bendinger (admitted pro hac vice)
201 East Washington Street, Suite 1200
Phoenix, AZ 85004
Telephone: 602-262-5353
Email: gbendinger@lrrc.com

*Counsel for Defendant KPMG LLP*

18