UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | | |
|---|---|---|---|
| LEWIS COSBY, | ) | | |
| ERIC MONTAGUE, and | ) | | |
| MARTIN ZIESMAN, as Co-Trustee for the | ) | | |
| Carolyn K. Ziesman Revocable Trust, | ) | | |
| on behalf of themselves and | ) | | |
| all others similarly situated, | ) | | |
| | ) | | |
| Plaintiffs, | ) | | |
| | ) | | |
| v. | ) | No.: | 3:16-CV-121-TAV-DCP |
| | ) | | |
| KPMG, LLP, | ) | | |
| | ) | | |
| Defendant. | ) | | |

## MEMORANDUM OPINION AND ORDER

This action is before the Court on KPMG LLP's Partial Motion to Dismiss the Third Amended Complaint [Doc. 180]. Defendant argues that Count Two of the Third Amended Complaint must be dismissed, in accordance with a prior order dismissing the claim. Additionally, defendant argues Count Three of the Third Amended Complaint must be dismissed pursuant to Rule 12(b)(6) because it is barred by the statute of repose and the named plaintiff does not have standing. For the reasons that follow, defendant's motion is **GRANTED in part** and **DENIED in part**.

I. **Background**

In August 2018, this Court ruled on defendant's motion to dismiss the Second Amended Complaint and dismissed Count Two [Doc. 76]. On March 1, 2019, plaintiffs filed a motion to substitute the class representatives [Doc. 101]. Defendant did not have

an objection to the substitution if plaintiffs filed an amended complaint reflecting the change and two other conditions were met [Sealed Doc. 115]. Plaintiffs replied, addressing the other matters, but taking no position on defendant's condition that they file an amended complaint [Doc. 147]. United States Magistrate Judge Debra C. Poplin granted the motion, ordering plaintiffs to file an amended complaint as their operative pleading [Doc. 167]. Plaintiffs filed the Third Amended Complaint [Doc. 174]. Defendant then filed the present motion to dismiss [Doc. 180] and a motion to stay the case pending decision on the motion to dismiss [Doc. 187]. This Court denied the motion to stay since the case was already stayed pending its ruling on class certification and ordered the parties to complete briefing the motion [Doc. 201]. Plaintiffs responded [Doc. 202] and defendant replied [Doc. 204]. The matter is now ripe for the Court's review.

## II. Standard of Review

Defendant brings its motion pursuant to Federal Rule of Civil Procedure 12(b)(6). As a preliminary matter, Rule 8(a)(2) sets out a liberal pleading standard. *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004). Thus, pleadings in federal court need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief'

2

requires more than labels and conclusions." *Id.* (alterations in original). "[A] formulaic recitation of the elements of a cause of action will not do," nor will "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555, 557).

In deciding a Rule 12(b)(6) motion, the court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *accord Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). This assumption of factual veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is ultimately "a context-specific task that requires [the Court] to draw on its judicial experience and common sense." *Id.* at 679. In conducting this inquiry, the Court "must construe the complaint in a light most favorable to plaintiff[ ], accept all well-pled factual allegations as true, and determine whether plaintiff[ ] undoubtedly can prove no set of facts in support of those allegations that would entitle [her] to relief." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)).

3

### III. Analysis

Defendant moves to dismiss Counts Two and Three as having been previously decided by this Court and failing to state a claim, respectively. First, defendant moves to dismiss Count Two, the "scheme liability" claim under Section 10(b) and subparts (a) and (c) of Rule 10b-5. This Court already dismissed this count for failure to state a claim upon which relief may be granted when ruling on the motion to dismiss the Second Amended Complaint [Doc. 76 p. 20–25]. Plaintiffs then reasserted the claim in the Third Amended Complaint [Doc. 273 ¶¶ 273–280]. However, plaintiffs did not need to replead the claim to preserve the right to appeal its previous dismissal. *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 617 (6th Cir. 2014). Plaintiffs' response [Doc. 202] did not object or address defendant's arguments regarding this claim. Accordingly, defendant's motion is **GRANTED in part**, and Count Two is **DISMISSED**.

Second, defendant argues the Section 11 claim, Count Three, must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim, since named plaintiff Martin Ziesman's ("Ziesman") Section 11 claim is barred by the statute of repose and he lacks standing.

