UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

LEWIS COSBY,                                    )
ERIC MONTAGUE, and                             )
MARTIN ZIESMAN, as Co-Trustee for the )
Carolyn K. Ziesman Revocable Trust,            )
on behalf of themselves and                    )
all others similarly situated,                 )
                                               )
                    Plaintiffs,                )
                                               )
v.                                             )          No.:   3:16-CV-121-TAV-DCP
                                               )
KPMG, LLP,                                     )
                                               )
                    Defendant.                 )

## MEMORANDUM OPINION AND ORDER

On March 15, 2019, plaintiffs filed a motion to certify the class, appoint class representatives, and appoint class counsel [Doc. 107]. This Court referred the motion to United States Magistrate Judge Debra C. Poplin, who issued a Report and Recommendation ("R&R") recommending that the Court grant plaintiffs' motion [Doc. 172]. Defendant filed objections to the R&R [Docs. 178, 186],[1] plaintiffs responded [Doc. 195], and defendant replied [Doc. 199]. The matter is now ripe for the Court's review. Because the Court agrees with Judge Poplin's conclusions, it will **OVERRULE** defendant's objections [Doc. 186] **ACCEPT IN WHOLE** the R&R [Doc. 172], and **GRANT** plaintiffs' motion [Doc. 107].

---

[1] Documents 178 and 186 are a sealed and redacted version of defendant's objections. The Court will refer to the redacted version of the objections, document 186.

## I.     Background

The Court presumes familiarity with the R&R's description of the background. Neither party objects to the magistrate judge's factual background. The Court, therefore, incorporates by reference the background section from the R&R.

## II.    Standard of Review

A court must conduct a de novo review of those portions of a magistrate judge's report and recommendation to which a party objects unless the objections are frivolous, conclusive, or general. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "Objections disputing the correctness of the magistrate's recommendation, but failing to specify the findings believed to be in error are too general and therefore insufficient." *Stamtec, Inc. v. Anson*, 296 F. App'x 516, 519 (6th Cir. 2008) (citing *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006)). "The parties have 'the duty to pinpoint those portions of the magistrate's report that the district court must specially consider.'" *Mira*, 806 F.2d at 637 (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. 1982)). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations" made by the magistrate judge. 28 U.S.C. § 636(b)(1).

## III.   Analysis

Defendant makes several broad objections to the conclusions of the R&R and makes further objections within each of those categories. The Court will address the objections as grouped and listed in footnote one of the objections [Doc. 186 p. 8].

2

### A. The Section 10(b) Class

#### 1. Individual Issues of Reliance

First, defendant objects to Judge Poplin's conclusion that individual issues of reliance will not overwhelm common issues [*Id*. p. 12].

#### a. *Basic* Presumption

As stated in the R&R, the Supreme Court explained the *Basic* presumption, or the fraud on the market presumption, as follows:

> The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business.... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.... The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations.

*Basic Inc. v. Levinson*, 485 U.S. 224, 241–42 (1988) (quoting *Peil v. Spieser*, 806F.2d 1154, 1160–1161 (3rd. Cir. 1986). To properly invoke the *Basic* presumption, "a plaintiff must prove (1) the alleged misrepresentations were publicly known, (2) they were material, (3) the stock traded in an efficient market, and (4) the plaintiff traded the stock between when the misrepresentations were made and when the truth was revealed." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 277–78 (2014) ("*Halliburton II*"). However, the presumption is rebuttable. *Basic Inc.*, 485 U.S. at 250. Courts use a variety of factors to determine market efficiency, referred to as the *Cammer* and *Krogman* factors. The *Cammer* factors include: (1) whether there was a large average weekly trading volume during the class period; (2) whether a significant number of securities analysts followed

3

the company's stock during the class period; (3) whether the company's stock had market makers; (4) whether the company was entitled to file an S-3 Registration Statement; and (5) whether empirical facts showed a cause and effect relationship between unexpected corporate events or financial releases and immediate response in the stock price. *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989). Courts also consider the *Krogman* factors, including (1) market capitalization of the company; (2) the bid-ask spread of the stock; and (3) institutional ownership. *Krogman v. Sterritt*, 202 F.R.D. 467, 478 (N.D. Tx. 2001).

In arguing the fraud on the market presumption does not apply, defendant makes two groupings of objections to Judge Poplin's conclusion it does apply because (1) the plaintiffs have not proven the markets were efficient and (2) defendant rebutted the presumption [Doc. 186 p. 13].

### i.   Market Efficiency

By way of introduction, defendant states that the fraud on the market presumption is available only where plaintiffs prove the markets were efficient [Doc. 186 p. 13]. Here, plaintiffs submitted the opinion of Chad Coffman to satisfy that burden, but defendant argues the report is riddled with errors and cannot be credited. Accordingly, defendant makes four (4) objections related to market efficiency.

First, defendant states Judge Poplin "improperly shifted the burden to KPMG to prove inefficiency" [*Id.*]. Defendant contends that the following statements from the R&R shift the burden: "Defendant's Response did not set forth the specific reasons for finding that the Fifth *Cammer* Factor supports inefficiency of the market" and "Coffman testified

4

that he looked at other events but could not recall specifics during his deposition. "Defendant, however, has not pointed the Court to any other evidence showing that the other events or disclosures caused the price changes" [Doc. 172 p. 31, 36]. Defendant's briefing takes these statements out of context. Judge Poplin made these statements to express that defendant's arguments to the contrary, without further support or argumentation, are not sufficient to dissuade the Court from concluding there was market efficiency in light of plaintiffs' evidence. Judge Poplin analyzed the reports and testimony of both parties' experts and extensively discussed the parties' arguments, reviewing the fifth *Cammer* factor for nine (9) pages [*Id*. p. 29–38]. Such analysis did not shift the burden to defendant but just highlighted that defendant's arguments were to no avail.

Second, defendant states Judge Poplin "discussed, without concluding[,] whether *Cammer* factor number five, a cause-and-effect relationship between news events and stock price movements, is essential" and without such relationship, plaintiffs cannot satisfy their burden to prove market efficiency [Doc. 186 p. 14]. In support, defendant cites *In re Fed. Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig.*, which states that the fifth factor is the most important. 281 F.R.D. 174, 178 (S.D.N.Y. 2012). That case, however, even states that "[t]he *Cammer* factors are intended to be an analytical tool, not a checklist," indicating no particular factor is essential to prove market efficiency. *Id*. at 210. "Numerous Courts within the Sixth Circuit have held that market efficiency can be established without regard to the fifth *Cammer* factor." *Dougherty v. Esperion Therapeutics, Inc.*, No. 16-10089, 2020 WL 3481322, at *7 (E.D. Mich. June 19, 2020) (collecting cases). Indeed, the

5

*Cammer* court itself did not consider it necessary, stating only that "it would be helpful to a plaintiff seeking to allege an efficient market [to show this relationship]." 711 F. Supp. at 1287. Judge Poplin discussed the case law cited by both parties at length in the Order on the Motion to Exclude [Doc. 171 p. 20–24]. Similarly, in the R&R, she identified appropriate caselaw to demonstrate that most courts use the factors to aid in their analysis, not to conclusively determine the result.[2] Plaintiffs in their response to defendant's objections identify a plethora of cases holding the same [Doc. 195 p. 19 n.6]. Indeed, they are *factors*, not *elements*.

