UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| LEWIS COSBY, <br> ERIC MONTAGUE, and <br> MARTIN ZIESMAN, as Co-Trustee for the <br> Carolyn K. Ziesman Revocable Trust, <br> on behalf of themselves and <br> all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> KPMG, LLP, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | <br><br><br><br><br><br><br><br><br><br> No.: 3:16-CV-121-TAV-DCP |

## **MEMORANDUM OPINION AND ORDER**

This civil action is before the Court on Defendant KPMG LLP's Motion to Stay Proceedings Pending Appeal [Doc. 213]. Plaintiffs responded [Doc. 218]. Defendant did not reply, and the time for doing so has passed. *See* E.D. Tenn. L.R. 7.1(a). The motion is now ripe for resolution. The Court has carefully considered the matter and, for the reasons stated below, will **DENY** the motion [Doc. 213].

I.  **Background**

Plaintiffs sought class certification for two classes of investors in this case, a Section 10(b) class and a Section 11 class. Magistrate Judge Poplin issued a 76-page Report and Recommendation ("R&R") which found that the Rule 23 requirements had been met, recommending certification of both classes [Doc. 172]. After considering the extensive briefing and objections to the R&R, this Court adopted Judge Poplin's recommendation

and certified the classes [Doc. 211]. On May 21, 2021, defendant filed a petition for permission to appeal the class certification order to the Sixth Circuit. The petition seeks review of three aspects of this Court's order. In particular, defendant states "this Court accepted Plaintiffs' price maintenance theory of price impact" which "denies KPMG the opportunity to rebut the *Basic* presumption,"[1] this Court concluded that the *Affiliated Ute* presumption[2] applied "without considering whether the complaint is based primarily on omissions," and that this Court "held that the sole class representative, Martin Ziesman, did not need to demonstrate standing at the class certification stage" when "other courts have squarely rejected that view" [Doc. 214 pp. 2–3]. Defendant then filed the present motion [Doc. 213].

## II.    Analysis

Defendant seeks a stay of litigation while the Sixth Circuit considers the petition for permission to appeal under Federal Rule of Civil Procedure 23(f) [Doc. 214 p. 2]. That rule provides as follows:

> A court of appeals may permit an appeal from an order granting or denying class-action certification under this rule if a petition for permission to appeal is filed with the circuit clerk within 14 days after the order is entered. An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.

Fed. R. Civ. P. 23(f). Although the Sixth Circuit has not yet adopted a clear standard for applying Rule 23(f), courts typically follow "the traditional analysis for determining

---

[1] *Basic Inc. v. Levinson*, 485 U.S. 224, 241–42 (1988).

[2] *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972).

preliminary injunctions or stays pending appeal." *Beattie v. CenturyTel, Inc.*, No. 02-10277-BC, 2006 WL 1722207, at *3 (E.D. Mich. June 20, 2006); *see also Summit Cty. Democratic Cent. & Exec. Comm. v. Blackwell*, 388 F.3d 547, 550 (6th Cir. 2004) ("The factors to be considered in determining whether an order should be stayed are the same factors considered in determining whether to issue a . . . preliminary injunction."). These factors ask whether: (1) there is a strong likelihood of success on the merits; (2) the movant would otherwise suffer irreparable injury; (3) a stay would cause substantial harm to others; and (4) a stay would serve the public interest. *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000); *see also Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991) (noting the factors "are not prerequisites that must be met, but are interrelated considerations"). The movant bears the burden of proving that the balance of these factors supports a stay. *In re Polyurethane Foam Antitrust Litig.*, No. 1:10-md-2196, 2014 WL 12591692, at *1 (N.D. Ohio May 16, 2014).

The Court will now analyze each of the above four factors in turn.

