# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| LEWIS COSBY, ERIC MONTAGUE, and MARTIN ZIESMAN, as Co-Trustee for the Carolyn K. Ziesman Revocable Trust, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>     v.<br><br>KPMG LLP,<br><br>               Defendant. | Case No. 3:16-cv-121-TAV-DCP |

## LEAD PLAINTIFFS' AND CLASS REPRESENTATIVES' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY <u>APPROVAL OF CLASS ACTION SETTLEMENT</u>

# TABLE OF CONTENTS

Table of Authorities .................................................................................................... ii

Introduction .............................................................................................................. 1

Summary of the Litigation and Settlement ................................................................ 2

Argument .................................................................................................................. 5

I.   The Proposed Settlement Warrants Preliminary Approval ................................... 5

     A.  The Proposed Settlement Satisfies Rule 23(e)(2) and the Relevant *UAW* Factors ............ 8

          1.  Plaintiffs and Co-Lead Counsel Have Adequately Represented the Settlement Class ................................................................................................ 8

          2.  The Proposed Settlement Was Negotiated at Arm's Length ..................... 10

          3.  The Relief Provided to the Settlement Class Is Adequate ........................ 11

               a.  The Costs, Risks, and Delay of Trial and Appeal ............................... 11

               b.  The Proposed Method for Distributing Relief Is Effective ................ 13

               c.  Attorneys' Fees and Litigation Expenses ........................................... 17

               d.  Agreements Required to be Identified Under Rule 23(e)(3) .............. 18

               e.  The Remaining *UAW* Factors Support Preliminary Approval ........... 19

          4.  The Proposed Settlement Falls within the Range of Possible Approval ........ 20

          5.  Class Members Are Treated Equitably by the Plan of Allocation ........... 21

II.  The Proposed Form and Method of Class Notice Are Adequate ........................ 22

     A.  The Scope of the Notice Program Is Adequate Under Rule 23 ....................... 23

     B.  The Proposed Form of Notice Program Meets the Requirements of Due Process, the PSLRA, and Rule 23 .................................................................... 24

III. Proposed Schedule of Events ........................................................................... 26

Conclusion ............................................................................................................. 27

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Sykes v. Harris*,
    No. 09-cv-8486, 2016 WL 3030156 (S.D.N.Y. May 24, 2016) ..............................................18

*In re Advanced Battery Techs. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ....................................................................................30

*In re Am. Bank Note Holographics, Inc.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) ...........................................................................19

*In re AOL Time Warner, Inc.*,
    No. 02-cv-5575, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .................................................27

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub nom., D'Amato v. Deutsche Bank*, 236
    F.3d 78 (2d Cir. 2001)...............................................................................................15

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000)..........................................................................................14

*Bailey v. Verso Corp.*,
    337 F.R.D. 500 (S.D. Ohio 2021) ................................................................................11

*Brent v. Midland Funding, LLC*,
    No. 3:11-CV-1332, 2011 WL 3862363 (N.D. Ohio Sept. 1, 2011)........................................16

*In re Caraco Pharm. Lab'ys, Ltd. Sec. Litig.*,
    2:09-CV-12830-AJT, 2013 WL 3213328 (E.D. Mich. June 26, 2013)...................................24

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) ...............................................................................25

*In re Chemed Corp. Sec. Litig.*,
    1:12-cv-00028, 2014 WL 12650642 (S.D. Ohio July 15, 2014) ..........................................23

*In re China Sunergy Sec. Litig.*,
    No. 07-cv-7895, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ...........................................26

*Connectivity Sys. Inc. v. Nat'l City Bank*,
    2:08-cv-01119-MHW, 2011 WL 292008 (S.D. Ohio Jan. 26, 2011) .....................................25

*Consol. Edison, Inc. v. Ne. Utils.*,
    332 F. Supp. 2d 639 (S.D.N.Y. 2004) ...........................................................................28

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007)........................................................................................14

*Danieli v. IBM Corp.*,
    No. 08-cv-3688, 2009 WL 6583144 (S.D.N.Y. Nov. 16, 2009)..............................22

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006)....................................................................................14

*Doe v. Ohio*,
    2:91-CV-00464, 2020 WL 728276 (S.D. Ohio Feb. 12, 2020) ..............................15

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
    130 F.R.D. 366 (S.D. Ohio 1990) ..........................................................................25

*In re EVCI Career Colls. Holding Corp.*,
    05-CV-10240-CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) .........................19

*Franks v. Kroger Co.*,
    649 F.2d 1216 (6th Cir. 1981) ................................................................................11

*In re Glob. Crossing Sec. and ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................................................31

*Granada Invs., Inc. v. DWG Corp.*,
    962 F.2d 1203 (6th Cir. 1992) ................................................................................25

*Great Neck Cap'l Appreciation Inv. P'ship, LP v. PriceWaterhouseCoopers, LLP*,
    212 F.R.D. 400 (E.D. Wis. 2002) ..........................................................................15

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019) ...............................................................13, 14

*Guevoura Fund Ltd. v. Sillerman*,
    No. 1:15-CV-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019)...............17

*Hefler v. Wells Fargo & Co.*,
    No. 16-cv-05479, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)............................24

*Hosp. Authority of Metropolitan Govt. of Nashville and Davidson County, Tenn. v.
Momenta Pharm., Inc.*,
    3:15-CV-01100, 2020 WL 3053467 (M.D. Tenn. May 29, 2020) .........................24

*In re Initial Pub. Offering Sec. Litig.*,
    226 F.R.D. 186 (S.D.N.Y 2005) ...........................................................................15

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Gen. Motors Corp.*,
497 F.3d 615 (6th Cir. 2007) ...........................................................................11, 28

*IUE-CWA v. Gen. Motors Corp.*,
238 F.R.D. 583 (E.D. Mich. 2006) ................................................................14

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
No. 03-CV-4372, 2009 WL 4730185 (D.N.J. Dec. 4, 2009)....................................26

*Macy v. GC Servs. Ltd. P'ship*,
No. 3:15-CV-819-DJH-CHL, 2019 WL 6684522 (W.D. Ky. Dec. 6, 2019) ................. *passim*

*In re Merrill Lynch & Co., Inc. Rsch. Reports Sec. Litig.*,
No. 02-MDL-1484, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ...........................................30

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950)............................................................................................28

*N.J. Carpenters Vacation Fund v. The Royal Bank of Scot. Grp., PLC, et al.*,
No. 08-cv-5093 (S.D.N.Y. July 18, 2014) .............................................................30

*N.Y. State Teachers' Ret. Sys. v. GM Co.*,
315 F.R.D. 226 (E.D. Mich. 2016) ................................................................15, 25

*Ostendorf v. Grange Indem. Ins. Co.*,
No. 2:19-CV-1147, 2020 WL 5366380 (S.D. Ohio Sept. 8, 2020) .......................................13

*In re Payment Card Interchange Fee and Merch. Discount Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019)..........................................................................17

*Peck v. Air Evac EMS, Inc.*,
5:18-cv-00615-DCR, 2019 WL 3219150 (E.D. Ky. July 17, 2019).......................................16

*Rawlings v. Prudential-Bache Props.*,
9 F.3d 513 (6th Cir. 1993) .................................................................................23

