# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| Lewis Cosby, Eric Montague, and Martin Ziesman, as Co-Trustee for the Carolyn K. Ziesman Revocable Trust, on behalf of themselves and all others similarly situated individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br> v.<br><br>KPMG LLP,<br><br>     Defendant. | Case No. 3:16-cv-121 (TAV) |

## NOTICE OF (I) PROPOSED SETTLEMENT OF CLASS ACTION, (II) HEARING ON PROPOSED SETTLEMENT, AND (III) DEADLINE TO SUBMIT PROOFS OF CLAIM

**If you purchased or otherwise acquired Miller Energy Resources, Inc. ("Miller Energy") Common Stock or Series C or Series D Preferred Stock between August 29, 2011 and July 30, 2015, inclusive, or purchased Miller Energy Series C or Series D Preferred Stock pursuant to or traceable to a public offering ( the "Settlement Class"), you might be a member of the Settlement Class in this action ("Settlement Class Member") entitling you to a payment in connection with a settlement of the action.**

**A federal court authorized this notice. This is not a solicitation from a lawyer.**

1. **Securities:** This notice relates to a securities class action brought by investors who claim that the prices of Miller Energy publicly-traded common stock and Series C and Series D preferred stock were artificially inflated as a result of false statements, non-disclosures, and fraudulent conduct in violation of the federal securities laws.

2. **Description of the Action and the Class:** On ___, 2022, the Court preliminarily approved a settlement of this class action (the "Settlement"). This Settlement is with Defendant KPMG LLP ("Defendant" or "KPMG"). The Court has preliminarily certified for purposes of the Settlement two classes that consist of, subject to certain exceptions identified below, the following individuals and entities:

> All persons or entities who: 1) purchased or otherwise acquired Miller Energy common stock, Miller Energy 10.75% Series C Cumulative Redeemable Preferred Stock (the "Series C Preferred Stock") or Miller Energy 10.5% Series D Fixed Rate/Floating Rate Cumulative Redeemable Preferred Stock (the "Series D Preferred Stock') between August 29, 2011 and July 30, 2015, inclusive, and who were damaged thereby (the "Section 10(b) Class"); and 2) purchased or otherwise

1

acquired Miller Energy Series C Preferred Stock or Series D Preferred Stock pursuant to or traceable to the Offering Documents and were damaged thereby (the "Section 11 Class") (the Section 10(b) Class and Section 11 Class are collectively, the "Settlement Class").

3. **Statement of Class's Recovery:** This Settlement provides that KPMG will cause $35,000,000 to be paid to the Class. After payment of attorneys' fees, costs and expense, the settlement proceeds will be distributed to any investor who is a member of the Settlement Class and who submits a timely and valid proof of claim form. No determination has been made yet of the amount to be distributed.

4. **Statement of Attorneys' Fees and Litigation Expenses Sought:** In accordance with the fee agreement between Lead Plaintiffs and the attorneys who have been appointed to represent the Class, Co-Lead Counsel will ask the Court to award them a fee not to exceed 33 1/3% of the settlement fund, plus reimbursement of expenses incurred in prosecuting this lawsuit, as well as incentive awards not to exceed $45,000 in total for the three lead plaintiffs, to be paid from the settlement proceeds. In addition, Lead Plaintiffs will request that the Court allow notice and administration expenses to be paid to the claims administrator, not to exceed $200,000.00.

5. By submitting the enclosed proof of claim form, you will be submitting a claim to share in the proceeds of the Settlement, unless you request to be excluded from the Settlement.

6. The Settlement was reached because it provides significant benefits to Settlement Class Members and avoids the costs and risks of continuing the lawsuit against Defendant.

7. If you are a member of the Settlement Class and the Settlement is approved, your legal rights will be affected whether you act or not. Read this notice carefully to see what your options are in connection with the Settlement.

8. The Court in charge of this case still has to decide whether to approve the Settlement. If it does, and after any appeals are resolved, money will be distributed to those who qualify. <u>Please be patient.</u>

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **<u>Submit a Claim Form</u>** | The only way to receive a cash payment from the Settlement. |
| **<u>Exclude Yourself</u>** | Receive no benefits from the Settlement, but keep your rights to start or remain part of any other lawsuit against KPMG about its conduct challenged in this case or related conduct. |
| **<u>Object</u>** | Submit a written statement to the Court about why you don't like the Settlement. |
| **<u>Go to Final Fairness Hearing</u>** | Ask to speak in Court about the fairness of the Settlement. |
| **<u>Do Nothing</u>** | You will receive no payment from the Settlement and will give up your rights to start or remain part of any lawsuit against KPMG about its conduct challenged in this case or related conduct. |

2

| WHAT THIS NOTICE CONTAINS |
|---|

Why is this notice being provided?................................................................................................. 3

What is this lawsuit about? ............................................................................................................. 4

Why is this a Class Action? ............................................................................................................ 4

Why is There a Settlement? ............................................................................................................ 4

How do I know if I am a Settlement Class Member?..................................................................... 4