Section 11 claims have a three-year statute of repose which begins to run upon the date on which the security is bona fide offered to the public. 15 U.S.C. § 77m. Ziesman purchased Series C preferred stock on June 4, 2014 [Doc. 101-2 p. 3] and seeks to bring a Section 11 claim on behalf of "[a]ll those who purchased Miller Energy preferred shares pursuant to or traceable to the Offering Documents" [Doc. 174 ¶ 33]. The parties agree

4

that under the SEC rules, the relevant consideration is the effective date of an offering document, whether a registration statement or prospectus supplement, for which an auditor is required to provide consent under the Securities Act [Doc. 181 p. 9; Doc. 202 p. 26]. The first relevant date is when the original registration was declared effective. To become effective, the filing must include audited financial statements and an auditor's report with consent of the auditor. 17 C.F.R. § 230.430B(f)(2). At this point, the securities are considered bona fide offered to the public. *Id*. However, when a prospectus supplement contains "new audited financial statements or other financial information as to which the accountant is an expert and for which a new consent is required," the effective date is then considered the date in which the prospectus is deemed part of and included in the registration statement. *Id*. § 230.430B(f)(5)(i). Under subsections (f)(2) and (f)(5) then, the effective date is tied to the date at which a filing includes an audit report accompanied by the auditor's consent.

Defendant argues the subsection (f)(5) exception for prospectus supplements does not apply [Doc. 181 p. 9]. Defendant states that the Series C preferred stock was issued pursuant to a registration statement dated September 6, 2012 which became effective on September 18, 2012 [Doc. 174 ¶ 188]. The prospectus supplements dated February 13, 2013, May 7, 2013, and June 27, 2013, were for offerings of Series C preferred stock, and subsequent prospectus supplements were for Series D preferred stock [*Id*. ¶ 285]. Plaintiffs also include a chart that identifies which of defendant's reports were incorporated into the registration statement which indicates the Series C prospectus supplements did not

5

incorporate new audited financial statements beyond those included in the registration statement [*Id.* ¶ 188]. Defendant states this chart indicates the prospectus supplements "did not incorporate any new financial statements audited by KPMG" and that consequently, the "Series C preferred stock was *bona fide* offered as of September 18, 2012, the date the registration statement became effective" [Doc. 181 p. 10]. Since the three-year statute of repose then ran on September 18, 2015, and the initial complaint was not filed until March 14, 2016, defendant avers that the Section 11 claim based on the Series C preferred stock is time-barred.

Plaintiffs respond, arguing that the determination of which date applies "depends on the identity of the defendant and the circumstances, involving several overlapping regulations, two of which govern claims against auditors" [Doc. 202 p. 26].[1] Plaintiffs argue that one of the two regulations that could govern here is the series of regulations described above, regarding subsections (f)(2) and (f)(5) [*Id.*]. However, plaintiffs also contend that Rule 430B(f)(3) applies, and therefore argue that the relevant date for a

---

[1] Plaintiffs additionally argue that this Court already determined that the claims were not barred by the statute of repose in holding that because plaintiffs alleged that the series D prospectus statements incorporated new audited financial statements, the statute of repose did not bar the Section 11 claim [Doc. 202 p. 28]. However, the parties at that time did not make a distinction between the repose period for the Series C and Series D preferred stock, instead discussing the Section 11 claim in its entirety. The Court therefore did not rule on this issue specifically to hold that it still applies as to the new plaintiffs. Additionally, with the filing of the Third Amended Complaint, which plaintiffs did not object to upon defendant's request of its filing, defendant was entitled to file a new motion to dismiss and files this motion accordingly. The Court notes that the circumstances have changed between the named plaintiffs for the class between the Second and Third Amended Complaints. Defendant did not previously treat the Series C and Series D shares as creating two distinct claims with different statutes of repose. However, at that time, Martin Weakley ("Weakley") had purchased both Series C and Series D. Here, where Zeizman only bought one of the securities, the arguments are necessarily more specific.