Though defendant states Judge Poplin did not conclude whether the fifth factor is essential, she stated "[i]t appears that most courts utilize the *Cammer* Factors as analytical tools as opposed to a checklist" [Doc. 172 p. 31 n.8]. From her lengthy explanation of the caselaw, she treats the factors as such even if not explicitly stated. Even so, such a definite conclusion about the necessity of the fifth factor was not required, and defendant did not make such an argument in response to the motion for class certification, nor did they discuss this factor. Defendant's objection is therefore misguided.

---

[2] [Doc. 172 p. 24–25, 31 n.8]. *See Weiner v. Tivity Health, Inc*., 334 F.R.D. 123, 133 (M.D. Tenn. 2020) (using the factors as tools, not a checklist); *Monroe Cty. Employees' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 385 (N.D. Ga. 2019) ("Accordingly, district courts around the country routinely find market efficiency regardless of the fifth Cammer factor.") (collecting cases); *Beaver Cty. Employees' Ret. Fund v. Tile Shop Holdings, Inc*., 2016 WL 4098741, at *10–11 (D. Minn. July 28, 2016) (reasoning that requiring all the *Cammer* factors to be met would change the factors into a "requirement" or "necessity" which "has not been explicitly endorsed by the courts"); *Första AP-Fonden v. St. Jude Med., Inc.*, 312 F.R.D. 511, 520 (D. Minn. 2015); *Angley v. UTi Worldwide Inc.*, 311 F. Supp. 3d 1117, 1121 (C.D. Cal. 2018) (finding market efficiency even when defendant argued the fifth factor was not met).

Third, defendant argues Judge Poplin incorrectly concluded that three (3) of seventeen (17) earnings releases (17.65%) followed by movements in the price were sufficient to show market efficiency, when "the more persuasive case law is to the contrary," focusing on the percentage of news events with a market reaction and how it may establish a cause-and-effect relationship under *Cammer* factor five [Doc. 186 p. 14]. Defendant argues this percentage is not high enough, and that the Court should require something more. Judge Poplin acknowledged "the percentage is not high" and that the "numbers are not a strong showing in Plaintiffs' favor . . . [but] they nevertheless weigh in favor of finding market efficiency" [Doc. 172 p. 33–34].

In support of its argument that the percentage here was not high enough, defendant relies heavily on *In Re Freddie Mac*, 281 F.R.D. 174 at 180–81 from the Southern District of New York which held that a market reaction to news events 28% of the time was insufficient to fulfill the fifth *Cammer* factor. The court there stated that "[t]he other *Cammer* and *Krogman* factors do not directly address the question of efficiency. Without evidence of the prompt effect of unexpected news on market price, the market cannot be called efficient." *Id* at 182. In their reply, defendant argues that "where an event study does not establish a cause-and-effect relationship under *Cammer* factor number five, the presence of other factors suggesting efficiency is of no consequence" as it is the only direct measure [Doc. 199 p. 11]. Defendant cites *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 207–208 (2d Cir. 2008) in support. However, that case states that without the fifth Factor, it is "difficult to presume that the

7

market will integrate the release of material information about a security into its price" and that an event study with the appropriate correlation between disclosures and price movements may be prima facie evidence of a causal relationship, but it does not preclude the possibility of indirect evidence making the same showing. *Id.* Defendant additionally cites evidence from the experts where they agree the fifth Factor is the most direct method of showing efficiency.

While defendant argues that the fifth factor is the most *direct* assessment of market efficiency, "market efficiency is not a yes-or-no proposition," and there is not only one method to assess it. *Halliburton II.*, 573 U.S. at 279. "'[H]elpful' does not mean 'determinative.' A plaintiff's shortfall on the fifth *Cammer* factor alone does not outweigh, as here, showings on many other relevant factors." *Första AP-Fonden v. St. Jude Med., Inc.*, 312 F.R.D. 511, 520 (D. Minn. 2015).

Indeed, indirect evidence under the other four *Cammer* factors "would add little to the *Basic* analysis if courts only ever considered them after finding a strong showing based on direct evidence alone." *In re Petrobras Sec.*, 862 F.3d 250, 278 (2d Cir. 2017). Such indirect evidence "is particularly valuable in situations where direct evidence does *not* entirely resolve the question. Event studies offer the seductive promise of hard numbers and dispassionate truth, but methodological constraints limit their utility in the context of single-firm analyses." *Id.* Thus, a mixture of direct and indirect evidence is necessary and permissible for courts to consider. *Id.* at 279. Accordingly, the strength of defendant's argument and reliance on *In re Freddie Mac* is weakened as the court's

8

emphasis on the fifth *Cammer* factor as direct evidence is not required based on later case law from its respective Court of Appeals.[3]   Additionally, "courts have found market efficiency in the absence of an event study or where the event study was not definitive." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 84 (S.D.N.Y. 2015).[4]

---

[3]  The Southern District of New York later questioned the reasoning of *In re Freddie Mac* and its extension to other facts.  *Barclays PLC*, 310 F.R.D. at 83–84 ("While defendants have managed to find one case that states that *Cammer* 5 is dispositive—the *Freddie Mac* case involving preferred shares—the court's reasoning for adopting such a rule is tethered to its factual context. Different contexts require courts to place greater importance on some factors than on others.  No other court has adopted a per se rule that any one factor is dispositive.").

[4]  The court in *Barclays PLC* highlighted a variety of cases which found market efficiency despite the less-than-certain nature of the event study:

> *Winstar Commc'ns Sec. Litig.*, 290 F.R.D. 437, 448 (S.D.N.Y.2013) (holding that although plaintiff's expert "was unable to complete a formal event study" due to lack of data, the expert had demonstrated efficiency by "select[ing] five days on which news was released that she thought might be material, and qualitatively analyz[ing] the change in the price of Winstar bonds relative to the price change of the Lehman U.S. Bond Composite Index (a market-wide bond index composed of investment grade government, agency, corporate and mortgage-backed bonds)" and finding that on two of those days the price changed in response to news); *Aranaz v. Catalyst Pharm. Partners Inc.*, 302 F.R.D. 657, 669 (S.D.Fla.2014) (finding market efficient for common stock even though expert had not performed an event study and implicitly finding that empirical evidence of the stock price change on the corrective disclosure date satisfied *Cammer* 5); *In re Computer Scis. Corp. Sec. Litig.*, 288 F.R.D. 112, 120 (E.D. Va. 2012) (rejecting the argument that plaintiffs had failed to establish market efficiency because they had not submitted an event study); *Smilovits v. First Solar, Inc.*, 295 F.R.D. 423, 437 (D. Ariz. 2013) (holding that where *Cammer* 1, 2, and 4 weighed in plaintiffs' favor, *Cammer* 3 was partially unsatisfied, and *Cammer* 5 did not favor either the plaintiffs or the defendants, plaintiffs' evidence was sufficient to establish market efficiency by a preponderance of the evidence)

310 F.R.D. at 84 n.97.

9

In discussing whether the 17.65% statistic was sufficient, Judge Poplin discussed cases which established the fifth factor at levels both above and below fifty percent (50%).[5] She excerpted Coffman's Rebuttal report wherein he explained that an earnings announcement may not have statistically significant price movements because the information was consistent with expectations, a mixture of information, or the market was focused on other information. *See also McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 430 (S.D.N.Y. 2014) ("To require a stock to change on at least 50 percent of potentially material news days ignores that, in many circumstances, the absence of a price change on a potentially material news day is not inconsistent with an efficient market."); *In re Computer Scis. Corp. Sec. Litig.*, 288 F.R.D. 112, 120 (E.D. Va. 2012) ("[T]his theory [that each news event would result in a change in price] is not in keeping with the key principle underlying the efficient market theory, namely that in an efficient market *material, unexpected* information will be timely reflected in the stock price.")