**A.    Likelihood of Success on the Merits**

First, defendant's "burden with respect to showing a likelihood of success on the merits is two-fold: defendant[] must show [1] a likelihood that the Rule 23(f) petition will be granted, and [2] that the Sixth Circuit will reverse . . . this Court's class certification decision[]." *Id.* As for the first prong, in ruling on a Rule 23(f) petition, the Sixth Circuit "eschew[s] any hard-and-fast test in favor of a broad discretion to evaluate relevant factors." *In re Delta Air Lines*, 310 F.3d 953, 959 (6th Cir. 2002). Relevant factors include:

3

(1) the petitioner's likelihood of success on appeal "under the deferential abuse-of-discretion standard"; (2) whether the cost of continued litigation would sound the death knell of the case and hamper subsequent review; (3) whether the case offers "a novel or unsettled question of law"; and (4) the procedural posture below, including whether the district court is likely to reexamine the certification question. *In re VHS of Mich., Inc.*, 601 F. App'x 342, 343 (6th Cir. 2015); *See also Delta Airlines*, 310 F.3d at 960. But "interlocutory appeals are not routinely accepted," *In re HCA Holdings, Inc.*, No. 14–0511, 2015 WL 10575861, at *1 (6th Cir. Feb. 26, 2015), and a "decision which 'turns on case-specific matters of fact and district court discretion,' . . . as most certification decisions indisputably do[, ]generally will not be appropriate for interlocutory review," *Delta Air Lines*, 310 F.3d at 960 (quoting *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1275–76 (11th Cir. 2002)).

As for the second prong, the Sixth Circuit has described its review of district courts' class certification decisions as "narrow," *Davis v. Cintas Corp.*, 717 F.3d 476, 484 (6th Cir. 2013), and "very limited," *Olden v. LaFarge Corp.*, 383 F.3d 495, 507 (6th Cir. 2004). The Sixth Circuit will reverse a class certification decision "only if [the petitioner] makes a strong showing that the district court's decision amounted to a clear abuse of discretion." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013). This requires a "definite and firm conviction" on the part of the appellate court that the district court "committed a clear error of judgment." *Id.* (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 536 (6th Cir. 2012)).

Here, defendant argues that there is a "high likelihood" that the Sixth Circuit will grant the petition and defendant will prevail on appeal [Doc. 214 p. 4]. In discussing the first prong, that the petition will be granted, defendant relies primarily on its three challenges being unsettled issues of law that may evade end-of-the-case review.

The Court will review each factor, beginning with each of defendant's issues of law presented as unsettled. First, as to the price maintenance theory as it relates to the *Basic* presumption, defendant highlights that this Court stated "district courts within this Circuit are split" on the issue [Doc. 211 p. 14]. Defendant contends this division of authority makes it likely the Sixth Circuit will grant the petition. Further, defendant argues this is a fundamental issue in securities class actions. The *Basic* presumption "affords defendants an opportunity to rebut the presumption by showing, among other things, that the particular misrepresentation at issue did not affect the stock's market price." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 279 (2014). Defendant therefore argues that this Court's order denied defendant the opportunity to rebut the presumption "as it allows plaintiffs to evade the price impact requirement by alleging that misstatements maintained an already inflated price" [Doc. 214 p. 5].

Though defendant frames this issue as supporting the argument that the Sixth Circuit will grant the petition, this Court disagrees. Another case, *In re CoreCivic, Inc.*, sought interlocutory appeal for this same reason, challenging the district court's order when plaintiffs used the price maintenance theory and the Court applied the *Basic* presumption. The Sixth Circuit denied interlocutory appeal, stating that "[o]ur case law supports the legal

5

standard that the district court applied." *In re CoreCivic, Inc.*, No. 19-0504, 2019 WL 4197586, at *1 (6th Cir. Aug. 23, 2019). The court there cited *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 830 F.3d 376, 385 (6th Cir. 2016), which reversed the Northern District of Ohio decision defendant here cites in support of rejecting the price maintenance theory [Doc. 214 p. 4]. Similarly, in *In re BancorpSouth, Inc.*, the Sixth Circuit stated that price impact may be demonstrated at the time of the misrepresentations or at the time of their correction, and the court denied a petition for permission to appeal class certification. No. 17-0508, 2017 WL 4125647, at *1 (6th Cir. Sept. 18, 2017). While decisions of motions panels are not generally binding upon subsequent panels, "they do receive some measure of deference," which leads the Court to believe the Sixth Circuit would rule similarly on this petition. *Wallace v. FedEx Corp.*, 764 F.3d 571, 583 (6th Cir. 2014).