*In re Regions Morgan Keegan Sec., Deriv., and ERISA Litig.*,
07-2784, 2016 WL 8290089 (W.D. Tenn. Aug. 2, 2016)................................................17, 18

*In re Se. Milk Antitrust Litig.*,
2013 WL 2155379, No. 2:07-CV-208 (E.D. Tenn. May 17, 2013)......................................23

*In re Signet Jewelers Ltd. Sec. Litig.*,
No. 16-cv-6728, 2020 WL 4196468 (S.D.N.Y. July 21, 2020)............................................17

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
No. 2:12-cv-83, 2014 WL 2946459 (E.D. Tenn. June 30, 2014) ........................................23

iv

*In re Sturm, Ruger & Co., Inc. Sec. Litig.*,
    No. 3:09-cv-1293, 2012 WL 3589610 (D. Conn. Aug. 20, 2012)..........................................26

*Swigart v. Fifth Third Bank*,
    1:11-CV-88, 2014 WL 3447947 (S.D. Ohio July 11, 2014)......................................................23

*In re Telectronics Pacing Sys., Inc.*,
    137 F. Supp. 2d 985 (S.D. Ohio 2001) ............................................................................13, 26

*Ware v. CKF Enters., Inc.*,
    5:19-CV-183-DCR, 2020 WL 2441415 (E.D. Ky. May 12, 2020) ........................................27

*In re Warner Chilcott Ltd. Sec. Litig.*,
    No. 06-cv-11515, 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008)....................................13, 31

*Weiner v. Tivity Health, Inc.*,
    17-cv-1469, ECF No. 162 (June 16, 2021 M.D. Tenn.) ........................................................28

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) ..........................................................................................11, 14

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) ...................................................................................19

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ................................................................................................... *passim*

Plaintiffs Lewis Cosby, Eric Montague, and Martin Ziesman, as Co-Trustee for the Carolyn K. Ziesman Revocable Trust, submit this memorandum of law in support of their unopposed motion for: (i) preliminary approval of the Stipulation of Settlement dated March 11, 2022 ("Stipulation"), proposing to settle all claims; (ii) approval of the form and manner of notice to Class Members; and (iii) the scheduling of a hearing ("Fairness Hearing") on final approval of the Settlement and Lead Counsel's motion for an award of attorneys' fees and reimbursement of Lead Counsel's and Plaintiffs' Litigation Expenses. Subject to the Court's availability, Lead Plaintiffs request that the Court schedule the Fairness Hearing for a date 120 days after entry of the proposed Order Preliminarily Approving Proposed Settlement and Providing for Notice ("Preliminary Approval Order") (attached as Exhibit A to the Stipulation, filed contemporaneously herewith).[1]

## INTRODUCTION

After nearly six years of litigation, the Settling Parties agreed to the proposed Settlement that provides for, among other things, an all-cash payment of $35 million for the benefit of the Settlement Class. The Settlement was reached after extensive litigation, including a substantial investigation preceding the filing of three detailed complaints, full briefing on Defendant's three motions to dismiss, full briefing on Plaintiffs' motion for class certification and Defendant's subsequent Rule 23(f) Petition to the Sixth Circuit, and extensive fact discovery, which included the production of hundreds of thousands of pages of documents by Defendant and various nonparties. The Settlement was thus reached only after the Settling Parties and Lead Counsel were well informed as to the strengths and weaknesses of the claims and defenses. The Settlement was also reached only after the Settling Parties participated in three mediation sessions, one with experienced private mediator, Robert A. Meyer, Esq. of Judicial Arbitration and Mediation

---

[1] Unless otherwise defined all capitalized terms not defined here have the same meanings as in the Stipulation, filed concurrently with this memorandum.

Services, Inc. ("JAMS"), and two with Magistrate Judge Christopher H. Steger. The Settlement is an excellent recovery for the Settlement Class and represents a substantial portion of the potential provable and recoverable damages suffered by the Settlement Class.

Because the proposed Settlement is in the best interests of the Settlement Class and provides a meaningful recovery for the Settlement Class now, Lead Plaintiffs and Co-Lead Counsel request that the Court enter the proposed Preliminary Approval Order, which will:

(i) preliminarily approve the Settlement, including all provisions thereof;

(ii) approve the form and content of the Notice of Proposed Settlement ("Notice"), Publication Notice of Proposed Settlement ("Publication Notice"), and Postcard Notice of Proposed Settlement ("Postcard Notice"), attached as Exhibits A-1, A-3 and A-4 to the Stipulation, respectively;

(iii) approve the form and content of the Proof of Claim and Release Form, attached as Exhibit A-2 to the Stipulation.

(iv) find that the procedures established for distribution of the Notices and publication of the Publication Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, as well as Section 27(a)(7) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77z-1(a)(7), and Section 21D(a)(7) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(7), as amended by the Private Securities Litigation Re-form Act of 1995 ("PSLRA"); and

(v) schedule the Fairness Hearing and establish a schedule and procedures for: disseminating the Notices and publishing the Publication Notice; requesting exclusion from the Class; objecting to the Settlement; considering Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses; and submitting papers in support of final approval of the Settlement.

## SUMMARY OF THE LITIGATION AND SETTLEMENT

The initial complaint in this action was filed on March 14, 2016, following an initial investigation by Gordon Ball and Class Representative Lewis Cosby. On February 17, 2017, the Court appointed Lewis Cosby and Kenneth Martin as co-lead plaintiffs and Gordon Ball as Lead Counsel. ECF No. 31. Five months later, on July 24, 2017, the Court appointed Cohen Milstein Sellers & Toll PLLC as Co-Lead Counsel. ECF No. 54.

On September 15, 2017, after an extensive investigation, Lead Plaintiffs filed a substantially more fulsome and detailed Second Amended Class Action Complaint ("SAC"), adding Martin Weakley as a Named Plaintiff. ECF No. 59. On March 1, 2019, Lead Plaintiffs filed a motion to substitute Eric Montague and Martin Ziesman, as Co-Trustee for the Carolyn K. Ziesman Revocable Trust, for Kenneth Martin and Martin Weakley as Class Representatives. After full briefing and oral argument, on June 29, 2020, Magistrate Judge Debra C. Poplin granted Co-Lead Plaintiffs' motion to substitute Eric Montague and Martin Ziesman, as Co-Trustee for the Carolyn K. Ziesman Revocable Trust, for Kenneth Martin and Martin Weakley as Class Representatives. ECF No. 167. To carry out that order, Plaintiffs filed their Third Amended Class Action Complaint ("Complaint") on July 13, 2020. The Complaint alleges that KPMG violated the Securities Act and Exchange Act by making material misstatements and omissions in its audit reports for Miller Energy Resources, Inc. KPMG denies each and all of Lead Plaintiffs' allegations. KPMG maintains that it did not make material misstatements or omissions and that it disclosed all information required to be disclosed by the federal securities laws.