What does the Settlement provide?................................................................................................. 5

How much will my payment be? .................................................................................................... 5

When will settlement money be distributed to claimants? ........................................................... 12

What do I give up if the Settlement is given Final Approval?...................................................... 12

How can I get a payment?............................................................................................................. 12

What do I do if I have questions about the Claim Form? ............................................................. 13

If I exclude myself, can I get anything from this Settlement?...................................................... 13

If I do not exclude myself, can I sue later? .................................................................................. 13

How do I exclude myself from the Settlement?............................................................................ 13

How can I tell the Court I don't like the Settlement? ................................................................... 13

What is the difference between objecting and asking to be excluded?........................................ 14

What happens if I object and the Settlement is approved? ........................................................... 14

Do I have a lawyer in this case?.................................................................................................... 15

How will the lawyers in the case be paid?.................................................................................... 15

How will the Court decide whether to approve the Settlement? .................................................. 15

When and where will the Court decide whether to approve the Settlement? ............................... 15

Do I need to come to the hearing? ................................................................................................ 16

May I speak at the hearing? .......................................................................................................... 16

What happens if I do nothing?...................................................................................................... 16

How do I get more information?................................................................................................... 16

| WHY IS THIS NOTICE BEING PROVIDED? |
|---|

9. Judge Thomas A. Varlan of the United States District Court for the Eastern District of Tennessee authorized this notice to inform you about a proposed Settlement of this class action lawsuit and about all of your rights and options before the Court decides whether to approve the Settlement. This notice explains the lawsuit, the Settlement, your legal rights, what money is available, who is eligible to share in this money, and how to get your share if you are eligible.

10. The persons and entities who started the lawsuit are the Lead Plaintiffs. The company they sued, KPMG LLP ("KPMG"), is the Defendant. The case is known as *Cosby, et al. v. KPMG LLP*, Case No. 3:16-cv-121 (TAV). This notice summarizes the Settlement. You can view the complete Settlement Agreement at www.MillerEnergy-KPMGsecuritiessettlement.com.

## WHAT IS THIS LAWSUIT ABOUT?

11. The Third Amended Complaint (the "Complaint"), which was filed on July 13, 2020, alleges that Defendant violated the federal securities laws by failing to comply with auditing standards in connection with the valuation of certain oil and gas reserves and related assets situated in Alaska ("Alaska Assets") acquired by Miller Energy as of December 16, 2009, and that Defendant's auditing of financial statements reflecting Miller Energy's royalty expenses, depletion, depreciation, and amortization expenses related to wells and equipment, and income taxes, violated U.S. generally accepted auditing standards, and caused Miller Energy's published financial statements during fiscal years 2011 through 2014 to be materially false and misleading.

12. The Complaint asserts fraud-based claims under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and strict liability and negligence claims under Section 11 of the Securities Act.

## WHY IS THIS A CLASS ACTION?

13. In a class action, one or more people (in this case, Lewis Cosby, Eric Montague, and Martin Ziesman, as Co-Trustee for the Carolyn K. Ziesman Revocable Trust (the "Lead Plaintiffs") sue on behalf of businesses, other organizations, and people who have similar claims. If allowed by a court, all of these organizations and people become part of a "class" or "Class Members." One lawsuit resolves the claims of all class members, except for any who exclude themselves from the class.

## WHY IS THERE A SETTLEMENT?

14. The Court did not decide in favor of Lead Plaintiffs or KPMG. Instead, both sides agreed to settle this case to avoid the burden, cost, and risk of further litigation. By settling, KPMG is not admitting any wrongdoing or liability. KPMG continues to deny all legal claims in this case. The Lead Plaintiffs and their lawyers think the Settlement is best for all Settlement Class Members.

15. To see if you will be affected by this Settlement and if you are eligible to get money from it, you first have to determine if you are a Settlement Class Member.

## HOW DO I KNOW IF I AM A SETTLEMENT CLASS MEMBER?

16. The Court has preliminarily certified for purposes of the Settlement two classes that consist of, subject to certain exceptions identified below, the following individuals and entities:

> All persons or entities who: 1) purchased or otherwise acquired Miller Energy common stock, Miller Energy 10.75% Series C Cumulative Redeemable Preferred Stock (the "Series C Preferred Stock") or Miller Energy 10.5% Series D Fixed Rate/Floating Rate Cumulative Redeemable Preferred Stock (the "Series D Preferred Stock') between August 29, 2011 and July 30, 2015, inclusive, and who were damaged thereby (the "Section 10(b) Class"); and 2) purchased or otherwise acquired Miller Energy Series C Preferred Stock or Series D Preferred Stock

4

pursuant to or traceable to the Offering Documents and were damaged thereby (the "Section 11 Class") (the Section 10(b) Class and Section 11 Class are collectively, the "Settlement Class").