6

Case 3:16-cv-00121-TAV-DCP   Document 209   Filed 05/07/21   Page 6 of 15   PageID #: 20737

registration statement is the date of any subsequent annual Form 10-K so long as any shares remain unsold under the registration statement [*Id*. p. 27]. Rule 430B(f)(3) provides, in relevant part, that:

> If a registration statement is . . . deemed to include, through incorporation by reference or otherwise, a report or opinion of any person . . . whose consent would be required under section 7 of the Act, . . . then for purposes of this section and for liability purposes under section 11 of the Act, the part of the registration statement for which liability against such person is asserted shall be considered as having become effective . . . as of the time the report or opinion is deemed to be a part of the registration statement.

*Id*. § 230.430B(f)(3).

The registration statement was filed on Form S-3 [Doc. 174 ¶ 284]. Item 12 of Form S-3 requires the incorporation by reference of all periodic and current reports filed under the Exchange Act prior to the termination of the offering. Accordingly, on Miller Energy's Form S-3, in a section entitled "information incorporated by reference," it states

> [e]ach document or report subsequently filed by us pursuant to Section 13(a), 13(c), 14 or 15(d) of the Securities Exchange Act of 1934 after the date hereof and prior to the termination of the offering of the securities shall be deemed to be incorporated by reference into this prospectus and to be a part of this prospectus from the date of filing of such document

[Doc. 203-1 p. 25]. The Form 10-K, used for annual reports pursuant to Section 13 or 15(d) of the Securities Exchange Act, qualifies as one of such documents incorporated by reference into the Form S-3 registration statement. Rule 439(a) and Item 601 of Regulation S-K require the consent of experts to be filed with a Form 10-K in this circumstance. *Id*. §§ 229.601, 230.439. When Miller Energy filed its next Form 10-K on July 15, 2013,

7

defendant filed consent to incorporation by reference of its audit report, also dated July 15, 2013, into the Form S-3 registration statement [Doc. 203-3].

In Item 17 of the registration statement, in a section entitled "undertakings," it states that Miller Energy

> undertakes that, for purposes of determining any liability under the Securities Act of 1933, each filing of the registrant's annual report [here, the 10-K]. . . that is incorporated by reference in the registration statement shall be deemed to be a new registration statement relating to the securities offered therein, and the offering of such securities at that time shall be deemed to be the initial bona fide offering thereof

[*Id*. p. 34]. Accordingly, plaintiffs argue that defendant filed its consent to incorporate the new audit report into the Form 10-K, the Form 10-K was incorporated into the registration statement, and under Item 17 of Form S-3 and § 430B(f)(3), the relevant date is therefore the filing of the Form 10-K, on July 13, 2015, which is within the three-year statute of repose.

Defendant replies [Doc. 204] that plaintiffs' reliance on Rule 430B(f)(3) is misplaced, and that nothing in that subsection contradicts or supplants the standards set forth in subsections (f)(2) and (f)(5). Defendant additionally argues that plaintiffs' argument would render (f)(5) meaningless, plaintiffs' theory contradicts (f)(5) and their own complaint, and that the theory is contrary to the express terms and purpose of the statute. However, defendant does not further elaborate on the contradiction or how plaintiffs' interpretation is incorrect. On the basis of the text of the regulations and the

8

pleadings and exhibits or documents referenced therein,[2] plaintiffs' theory is plausible and states a claim upon which relief may be granted: the documents are incorporated into each other, defendant filed its consent as required under the Act, and accordingly the part of the registration statement for which liability is asserted shall be considered as having become effective as of the time of the report or opinion is deemed to be part of the registration statement. Defendant has not demonstrated a flaw in plaintiffs' logic or why (f)(3), read plainly, does not apply in this manner. Accordingly, defendant has not sufficiently argued its position at this time to warrant dismissal of the class.

While neither the Court nor the parties could find caselaw addressing potential application of (f)(3) in this manner, the Securities Law Handbook discusses this matter. 1 Harold S. Bloomenthal & Samuel Wolff, *Securities Law Handbook* § 6:47. Section 11 effective date as to accountants and other experts (2020). There, the authors follow a similar logic. Discussing the first of plaintiffs' two potential theories, the authors discuss how under (f)(2) and (f)(5), the effective date is tied to an audit report filed with consent. *Id.* The authors then discuss the second theory, specific to Form S-3 registration statements. They state the Form 10-K has to include audited financial statements and that under normal circumstances, it need not include the auditor's consent. *Id.* However, if it

---

[2] "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)

9

is being incorporated by reference as a result of the S-3 registration statement, it must include consent. *Id.* The authors state that

> [a]ccordingly, at least when the auditor's opinion . . . is included in the Form 10-K, as in the case of the auditor it has to be, and is incorporated by reference into a previously filed Form S-3, under Item 512(b) of Regulation S-K, the registration statement would be deemed effective as of the filing of the Form 10-K. . . . We assume that Rule 430B(f)(3) is intended to deal with this situation. . . . The auditor would . . . have potential Section 11 liability that took into account the situation at the date the financial statements were incorporated by reference in the Form 10-K.