---

[5] *Compare In Re Freddie Mac*, 281 F.R.D. 174 at 180–81 (a market reaction 28% of the time was insufficient establish market efficiency), *and George v. China Auto. Sys., Inc.*, No. 11 CIV. 7533 KBF, 2013 WL 3357170, at *11 (S.D.N.Y. July 3, 2013) (a market reaction seven out of sixteen days was insufficient to find market efficiency), *with Angley*, 311 F. Supp. 3d at 1126 (finding the fifth factor satisfied when 11.1% of news days had significant abnormal returns versus 2.6% on non-news days). Defendant argues that the cases plaintiffs cited for thresholds below fifty percent are still higher than the percentage at issue here, with the exception of *Angley*, which Judge Poplin cited [Doc. 199 p. 10] (citing *Första AP-Fonden*, 312 F.R.D. at 521(finding statistically significant price reaction to 36.4% of the events studied); *McIntire v. China MediaExpress Holdings, Inc*., 38 F. Supp. 3d 415, 433 (S.D.N.Y. 2014) (finding statistically significant price reaction to 42% of the events studied); *In re Winstar Commc'ns Sec. Litig*., 290 F.R.D. at 448 (finding statistically significant price reaction to 40%, two out of five, of the events studied; the Court notes that the parties here did not conduct a formal event study, as described *supra* n. 4)). However, for the reasons discussed in this opinion, namely that this factor is not necessary and there is no consensus on a threshold for this issue, the Court finds this point not well taken.

10

(emphasis original). Additionally, defendant's expert could not approximate an appropriate threshold.

Defendant admits it "did not challenge Coffman's conclusions about the other *Cammer* and *Krogman* factors," all of which were found to be in favor of market efficiency [Doc. 199 p. 12]. Defendant does not object to Judge Poplin's analysis of the first four factors, nor does defendant object to the analysis of the fifth factor as it pertains to the common stock other than the issue of the threshold of events with subsequent statistically significant price movements.

The weight of authority indicates that the fifth *Cammer* factor is not necessary, as discussed above. If unnecessary in the first instance, a weaker showing of the cause-and-effect relationship may also indicate market efficiency. Here, while the percentage of events followed by price movements in the common stock may not be the strongest evidence, the Court declines to "let the perfect become the enemy of the good." *In re Petrobras Sec.*, 862 F.3d at 277. Accordingly, the combination of the other *Cammer* and *Krogman* factors of strong, indirect evidence and the fifth *Cammer* factor of weaker, direct evidence leads the Court to find market efficiency in this case.

Fourth and finally, defendant objects that Judge Poplin incorrectly concluded there was market efficiency for the preferred stock despite there being no statistically significant movements in the price after earnings releases during the proposed class period [Doc. 186 p. 15]. Defendant argues Judge Poplin did not compare why Coffman's study used a different approach for the preferred stock than the common stock in looking at news rather

than earnings releases [Doc. 199 p. 12]. However, Judge Poplin detailed Coffman's explanation for why his study examined news that would impact preferred stock, like ability to pay dividends to preferred shareholders, rather than earnings releases, as he used for the common stock. Specifically, she stated that the price of preferred securities may not be affected until there are signs of the company defaulting, and that defendant's expert, "even acknowledged during his deposition that information pertaining to revenue, earnings, and profitability are important to preferred shareholders but not to the same degree as holders of common stock" [Doc. 172 p. 35]. She also discussed the results of the study which demonstrated the preferred stock reacted in a statistically significant manner to relevant news events [*Id.* p. 35–36]. Judge Poplin concluded that after considering both the reactions to earning announcements and news events, the market was efficient for the preferred stock [*Id.* p. 36]. Defendant does not identify why the analysis for the common and the preferred stock need be identical, especially in light of their expert's statement that these securities may react differently to various forms of information. Though the preferred securities did not react to earnings announcements, Judge Poplin took that into consideration. Even if the evidence is not as strong a showing of market efficiency as defendant believes is required, as discussed above regarding the fifth *Cammer* factor, defendant's arguments are unavailing. Accordingly, defendant's objections with regard to market efficiency are **OVERRULED**.

### ii.    Rebuttal

Defendant's second category of objections relates to Judge Poplin's conclusion that defendant did not rebut the *Basic* presumption.  As described in the R&R, defendant bears the burden of showing that the alleged misrepresentations did not have an impact on the price [*Id*. p. 47–48].  Defendant made three arguments in its initial motion: (1) the alleged misrepresentations did not artificially inflate the price, (2) out of sixteen (16) events that plaintiffs alleged leaked the truth, the two most closely tied to the allegation that the Alaska Assets were overvalued were not followed by statistically significant price declines, and (3) the proposed class representatives and lead plaintiffs would have bought the stock even if they knew the price was tainted by fraud [*Id*.].  Defendant now objects to Judge Poplin's conclusions which reject each of those arguments.

First, defendant argues that the better reasoned case law indicates the alleged misrepresentations did not artificially inflate the price [Doc. 186 p. 18].  Judge Poplin stated that defendant's argument ignored the price impact at the time of the corrective disclosures, only focusing on the impact at the time of the misrepresentation [Doc. 172 p. 47].  Citing *Burges v. Bancorpsouth, Inc.*, Judge Poplin stated that "a defendant cannot simply show that a price did not rise after a misrepresentation" because price impact can be shown "at the time the misrepresentation is made or at the time the corrective disclosure is given." No. 3:14-CV-1564, 2017 WL 2772122, at *9 (M.D. Tenn. June 26, 2017) (citing *Willis v. Big Lots, Inc.*, 242 F.Supp.3d 634, 15–16 (S.D. Ohio March 17, 2017).  Because defendant bears the burden and must show lack of price impact at each of these times, Judge Poplin

therefore rejected defendant's argument that a lack of price increase after release of audit opinions rebuts the presumption.

Defendant argues that its position focusing on the price impact at time of the misrepresentation is more persuasive because it does not depend on the price maintenance theory and it matches the first of two examples offered by the Supreme Court for how a defendant may rebut the presumption: "defendant could show that the alleged misrepresentation did not, for whatever reason, actually affect the market price." *Halliburton II*, 573 U.S. at 269.