Second, defendant seeks review of this Court's application of the *Affiliated Ute* presumption. Defendant argues that every federal appellate court to consider the issue has held that the presumption would not apply when the complaint is based primarily on allegations of affirmative misrepresentations [Doc. 214 p. 6]. Plaintiffs argue that similarly here, the Sixth Circuit denied the petition for appeal in *BancorpSouth, Inc.* when the district court applied the *Affiliated Ute* presumption in a case involving both omissions and misrepresentations Doc. 218]. This Court relied upon the underlying opinion of that petition in holding that "for purposes of class certification, the plaintiffs may invoke the *Affiliated Ute* presumption as to the alleged omissions" [Doc. 211 pp. 19–20 (citing *Burges*

6

*v. BancorpSouth, Inc.*, No. 3:14-CV-1564, 2017 WL 2772122, at *10 (M.D. Tenn. June 26, 2017) ("Where plaintiffs' claims are based on a combination of omissions and misstatements, courts have acknowledged the applicability of the *Affiliated Ute* presumption as to the element of reliance with regard to alleged omissions."))].

Third, defendant challenges this Court's ruling to defer issues of traceability, instead contending that standing needs to be addressed at this stage. Defendant argues this issue is fundamental to securities class actions and that other appellate courts have rejected this Court's conclusion [Doc. 214 p. 6]. Plaintiffs note that this Court and Judge Poplin concluded that tracing issues are not for consideration at class certification. Plaintiffs further state that the case defendant relies upon most heavily stands for the proposition that an individual plaintiffs must show standing as to their own claims, but questions about dissimilarities with unnamed plaintiffs speak to the adequacy requirement of Rule 23, not standing. *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015). Further, that approach "is the one adopted by 'most' other federal courts to have addressed the issue." *Id.* (citing *Novella v. Westchester Cnty.,* 661 F.3d 128, 149–50 & n. 24 (2d Cir.2011); *Prado–Steiman ex rel. Prado v. Bush,* 221 F.3d 1266, 1279–80 (11th Cir.2000); *Fallick v. Nationwide Mut. Ins. Co.,* 162 F.3d 410, 423 (6th Cir.1998) ("Once his standing has been established, whether a plaintiff will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria

encompassed in Rule 23")). Plaintiffs state defendant's other cited cases follow the same logic.³ Plaintiffs contend therefore that there are no unsettled issues of law.

While these issues are unsettled in the sense that there may not be an on point binding Sixth Circuit opinion on these specific issues, many are not novel issues being presented on appeal, and prior denials of interlocutory appeal suggest that the Sixth Circuit may not be interested in considering the issues at this stage. This factor is therefore neutral.

As to the death knell factor, defendant states similarly situated parties "generally face pressure to settle after class certification to avoid the costs of litigation" [Doc. 214 p. 7]. Plaintiffs respond that defendant's argument "amounts to one unsupported sentence" [Doc. 218 p. 20]. While defendant argues it will generally face pressure to settle, plaintiffs argue defendant has not presented any evidence of pressure to settle or the potential costs of ongoing litigation [*Id.*]. This Court agrees. Defendant has failed to show that this decision will sound the "death knell" of the case because it will become too costly to litigate. *Polyurethane Foam Litig.*, 2014 WL 12591692, at *2. The Court in *Delta Air Lines* made clear that "discussion of this factor must go beyond a general assertion"; indeed, defendant must demonstrate precisely how the expected costs of continued litigation will dwarf the expected recovery at trial. 310 F.3d at 960; *see also Blair v.*

---

³ *Golan v. Veritas Ent., LLC*, 788 F.3d 814, 821 (8th Cir. 2015) (stating that plaintiffs alleged an injury which satisfies standing, and other concerns about the same interest or injury goes to adequacy as class representatives); *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003) (stating class certification must begin with the issue of standing, and that "[a]ccordingly, we must determine 'that at least one named class representative has Article III standing to raise each class subclaim.'"

*Equifax Check Servs., Inc.*, 181 F.3d 832, 834 (7th Cir. 1999) (cautioning that, in weighing this factor, courts "must be wary lest the mind hear a bell that is not tolling"). Here, defendant provides only the conclusory assertion that parties in this situation generally face pressures to settle. This is insufficient. *See Polyurethane Foam Litig.*, 2014 WL 12591692, at *2 ("The 'death knell' factor is unsupported beyond across-the-board and vague allegations. While each class, as certified, seeks recovery of a substantial amount of alleged antitrust overcharges and penalties, and Defendants may face pressure to settle, Defendants offer no specifics.").