The Settling Parties vigorously litigated this case for nearly six years. The Settling Parties engaged in multiple rounds of briefing before both Magistrate Judge Poplin and this Court, which included full briefing on KPMG's three motions to dismiss, Plaintiffs' motion for class certification, and KPMG's motion to exclude the reports and testimony of Plaintiffs' class certification expert. The parties also conducted significant class-related discovery, including depositions of each of the Named Plaintiffs and the parties' respective experts. After a nearly 5-hour oral argument on June 29, 2020, Magistrate Judge Poplin granted Plaintiffs' motion to substitute, denied in most respects Defendant's motion to exclude Plaintiffs' expert (the "Daubert Order"), and issued a report and recommendation ("R&R") that the Court grant Plaintiffs' motion

for class certification. The Settling Parties then proceeded to fully brief KPMG's objections to the R&R and to the Daubert Order, which the Court ultimately overruled, granting Plaintiffs' motion for class certification on May 7, 2021. When KPMG filed a Rule 23(f) Petition to the Sixth Circuit, the Settling Parties then conducted several rounds of briefing before both the Sixth Circuit and the Court. Meanwhile, the Settling Parties engaged in extensive fact discovery, which included the production of hundreds of thousands of pages of documents by KPMG and numerous third parties, including all of KPMG's Class Period audit workpapers and other documents, as well as the documents that KPMG had produced to the Securities and Exchange Commission. Lead Plaintiffs also worked extensively with their accounting, loss causation and damages experts to establish their claims.

Ultimately the Settling Parties engaged a neutral third-party mediator, Robert A. Meyer, Esq., of JAMS, submitted mediation statements, and held settlement discussions. Co-Lead Counsel and one of the Lead Plaintiffs, Mr. Cosby, had an in-person mediation session with the mediator and KPMG's counsel and representatives on July 15, 2021. Ultimately, that mediation failed and the parties were unable to reach agreement. Shortly thereafter, on August 26, 2021, the Court referred the action to Magistrate Steger for a judicially hosted settlement conference and stayed the action pending the mediation. The first session with Magistrate Steger took place on November 4, 2021, and the second session with Magistrate Steger took place two-and-a-half weeks later, on November 23, 2021. Before the mediation sessions, the Settling Parties exchanged extensive written submissions setting forth their positions on liability, damages, and other issues that impacted the risks and potential outcome of the Action. The parties also made in-court presentations regarding the merits of the case and their respective positions on certain outstanding legal issues. As a result of the arms' length negotiations and with the substantial assistance of Magistrate Steger, the

Settling Parties agreed in November 2021, subject to Court approval and certain conditions in the Stipulation, to settle the Action in return for a cash payment of $35,000,000 for the benefit of the Settlement Class. The Stipulation (together with the exhibits thereto) reflects the final and binding agreement between the Settling Parties.

## ARGUMENT

### I. The Proposed Settlement Warrants Preliminary Approval

Federal Rule of Civil Procedure 23(e) requires judicial approval for any class action settlement. Though approving a settlement is within the Court's discretion, the Court should exercise that discretion given the general judicial policy that "favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981), *on reh'g*, 670 F.2d 71 (6th Cir. 1982). The public interest in encouraging settlement is particularly strong in "complex litigation and class action suits," because "they are notoriously difficult and unpredictable and settlement conserves judicial resources." *Macy v. GC Servs. Ltd. P'ship*, No. 3:15-CV-819-DJH-CHL, 2019 WL 6684522, at *7 (W.D. Ky. Dec. 6, 2019).

A class action settlement approval procedure typically occurs in three stages: "(1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement." *Bailey v. Verso Corp.*, 337 F.R.D. 500, 505 (S.D. Ohio 2021) (internal quotation marks omitted); *see also Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983).

When ultimately deciding whether to give final approval of the Settlement, the Court should find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Before 2018, Rule 23 did not provide the criteria for whether a settlement is "fair, reasonable, and adequate," so courts in the Sixth Circuit used these factors (often called the "*UAW* factors") to determine whether to grant final approval:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497

F.3d 615, 631 (6th Cir. 2007) ("*UAW*"). In 2018, however, Rule 23 was amended to specifically

enumerate factors that the Court should consider when determining whether the settlement is "fair,

reasonable, and adequate":

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Those factors, which generally encompass the Sixth Circuit's *UAW*

factors, are not meant "to displace any factor" previously relied on by the courts, "but rather to

focus the court and the lawyers on the core concerns of procedure and substance that should guide

the decision whether to approve the proposal." Fed. R. Civ. P. 23, advisory committee's note to

2018 amendments. Because the Sixth Circuit has not yet considered the factors listed in the new

version of Rule 23, courts in the Sixth Circuit typically consider both the new set of factors listed

in Rule 23(e)(2) and the *UAW* factors when determining whether to grant final approval to a class-

action settlement. *See, e.g.*, *Macy*, 2019 WL 6684522, at *2 (listing cases).

At this preliminary stage of approval, the Court need not make a final determination on those

factors. Instead, the Court should simply determine whether it will "likely be able to" grant final

approval to the Settlement. Fed. R. Civ. P. 23(e)(1)(B). That is, the Court should make a

"preliminary determination" of whether the proposed settlement meets Rule 23(e)'s requirement of being "fair, reasonable, and adequate." *Macy*, 2019 WL 6684522, at *1 (internal quotation marks omitted).

Courts in the Sixth Circuit have taken two approaches to making that preliminary determination. Since 2018, some courts have preliminarily examined each of the final-approval factors now listed in Rule 23(e)(2), as well as each of the Sixth Circuit's *UAW* factors. *See, e.g.*, *Macy*, 2019 WL 6684522, at *1-2. Other courts, however, have continued to apply the standard for preliminary approval that courts used in the Sixth Circuit before the 2018 amendment to Rule 23. *See, e.g.*, *Ostendorf v. Grange Indem. Ins. Co.*, No. 2:19-CV-1147, 2020 WL 5366380, at *2 (S.D. Ohio Sept. 8, 2020). Under that standard, a district court makes its preliminary-approval decision not by examining each of the final-approval factors, but by asking whether "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with [*sic*] the range of possible approval." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1015 (S.D. Ohio 2001) (quoting Manual for Complex Litig. § 30.44 (2d ed. 1985)).

In practice, those two approaches to preliminary approval involve similar substantive and procedural considerations and are "unlikely to generate a significant change in the settlement process or outcome," because the 2018 amendment "essentially codified prior practice." 4 Newberg on Class Actions § 13:13 (5th ed.). Thus, the discussion below includes both sets of factors, noting where they overlap.[2]

---

[2] The Court need not consider the sixth *UAW* factor, which requires the Court to evaluate the reaction of the settlement class, "because consideration of this factor is generally premature at the preliminary approval stage." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 699 n.1

## A. The Proposed Settlement Satisfies Rule 23(e)(2) and the Relevant *UAW* Factors

### 1. Plaintiffs and Co-Lead Counsel Have Adequately Represented the Settlement Class

Rule 23(e)(2)(A) requires a Court to find that "the class representatives and class counsel have adequately represented the class" before preliminarily approving a settlement. "Determination of adequacy typically 'entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)). The adequate representation inquiry under Rule 23(e)(2)(A) also overlaps with the third and fourth *UAW* factors, which requires that the Court consider "the amount of discovery engaged in by the parties" and "the opinions of class counsel and class representatives." *Macy*, 2019 WL 6684522, at *2.