17. Excluded from the Settlement Class are KPMG, the officers, directors, partners, and affiliates of KPMG, members of their immediate families, and their legal representatives, heirs, successors or assigns and any entity in which KPMG has or had a controlling interest, and the officers, directors, partners, and affiliates of Miller Energy, members of their immediate families, and their legal representatives, heirs, successors or assigns, and any entity in which Miller Energy has or had a controlling interest.

## WHAT DOES THE SETTLEMENT PROVIDE?

18. In the Settlement, Defendant agrees to cause $35,000,000 to be paid to the Settlement Class (the "Settlement Amount"). The Settlement Amount is to be paid into escrow within fifteen (15) days after the Court's Preliminary Approval Order is entered.

19. The Settlement shall become effective when and if each of the following conditions is met: (a) the Court has entered a final judgment approving the Settlement; and (b) any appeals from that judgement have been finally resolved, or the time has expired in which to file such appeals (the "Effective Date").

20. If the Settlement is approved by the Court, then as of the Effective Date of the Settlement, all members of the Settlement Class will be deemed to have released all claims against the defendant named in the Complaint that arise out of or relate to the allegations in the Complaint. This means that, upon the Effective Date, all Settlement Class Members will be permanently barred from asserting any of the claims described above against Defendant. In addition, upon the Effective Date, Defendant will be precluded from suing the Lead Plaintiffs, members of the Settlement Class, or Co-Lead Counsel in connection with the action.

## HOW MUCH WILL MY PAYMENT BE?

## PROPOSED PLAN OF ALLOCATION

21. The Plan of Allocation set forth herein is the plan for distributing the proceeds of the Settlement among eligible Settlement Class Members that is being proposed by Lead Plaintiffs and their counsel to the Court for approval.

22. The $35,000,000 Cash Settlement Amount and the interest earned thereon shall be the Gross Settlement Fund. The Gross Settlement Fund, less all taxes, approved costs, fees, and expenses (the "Net Settlement Fund") shall be distributed to members of the Settlement Class who submit valid Claim Forms that are accepted for payment in accordance with the Plan of Allocation approved by the Court ("Authorized Claimants").

23. The objective of the Plan of Allocation is to equitably distribute the Net Settlement proceeds to those Authorized Claimants who suffered economic losses as a proximate result of the alleged violations of the federal securities laws.

24. The calculations made pursuant to the Plan of Allocation are not intended to be estimates of, nor indicative of, the amounts that Settlement Class Members might have been able to recover after a trial. Nor are the calculations pursuant to the Plan of Allocation intended to be estimates of the amounts that will be paid to Authorized Claimants pursuant to the Settlement. The

computations under the Plan of Allocation are only a method to weigh the claims of Authorized Claimants against one another for the purposes of making pro rata allocations of the Net Settlement Fund.

25. All purchases of Miller Energy common stock, Miller Energy Series C preferred stock, and Miller Energy Series D preferred stock (together the "Miller Energy Securities") during the Class Period, August 29, 2011 through July 30, 2015,[1] are potentially eligible for compensation based on claims asserted under Sections 10(b) of the Exchange Act. In addition, purchases of Miller Energy Series C preferred stock made on or after February 13, 2013 through March 29, 2016, and purchases of Miller Energy Series D preferred stock from October 1, 2013 through March 29, 2016, are potentially eligible for compensation based on claims asserted under Section 11 of the Securities Act.

26. The entire Net Settlement Fund shall be distributed to members of the Settlement Class, other than the portion of the Net Settlement Fund that cannot be distributed because of prohibitive administrative costs, which remainder shall be donated to a non-sectarian, non-profit organization.

**Exchange Act Claims**

27. For losses to be compensable damages under Section 10(b) of the Exchange Act, the disclosure of the allegedly misrepresented information must be, among other things, the cause of the decline in the price or value of the security. In this case, Lead Plaintiffs allege that Defendant made false statements and omitted material facts during the Class Period which had the effect of artificially inflating the prices of Miller Energy Securities. Lead Plaintiffs further allege that corrective information was released to the market on: December 17, 2013, December 24, 2013, March 13-14, 2014, July 14-15, 2014, October 13, 2014, November 26, 2014, November 28, 2014, December 4, 2014, December 10, 2014, March 12, 2015, April 29, 2015, May 6, 2015, July 14, 2015, and July 31, 2015, which impacted the market prices of at least one of the Miller Energy Securities in a statistically significant manner and partially removed the artificial inflation from the prices of such Securities on: December 18, 2013, December 19, 2013, December 24, 2013, December 26, 2013, March 17, 2014, July 16, 2014, October 13-14, 2014, November 28, 2014, December 1, 2014, December 5-8, 2014, December 15, 2014, April 30 – May 1, 2015, May 6, 2015, July 14, 2015, and July 31, 2015.

28. "Exchange Act Loss Amounts" for transactions in Miller Energy Securities are calculated under the Plan of Allocation based primarily on the difference in the amount of alleged artificial inflation in the prices of each respective Miller Energy Security at the time of purchase or acquisition and at the time of sale, or the difference between the actual purchase/acquisition price and sale price. Accordingly, in order to have an Exchange Act Loss Amount under the Plan of Allocation, a claimant who purchased or otherwise acquired a respective Miller Energy Security must have held the respective Miller Energy Security through at least one of the respective corrective disclosure events listed above where the alleged artificial inflation was removed from the price of the respective Miller Energy Security.