*Id*.

In light of the application of the plain text of the statute and secondary support for plaintiffs' theory, the Court finds that this issue weighs in plaintiffs' favor. Defendant argue that plaintiffs' chart in their complaint does not indicate the incorporation of later audit reports, and that this interpretation contradicts their complaint. However, the Court finds that this argument places form over substance. Plaintiffs' chart cannot be determinative in light of the text of the regulations and exhibits presented to the Court, particularly when interpretation of the chart is so unclear. The chart does not mention the Form 10-K filings and only mentions prospectus supplements. Additionally, the chart columns indicate a progression over time, with documents being added as incorporated in future cells. Therefore, the failure to include that the July 15, 2013 report was incorporated in the September 6, 2012 registration statement may more accurately depict that it was not incorporated at the time of filing, as it had not yet been created, not that it was never incorporated at all. Dismissal of an entire class should not depend on ambiguous

10

interpretation of such a self-made chart alone when the regulatory text and exhibits provide an otherwise stronger conclusion.

The Court therefore finds that, construing the complaint in a light most favorable to plaintiffs, plaintiffs have alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Defendant's motion is therefore **DENIED in part** regarding the statute of repose.

At the end of the statute of repose section, defendant argues that none of the plaintiffs purchased the Series D preferred stock, and that plaintiffs have "effectively abandoned their claim on behalf of purchasers of the Series D preferred stock, and therefore the claim should be dismissed" [Doc. 181 p. 12]. Defendant cites cases framing this as a standing issue. However, the Court notes that standing in this situation is a much more complicated issue and that courts widely disagree about standing to represent a security other than the one plaintiff purchased.[3] Plaintiffs have stated a claim as to Ziesman's standing, as discussed below, and defendant has not adequately prepared the Court to rule on the merits of standing regarding the Series D securities. While defendant cites cases stating that a named plaintiff who lacks standing cannot sue merely because there is someone in the class who does have standing, defendant fails to argue or offer authority

---

[3] The Court notes that plaintiffs include a lengthy footnote providing caselaw for their position that Ziesman need not have purchased Series D stock to represent the class members who had [Doc. 202 p. 25]. Defendant did not present caselaw on this matter in this motion, but the Court recognizes that the parties disputed standing during the class certification hearing and informed the Magistrate Judge that there is a circuit split on the issue. The Report and Recommendation notes this dispute and briefly reviews the issue, deferring a decision on the merits as more appropriate for dispositive motion practice [Doc. 172 p. 74].

why Ziesman specifically does not have standing as to Series D and fails to dispute or distinguish plaintiffs' presented cases in its reply. This Court's Local Rules require that requests for relief include "a concise statement of the factual and legal grounds which justify the ruling sought from the Court." E.D.TN. LR 7.1(b). "It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones." *El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009). Since defendant did not sufficiently present the issue for the Court's review, defendant's motion is **DENIED in part** regarding standing for Series D claims.

Finally, defendant moves to dismiss the Section 11 claim pursuant to Rule 12(b)(6) because Ziesman lacks standing to represent the class on behalf of [a]ll those who purchased Miller Energy preferred shares pursuant to or traceable to the Offering Documents" [Doc. 174 p. 13]. Defendant states that Ziesman made a single purchase of 1,000 Series C shares on June 4, 2014 in the after-market [Doc. 181 p. 13]. Defendant additionally notes that Ziesman admitted in a deposition he could not identify which offering his shares came from, and therefore could not trace them to the offerings at issue, as required to fit the class definition [*Id.*]. However, defendant's reliance upon matters outside the pleadings is inappropriate at this stage. Fed. R. Civ. P. 12(d); *Berry v. U. Sch. of Nashville*, 3:19-CV-00830, 2020 WL 3268732, at *2 (M.D. Tenn. June 17, 2020) ("As a general rule, matters outside the pleadings may not be considered in ruling on a motion