Defendant argues that Judge Poplin "apparently embrac[ed] the faulty 'price maintenance theory' in making her conclusion [Doc. 186 p. 17]. As described in the R&R, price maintenance theory is the theory that a misrepresentation can have a price impact by maintaining an already artificially inflated price [Doc. 172 p. 48 n.10]. As Judge Poplin and defendant note, district courts within this Circuit are split on the issue [*Id.*; Doc. 186 p. 16 n.10]. Defendant argues the Sixth Circuit has not endorsed or held that the price maintenance theory is valid, but dicta has indicated that "case law supports the legal standard the district court applied" when applying the price maintenance theory. *In re CoreCivic, Inc.*, No. 19-0504, 2019 WL 4197586, at *1 (6th Cir. Aug. 23, 2019) (citing *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Morg. Corp.*, 830 F.3d 376, 385 (6th Cir. 2016)).

Defendant's argument, however, overlooks that the case law, like *Burges* and *Willis*, relies upon a more nuanced reading of that phrase, as described in *Halliburton II* itself.

14

*Halliburton II*, 573 U.S. at 279 (the presumption could be rebutted by appropriate evidence, "including evidence that the asserted misrepresentation (*or its correction*) did not affect the market price of the defendant's stock") (emphasis added). Defendant therefore fails to identify what was in error about Judge Poplin's reasoning, or why defendant's presented cases are more persuasive, other than that they reach defendant's desired conclusion.

Second, defendant argues that Judge Poplin acknowledged that two (2) of the corrective disclosures are tied closely to the overvaluation of the Alaska Assets but wrongly concluded that the lack of statistically significant decline in price was insufficient evidence to rebut the *Basic* presumption. Defendant asserts this shows the misrepresentations did not impact the pieces of securities. Judge Poplin stated that of sixteen (16) events and disclosures that leaked the truth, only two (2) were tied to the alleged overvaluation of the Alaska Assets, and they were not followed by statistically significant price declines [Doc. 172 p. 50]. She concluded that defendant did not mention the other fourteen (14) disclosures and that defendant's expert did not offer an opinion on negative causation, therefore finding that the argument did not rebut the basic presumption [*Id*. p. 51]. Defendant must show lack of price impact by a preponderance of the evidence. *In re Quorum Health Corp.*, No. 19-0505, 2019 WL 3949704, at *2 (6th Cir. July 31, 2019) (citing *Ark. Teachers Ret. Sys. v. Goldman Sachs Grp., Inc.*, 879 F.3d 474, 484−85 (2d Cir. 2018)). Merely showing some evidence of lack of price impact as to two (2) events while failing to address the other fourteen (14) is insufficient to meet the burden.

15

Third, defendant argues that evidence shows that the proposed Class Representatives would have purchased the stock even if they had been aware the price was tainted by fraud and objects to Judge Poplin's conclusion that the presumption was not rebutted by this evidence. Defendant argues that purchasing the shares after some of the events and disclosures that leaked the truth and caused the price to decline severs the link between the misrepresentations and the decision to trade at the fair market price [Doc. 186 p. 21]. Defendant cited *In re Valence Tech. Sec. Litig.*, for the proposition that "[t]he fact that plaintiff continued to trade in the stock of defendants after he learned of the alleged misrepresentations of defendants" rebuts the presumption. No. C 95-20459 JW, 1996 WL 119468, at *1 (N.D. Cal. Mar. 14, 1996). While this may be true, and as Judge Poplin stated [Doc. 172 p. 51], the fact that Plaintiff Montague[6] purchased shares after the disclosures does not demonstrate that he was aware that the price was tainted by fraud. Indeed, "[p]ost-disclosure purchases are consistent with the fraud-on-the-market theory and may be entirely rational and indeed a sound investment where the stock is traded in an efficient market." *In re Computer Scis. Corp. Sec. Litig.*, 288 F.R.D. at 124. Though defendant notes a disagreement among district courts about this issue,[7] defendant does not argue why those cases are better reasoned, more persuasive, or more applicable other than reaching their desired conclusion. *Id.* Judge Poplin stated that to rebut the presumption,

---

[6] Defendant's motion also made arguments about named plaintiffs Kenneth Martin and Martin Weakley, who have since withdrawn. However, Judge Poplin noted the same analysis applies [Doc. 51 p. 51 n.13].

[7] *In re Computer Scis. Corp Sec. Litig.*, 288 F.R.D. at 124 n.13.

16

*Basic* requires that the defendant show the investor "would have paid the same price," which it has not done. *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 432 (7th Cir. 2015). Accordingly, defendant's objections with regard to Judge Poplin's conclusion that defendant did not rebut the *Basic* presumption are **OVERRULED**.

### b. *Affiliated Ute* **Presumption**

Defendant objects to Judge Poplin's ruling that the *Affiliated Ute* presumption applies at this stage [Doc. 186 p. 21]. *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972) ("*Affiliated Ute*"). In support, defendant states that the presumption is available only for claims based primarily on omissions whereas plaintiffs' claims are based on misstatements. Defendant also states that Judge Poplin failed to address their argument that plaintiff cannot convert claims based on misstatements into claims based on omissions.

In the R&R, Judge Poplin described the presumption, quoted paragraphs 7 and 134 of the complaint wherein plaintiffs describe various ways defendant failed to take particular actions, and stated plaintiffs "have alleged omissions and representations" [Doc. 172 p. 53]. Citing *Burges*, Judge Poplin found that "for purposes of class certification, Plaintiffs are entitle[d] to the *Affiliated Ute* presumption as to its failure to disclose claims." 2017 WL 2772122 at *10.

Defendant states the presumption applies only when the case primarily concerns omissions, arguing that this case involves primarily misrepresentations. However, defendant ignores cases where courts find that the combination of omissions and misrepresentations does not preclude invocation of the presumption with respect to those

17

omissions. *Burges*, 2017 WL 2772122 at *10 ("Where plaintiffs' claims are based on a combination of omissions and misstatements, courts have acknowledged the applicability of the *Affiliated Ute* presumption as to the element of reliance with regard to alleged omissions.") (citing *Dodona I, LLC v. Goldman, Sachs & Co.*, 296 F.R.D. 261, 270 (S.D.N.Y. 2014)). Plaintiffs in their response [Doc. 195 p. 27] cite additional paragraphs alleging omissions: "KPMG's undisclosed conduct in the drafting of the responses to these SEC letters badly undermined KPMG's independence," "KPMG's statements regarding Miller Energy's internal control weaknesses omitted to disclose that those weaknesses resulted in material inaccuracies in Miller Energy's financial statements," and "the false or misleading statements and omissions complained of in this Complaint concerned omissions of historical and/or current facts and conditions existing at the time the statements were made." [Doc. 174 ¶¶ 160, 193f, 248]. "[T]he theory behind the *Affiliated Ute* presumption . . . is not undermined simply because a defendant makes misstatements at the same time it omits material information." *Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 186 (S.D.N.Y. 2005).

Defendant states plaintiffs cannot convert misstatements into omissions simply by recharacterizing their nature, giving the example that plaintiffs allege defendant's reports falsely stated its audits complied with GAAS which could be recharacterized as omitting to disclose it did not comply with GAAS [Doc. 186 p. 23]. However, the cases defendant cites for this proposition are not on point.

18

Defendant cites *Grae* which involved representations about the quality and value of services of a private prison relative to the Bureau of Prison standards when the truth revealed many more deficiencies. *Grae v. Corr. Corp. of Am.*, 329 F.R.D. 570, 584 (M.D. Tenn.), *vacated on reconsideration on other grounds*, 330 F.R.D. 481 (M.D. Tenn. 2019). The court there stated that the private prison could have provided more information, but "[s]ome version of that premise, however, is true about every affirmative falsehood— every lie can be corrected by the truth. In such cases, however, it is still the initial misstatement that forms the primary basis for the fraud." *Id*. Defendant also cites *Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier, Inc.*, stating that omissions "are simply the flip side" of the misstatements made in that case. No. 05 CIV. 1898 (SAS), 2006 WL 2161887, at *9 (S.D.N.Y. Aug. 1, 2006), *aff'd*, 546 F.3d 196 (2d Cir. 2008). However, there, the omissions were direct corollaries to affirmative misstatements. Here, the truth is not simply correcting a lie but highlighting new categories of information that were previously unknown and filling in gaps. Indeed, in *Burges*, the court found that when plaintiffs "allege situations where Defendants' failure to disclose certain information is what makes the alleged misrepresentations misleading or false," that the plaintiffs have alleged both omissions and misrepresentations and may still apply the presumption. *Burges*, 2017 WL 2772122 at *10. Defendant's cited cases did not raise allegations that the audit opinion was *both* false and omitted material information, like this case. The Court finds that for purposes of class certification, the plaintiffs may invoke the *Affiliated Ute*

19

presumption as to the alleged omissions, and defendant's objection is therefore **OVERRULED**.

### 2. Individual Issues of Damages

Defendant argues that individual issues of damages will overwhelm common issues. Defendant argues plaintiffs cannot apply the statutory formula to calculate damages on a class-wide basis because plaintiffs rely on a "materialization of the risk" theory [Doc. 186 p. 25]. Defendant contends that the damages depend on the risk tolerance of the investors in the proposed class who may be placed in two categories: those with lower risk tolerance who would not have invested had the risk been disclosed and those with higher risk who might still have invested had the risk been disclosed [*Id.* p. 26]. Defendant states those in the second category could not be computed with plaintiffs' expert's methodology. Because there is no way to know which members fall in which category, defendant claims there is no way to calculate class-wide damages.

Plaintiffs contend that their proposed measure for out-of-pocket damages can be calculated on a class-wide basis by using the well-settled methodology used and approved in similar cases and cite many cases where this measure has been used [Doc. 195 p. 29]. Plaintiffs additionally note that many courts have certified classes using the out-of-pocket damages model in materialization-of-the-risk cases without separating high and low risk investors [*Id.* p. 30]. As plaintiff notes, defendant is "unable to cite a single securities-fraud case in which a class invoking an out-of-pocket damages model was not certified" [*Id.* p. 31].

Defendant's briefing largely repeats the briefing as contained in the underlying motion, "without explaining the source of the error" in Judge Poplin's reasoning. *Equal Emp. Opportunity Comm'n v. Dolgencorp, LLC*, 277 F. Supp. 3d 932, 965 (E.D. Tenn. 2017), *aff'd*, 899 F.3d 428 (6th Cir. 2018). Defendant does not even mention the word "object" in this section, leaving the Court to find its objection in its preliminary footnote [Doc. 186 p. 8 n.1]. Without any additional argumentation for the Court's consideration and having thoroughly reviewed the briefing and the R&R, the Court agrees with Judge Poplin in finding defendant's arguments unpersuasive. Accordingly, to the extent the briefing may be considered an objection to Judge Poplin's conclusion on the issue of individual issues of damages, the objection is **OVERRULED**.

### 3. Individual Issues of Timeliness

Defendant objects to Judge Poplin's conclusion that individual issues of timeliness will not overwhelm common issues [*Id.* p. 29]. A Section 10(b) claim is time-barred if brought more than two years after discovery of the pertinent facts, and the two-year period does not begin to run until plaintiff discovers or would have discovered such facts if reasonably diligent [*Id.*]. Defendant contends that the relevant facts were known prior to two years before filing of the present action and makes two arguments.[8] First, defendant

---

[8] Defendant additionally argues that Judge Poplin's rationale is flawed because the reason defendant does not have additional evidence of plaintiffs' knowledge is because she previously denied the motion to compel which would have provided defendant with further discovery [Doc. 186 p. 33]. This does not properly identify a finding believed to be in error, but simply describes the procedural posture of the case which is too general to be a valid objection. *Stamtec, Inc.*, 296 F. App'x at 519. To the extent it could be considered an objection to Judge Poplin's order on plaintiffs' motion to substitute [Doc. 167], the objection is untimely. Fed. R. Civ. P. 72(a) (objections to non-dispositive orders must be filed within 14 days after being served with a copy).

21

argues that there is a question as to whether each class member had actual knowledge of the facts and circumstances, and gives examples of named plaintiffs Lewis Cosby and Kenneth Martin who each had knowledge of a so called "red flag" [*Id*. p. 32]. Second, defendant argues that the "red flags" were enough to plead scienter against KPMG under the pleading standards of the PSLRA, so they should be adequate to trigger inquiry notice as to the statute of limitations [*Id*. p. 33].

As to defendant's first argument that Cosby and Martin had actual knowledge of "red flags" and that they therefore had actual knowledge of the fraud,[9] the Court disagrees. As Judge Poplin noted, there is public information "if known by investors, which may preclude relief on Plaintiffs' claims; however, the Court finds that Defendant has not sufficiently shown that any investor actually had knowledge of this information" and that an affirmative defense, standing alone, does not compel a finding defeating predominance [Doc. 172 p. 60]. *In re HCA Holdings, Inc.*, No. 14-0511, 2015 WL 10575861, at *2 (6th Cir. Feb. 26, 2015). Defendant's examples of plaintiffs' knowledge regarding *red flags*, however, do not indicate any actual knowledge of defendant's alleged *fraud*. Defendant therefore asserts an affirmative defense standing alone, having failed to show that any investor actually had knowledge of the information that may establish the affirmative defense. *Id*. (affirming a district court's decision that while public information was available, defendants failed to show any investor actually had knowledge of that

_____

[9] The Court notes that defendant details the "red flags" of which plaintiffs were aware in its sealed version of the objections [Sealed Doc. 178 p. 32]. The Court has reviewed this briefing and refers to such information only generally as "red flags" in this Memorandum.

information); *Tsereteli v. Residential Asset Securitization Tr. 2006-A8*, 283 F.R.D. 199, 214 (S.D.N.Y. 2012) (defendant "has not provided sufficient evidence that any class member had actual knowledge of the allegedly false or misleading statements . . . or that they later were on notice of such statements sufficient to raise individualized statute of limitations issues.").

As to defendant's second argument on timeliness, the Court does not find defendant's reasoning to be persuasive. In ruling on the motion to dismiss, this Court previously stated that "the 'red flags' raised by plaintiff in support of its argument that defendant should have been aware of material representations also supports defendant's argument that plaintiff was on inquiry notice as a result of the red flags. But this is a factual question that cannot be decided at this stage in the proceedings" [Doc. 76 p. 31–32]. However, having now presented facts in support, defendant is unable to prove that even one person had actual knowledge. Individual issues of timeliness then will not predominate the common issues. Accordingly, defendant's additional argument as to timeliness is unavailing.

For these reasons, defendant's objections regarding timeliness are **OVERRULED**.

### 4. Typicality

Defendant objects to Judge Poplin's conclusion that the proposed class representatives' claims are typical [Doc. 186 p. 35]. Defendant argues that all three bought stock after at least one of the events that allegedly revealed the truth, when to invoke the fraud-on-the-market presumption, plaintiffs must have traded in the time between the

23

misrepresentations and the truth was revealed. Accordingly, defendant contends that these plaintiffs are subject to unique defenses which make them atypical. Defendant states that the case Judge Poplin relied upon, *Weiner v. Tivity Health, Inc*., is not the best reasoned case law. *Tivity* concluded that defendant's position is

> against "the weight of authority," *In re Connetics Corp. Sec. Litig*., 257 F.R.D. 572, 577 (N.D. Cal. 2009), a "deviat[ion] from th[e] general rule," *Local 703, I.B. of T. Grocery & Food Emp. Welfare Fund v. Regions Fin. Corp*., 762 F.3d 1248, 1260 (11th Cir. 2014), and "not generally accepted." *Feder*, 429 F.3d at 137. Indeed, "courts routinely certify a class with representatives who purchased stock during and after a class period*." In re Select Comfort Corp. Sec. Litig*., 202 F.R.D. 598, 607 (D. Minn. 2001).

F.R.D. 123, 130 (M.D. Tenn. 2020). Defendant provides a few cases in support of its position [*Id*. p. 36 n.33] and states that "the Court is called upon to decide which of the cases are better-reasoned" [Doc. 199 p. 18]. Upon review of the cases and arguments presented, the Court agrees with the R&R in finding *Tivity* to be persuasive, well-reasoned, and better supported in this Circuit and therefore concludes that this issue does not defeat typicality.

Defendant additionally contends that Cosby is not typical because KPMG has proven it did not cause his losses, since none of the three corrective disclosures between Cosby's purchases and sales mention anything about KPMG, and therefore his claim is not typical of the class [Doc. 186 p. 37]. Plaintiffs state defendant in fact has not proven its argument, since proving loss causation requires only that the disclosed information reflect part of the relevant truth, defined as the truth obscured by the fraudulent statement, and need not provide specific details about the fraud [Doc. 195 p. 25]. *Winslow v.*

24

*BancorpSouth, Inc.*, No. 3:10-00463, 2011 WL 7090820, at *12 (M.D. Tenn. Apr. 26, 2011), *report and recommendation approved*, No. 3:10-CV-00463, 2012 WL 214635 (M.D. Tenn. Jan. 24, 2012). Plaintiffs additionally argue that defendant does not cite authority to support its theory that this argument is "different in kind" than requiring plaintiffs to prove loss causation, which Judge Poplin noted need not be proven at the class certification stage [*Id.*]. Defendant replies that if the three disclosures were not in fact corrective disclosures, Cosby has no recoverable loss.

The Court agrees with plaintiffs' position. At this stage, "loss causation must simply be pled and this is typically satisfied by allegations that the defendant revealed the truth through corrective disclosures which caused the company's stock price to drop and investors to lose money." *Tivity*, 334 F.R.D. at 130. Engaging with defendant's argument as presented here would require plaintiffs to prove loss causation in order to disprove defendant's claims which would exceed what is required for the class certification stage.

Finally, defendant argues that named plaintiffs Eric Montague and Martin Ziesman are not typical because they admit they did not read the Company's Form 10-K or audit opinions and that if they had, they would not have purchased the securities [Doc. 186 p. 38]. Defendant states this admission shows their reliance was not justifiable, since a plaintiff who closes his eyes to known risks cannot establish justifiable reliance. Defendant's objection copies the briefing on the motion [Doc. 129 p. 30–31] and simply adds that Judge Poplin did not explain why the arguments are not relevant at class certification or why they render Ziesman or Montague's claims atypical.

Defendant's argument focuses on justifiable reliance, which Judge Poplin stated is an argument better reserved for the merits of the case. Judge Poplin found that the proposed representatives established typicality by showing "that they purchased Miller Energy Securities at prices artificially inflated by the alleged fraud and that their claims are based on the same legal theories and facts as other members" [Doc. 172 p. 20]. As plaintiffs note, these two named plaintiffs relied on the price of the stock and had no reason to assume the price was incorrect or that KPMG had engaged in fraud, which is sufficient to establish reliance under *Halliburton II*, 573 U.S. at 273. Whether their claims of reliance were justified may reflect on the merits a claim, but defendant does not support its argument, either in the original briefing of the motion or in its objections, that lack of justification defeats typicality. The Court agrees with Judge Poplin's reasoning on this issue, and accordingly, defendant's objection regarding typicality is **OVERRULED**.

## B. The Section 11 Class

### 1. Typicality

Defendant objects to Judge Poplin's conclusion that the claims of Ziesman are typical of the proposed class [Doc. 186 p. 39]. Defendant states Ziesman is not a member of the proposed class because he is an after-market purchaser and did not purchase the preferred stock in any of the offerings or any other offering by Miller Energy [*Id*.]. Defendant states that both parties' experts agreed that the shares he purchased were not from and cannot be traced to the relevant offerings. Judge Poplin held that these arguments are about "tracing" and are merits issues not to be considered at class certification.

26

Defendant states this is at odds with the requirement that courts conduct a "rigorous" examination at the class certification stage [Doc. 186 p. 40].

Plaintiffs respond that defendant's argument "would preclude certification of *every* Section 11 claim involving a secondary offering or secondary market purchasers" [Doc. 195 p. 40, emphasis original] and that courts nationwide hold that tracing arguments are not a bar to class certification in Section 11 cases. *See e.g. Wallace v. Intralinks*, 302 F.R.D. 310, 319 (S.D.N.Y. 2014) ("The Section 11 claims provide no reason to exclude aftermarket purchasers. To be sure, only those who 'can trace their shares to the allegedly misleading registration statement' have standing in a Section 11 claim. But tracing is a merits issue that the court need not consider at the class certification stage.") (citation omitted);[10] *Freeland v. Iridium World Commc'ns, Ltd.*, 233 F.R.D. 40, 46 (D.D.C. 2006) (Tracing is "a secondary issue to be resolved after the predominant issue of Defendant Underwriters' liability has been decided. It would be inappropriate to foreclose such Plaintiffs' resort to the class action format simply because some of their cases may be difficult to prove") (citing *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.")).

---

[10] Defendant argues that Judge Poplin's citation to *Wallace* for the proposition that tracing is a merits issue is misplaced since the case addressed a different set of circumstances. However, this proposition is more widely established in many cases as discussed in the R&R and the briefing [*See* Doc. 172 p. 71].

27

Plaintiffs present that classes including secondary market purchases are routinely certified, and accepting defendant's arguments would require a merits analysis, when "Rule 23 is not a weed whacker for merits problems" [*Id*. p. 41 (citing *Ark. Teachers Ret. System*, 879 F.3d at 484-85)]. Plaintiffs further represent that defendant is unable to cite a single case in which a court considered tracing on a class certification motion. Defendant's tracing arguments in their reply stem from the arguments regarding standing, on which the Court defers a ruling as discussed below.

The Court concludes that Judge Poplin's analysis was indeed rigorous. Defendant's argument that traceability must be considered at this juncture is unsupported and treads too far into the merits of the claim. *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013) ("Although we have cautioned that a court's class-certification analysis must be 'rigorous' and may entail some overlap with the merits of the plaintiff's underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.") (citation omitted).

Finally, Defendant states that even Ziesman were a member of the class, his claim would not be typical as it requires a reliance element that is not typical of the class. Judge Poplin concluded that an earning statement that violates SEC filing requirements should not be considered an earning statement which would shift the burden of proving reliance to plaintiff, citing *In re WorldCom, Inc. Sec. Litig.,* 219 F.R.D. 267, 289 (S.D.N.Y. 2003) ("*WorldCom*") and *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 622 (C.D. Cal. 2009) ("*Countrywide*") [Doc. 172 p. 67] and therefore held that plaintiffs

28

established typicality. Defendant states that in *WorldCom*, WorldCom had admitted financial statements were misleading and omitted material information, and in *Countrywide* the court said that so long as plaintiffs "prove accounting violations . . . those reports will not qualify as earning statements" to trigger the reliance requirement. 273 F.R.D. at 622. Defendant states their audit opinions were neither false nor misleading and therefore did not violate the SEC filing requirements [Doc. 186 p. 42]. However, as plaintiffs note, this statement is self-serving, as plaintiffs "allege and intend to prove that KPMG's audit opinions, were false and misleading when made, and that they were not prepared in accordance with GAAP" [Doc. 195 p. 42]. Defendant's reliance on the company's admission in *WorldCom* that it had violated SEC filing requirements is unavailing, as *Countrywide* refused to require reliance on the basis of plaintiffs' allegations of material accounting-related misstatements or omissions, as is the case here. *Id.*

Judge Poplin noted that typicality generally presents a low burden and that other members of the class have the same or similar grievances as plaintiff. With Ziesman's claims arising out of defendant's alleged misstatements and omissions, like the other class members, typicality is established. Accordingly, defendant's objection regarding the typicality requirement is **OVERRULED**.

### 2. Numerosity

Defendant objects to Judge Poplin's conclusion that plaintiffs established numerosity with respect to the Section 11 class [Doc. 186 p. 43]. Defendant makes many of the same arguments as previously addressed, stating that a high weekly turnover

29

indicates that it is less likely there are purchasers who bought the offerings at issue or who can trace their shares to those offerings [*Id.*]. Defendant states that plaintiffs have not presented evidence that there is anyone who can trace his or her shares to these offerings and that "it is likely that most if not all of the original purchasers sold their preferred stock at a profit, which means that they suffered no damages under the Section 11 damages formula" [*Id.*]. Judge Poplin stated that defendant's argument is "merely a tracing argument" and noted that numerosity is generally assumed to have been met in class action suits involving nationally traded securities [Doc. 172 p. 64 (citing *Burges,* 2017 WL 2772122, at *2)[11]].

Plaintiffs note that "the exact number of class members need not be pleaded or proved," and that here, the high turnover rate is "more than enough to establish that there are at least thousands of people in the Section 11 Class" [Doc. 195 p. 39]. *Willis*, 242 F. Supp. 3d at 644. Defendant has not demonstrated any objection to Judge Poplin's conclusion regarding numerosity, other than identifying potential difficulties with tracing. As previously discussed, such an argument is not properly considered at this stage. The Sixth Circuit has stated it is "unwilling to allow such speculation and surmise to tip the decisional scales in a class certification ruling." *Bridging Communities Inc. v. Top Flite*

---

[11] Defendant argues *Burges* is uninformative and that defendant did not contest numerosity in that case [Doc. 186 p. 44]. However, this principle has been repeated in many cases, and the particulars of *Burges* therefore are not relevant. *See e.g., Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 442 (S.D. Ohio 2009) (collecting cases).

*Fin. Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016). Defendant's objection is therefore **OVERRULED**.

### 3. Individual Issues of Reliance

Defendant objects to Judge Poplin's ruling that individual issues of reliance will not overwhelm common issues [Doc. 186 p. 44]. Defendant argues that anyone who purchased securities between December 11, 2013, and March 29, 2016, will have to prove reliance to recover under Section 11. Defendant maintains that the *Basic* and *Affiliated Ute* presumptions do not apply, and therefore individual issues of reliance will predominate over the common issues and preclude class certification. Plaintiffs did not respond to this argument which defendant contends constitutes their concession on this issue. However, as noted in the R&R [Doc. 172 p. 70], defendant presents a similar argument to that otherwise addressed in the "typicality" section. The Court has already addressed the applicability of the *Basic* and *Affiliated Ute* presumptions and the typicality of the class representatives and has therefore addressed defendant's argument elsewhere in this opinion. Defendant's objection regarding reliance is accordingly **OVERRULED**.

### 4. Individual Issues of Damages

Defendant objects to Judge Poplin's conclusion that individual issues of damages will not overwhelm common issues. Defendant argues that there were several offerings of securities at different prices, and the proposed class includes investors who purchased their shares in or traceable to only some of those offerings. Because the statutory damages formula requires the price at which the security was offered to the public, and there are

31

several offering prices, defendant contends damages cannot be accurately calculated without determining from which offering each investor's shares originated [*Id.* p. 45–46]. Defendant states this extends to after-market purchasers as well.

Judge Poplin concluded that defendant's "argument amounts to a tracing issue" and that a "number of courts have held that the difficulties with tracing do not defeat class certification" [Doc. 172 p. 71]. Defendant contends none of the cases cited by Judge Poplin involved a situation where it is impossible to calculate the damages of even the lead plaintiff and plaintiffs have offered no explanation as to how they could calculate the damages of any plaintiff or the class. The attempt to distinguish these cases does not provide support for defendant's position that tracing must be considered now; defendant's arguments fail to identify distinctions which undermine the proposition that tracing is a merits issue.

Plaintiffs state that the damages model relies on application of the statutory methodology, which amounts to simple arithmetic [Doc. 195 p. 49]. Additionally, plaintiff argues that "[i]t is axiomatic that individualized damages calculations are generally insufficient to foreclose class certification, and particularly so where the central liability question is common to each class member." *Monroe Cty. Employees' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 397 (N.D. Ga. 2019) (collecting cases). Defendant replies that it is not possible to calculate Ziesman or any other plaintiffs' damages because one of the essential variables of the initial offering price is unknown [Doc. 199 p. 23]. However, the determination of the initial offering price is a tracing problem, which is not appropriate for

32

consideration here, as previously discussed. Accordingly, defendant's objection is **OVERRULED**.

### 5. Individual Issues of Timeliness

Defendant objects to Judge Poplin's conclusion that individual issues of timeliness will not overwhelm common issues [Doc. 186 p. 47]. Defendant states that each member of the proposed class who was aware of the facts and circumstances giving rise to the claim prior to March 14, 2015 is barred from recovery under Section 11, given the one-year statute of limitations. Since there is no scienter requirement, defendant posits that a class member need not know of the alleged red flags to have been on notice of the claim and any potential class member who "had knowledge of information calling into question the accuracy of the financial statements incorporated in the registration statement" would be barred. Without a scienter requirement, "it takes much less to trigger the statute of limitations" [Doc. 199 p. 24–25]. This analysis would require individualized discovery and analysis of each member's knowledge. Accordingly, defendant argues that the individual issues of timeliness would overwhelm the common issues.

However, defendant provides no authority to persuade the Court of its position. Plaintiff argues that if defendant were correct, no Section 11 class could ever be certified due to the very nature of inquiry notice and the possibility that some class members were aware of facts calling into question the accuracy of financial statements [Doc. 195 p. 50]. Plaintiff argues that defendant's argument "rests on the same speculation and surmise that the Sixth Circuit refuses to allow to tip the decisional scales in a class certification ruling"

33

[*Id.* (citing *Bridging Communities Inc.*, 843 F.3d at 1125)]. Defendant replies that since plaintiffs "allege in their complaint that numerous facts that purportedly evidence KPMG's scienter were known years ago," that the statute of limitations may have been triggered [Doc. 199 p. 23].

Judge Poplin stated that "an affirmative defense, standing alone, does not compel a finding that common liability issues do not predominate" [Doc. 172 p. 72 (citing *In re HCA Holdings, Inc.*, 2015 WL 10575861, at *2)]. As such, defendant's arguments regarding the statute of limitations were not well taken. The Court here finds the same. Defendant has not presented evidence regarding the affirmative defense, and the Court does not find that the potential application of the statute of limitations precludes class certification. Accordingly, defendant's objection is **OVERRULED**.

### 6. Adequacy of Proposed Class Representatives and Counsel

Defendant objects to Judge Poplin's conclusion that plaintiffs established the adequacy requirement [Doc. 186 p. 47]. Defendant argues that the one and only proposed class representative for the claim, Ziesman, is not authorized to bring claims on behalf of purchasers of the preferred stock since he did not apply for appointment as lead plaintiff or comply with the statutory requirements for doing so [*Id*]. Defendant states that plaintiffs in this case have not obtained the right to represent a class of preferred stock purchasers under the PSLRA, and that this Court has not addressed the issue or explained "how Plaintiffs may circumvent the provisions of the PSLRA on the appointment of lead

34

plaintiffs and usurp the role sought and obtained by the *Gaynor* plaintiffs" from a different case [Doc. 199 p. 24 n.14].

Judge Poplin stated that Plaintiff Ziesman's failure to seek an appointment is not "fatal to the adequacy requirement" [Doc. 172 p. 68]. She found the reasoning of *WorldCom* persuasive. The court there held that nothing in the text of the PSLRA required every named plaintiff to satisfy the criteria for appointment and be appointed as lead plaintiff and that the appointment of lead plaintiffs and class certification are two standards to be determined separately. 219 F.R.D. at 286. The Second Circuit affirmed *WorldCom*, holding that the "provisions of the bill relating to the appointment of a lead plaintiff are not intended to affect current law with regard to challenges to the adequacy of the class representative." *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 83 (2d Cir. 2004). Accordingly, Judge Poplin stated that plaintiffs established adequacy, as required under the standards for class certification, without addressing the appointment issue.

Defendant's objection here is more properly brought as a dispositive motion rather than an objection to class certification. As *Worldcom* and *Hevesi* acknowledged, adequacy for class certification and the appointment of lead plaintiffs are separate inquiries. The issue is not appropriately considered in this context. Accordingly, defendant's objection herein is **OVERRULED**.

### 7. Series D Preferred Stock Purchasers

Defendant objects to Judge Poplin's decision to defer a ruling on the proposed class representatives' standing on behalf of Series D Preferred Stock purchasers [Doc. 186

35

p. 50]. Defendant argues that because none of the proposed class representatives purchased the Series D shares, they are not adequate to represent Series D purchasers because the named plaintiff in a class action has to have purchased the shares at issue [*Id.* p. 50–51].

While defendant is correct that "the time to certify, or not certify, a class of purchasers of Series D preferred stock is now," their arguments and cases in support address the merits, not the timing, of a ruling on standing [*Id.* p. 50–51 n. 50, 51]. The Court has discretion in deferring this question. *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1074 (N.D. Cal. 2015); *Williams v. Potomac Family Dining Grp. Operating Co., LLC*, No. GJH-19-1780, 2019 WL 5309628, at *4 (D. Md. Oct. 21, 2019) ("[choosing] to use the class certification approach" as opposed to the standing approach). In addressing the merits, the parties dispute the weight of *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, which held that to have standing, class representatives do not need to have purchased that exact security to represent the interests of persons who purchased it. 693 F.3d 145, 162 (2d Cir. 2012). Defendant argues, as Judge Poplin noted, that the decision has been criticized. Because the parties did not sufficiently brief the alleged circuit split on this issue, Judge Poplin exercised her discretion in deferring this ruling, noted that such a decision does not preclude class certification, and stated that despite this dispute, the Rule 23 requirements are met [Doc. 172 p. 74 n.17].

Defendant asks the Court at several points of the 23(a) analysis to decide the merits of the standing question, arguing *procedurally* the decision should come first, but defendant offers insufficient support on its *substance* [*See* Doc. 199 p. 20]. Though

36

defendant requests such a decision, it continuously fails to provide the Court with sufficient briefing to make such a determination in its favor. Therefore, Judge Poplin recommended that the Court defer ruling since the parties had not fully briefed the issue and that standing could be addressed through dispositive motions. This Court agrees. The parties will have the opportunity to fully argue their positions under Rule 56 should they choose to file such a motion. Since withholding decision on standing does not preclude class certification at this time, defendant's objection is **OVERRULED**.

## IV.    Conclusion

For the reasons discussed herein, and upon careful, de novo review of the record and the law, defendant's objections [Docs. 178, 186] are **OVERRULED**. The Court **ACCEPTS IN WHOLE** the R&R [Doc. 172] and incorporates it into this Memorandum Opinion and Order. Accordingly, Plaintiffs' Motion to Certify the Classes, Appoint Class Representatives, and Appoint Class Counsel [Doc. 107] is **GRANTED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

37