Further, defendant states if the Court later concludes at summary judgment that plaintiffs have standing, KPMG will be unable to appeal that decision as the class was correctly certified, and the issue will evade end-of-the-case review [Doc. 214 p. 7]. Plaintiffs state that defendant has not sufficiently argued what barriers to review exist [Doc. 218 p. 20]. *Delta Airlines* does consider whether there are barriers to review, but in the context of whether the costs of litigation will present such issues due to settlement. 310 F.3d at 960. As noted below, the Court has a continuing obligation to ensure class certification requirements are met, the Court will analyze standing if presented at the summary judgment stage, and defendant may appeal at the end of the case if still of the opinion the Court has incorrectly decided the issue. As noted above, defendant has not presented discussion of this factor beyond a general assertion. Further, even if defendant had established this factor, "a petitioner who convincingly establishes such an impact must further demonstrate some likelihood of success in overturning the class certification

9

decision" which as discussed below, defendant has not shown. *Id*. Accordingly, the Court finds that this factor does not favor defendant.

The final factor to determine the first prong is whether the Court is likely to reevaluate the certification decision following discovery. Here, the Court contemplated that the parties had the opportunity to fully brief the standing issue on summary judgment if they filed an appropriate motion [Doc. 211 p. 36]. This Court has a continuing obligation to ensure the class certification requirements are met. *Randleman v. Fid. Nat. Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011). The procedural posture does not favor defendant.

Largely for the same reasons, the Court also finds that defendant would be unlikely to succeed on the merits—another factor critical to the Sixth Circuit's decision whether to permit an interlocutory appeal. *See Delta Air Lines*, 310 F.3d at 960 (noting that "[t]his factor may be of greater or lesser significance, depending on other factors in the case, but it is always relevant"). The Court will not attempt here to reiterate the thorough analysis of the issues in the class certification order [Doc. 211] but notes that each of the decisions were made after an exhaustive review of the briefing and applicable case law by both this Court and Magistrate Judge Poplin. Thus, the factors discussed in *VHS of Michigan*, considered in totality, may necessarily point toward the Sixth Circuit being unlikely to grant defendant's petition.

And even if the Sixth Circuit were to entertain an interlocutory appeal under Rule 23(f), defendant has also failed to carry the second half of the burden on the likelihood-of-success factor—i.e., that "the Sixth Circuit will reverse . . . this Court's class

certification decision[].” *Polyurethane Foam Litig.*, 2014 WL 12591692, at *1. Defendant has offered no new substantive argument to lead the Court to reconsider the conclusions it reached in its prior order. In other words, defendant has failed to make the "strong showing" of "a clear abuse of discretion" that the Sixth Circuit requires before it will overturn a district court's considered judgment as to an issue of class certification. *Whirlpool Corp. Prods. Liab. Litig.*, 722 F.3d at 850. Therefore, the Court finds that defendant has not met its burden to demonstrate a likelihood of success on the merits.

B.  **The Balance of Harms**

The Court next turns to the second and third factors: whether defendant will suffer irreparable harm absent a stay, and whether a stay would cause substantial harm to plaintiffs or others. In evaluating and balancing the injuries likely to result, courts "generally look to three factors: (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided." *Griepentrog*, 945 F.2d at 154. The Supreme Court has made clear that "[t]he key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quoting *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)). The harm must also be "both certain and immediate, rather than speculative or theoretical." *Griepentrog*, 945 F.2d at 154. Further, the degree of harm and the likelihood of success on the merits the movant must show are inversely proportional to each other—though even if irreparable harm is clear, the movant

11

must still prove more than a mere possibility of success. *Ohio ex rel. Celebrezze v. Nuclear Reg. Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987).

Here, defendant argues there will be irreparable harm without a stay and essentially re-argues the death knell factor, discussed above. The Court agrees with plaintiffs that defendant has failed to show irreparable harm. In essence, defendant has merely alleged—in a largely conclusory fashion—that it will suffer an economic disadvantage if forced to litigate this case. But "[a] showing of irreparable harm requires more than a reference to litigation costs associated with continued district court proceedings, or to settlement pressures. The same factors are present in most (if not all) cases" concerning class certification." *Polyurethane Foam Litig.*, 2014 WL 12591692, at *4. Moreover, even if defendant had set out likely financial losses in greater detail, "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Sampson*, 415 U.S. at 90. Defendant has not shown that they would suffer *irreparable* injury—distinct in character and extent from the usual class certification dispute—absent a stay. Thus, the second factor does not favor defendant's position.

As for the third factor, defendant states plaintiffs and class members will not be harmed by a stay. Fact discovery deadlines are quickly approaching, and defendant states "it may be that all that effort will be wasted if KPMG is correct that the classes should not have been certified" and that "a few additional months to allow this important appeal to conclude" would not harm plaintiffs [*Id.* pp. 7–8].

Plaintiffs respond that they will be prejudiced by further delay since the events at issue occurred 12 years ago, and the claims were brought in 2016.  Plaintiffs further argue that, because of previous stays, discovery is in early stages, and memories will fade, or witnesses will become unavailable as time passes.  Plaintiffs identify one witness who may now not be available and notes other documents and witnesses may be affected.  Plaintiffs contend a further stay would "delay [their] ability to engage in meaningful discovery" which will "only exasperate the harm" [Doc. 218 p. 21].

Defendant bears the burden of proving the *absence* of harm to other affected parties, *Serv. Emps. Int'l Union Local 1 v. Husted*, 696 F.3d 341, 343 (6th Cir. 2012).  In light of plaintiffs' arguments that additional time will prejudice this case, in combination with the likelihood of success, this factor weighs in favor of plaintiffs.

## C. The Public Interest

Finally, regarding the public's interest in this litigation, defendant argues that since courts stay dissemination of the class notice pending a Rule 23(f) appeal, the Court and parties would waste resources by proceeding separately with the individual and class claims [Doc. 214 p. 8].  Defendant contends then that a short stay would conserve the resources of all involved, would not prejudice plaintiffs, and would be in the public's interest rather than doing duplicative rounds of dispositive motions and trials [*Id.*].

Plaintiffs respond that defendant provides no support for its assertion that a stay would serve the public interest and that its claim that litigation would waste judicial resources is conclusory [Doc. 218 p. 21].  Instead, plaintiffs state that the public interest

favors prompt resolution, and there is no certainty as to when the Sixth Circuit will rule on the petition or appeal, so the request for a short stay is unfounded [*Id*.]. Plaintiffs contend allowing the case to continue promotes the efficient course of litigation. Finally, as to defendant's argument about class notices, plaintiffs submitted a notice in which they advised the Court that they will submit draft notices and a proposed dissemination plan after the resolution of the petition unless this Court orders otherwise [Doc. 217].

The Court finds that a stay would not serve the public interest. "The public has an interest in prompt resolution of the cases that will be tried in this District." *Polyurethane Foam Litig.*, 2014 WL 12591692, at *4. Especially in a case that has been pending for more than four years, the public interest strongly demands as prompt and efficient a resolution of the controversy as possible. And, a stay pending the outcome of an appeal would not permit the Court to select a new trial date at this time, given the uncertainty as to when the Sixth Circuit will rule on plaintiffs' petition. Nor would it permit the parties to begin preparing to go to trial on a particular date. A stay would thus disrupt the orderly and efficient administration of this litigation to an extent that a continuance or other remedies would not. In sum, "[t]he public's interest in prompt disposition of cases in federal court suggests proceeding as promptly as possible." *Hoop v. Andrews*, No. 1:06-cv-603, 2009 WL 2431285, at *2 (S.D. Ohio Aug. 6, 2009).

For all of these reasons, the Court finds that the balance of relevant considerations counsels against a stay of these proceedings pending a decision from the Sixth Circuit on plaintiffs' petition for permission to appeal.

## III. Conclusion

For the reasons discussed above, the Court finds that a stay is not warranted in this case. Defendant's motion [Doc. 213] is therefore **DENIED**.

IT IS SO ORDERED.

                                        s/ Thomas A. Varlan
                                        UNITED STATES DISTRICT JUDGE