Plaintiffs' interests are aligned with other class members' interests because they suffered the same alleged injuries: losses resulting from allegedly false statements and omissions in KPMG's audit reports for Miller Energy. As the Court and Magistrate Judge Poplin concluded at the class certification stage, Plaintiffs "share common interests with the other class members," R&R at 21, because they "purchased Miller Energy Securities at prices artificially inflated by the alleged fraud and … their claims are based on the same legal theories and facts as other members." ECF No. 211 at 26 (citing R&R at 20). Because of these alleged injuries, Plaintiffs have an "interest in vigorously pursuing the claims of the class." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). Co-Lead Counsel have also shown that "they are qualified, experienced, and able to

---

(S.D.N.Y. 2019) (considering a similar factor used by courts in the Sixth Circuit); *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06-cv-11515, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Since no notice has been sent, consideration of this factor is premature.").

conduct the litigation, as evidenced in their interactions with the Court as well as with a mediator."
*In re GSE Bonds*, 414 F. Supp. 3d at 692; *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 597
(E.D. Mich. 2006) ("The judgment of the parties' counsel that the settlement is in the best interest
of the settling parties is entitled to significant weight, and supports the fairness of the class
settlement."); *see also Williams*, 720 F.2d at 922–23 ("The court should defer to the judgment of
experienced counsel who has competently evaluated the strength of his proofs."). Indeed,
Magistrate Judge Poplin noted in her class certification Report & Recommendation, that the Court
adopted in full, that "Gordon Ball has served as lead or co-counsel for plaintiffs in dozens of
antitrust, consumer, and product liability class actions" and that Cohen Milstein "has extensive
securities litigation experience and successfully prosecuted numerous securities fraud class actions
on behalf of injured investors recovering billions for investors," adding that Co-Lead Counsel have
"been involved in this matter since the lawsuit's infancy and ha[ve] litigated numerous motions,
including a motion to dismiss, a *Daubert* motion, and the [class certification] motion." R&R at
75–76. "And the settlement was reached after substantial discovery and motion practice, giving
the class representatives and counsel 'a sufficient understanding of the case to gauge the strengths
and weaknesses of the claims and the adequacy of the settlement.'" *Macy,* 2019 WL 6684522, at
*2 (quoting *N.Y. State Teachers' Ret. Sys. v. GM Co.*, 315 F.R.D. 226, 236 (E.D. Mich. 2016)); *In
re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 194 (S.D.N.Y 2005) (preliminarily approving
settlement where "[t]he settling parties are represented by experienced and talented counsel that
share expertise in this field and an extensive knowledge of the details of this case"); *see also Great
Neck Cap'l Appreciation Inv. P'ship, LP v. PriceWater- houseCoopers, LLP*, 212 F.R.D. 400, 410
(E.D. Wis. 2002) ("[T]he settlement was reached after PwC's motion to dismiss had been decided
and after merits discovery was well underway. Thus, plaintiffs' counsel's evaluation of the case

was based on a reasonable amount of information."). Thus, Rule 23(e)(2)(A) and the third and fourth *UAW* factors support approval.

## 2. The Proposed Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B) requires a showing that "the proposal was negotiated at arm's length." If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, courts typically grant the proposed settlement typically "a presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *Doe v. Ohio*, 2:91-CV-00464, 2020 WL 728276, at *4 (S.D. Ohio Feb. 12, 2020), *report and recommendation adopted,* 2020 WL 996561 (S.D. Ohio Mar. 2, 2020) (S.D. Ohio Mar. 2, 2020) ("Courts presume the absence of fraud or collusion unless there is evidence to the contrary."); *see also Brent v. Midland Funding, LLC*, No. 3:11-CV-1332, 2011 WL 3862363, at *15 (N.D. Ohio Sept. 1, 2011) ("[T]he courts respect the integrity of counsel and presume the absence of fraud and collusion in negotiating the settlement, unless evidence to the contrary is offered.") (quoting 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.51 (4th ed.2002)) (quotation marks omitted).

Further, extensive litigation and a mediator's involvement in settlement negotiations can help show their fairness. *Macy*, 2019 WL 6684522, at *3 ("Where the proposed settlement was preceded by a lengthy period of adversarial litigation involving substantial discovery, a court is likely to conclude that settlement negotiations occurred at arms-length." (quoting *Newberg on Class Actions* § 13:14)); *see also Peck v. Air Evac EMS, Inc.*, 5:18-cv-00615-DCR, 2019 WL 3219150, at *6 (E.D. Ky. July 17, 2019) (emphasizing "negotiations with the assistance of an experienced mediator"). This requirement overlaps with the first *UAW* factor, which requires the

Court to consider the risk of fraud or collusion. *Macy*, 2019 WL 6684522, at *3 (considering Rule 23(e)(2)(B) and the first *UAW* factor together)

Here, the proposed Settlement is "the product of serious, informed, non-collusive negotiations," as the Settling Parties' negotiations were conducted at arm's-length, over four months and with the assistance and facilitation of experienced and well-respected mediators. Indeed, the Settling Parties' final two mediation sessions were overseen by Magistrate Judge Steger, who was appointed by the Court to oversee settlement negotiations. That process required all parties and their counsel to assess difficult and uncertain outcomes. *See id.* ("The fact that the settlement was reached through mediation likewise suggests an 'absence of collusion'" (quoting *Newberg on Class Actions* § 13:14)). Rule 23(e)(2)(B) and the first *UAW* factor thus favor preliminary approval.

### 3. The Relief Provided to the Settlement Class Is Adequate

Under Rule 23(e)(2)(C), the Court should determine whether "the relief provided for the class is adequate" after considering (i) "the costs, risks, and delay of trial and appeal," (ii) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," (iii) "the terms of any proposed award of attorney's fees, including timing of payment," and (iv) "any agreement required to be identified under Rule 23(e)(3)."

#### a. The Costs, Risks, and Delay of Trial and Appeal

To assess adequacy under Rule 23(e)(2)(C)(i), "courts may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." *In re Payment Card Interchange Fee and Merch. Discount Antitrust Litig.*, 330 F.R.D. 11, 36 (E.D.N.Y. 2019) (citing the 2018 Adv. Comm. Note). This requirement encompasses the second *UAW* factor,

which requires the Court to consider "the complexity, expense and likely duration of the litigation." *Macy*, 2019 WL 6684522, at *1 (internal quotation marks omitted).

The costs and delay of continued litigation would have been substantial. Court routinely recognize that "class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Regions Morgan Keegan Sec., Derivative, and ERISA Litig.*, 07-2784, 2016 WL 8290089, at *4 (W.D. Tenn. Aug. 2, 2016); *In re Signet Jewelers Ltd. Sec. Litig.*, No. 16-cv-6728, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020) ("Courts recognize that securities class actions are generally complex and expensive to prosecute.")

The risks to the Class of bringing the case to trial would also have been significant, given the substantial difficulty in proving liability in securities fraud cases. *See, e.g., Guevoura Fund Ltd. v. Sillerman*, No. 1:15-CV-07192-CM, 2019 WL 6889901, at *8 (S.D.N.Y. Dec. 18, 2019) (noting "the difficulty of establishing liability is a common risk of securities litigation" (internal quotation marks omitted)). Although Lead Plaintiffs defeated the motions to dismiss, this was no guarantee as to continued success in the case. Indeed, courts have observed that while establishing liability in any securities fraud case is difficult, cases brought against auditors add even greater "complexity to the legal and factual issues." *Regions Morgan Keegan,* 2016 WL 8290089, at *4. Proving KPMG's liability at summary judgment or trial would typically require "a battle of experts," *id.*, making continued litigation both riskier and significantly more expensive. Even if Lead Plaintiffs established KPMG's liability, Lead Plaintiffs would encounter significant loss causation defenses as KPMG would have sought to disaggregate the portion of any decline in the price of Miller Energy stock allegedly caused by the KPMG's alleged false statements and omissions from the portion caused by other confounding factors. Even if they survived summary judgment in full,

Lead Plaintiffs would then have to establish each element of their claims and damages to a jury's satisfaction. Further, KPMG would also raise its argument that Plaintiffs did not have standing to assert their Section 11 claims and cannot satisfy the statutory "tracing" requirement—arguments that the Court expressly noted KPMG could raise at the merits stage and which, if granted, would have substantially and negatively impacted the Settlement Class' damages. ECF No. 211 at 27. And even if plaintiffs "were to prevail at trial, post-trial motions and the potential for appeal could prevent the class members from obtaining any recovery for several years, if at all*." Sykes v. Harris*, No. 09-cv-8486, 2016 WL 3030156, at *12 (S.D.N.Y. May 24, 2016), Thus, Rule 23(e)(2)(C)(i) and the second *UAW* factor support preliminary approval.

### b. The Proposed Method for Distributing Relief Is Effective

Rule 23(e)(2)(C)(ii) requires courts to examine "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23, 2018 Adv. Comm. Note. Furthermore, while the plan of allocation "must be fair and adequate," it "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (quoting *Maley Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002)). "[N]umerous courts have held ... [that] a plan of allocation need not be perfect." *In re EVCI Career Colls. Holding Corp.*, 05-CV-10240-CM, 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007) (collecting cases). The court's "principal obligation is simply to ensure that the fund distribution is fair and reasonable." *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001).

Here, the proposed Plan of Allocation was prepared with the assistance of Lead Plaintiffs' damages consultant, Global Economics Group, which has significant experience in drafting plans

of allocation. The Plan of Allocation was formulated by Co-Lead Counsel and Global Economics Group based on Plaintiffs' theory of liability. The Plan of Allocation provides a reasonable, rational basis for Class Members to recover their *pro rata* damages based on the dates of their Miller Energy stock transactions. In particular, the Plan of Allocation allocates losses as follows:

**Exchange Act Loss Amount**

    **Common Stock.** For each share of publicly traded Miller Energy common stock purchased from August 29, 2011 through July 30, 2015, inclusive, and:

1. sold from August 29, 2011 through July 30, 2015, the Exchange Act Loss Amount is **the lesser of**: (i) the amount of artificial inflation per share on the date of purchase/acquisition as stated in Table A *minus* the amount of artificial inflation per share on the date of sale as stated in Table A; or (b) the purchase/acquisition price per share (excluding taxes, commissions, and fees) *minus* the sale price per share (excluding taxes, commissions, and fees).

2. sold from July 31, 2015 through October 28, 2015, the Exchange Act Recognized Loss will be **the least of**: (a) the amount of artificial inflation per share on the date of purchase/acquisition as stated in Table A; (b) the purchase/acquisition price per share *minus* the average closing price between July 31, 2015 and the date of sale as stated in Table B below; or (c) the purchase/acquisition price per share (excluding taxes, commissions, and fees) *minus* the sale price per share (excluding taxes, commissions, and fees).

3. held as of the close of trading on October 28, 2015, the Exchange Act Loss Amount is **the lesser of**: (i) the amount of artificial inflation per share on the date of purchase/acquisition as stated in Table A; or (ii) the purchase price per share *minus* $0.10.[3]

    **Series C Preferred Stock.** For each share of publicly traded Miller Energy Series C preferred stock purchased from October 8, 2012 through July 30, 2015, inclusive, and:

---

    [3] Pursuant to Section 21D(e)(1) of the Exchange Act, "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." Consistent with the requirements of the Exchange Act, Miller Energy common stock Exchange Act Loss Amounts are reduced to an appropriate extent by taking into account the closing prices of Miller Energy common stock during the "90-day look-back period," from July 31, 2015 through October 28, 2015. The mean (average) closing price for Miller Energy common stock during this 90-day look-back period was $0.10.

1. sold from October 8, 2012 through July 30, 2015, the Exchange Act Loss Amount is **the lesser of**: (i) the amount of artificial inflation per share on the date of purchase/acquisition as stated in Table A *minus* the amount of artificial inflation per share on the date of sale as stated in Table A; or (b) the purchase/acquisition price per share (excluding taxes, commissions, and fees) *minus* the sale price per share (excluding taxes, commissions, and fees).

2. sold from July 31, 2015 through October 28, 2015, the Exchange Act Recognized Loss will be **the least of**: (a) the amount of artificial inflation per share on the date of purchase/acquisition as stated in Table A; (b) the purchase/acquisition price per share *minus* the average closing price between July 31, 2015 and the date of sale as stated in Table B below; or (c) the purchase/acquisition price per share (excluding taxes, commissions, and fees) *minus* the sale price per share (excluding taxes, commissions, and fees).

3. held as of the close of trading on October 28, 2015, the Exchange Act Loss Amount is **the lesser of**: (i) the amount of artificial inflation per share on the date of purchase/acquisition as stated in Table A; or (ii) the purchase price per share *minus* $0.33.[4]

**Series D Preferred Stock.** For each share of publicly traded Miller Energy Series D preferred stock purchased from October 1, 2013 through July 30, 2015, inclusive, and:

1. sold from October 1, 2013 through July 30, 2015, the Exchange Act Loss Amount is **the lesser of**: (i) the amount of artificial inflation per share on the date of purchase/acquisition as stated in Table A *minus* the amount of artificial inflation per share on the date of sale as stated in Table A; or (b) the purchase/acquisition price per share (excluding taxes, commissions, and fees) *minus* the sale price per share (excluding taxes, commissions, and fees).

2. sold from July 31, 2015 through October 28, 2015, the Exchange Act Recognized Loss will be **the least of**: (a) the amount of artificial inflation per share on the date of purchase/acquisition as stated in Table A; (b) the purchase/acquisition price per share *minus* the average closing price between July 31, 2015 and the date of sale as stated in Table B below; or (c) the purchase/acquisition price per share (excluding taxes, commissions, and fees) *minus* the sale price per share (excluding taxes, commissions, and fees).

3. held as of the close of trading on October 28, 2015, the Exchange Act Loss Amount is **the lesser of**: (i) the amount of artificial inflation per share on the date of purchase/acquisition as stated in Table A; or (ii) the purchase price per share *minus*

---

[4] As explained above, pursuant to the Exchange Act, Miller Energy Class C preferred stock Exchange Act Loss Amounts are reduced to an appropriate extent by taking into account the closing prices of Miller Energy Class C preferred stock during the 90-day look-back period, from July 31, 2015 through October 28, 2015. The mean (average) closing price for Miller Energy Class C preferred stock during this 90-day look-back period was $0.33.

$0.31.^5$

**Securities Act Loss Amounts**

**Series C Preferred Stock**

1. For each share of Miller Energy Series C preferred stock purchased between February 13, 2013 and May 6, 2013, inclusive, and:

   a. sold before the close of trading on March 29, 2016, the Securities Act Loss Amount is the purchase price per share (not to exceed $22.90) *minus* the sale price per share;

   b. held as of the close of trading on March 29, 2016, the Securities Act Loss Amount is the purchase price per share (not to exceed $22.90).

2. For each share of Miller Energy Series C preferred stock purchased between May 7, 2013 and June 26, 2013, inclusive, and:

   a. sold before the close of trading on March 29, 2016, the Securities Act Loss Amount is the purchase price per share (not to exceed $22.25) minus the sale price per share;

   b. held as of the close of trading on March 29, 2016, the Securities Act Loss Amount is the purchase price per share (not to exceed $22.25).

3. For each share of Miller Energy Series C preferred stock purchased between June 27, 2013 and March 29, 2016, inclusive, and:

   a. sold before the close of trading on March 29, 2016, the Securities Act Loss Amount is the purchase price per share (not to exceed $21.50) *minus* the sale price per share;

   b. held as of the close of trading on March 29, 2016, the Securities Act Loss Amount is the purchase price per share (not to exceed $21.50).

**Series D Preferred Stock**

1. For each share of Miller Energy Series D preferred stock purchased between October 1, 2013 and December 25, 2013, inclusive, and:

   a. sold before the close of trading on March 29, 2016, the Securities Act Loss Amount is the purchase price per share (not to exceed $25.00) *minus* the sale price per share;

   b. held as of the close of trading on March 29, 2016, the Securities Act Loss Amount is the purchase price per share (not to exceed $25.00).

2. For each share of Miller Energy Series D preferred stock purchased between

---

[5] As explained in above, pursuant to the Exchange Act, Miller Energy Class D preferred stock Exchange Act Loss Amounts are reduced to an appropriate extent by taking into account the closing prices of Miller Energy Class D preferred stock during the 90-day look-back period, from July 31, 2015 through October 28, 2015. The mean (average) closing price for Miller Energy Class D preferred stock during this 90-day look-back period was $0.31.

December 26, 2013 and March 29, 2016, inclusive,[6] and:

  a. sold before the close of trading on March 29, 2016, the Securities Act Loss Amount is the purchase price per share (not to exceed $21.25) minus the sale price per share;

  b. held as of the close of trading on March 29, 2016, the Securities Act Loss Amount is the purchase price per share (not to exceed $21.25).

Accordingly, the Plan of Allocation has a rational basis, and should, therefore, be preliminarily approved. *See Danieli v. IBM Corp.*, No. 08-cv-3688, 2009 WL 6583144, at *5 (S.D.N.Y. Nov. 16, 2009) (approving plan of allocation where it "is rationally related to the relative strengths and weaknesses of the respective claims asserted" and falls within the range of possible approval). This factor thus supports preliminary approval.

### c. Attorneys' Fees and Litigation Expenses

Rule 23(e)(2)(C)(iii) requires courts to examine "the terms of any proposed award of attorneys' fees, including timing of payment." The total Settlement Fund will be $35 million, plus accrued interest. Co-Lead Counsel will apply for an award of attorneys' fees not to exceed 33.33% of the Settlement Fund plus reimbursement of Litigation Expenses, plus interest on both amounts. After entry by the Court of an order awarding Co-Lead Counsel's attorneys' fees and Litigation Expenses, "any awarded attorneys' fees and expenses shall be paid from the Settlement Fund within three (3) days upon award." Stipulation ¶ 18. If the Settlement is terminated or the fee and expense order is reversed or modified, then Co-Lead Counsel will refund to the Escrow Account any fees paid within 15 business days. *Id.*

In the Sixth Circuit, courts regularly award fees of 33.33% in similar cases, even when a settlement is reached at a much earlier stage of litigation. *See, e.g., In re Skelaxin (Metaxalone)*

---

[6] For purchases of Miller Energy Series D preferred stock made in the Secondary Public Offering on August 25, 2014 with adequate documentation on the Claim form, the purchase price per share will be limited to $24.50 rather than $21.25.

*Antitrust Litig.,* No. 2:12-cv-83, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) ("The Court finds that the requested counsel fee of one third [of the settlement recovery] is fair and reasonable and fully justified. The Court finds it is within the range of fees ordinarily awarded."); *In re Chemed Corp. Sec. Litig.*, 1:12-cv-00028, 2014 WL 12650642, at *1 (S.D. Ohio July 15, 2014) (affirming percentage-of-the-fund approach as the appropriate method for awarding attorneys' fees and finding that award of 33% was "reasonable when compared to percentage awards in cases of similar complexity") (citing *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 515-16 (6th Cir. 1993)); *In re Se. Milk Antitrust Litig.,* 2013 WL 2155379, No. 2:07-CV-208, at *15-16 (E.D. Tenn. May 17, 2013) (holding that attorneys' fees request for one-third of the settlement fund was "certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit"); *Swigart v. Fifth Third Bank*, 1:11-CV-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (citing cases for the proposition that "[a]n award of 33% of the total settlement fund is well within the range of fees requested in class and collective action"); *In re Caraco Pharm. Lab'ys, Ltd. Sec. Litig.*, 2:09-CV-12830-AJT, 2013 WL 3213328, at *4 (E.D. Mich. June 26, 2013) (granting award of 33%). The proposed fee of up to 33.33% of the Settlement Fund thus does not weigh against preliminary approval of the proposed Settlement.

### d.  Agreements Required to be Identified Under Rule 23(e)(3)

Rule 23(e)(2)(C)(iv) requires courts to consider "any agreement required to be identified by Rule 23(e)(3)," that is, "any agreement made in connection with the proposal." The Settling Parties have entered into one such agreement, which establishes certain conditions under which KPMG may terminate the Settlement if Class Members who collectively purchased more than a specified number of shares of Miller Energy stock request exclusion (or "opt out") from the Settlement. Such supplemental agreements are customary in securities class action settlements and their confidentiality "avoid[s] the risk that one or more shareholders might use this knowledge to insist

on a higher payout for themselves by threatening to break up the Settlement." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479, 2018 WL 4207245, at *7 (N.D. Cal. Sept. 4, 2018) (approving confidentiality of opt-out termination agreement); *see Hosp. Authority of Metropolitan Govt. of Nashville and Davidson County, Tenn. v. Momenta Pharm., Inc.*, 3:15-CV-01100, 2020 WL 3053467, at *2 (M.D. Tenn. May 29, 2020) (granting final approval after noting that "supplemental agreements that set forth confidential terms of termination in the event exclusions reached a certain threshold … may appropriately be kept confidential and not filed on the public docket").

### e. The Remaining *UAW* Factors Support Preliminary Approval

Together with the enumerated factors set forth in Rule 23(e)(2)(C), the remaining two *UAW* factors—"likelihood of success on the merits" (the fourth *UAW* factor) and the "public interest" (the seventh *UAW* factor)—are relevant to the adequacy inquiry. These two factors either favor preliminary approval or, at worst, are neutral.

*First,* when considering likelihood of success on the merits, "the Court must balance Lead Plaintiffs' likelihood of success on the merits against the relief offered in the settlement." *New York State Tchrs.' Ret. Sys.*, 315 F.R.D. at 236. As noted above, *see supra* pp. 17-19, proving liability at summary judgment and trial would have been hotly contested and therefore risky, particularly on the elements of falsity, materiality, and loss causation—and even if Class Representative were to prove liability, there would have been a battle among experts over the extent of damages. *See Connectivity Sys. Inc. v. Nat'l City Bank*, 2:08-cv-01119-MHW, 2011 WL 292008, at *2 (S.D. Ohio Jan. 26, 2011) ("Acceptance of expert testimony is always far from certain, no matter how qualified the expert, inevitably leading to a 'battle of the experts.' The Settlement Agreement reached by the parties avoids the risks attendant to this 'battle of the experts,' which could result in a ruling against Named Plaintiffs and the Settlement Class."). Thus,

the fourth *UAW* factor is either neutral or supports preliminary approval of the proposed Settlement.

*Second,* the proposed settlement is supported by the "strong public interest in encouraging settlement of complex litigation and class action suits," as such cases "are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)). Here, as discussed above, proving liability and obtaining significant damages at summary judgment and trial would indeed be difficult and unpredictable, *see supra* pp. 17–19, and the public interest is served by "compensat[ing] Class Members for their contested damages now, rather than prolonging implementation until after a trial and appeal." *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990). Thus, the seventh *UAW* factor weighs in favor of the proposed settlement.

### 4. The Proposed Settlement Falls within the Range of Possible Approval

Finally, the proposed settlement also falls well within "the range of possible approval." *Telectronics Pacing Sys.*, 137 F. Supp. 2d at 1015 (quoting Manual for Complex Litig. § 30.44 (2d ed. 1985)). According to Plaintiffs' damages expert's analysis and utilizing a very aggressive damages model that, among other things, does not discount for Defendant's likely successful loss causation arguments, the Settlement represents nearly 18% of Plaintiffs' maximum provable damages. Settlements in this range of recovery (and indeed, well below this range) routinely receive approval by courts as representing recoveries that are fair, reasonable, and adequate. *See, e.g.*, *In re China Sunergy Sec. Litig.*, No. 07-cv-7895, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) ("average settlement amounts in securities fraud class actions where investors sustained losses over the past decade ... have ranged from 3% to 7% of the class members' estimated losses"); *see also In re Sturm, Ruger & Co., Inc. Sec. Litig.*, No. 3:09-cv-1293, 2012 WL 3589610, at *7

(D. Conn. Aug. 20, 2012) (noting that a settlement obtaining 3.5% of the "most aggressive estimate of maximum provable damages … exceeds the average recovery in shareholder litigation" and affirming an average range of 3% to 7% recoveries) (citing *In re China Sunergy*, 2011 WL 1899715, at *5); *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, No. 03-CV-4372, 2009 WL 4730185, at *7 (D.N.J. Dec. 4, 2009) (approving settlement at "slightly below 10% of the total realizable value of the action" which was "well over the average settlement amounts in securities fraud class actions").

Indeed, the proposed settlement is a substantial recovery given that KPMG would have been able to argue that damages should be sharply reduced by both certain loss causation arguments and the PSLRA's proportionate liability provision. Plaintiffs could avoid the proportionate liability provision only by proving that KPMG's violations were made knowingly, a heavy burden that would be difficult to meet in any case. If Plaintiffs were to proceed to trial, they would thus face the real risk that even if they could establish a substantial damages amount, a jury would nonetheless find that KPMG's proportion of liability for those damages was small compared to Miller Energy, its executives, or others.

For these reasons, the proposed Settlement is not only a substantial recovery, but is also well within the range of reasonableness given the attendant risks of litigation, because it will allow the Settlement Class to recover a significant portion of their damages now rather than a possible recovery after years of uncertain litigation and a far-from- guaranteed jury verdict. *See In re AOL Time Warner, Inc.*, No. 02-cv-5575, 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006) (immediate, substantial and concrete benefit of settlement outweighs possibility of higher recovery after trial).

Thus, the proposed settlement falls well within the range of reasonableness.

### 5. Class Members Are Treated Equitably by the Plan of Allocation

Finally, Rule 23(e)(2)(d) requires the Court to consider whether "the proposal treats class members equitably relative to each other." Consideration of this factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23, 2018 Adv. Comm. Note. Under the proposed Plan of Allocation, Claimants will be treated equitably by receiving a *pro rata* share of the recovery. *See Ware v. CKF Enters., Inc.*, 5:19-CV-183-DCR, 2020 WL 2441415, at *16 (E.D. Ky. May 12, 2020) (finding that a *pro rata* allocation plan was "fair" and "treats the class members equitably relative to each other"). Thus, Rule 23(e)(2)(d) supports preliminary approval of the Settlement.

*       *       *

In sum, nothing during the Settling Parties' negotiations of the terms of the Settlement reveals any grounds to doubt the fairness of the Settlement. To the contrary, the substantial recovery for the Class, the extensive investigation and discovery conducted, the Settling Parties' litigation efforts over the course of nearly six years, the arm's-length nature of the negotiations, and the participation of experienced mediators all amply support a finding that the proposed Settlement is well "within the range of possible approval" so as to justify notice to the Settlement Class and scheduling of a Fairness Hearing.

## II. The Proposed Form and Method of Class Notice Are Adequate

Class notice of a settlement must meet the requirements of Rules 23(c)(2) and 23(e), the PSLRA, and due process. Under Rule 23(c)(2), "notice should be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *UAW*, 497 F.3d at 629 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). The PSLRA and the due process clause of the U.S.

Constitution impose similar requirements. *See* 15 U.S.C. § 77z-1(a)(7); *Consol. Edison, Inc. v. Ne. Utils.*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004) ("Due process requires that the notice to class members 'fairly apprise the … members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'").

### A. The Scope of the Notice Program Is Adequate Under Rule 23

Following a competitive bidding process, Co-Lead Counsel selected Epiq Class Action & Claims Solutions, Inc. ("Epiq"), a highly experienced class action claims administrator, to serve as the Claims Administrator for the proposed Settlement. For nearly three decades, Epiq has administered class action settlements. *See generally* Epiq Class Action & Claims Solutions, Inc., http://www.epiqglobal.com (last visited February 11, 2022). *See Weiner v. Tivity Health, Inc.,* 17-cv-1469, ECF No. 162 (June 16, 2021 M.D. Tenn.) (approving the appointment of Epiq to serve as claims and notice administrator for securities class action settlement). The Settling Parties propose that 120 days after the entry of the proposed Preliminary Approval Order, the Claims Administrator send the Postcard Notice of Proposed Settlement (attached as Exhibit A-4 to the Stipulation), which explains the Action and proposed Settlement, to shareholders identified through records maintained by or on behalf of Miller Energy, or through brokers holding shares on behalf of beneficial owners. The Settling Parties also propose that the Claims Administrator post the Notice of Proposed Settlement (attached as Exhibit A-1 to the Stipulation) to a dedicated website providing information regarding the settlement for shareholders.  Finally, the Settling Parties also propose that the Claims Administrator cause a Publication Notice (attached as Exhibit A-3 to the Stipulation) to be published, which summarizes the Action and the proposed Settlement and explains how to obtain the more detailed Notice of Proposed Settlement and Proof of Claim and Release Form. The Settling Parties also propose that the Publication Notice will be transmitted over *PR Newswire* not later than 10 days after the mailing of the Postcard Notice, and on one

subsequent occasion in *Investors Business Daily*, or in such form or manner as may be ordered by the Court.

Co-Lead Counsel has also instructed Epiq to maintain a settlement website, at www.MillerEnergy-KPMGsecuritiessettlement.com. This website will explain the Settlement, and include downloadable copies of the Notice, Proof of Claim and Release Form, and Stipulation. Epiq will also maintain a toll-free telephone number for Class Members to call with any questions as well as an e-mail address which can be used to request the Claim and Release Form or a copy of the Notice. The Preliminary Approval Order, Notice, and Proof of Claim Form will also be available on Co-Lead Counsel's website at www.cohenmilstein.com.

**B.  The Proposed Form of Notice Program Meets the Requirements of Due Process, the PSLRA, and Rule 23**

Here, the proposed Notice also includes all the information required by Rule 23(c)(2)(B), including "the nature of the action" (Ex. A-1 to the Stipulation, at 4), "the definition of the class certified" (*id*. at 5), "the class claims, issues, or defenses" (*id.* at 4–5); (ii) "that a class member may enter an appearance through an attorney if the member so desires" (*id.* at 15–16); (iii) "that the court will exclude from the class any member who requests exclusion" and "the time and manner for requesting exclusion" (*id.* at 13-14); and (vii) "the binding effect of a class judgment on members under Rule 23(c)(3)" (*id*. at 12-13). Fed. R. Civ. P. 23(c)(2)(V)(i)-(vii). Likewise, the proposed Notice includes all the information required by the PSLRA, including a statement of class members' recovery (*id.* at 2), a statement of the issues on which the parties disagree (*id.* at 4), a statement of the attorneys' fees and costs sought (*id.* at 2, 15), identification of counsel (*id.* at 9), and a statement of the reasons for the settlement (*id.* at 14-15). *See* 15 U.S.C. §§ 77z-1(a)(7), 78u-4(a)(7) (listing required disclosures).

As described above and further outlined in the proposed Preliminary Approval Order, the Claims Administrator will (i) notify Class Members of the Settlement by mailing the Postcard Notice and Proof of Claim and Release Form to all potential Class Members who can be identified with reasonable effort, (ii) cause the Publication Notice to be published in *Investor's Business Daily* and transmitted over *PR Newswire*, and (iii) maintain a website with relevant information at www.MillerEnergy-KPMGsecuritiessettlement.com including a copy of the Notice. Notice programs such as this are often approved in connection with class action settlements. *See, e.g.*, *N.J. Carpenters Vacation Fund v. The Royal Bank of Scot. Grp., PLC, et al.*, No. 08-cv-5093 (S.D.N.Y. July 18, 2014) (ECF No. 270) (approving notice program where notice was mailed to reasonably ascertainable class members and broker-dealer nominees Publication Notice was published, and settlement website and toll-free number were maintained by claims administrator); *In re Advanced Battery Techs. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014) (notice program approved where claims administrator publicized notice to reasonably ascertainable class members and published Publication Notice in *Investor's Business Daily* and over *PR Newswire*); *In re Merrill Lynch & Co., Inc. Rsch. Reports Sec. Litig.*, No. 02-MDL-1484, 2007 WL 313474, at *8 (S.D.N.Y. Feb. 1, 2007) (notice program approved where claims administrator publicized notice and plan of allocation to class members and published Publication Notice "in appropriate publications").

Plaintiffs' proposed manner of providing notice, which includes individual notice by mail to all Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process, Rule 23, and the PSLRA. *See In re Warner Chilcott*, 2008 WL 5110904, at *3; *In re Glob. Crossing Sec. and ERISA Litig.*, 225

F.R.D. 436, 448-49 (S.D.N.Y. 2004). Thus, Lead Plaintiffs request that the Court approve the form and the content of the proposed Notice, the Postcard Notice and the Publication Notice.

## III. Proposed Schedule of Events

Lead Plaintiffs propose the following schedule under the proposed Preliminary Approval Order, paragraphs of which are referenced in the chart. This schedule is like those used in similar class action settlements and provides due process for potential Class Members related to their rights concerning the Settlement.

| Event | Proposed Date/Deadline |
|---|---|
| **Deadline to Begin Mailing Postcard Notice of Settlement to Class Members** | No later than 20 days after Preliminary Approval Order is entered (the "Postcard Notice Date"). (¶ 5) |
| **Deadline to Publish Publication Notice** | No later than 10 days after the Postcard Notice Date. (¶ 5) |
| **Deadline to File Motions for Final Approval of Settlement and for Attorneys' Fees and Reimbursement of Litigation Expenses** | 30 days before Fairness Hearing. (¶ 22) |
| **Deadline for Receipt of Requests for Exclusion from Settlement** | 14 days before Fairness Hearing. (¶ 14) |
| **Deadline to File and Serve Objections to Final Approval or to Requests for Attorneys' Fees and Reimbursement of Litigation Expenses** | 14 days before Fairness Hearing. (¶ 10) |
| **Deadline to Reply to Objections, if any** | 7 days before Fairness Hearing. (¶ 10) |
| **Deadline to File Papers in Further Support of Final Approval of Settlement or Requests for Attorneys' Fees and Reimbursement of Litigation Expenses** | 7 days before Fairness Hearing. (¶ 22) |

| | |
|---|---|
| **Fairness Hearing** | Approximately 120 days after the Preliminary Approval Order is entered. Assuming that Order is entered on or about March 11, 2022, the Fairness Hearing could take place on or around July 11, 2021, subject to the Court's availability. |
| **Deadline for Submission of Proof of Claim and Release Forms** | 120 days after the Notice Date. (¶ 7) |

## CONCLUSION

Plaintiffs request that the Court (i) preliminarily approve the Settlement; (ii) approve the proposed form and manner of notice to Class Members; (iii) approve the proposed Proof of Claim and Release Form; and (iv) schedule a hearing on Lead Plaintiffs' motion for final approval of the Settlement and Co-Lead Counsel's application for an award of attorneys' fees and reimbursement of Litigation Expenses. A proposed Preliminary Approval Order is being submitted as Exhibit A to the Stipulation.

Date: March 14, 2022

Respectfully submitted,

/s/ Laura H. Posner
Laura H. Posner

COHEN MILSTEIN SELLERS
& TOLL PLLC
Laura H. Posner
88 Pine Street, 14th Floor
New York, NY 10005
Tel: (212) 220-2925
Fax: (212) 838-7745
lposner@cohenmilstein.com

Steven J. Toll
Susan G. Taylor
Jan E. Messerschmidt
1100 New York Ave. NW, Suite 500
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
stoll@cohenmilstein.com
sgtaylor@cohenmilstein.com
jmesserschmidt@cohenmilstein.com

GORDON BALL PLLC
Gordon Ball (TN BPR #001135)
7001 Old Kent Drive
Knoxville, TN 37919
Tel: (865) 525-7028
Fax: (865) 525-4679
gball@gordonball.com

*Co-Lead Counsel for Plaintiffs*