---

[1] Miller Energy Series C preferred stock first traded on October 8, 2012 and Miller Energy Series D preferred stock first traded on October 1, 2013.

## Securities Act Claims

29. Claims asserted in the Action under Section 11 of the Securities Act serve as the basis for the calculation of the "Securities Act Loss Amounts" under the Plan of Allocation. Section 11 of the Securities Act provides a statutory formula for the calculation of damages under that provision. The formulas stated below, which were developed by Lead Plaintiffs' damages expert, generally track the statutory formula.

## CALCULATION OF RECOGNIZED LOSS AMOUNTS

30. An Exchange Act Loss Amount will be calculated as set forth below for each publicly traded share of the Miller Energy Securities purchased or otherwise acquired from August 29, 2011 through July 30, 2015, inclusive, that is listed in the Claim Form and for which adequate documentation is provided.

31. A Securities Act Loss Amount will be calculated as set forth below for each publicly traded share of Miller Energy Preferred Class C preferred stock purchased or acquired from February 13, 2013 through March 29, 2016, and each publicly traded share of Miller Energy Preferred Class D preferred stock purchased or acquired from October 1, 2013 through March 29, 2016.

32. The "Recognized Loss Amount" for each purchased or acquired share of publicly traded Miller Energy Common Stock will be equal to its respective Exchange Act Loss Amount.

33. The Recognized Loss Amount for each purchased or acquired share of publicly traded Miller Energy Series C preferred stock and Series D preferred stock during the Class Period is **the greater of:** (a) the respective Exchange Act Loss Amount, if any *or* (b) the respective Securities Act Loss Amount, if any.

### Exchange Act Loss Amounts

A. **Common Stock**

34. For each share of publicly traded Miller Energy common stock purchased from August 29, 2011 through July 30, 2015, inclusive, and:

   a. sold from August 29, 2011 through July 30, 2015, the Exchange Act Loss Amount is **the lesser of**: (i) the amount of artificial inflation per share on the date of purchase/acquisition as stated in Table A *minus* the amount of artificial inflation per share on the date of sale as stated in Table A; or (b) the purchase/acquisition price per share (excluding taxes, commissions, and fees) *minus* the sale price per share (excluding taxes, commissions, and fees).

   b. sold from July 31, 2015 through October 28, 2015, the Exchange Act Recognized Loss will be **the least of**: (a) the amount of artificial inflation per share on the date of purchase/acquisition as stated in Table A; (b) the purchase/acquisition price per share *minus* the average closing price between July 31, 2015 and the date of sale as stated in Table B below; or (c) the purchase/acquisition price per share (excluding taxes, commissions, and fees) *minus* the sale price per share (excluding taxes, commissions, and fees).

7

c. held as of the close of trading on October 28, 2015, the Exchange Act Loss Amount is **the lesser of**: (i) the amount of artificial inflation per share on the date of purchase/acquisition as stated in Table A; or (ii) the purchase price per share *minus* $0.10.[2]

**B. Series C Preferred Stock**

35. For each share of publicly traded Miller Energy Series C preferred stock purchased from October 8, 2012 through July 30, 2015, inclusive, and:

   a. sold from October 8, 2012 through July 30, 2015, the Exchange Act Loss Amount is **the lesser of**: (i) the amount of artificial inflation per share on the date of purchase/acquisition as stated in Table A *minus* the amount of artificial inflation per share on the date of sale as stated in Table A; or (b) the purchase/acquisition price per share (excluding taxes, commissions, and fees) *minus* the sale price per share (excluding taxes, commissions, and fees).

   b. sold from July 31, 2015 through October 28, 2015, the Exchange Act Recognized Loss will be **the least of**: (a) the amount of artificial inflation per share on the date of purchase/acquisition as stated in Table A; (b) the purchase/acquisition price per share *minus* the average closing price between July 31, 2015 and the date of sale as stated in Table B below; or (c) the purchase/acquisition price per share (excluding taxes, commissions, and fees) *minus* the sale price per share (excluding taxes, commissions, and fees).

   c. held as of the close of trading on October 28, 2015, the Exchange Act Loss Amount is **the lesser of**: (i) the amount of artificial inflation per share on the date of purchase/acquisition as stated in Table A; or (ii) the purchase price per share *minus* $0.33.[3]

**C. Series D Preferred Stock**

36. For each share of publicly traded Miller Energy Series D preferred stock purchased from October 1, 2013 through July 30, 2015, inclusive, and:

---

[2] Pursuant to Section 21D(e)(1) of the Exchange Act, "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." Consistent with the requirements of the Exchange Act, Miller Energy common stock Exchange Act Loss Amounts are reduced to an appropriate extent by taking into account the closing prices of Miller Energy common stock during the "90-day look-back period," from July 31, 2015 through October 28, 2015. The mean (average) closing price for Miller Energy common stock during this 90-day look-back period was $0.10.

[3] As explained in footnote 2 above, pursuant to the Exchange Act, Miller Energy Class C preferred stock Exchange Act Loss Amounts are reduced to an appropriate extent by taking into account the closing prices of Miller Energy Class C preferred stock during the 90-day look-back period, from July 31, 2015 through October 28, 2015. The mean (average) closing price for Miller Energy Class C preferred stock during this 90-day look-back period was $0.33.

a. sold from October 1, 2013 through July 30, 2015, the Exchange Act Loss Amount is the lesser of: (i) the amount of artificial inflation per share on the date of purchase/acquisition as stated in Table A minus the amount of artificial inflation per share on the date of sale as stated in Table A; or (b) the purchase/acquisition price per share (excluding taxes, commissions, and fees) minus the sale price per share (excluding taxes, commissions, and fees).

b. sold from July 31, 2015 through October 28, 2015, the Exchange Act Recognized Loss will be the least of: (a) the amount of artificial inflation per share on the date of purchase/acquisition as stated in Table A; (b) the purchase/acquisition price per share minus the average closing price between July 31, 2015 and the date of sale as stated in Table B below; or (c) the purchase/acquisition price per share (excluding taxes, commissions, and fees) minus the sale price per share (excluding taxes, commissions, and fees).

c. held as of the close of trading on October 28, 2015, the Exchange Act Loss Amount is the lesser of: (i) the amount of artificial inflation per share on the date of purchase/acquisition as stated in Table A; or (ii) the purchase price per share minus $0.31.[4]

## Securities Act Loss Amounts

### A. Series C Preferred Stock

37. For each share of Miller Energy Series C preferred stock purchased between February 13, 2013 and May 6, 2013, inclusive, and:

a. sold before the close of trading on March 29, 2016, the Securities Act Loss Amount is the purchase price per share (not to exceed $22.90) minus the sale price per share;

b. held as of the close of trading on March 29, 2016, the Securities Act Loss Amount is the purchase price per share (not to exceed $22.90).

38. For each share of Miller Energy Series C preferred stock purchased between May 7, 2013 and June 26, 2013, inclusive, and:

a. sold before the close of trading on March 29, 2016, the Securities Act Loss Amount is the purchase price per share (not to exceed $22.25) minus the sale price per share;

b. held as of the close of trading on March 29, 2016, the Securities Act Loss Amount is the purchase price per share (not to exceed $22.25).

39. For each share of Miller Energy Series C preferred stock purchased between June 27, 2013 and March 29, 2016, inclusive, and:

a. sold before the close of trading on March 29, 2016, the Securities Act Loss Amount is the purchase price per share (not to exceed $21.50) *minus* the sale price per share;

---

[4] As explained in footnote 2 above, pursuant to the Exchange Act, Miller Energy Class D preferred stock Exchange Act Loss Amounts are reduced to an appropriate extent by taking into account the closing prices of Miller Energy Class D preferred stock during the 90-day look-back period, from July 31, 2015 through October 28, 2015. The mean (average) closing price for Miller Energy Class D preferred stock during this 90-day look-back period was $0.31.

b. held as of the close of trading on March 29, 2016, the Securities Act Loss Amount is the purchase price per share (not to exceed $21.50).

**B. Series D Preferred Stock**

40. For each share of Miller Energy Series D preferred stock purchased between October 1, 2013 and December 25, 2013, inclusive, and:

a. sold before the close of trading on March 29, 2016, the Securities Act Loss Amount is the purchase price per share (not to exceed $25.00) *minus* the sale price per share;

b. held as of the close of trading on March 29, 2016, the Securities Act Loss Amount is the purchase price per share (not to exceed $25.00).

41. For each share of Miller Energy Series D preferred stock purchased between December 26, 2013 and March 29, 2016, inclusive,[5] and:

a. sold before the close of trading on March 29, 2016, the Securities Act Loss Amount is the purchase price per share (not to exceed $21.25) *minus* the sale price per share;

b. held as of the close of trading on March 29, 2016, the Securities Act Loss Amount is the purchase price per share (not to exceed $21.25).

## ADDITIONAL PROVISIONS

42. As noted above, for each purchase/acquisition, the Recognized Loss Amount is ***the greater of***: the Exchange Act Loss Amount, if any, and the Securities Act Loss Amount, if any. If a Recognized Loss Amount calculates to a negative number, the Recognized Loss Amount for that transaction will be zero.

43. An Authorized Claimant's Recognized Claim shall be the sum of the Authorized Claimant's Recognized Loss Amounts, not to be less than zero.

44. Purchases or acquisitions and sales of Miller Energy Securities shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date. The receipt or grant by gift, inheritance or operation of law of Miller Energy Securities during the Class Period shall not be deemed a purchase, acquisition or sale of these Miller Energy Securities for the calculation of an Authorized Claimant's Recognized Claim, nor shall the receipt or grant be deemed an assignment of any claim relating to the purchase/acquisition of such Miller Energy Securities unless (i) the donor or decedent purchased or otherwise acquired such Miller Energy Securities during the Class Period; (ii) no Claim Form was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such Miller Energy Securities; and (iii) it is specifically so provided in the instrument of gift or assignment.

45. In the event that a Class Member has multiple transactions of Miller Energy Securities during the Class Period, all purchases/acquisitions and sales shall be matched according to the First-In, First-Out ("FIFO") basis for each respective security. Class Period sales will be matched first against any respective holdings at the beginning of the Class Period, and then against

---

[5] For purchases of Miller Energy Series D preferred stock made in the Secondary Public Offering on August 25, 2014 with adequate documentation on the Claim form, the purchase price per share will be limited to $24.50 rather than $21.25.

purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisition made during the Class Period.

46. The Recognized Loss Amount on any portion of a purchase or acquisition that matches against (or "covers") a "short sale" is zero. The Recognized Loss Amount on a "short sale" that is not covered by a purchase or acquisition is also zero. In the event that a Claimant has an opening short position in a Miller Energy Security at the start of the Settlement Class Period, the earliest respective Class Period purchases or acquisitions shall be matched against such an opening short position in accordance with the FIFO matching described above, and any portion of such purchases or acquisitions that cover such short sales will not be entitled to recovery. In the event that a claimant newly establishes a short position during the Class Period, the earliest subsequent respective Class Period purchase or acquisition shall be matched against such short position on a first-in-, first-out basis and will not be entitled to a recovery.

47. Publicly-traded Miller Energy Securities are the only securities eligible for recovery under the Plan of Allocation. Option contracts to purchase or sell Miller Energy Securities are not securities eligible to participate in the Settlement. With respect to Miller Energy Securities purchased or sold through the exercise of an option, the purchase/sale date of such shares is the exercise date of the option and the purchase/sale price is the exercise price of the option.

48. The Recognized Claims will be used solely to calculate the relative amount of the Net Settlement Fund to be apportioned to each Authorized Claimant and do not reflect the actual amount an Authorized Claimant may expect to recover from the Net Settlement Fund.

49. If the sum total of Recognized Claims of all Authorized Claimants who are entitled to receive payment out of the Net Settlement Fund is greater than the Net Settlement Fund, each Authorized Claimant shall receive his, her, or its pro rata share of the Net Settlement Fund. The pro rata share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

50. If the Net Settlement Fund exceeds the sum total amount of the Recognized Claims of all Authorized Claimants entitled to receive payment out of the Net Settlement Fund, the excess amount in the Net Settlement Fund shall be distributed pro rata to all Authorized Claimants entitled to receive payment (i.e., an Authorized Claimant will also receive the Authorized Claimant's Recognized Claims divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the excess amount in the Net Settlement Fund).

51. The Net Settlement Fund will be allocated among all Authorized Claimants whose prorated payment is $10.00 or greater. If the prorated payment to any Authorized Claimant calculates to less than $10.00, it will not be included in the calculation and no distribution will be made to that Authorized Claimant.

52. Payment pursuant to the Plan of Allocation shall be conclusive against all Authorized Claimants. No person shall have any claim based on distributions made substantially in accordance with the Settlement, the Plan of Allocation, or further order(s) of the Court, against Plaintiffs' Counsel, Class Representative, their damages expert, Claims Administrator, or other agent designated by Plaintiffs' Counsel, Class Members, Defendant, its counsel, or the Released Parties. All members of the Class who fail to timely submit an acceptable Proof of Claim Form by the deadline set by the Court, or such other deadline as may be ordered by the Court, or otherwise

11

allowed, shall be forever barred from receiving any payments pursuant to the Settlement, but will in all other respects be subject to and bound by the terms of the Settlement, including the release of the Released Claims against the Released Parties provided for therein and in the Judgment.

53. The Plan of Allocation is a matter separate and apart from the proposed Settlement, and any decision by the Court concerning the Plan of Allocation shall not affect the validity or finality of the proposed Settlement. The Court may approve this Plan of Allocation or modify it without additional notice to the Settlement Class. Any order modifying the Plan of Allocation will be posted on the Settlement website at: www.MillerEnergy-KPMGsecuritiessettlement.com, and at https://www.cohenmilstein.com.

## WHEN WILL SETTLEMENT MONEY BE DISTRIBUTED TO CLAIMANTS?

54. Settlement money will be mailed to claimants after the Court approves the Settlement and after any appeals are resolved. It is uncertain when any appeals taken will be resolved, and resolving them can take time. Please be patient.

## WHAT DO I GIVE UP IF THE SETTLEMENT IS GIVEN FINAL APPROVAL?

55. If you remain a member of the Settlement Class and do not exclude yourself, you will be bound by all orders, judgments, and releases entered by the Court regarding the Settlement. If the Settlement is approved, you will not be able to sue, continue to sue, or be part of any other lawsuit involving any claims released in the Settlement. You will be bound by the releases whether or not you submit a proof of claim and/or receive a payment under the Settlement.

## HOW CAN I GET A PAYMENT?

56. To ask for a payment, you must submit a claim form. Claim forms are available at the Settlement website, upon request from the claims administrator, or by calling the toll free number (855-604-1841).

57. After carefully reading the claim form instructions, fill out the claim form, attach the required documentation, sign it, and mail it postmarked no later than _____ to:

*Miller Energy Securities Settlement*
*PO Box 5024*
*Portland, OR 97208-5024*

58. NOTICE TO INSTITUTIONAL FILERS. Institutions who file claims with 100 or more transactions, or who file claims on behalf of 20 or more different accounts, must submit their claims electronically, in the required filing format. Proper electronic filing of claims includes the submission of a manually signed paper (master) proof of claim form along with the electronically submitted data. Electronically submitted data must be submitted in the required file layout. To obtain the required file layout and details of the electronic filing requirements, you may visit the website at www.MillerEnergy-KPMGsecuritiessettlement.com, call the toll free number (855-604-1841), or send an email to info@MillerEnergy-KPMGsecuritiessettlement.com. The electronic file must be in accordance with the electronic filing format and include all purchase and sale transactions as well as beginning and unsold holdings as required in the claim form. Any file not in accordance with the required electronic filing format will be rejected. No electronic files will be considered to have been properly submitted unless the claims administrator issues a written acknowledgement of receipt and acceptance of electronically submitted data.

### WHAT DO I DO IF I HAVE QUESTIONS ABOUT THE CLAIM FORM?

59. If you have questions about how to file a claim, call the toll free number (855-604-1841), or send an email to info@MillerEnergy-KPMGSsecuritiessettlement.com or a letter to *Miller Energy Securities Settlement*, PO Box 5024, Portland, OR 97208-5024.

### IF I EXCLUDE MYSELF, CAN I GET ANYTHING FROM THIS SETTLEMENT?

60. No. If you exclude yourself, you may not submit a claim for a payment from the Settlement and you cannot object to the Settlement.

### IF I DO NOT EXCLUDE MYSELF, CAN I SUE LATER?

61. No. Unless you exclude yourself, you give up any right to sue Defendant for the claims that the Settlement resolves. If you have a pending lawsuit that may be related to this lawsuit, speak to your lawyer in that case immediately. You must exclude yourself from *this* Class to continue your own lawsuit.

### HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT?

62. To exclude yourself from the Settlement, you must send a letter by mail to the claims administrator saying that you want to be excluded from *Cosby, et al. v. KPMG*. Be sure to include your name, address, telephone number, your Social Security Number or Taxpayer Identification Number; a list stating the number of shares of Miller Energy common or preferred stock purchased and sold between August 29, 2011 and July 30, 2015, inclusive, and the dates of each purchase and sale; as well as your signature. Mail your exclusion request postmarked no later than fourteen days before the Final Fairness Hearing, to:

*Miller Energy Securities Settlement*
PO Box 5024
Portland, OR 97208-5024

63. If you request exclusion on behalf of any person or entity other than yourself (such as, for example, a trust, a minor, or a pension fund), you also must state the basis of your legal authority to make a request for exclusion on behalf of that person or entity.

64. You cannot exclude yourself on the phone or by email. If you do not follow the above procedures – including meeting the postmark deadline – you will not be excluded from the Settlement Class, and you will be bound by all of the orders and judgments entered by the Court regarding the Settlement. You must exclude yourself even if you already have a pending case against Defendant based on the claims being released.

65. If you ask to be excluded, you will not get any payment from the Settlement, you cannot object to the Settlement, and you will not be legally bound by anything that happened in this lawsuit. You might be able to sue Defendant in the future.

### HOW CAN I TELL THE COURT I DON'T LIKE THE SETTLEMENT?

66. You can object to the Settlement if you do not like some part or all of it. You must give reasons why you think the Court should not approve the Settlement. You may also object to Co-Lead Counsel's request for attorneys' fees, reimbursement of expenses, and Plaintiffs' incentive

13

awards. To object, send a letter to the two addresses below, saying that you object to the Settlement in *Cosby, et al. v. KPMG LLP*, Case No. 3:16-cv-121 (TAV), and file your objection with the Court. Be sure to include any papers or briefs that support your objections.

67. You must file your objection with the clerk of the United States District Court for the Eastern District of Tennessee, so it is received no later than [**DATE**]. The address is:

> Clerk of the U.S. District Court for the Eastern District of Tennessee
> Howard H. Baker, Jr. United States Courthouse
> 800 Market Street, Suite 130
> Knoxville, TN 37902

68. You must also mail your objection to the following counsel postmarked no later than [**DATE**]:

| **Co-Lead Counsel** | **Counsel for KPMG** |
|---|---|
| Cohen Milstein Sellers & Toll PLLC<br>Laura H. Posner<br>88 Pine Street, 14th Floor<br>New York, NY 10005<br><br>Gordon Ball PLLC<br>Gordon Ball<br>7001 Old Kent Drive<br>Knoxville, TN 37919 | McDermott Will & Emery LLP<br>Gregory G. Ballard<br>Ludwig von Rigal<br>One Vanderbilt Avenue<br>New York, NY 10017<br><br>Waller Lansden Dortch & Davis LLP<br>Paul S. Davidson<br>511 Union Street, Suite 2700<br>Nashville, TN 37219<br><br>Lewis Roca Rothgerber Christie LLP<br>Gary F. Bendinger<br>201 East Washington St., Suite 1200<br>Phoenix, AZ 85004 |

### WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND ASKING TO BE EXCLUDED?

69. Objecting is telling the Court that you do not like something about the Settlement. You can object only if you stay in the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement. If you exclude yourself, you cannot object to the Settlement because the Settlement no longer affects you.

### WHAT HAPPENS IF I OBJECT AND THE SETTLEMENT IS APPROVED?

70. If the Settlement is finally approved and you did not request to be excluded from the Settlement, you will remain a Settlement Class Member regardless of whether you objected. You will remain bound by the terms of the Settlement and will not be able to sue KPMG about the claims in this case.

**DO I HAVE A LAWYER IN THIS CASE?**

71. The Court has appointed the law firms of Cohen Milstein Sellers & Toll PLLC and Gordon Ball PLLC as Co-Lead Counsel to represent Lead Plaintiffs and all other Settlement Class Members in the action. If you want to be represented by your own lawyer, you may hire one at your own expense.

**HOW WILL THE LAWYERS IN THE CASE BE PAID?**

72. You will not be charged directly for the fees or expenses of the Co-Lead Counsel appointed by the Court. Instead, these lawyers may apply to the Court for payment of fees and expenses out of the proceeds of any recoveries achieved in the action.

73. Lead Plaintiffs negotiated a fee agreement with Co-Lead Counsel which permits Co-Lead Counsel to apply for fees of up to 33 1/3% of the Settlement Fund plus out of pocket expenses. For the Settlement, Co-Lead Counsel intend to request a fee of 33 1/3 % of the net recovery to the Class, plus reimbursement of out-of-pocket expenses. The fees would pay the lawyers for investigating the facts, actively litigating the case for several years, and negotiating the Settlement.

**HOW WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?**

74. At the Final Fairness Hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court will also consider Co-Lead Counsel's request for attorney fees and expenses and Lead Plaintiffs' incentive awards. If there are objections, the Court will consider them. After the Final Fairness Hearing, the Court will decide whether to approve the Settlement and how much to award for fees, expenses and incentive awards.

**WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?**

75. The Court will hold the Final Fairness Hearing at [TIME], on [DATE], before the Honorable Thomas A. Varlan in the U.S. District Court for the Eastern District of Tennessee, United States Courthouse, 800 Market Street, Knoxville, TN 37902. A motion for final approval of the Settlement will be filed by Co-Lead Counsel by [DATE]. The motion will also be posted on the settlement website.

76. Please note that the date of the Court hearing is subject to change without further notice. If you plan to attend the hearing, you should check www.MillerEnergy-KPMGsecuritiessettlement.com to be sure no change to the date and time of the hearing has been made.

### DO I NEED TO COME TO THE HEARING?

77. No. Co-Lead Counsel will answer any questions the Court may have. However, you are welcome to attend the hearing at your own expense. If you send in a written objection, you do not have to come to the Final Fairness Hearing to talk about it. As long as you mailed your written objection on time, the Court will consider it. You also may pay your own lawyer to attend the Final Fairness Hearing, but his or her attendance is not necessary.

### MAY I SPEAK AT THE HEARING?

78. If you are a Settlement Class member who has not asked to be excluded from the Settlement Class, you may ask the Court for permission to speak at the hearing. To do so, you must send a letter or other paper called a "Notice of Intention to Appear at Final Fairness Hearing in *Cosby et al. v. KPMG LLP*." Be sure to include your name, address, telephone number, and your signature. Your Notice of Intention to Appear must be filed with the Clerk of the Court and sent to the counsel listed above in the answer to Question #15 so it is received by the Court and counsel no later than \_\_\_, 2022. You cannot speak at the hearing if you exclude yourself from the Settlement.

### WHAT HAPPENS IF I DO NOTHING?

79. If you are a Settlement Class Member and do nothing, you will not get a payment from this Settlement. And, unless you exclude yourself, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against KPMG relating to claims being resolved by this Settlement, ever again.

### HOW DO I GET MORE INFORMATION?

80. This notice summarizes the Settlement. More details are in the Settlement Agreement available at www.MillerEnergy-KPMGsecuritiessettlement.com. If you still have questions, call the claims administrator at 855-604-1841 or send an email to info@MillerEnergy-KPMGsecuritiessettlement.com or write to *Miller Energy Securities Settlement*, PO Box 5024, Portland, OR 97208-5024.