12

to dismiss under [Rule] 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56.").[4]

Defendant also states that in filing the Third Amended Complaint, plaintiffs removed a paragraph which defeats stating a claim as to standing. Defendant concedes that an allegation that plaintiff purchased shares "on or traceable to" the offerings at issue is sufficient at the motion to dismiss stage, based on this Court's ruling in *Gaynor v. Miller, et al.*, 273 F. Supp. 3d 848, 861 (E.D. Tenn. 2017) [Doc. 181 p. 14 n.5]. In the Second Amended Complaint, plaintiffs alleged that Weakley purchased his shares "on or traceable to" the offerings at issue [Doc. 59 ¶ 16]. In the Third Amended Complaint, plaintiffs do not make the same allegation in the parallel paragraph [Doc. 174 ¶ 16]. Defendant states that the deletion of this phrase "makes clear that the only plaintiff who purchased preferred stock," Ziesman, does not have standing, and that Count Three, the Section 11 claim, should be dismissed in its entirety [Doc. 181 p. 14–15].

Plaintiffs argue that they did appropriately allege traceability later in the complaint by stating "[i]n each of the six offerings alleged in Counts III below, plaintiffs and members of the Section 11 Class acquired securities in or traceable to the Shelf Registration

---

[4] Under rule 12(d), it is within the Court's discretion whether to convert a motion to dismiss into a motion for summary judgment. Neither party invoked Rule 12(d) or requested conversion in this case. The Sixth Circuit permits *sua sponte* conversion of a Rule 12(b)(6) motion into a Rule 56 motion but notes that conversion "should be exercised with great caution and attention to the parties' procedural rights." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 487 (6th Cir.2009). Accordingly, the Court must "afford the party against whom *sua sponte* summary judgment is to be entered ten-days notice and an adequate opportunity to respond." *Id.* The Court here declines to *sua sponte* convert the motion to dismiss into a motion for summary judgment and in so doing, will later provide the parties an opportunity to present all pertinent material at a subsequent stage of these proceedings if the parties file motions pursuant to Rule 56.

13

Statement" [Doc. 174 ¶ 313]. They state the language was removed from paragraph 16, but "this was only because it was superfluous of identical existing language that appears later in the substantive section of the complaint addressing the Section 11 claim" [Doc. 202 p. 25]. Defendant argue this language later in the complaint is insufficient, and that "[t]he allegation that unidentified plaintiffs in the proposed class acquired shares in or traceable to the offerings does not bear on whether Mr. Ziesman can trace his shares" [Doc. 204 p. 14]. Defendant then provides the Court with deposition testimony that they claim proves he cannot trace his shares to the relevant offerings. As previously stated, the Court declines to consider matters outside the pleadings at this stage. Additionally, the Court does not find defendant's argument persuasive. Plaintiffs alleged that "plaintiffs and members of the Section 11 Class" had securities they could trace [Doc. 174 ¶ 313]. Defendant's argument that they are unidentified plaintiffs in the proposed class misrepresents that language. The paragraph distinguishes "plaintiffs" from "members of the class," indicating that the term "plaintiffs" refers to a smaller, distinct sub-set of persons. Interpreting the complaint most favorably to plaintiffs and using the plain language of the term "plaintiffs" as those listed in the styling of the complaint indicates that, in this context, "plaintiffs" means the named plaintiffs. Ziesman is a named plaintiff, and therefore this reference is sufficient to allege that he purchased traceable shares. Whether he actually can trace his shares to the relevant offerings is a separate matter, but the Court finds this statement sufficient to state a claim. Accordingly, defendant's motion is **DENIED in part** regarding Ziesman's standing to assert a Section 11 claim.

14

## IV. Conclusion

For the reasons set forth above, defendant's motion to dismiss [Doc. 180] is **GRANTED in part** and **DENIED in part**. The Court finds that plaintiffs have stated a claim as to Count Three in the Third Amended Complaint. However, the Court finds that Count Two, scheme liability, must be dismissed in accordance with this Court's prior ruling.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE