# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| LEWIS COSBY, ERIC MONTAGUE, and MARTIN ZIESMAN, as Co-Trustee for the Carolyn K. Ziesman Revocable Trust, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>Defendant LLP,<br><br>     Defendant. | Case No. 3:16-cv-121-TAV-DCP |

## MEMORANDUM OF LAW IN SUPPORT OF COHEN MILSTEIN SELLERS & TOLL PLLC'S MOTION FOR AN AWARD OF ATTORNEY'S FEES, REIMBURSEMENT OF LITIGATION EXPENSES AND FOR FURTHER BRIEFING OR REFERRAL TO A MAGISTRATE JUDGE FOR <u>THE APPROPRIATE DIVISION OF THE ATTORNEYS' FEE AWARD</u>

# TABLE OF CONTENTS

INTRODUCTION ..............................................................................................................1

ARGUMENT......................................................................................................................4

I.    The Court Should Award CMST's Request for Attorneys' Fees.................................4

    A.  The "Percentage of the Fund Method" is the Appropriate Method for Awarding
        Attorneys' Fees in Common Fund Cases Like This One ..................................4

    B.  The Requested 33.33% Fee Award is Within the Normal Range of Fees Awarded in
        Similar Cases.....................................................................................................6

    C.  The Sixth Circuit Factors Support the Fee Request .........................................7

        1.  The Value of the Benefit Rendered to the Class .........................................8

        2.  Society's Stake in Rewarding Plaintiff's Counsel's Work .........................8

        3.  The Contingency-Fee Basis of Plaintiff's Counsel's Work......................10

        4.  The Lodestar Cross-Check .......................................................................12

        5.  The Complexity of the Litigation .............................................................15

        6.  The Quality of the Representation.............................................................16

    D.  The Court Should Either Order Further Briefing on the Appropriate Division of the
        Attorneys' Fee Award or Refer the Division of the Attorneys' Fee Award to Magistrate
        Judge Poplin......................................................................................................17

II.   The Court Should Grant CMST's Request for Litigation Expenses ......................18

CONCLUSION.................................................................................................................19

**Cases**

*Allen v. Silverback Moving Inc.*,
   2021 WL 4839248 (S.D. Ohio Jan. 19, 2021) ...................................................................... 17

*Bailey v. AK Steel Corp.*,
   2008 WL 553764 (S.D. Ohio Feb. 28, 2008) ...................................................................... 19

*Barnes v. City of Cincinnati*,
   401 F.3d 729, 745 (6th Cir. 2005) ........................................................................................ 18

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985) ............................................................................................................. 13

*Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*,
   46 F.3d 1392, 1401 (6th Cir. 1995) ..................................................................................... 17

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ............................................................................................................... 9

*Burges v. BancorpSouth, Inc.*,
   No. 3:14- cv-01564, Doc. No. 265 (M.D. Tenn. Sept. 21, 2018) ......................................... 10

*Hosp. Authortiy of Metropolitan Govt. of Nashville v. Momenta Pharm., Inc.*,
   2020 WL 3053468, at *1 (M.D. Tenn. May 29, 2020) ......................................................... 18

*In re Caraco Pharm. Laby's, Ltd. Sec. Litig.*,
   22013 WL 3213328, at *4 (E.D. Mich. June 26, 2013) ....................................................... 11

*In re Cardinal Health Inc. Sec. Litigs.*,
   528 F. Supp. 2d 752 (S.D. Ohio 2007) ........................................................... 12, 13, 15, 19

*In re Cardizem CD Antitrust Litig.*,
   218 F.R.D. 508 (E.D. Mich. 2003) ................................................................................ 22, 23

*In re Chemed Corp. Sec. Litig.*,
   2014 WL 12650642 (S.D. Ohio July 15, 2014) ................................................................... 11

*Connectivity Sys. Inc. v. Nat'l City Bank*,
   2011 WL 292008 (S.D. Ohio Jan. 26, 2011) ....................................................................... 16

*In re Delphi Corp. Sec., Deriviative & "ERISA" Litig.*,
   248 F.R.D. 483 (E.D. Mich. 2008) ................................................................................ 21, 23

*In re Direct Gen. Corp. Sec. Litig.*,
No. 3:05-0077, Doc. No. 290 (M.D. Tenn. July 20, 2007) ................................................... 11

*Gascho v. Glob. Fitness Holdings*,
LLC, 822 F.3d 269 (6th Cir. 2016) ............................................................................ *passim*

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................................... 21

*Guevoura Fund Ltd. v. Sillerman*,
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ..................................................................... 15

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ............................................................................................................. 12

*Hicks v. Stanley*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ..................................................................... 11

*Hosp. Authortiy of Metropolitan Govt. of Nashville v. Momenta Pharm., Inc.*,
2020 WL 3053468 (M.D. Tenn. May 29, 2020) ................................................................. 18

*Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) ............................................................................................ 16

*J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964) ..................................................................... 13

*Johnson v. W2007 Grace Acq. I, Inc.*,
2015 WL 12001269 (W.D. Tenn. Dec. 4, 2015) ............................................................... 18

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................................... 11

*McHugh v. Olympia Ent., Inc.*,
37 F. App'x 730 (6th Cir. 2002) ........................................................................................ 17

*Moulton v. U.S. Steel Corp.*,
581 F.3d 344, 352 (6th Cir. 2009) ..................................................................................... 12

*N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*,
315 F.R.D. 226, 244 (E.D. Mich. 2016) ............................................................................ 18

*In re Oracle Corp. Sec. Litig.*,
2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir.
2010) ..................................................................................................................................... 16

*In re Prandin Direct Purchaser Antitrust Litig.*,
2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) ................................................................. 18

*Rawlings v. Prudential–Bache Props., Inc.*,
9 F.3d 513 (6th Cir.1993) .................................................................................9

*In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.*,
2014 WL 12808031 (W.D. Tenn. Dec. 24, 2014) ..............................................17

*Ret. Sys. v. Gen. Motors Co.*,
315 F.R.D. 226 (E.D. Mich. 2016) ....................................................................19

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
2014 WL 2946459 (E.D. Tenn. June 30, 2014) ............................................9, 10

*In re Southeastern Milk Antitrust Litig.*,
2013 WL 2155387 (E.D. Tenn. May 17, 2013) ........................................*passim*

*Louisville Black Police Officers Org. v. City of Louisville*,
700 F.2d 268, 278 (6th Cir.1983) .....................................................................17

*Swigart v. Fifth Third Bank*,
2014 WL 3447947 (S.D. Ohio July 11, 2014) ...................................................11

*Taft v. Ackermans*,
No. 02 CIV. 7951 (PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ..............11

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007) .........................................................................................13

*Underwood v. Carpenters Pension Tr. Fund-Detroit and Vicinity*,
2017 WL 655622 (E.D. Mich. Feb. 17, 2017) ...................................................19

*In re UnumProvident Corp. Derivative Litig.*,
2010 WL 289179 (E.D. Tenn. Jan. 20, 2010) .............................................17, 18

*Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 121 (2d Cir. 2008)..................................10

*Weiner v. Tivity Health, Inc.*,
No. 17-cv-1469, ECF No. 177 (M.D. Tenn. Oct. 7, 2021)............................18, 20

**Other Authorities**

5 U.S.C. §78u-4(a)(6)..............................................................................................9

Manual for Complex Litigation Fourth Ed. §14.121 ...........................................9, 10

# INTRODUCTION

Cohen Milstein Sellers & Toll PLLC ("CMST"), as Co-Lead Counsel to Plaintiffs Lewis Cosby, Eric Montague, and Martin Ziesman, as Co-Trustee for the Carolyn K. Ziesman Revocable Trust and Co-Lead Counsel for the Settlement Class, respectfully requests that the Court grant its motion for an award of (i) 33.33% of the Settlement Fund for attorneys' fees for Co-Lead Counsel; and (ii) reimbursement of $439,548.22 in litigation expenses that CMST reasonably incurred in prosecuting and resolving the Action.

The proposed $35,000,000 Settlement[1] resolves all claims in the Action and, by any measure, represents an outstanding outcome and fully supports CMST's fee request. Indeed, as Plaintiffs describe in its accompanying memorandum in support of final approval of the Settlement and the Plan of Allocation ("Final Approval Memo"), the proposed Settlement Amount secures a substantial recovery representing nearly 18% of the of the Classes' estimated *maximum* damages, which significantly exceeds the average recovery in securities cases. *See* Cornerstone Research, *Securities Class Action Settlements: 2021 Review and Analysis*, at 8 (2022) (stating that for all settlements in Section 11 securities cases from 2012 to 2021, the average settlement was 7.6% of "simplified tiered damages."). Further, if the Court or the jury had embraced any of Defendant KPMG LLP's anticipated challenges to Plaintiffs' claims, the Classes would have recovered substantially less damages or perhaps no damages at all. Given that risk of obtaining little or no recovery, CMST succeeded by obtaining a meaningful and immediate benefit to the Classes, all while avoiding the substantial expense and uncertainty of trial.

CMST now asks the Court to award attorneys' fees of 33.33%, or $11,666,667, plus accrued interest on the Settlement amount. *See* Declaration of Laura H. Posner in Support of (1)

---

[1] Unless otherwise defined all capitalized terms not defined here have the same meanings as in the Stipulation and Agreement of Settlement. ECF No. 236.

Plaintiffs' Motion for Final Approval of the Proposed Settlement, Plan of Allocation and Plaintiffs' Reimbursements; and (2) Cohen Milstein Sellers & Toll PLLC's Motion for Award of Attorneys' Fees and Reimbursement of Litigation Expenses and For Further Briefing or Referral to a Magistrate Judge for the Appropriate Division of the Attorneys' Fee Award ("Posner Decl."), at ¶¶ 76-91. The fee sought here is well within the range regularly approved by courts in this Circuit. *See infra* I.B. The fee was also approved by Plaintiffs, who actively participated in the litigation. *See* Posner Decl, Exs. 2-4, Declarations of Lewis Cosby, Eric Montague, and Martin Ziesman.

In prosecuting this action, CMST alone invested enormous time and effort over the course of more than five years, including: (a) conducting a lengthy investigation by reviewing and analyzing publicly available information regarding Defendant and Miller Energy, including SEC filings, SEC Orders, online and newspaper articles, analyst reports, press releases, stock price movements, earnings conference calls, and analyst presentations; (b) serving, litigating and negotiating a Freedom of Information Act request to the Securities and Exchange Commission; (c) drafting multiple detailed complaints; (d) consulting and working extensively with an experienced economics expert to evaluate market efficiency, loss causation and recoverable damages; (e) consulting and working extensively with an experienced accounting expert regarding Plaintiffs' claims and to analyze and evaluate the evidence; (f) consulting with an experienced oil and gas expert regarding Plaintiffs' claims; (g) successfully defending against Defendant's multiple motions to dismiss; (h) successfully moving to substitute certain of the Lead Plaintiffs; (i) successfully moving for class certification, which included defending against Defendant's *Daubert* motion and defending each of the Class Representatives' depositions; (j) submitting opening and rebuttal market efficiency expert reports and conducting and/or

defending three expert depositions; (k) handling lengthy oral arguments in support of Plaintiffs' motion for class certification and motion for substitution and in opposition to Defendant's Daubert motion and on multiple court conferences; (l) responding to Defendant's objections to Magistrate Judge Debra C. Poplin's ("Magistrate Poplin") report and recommendations regarding the motion for class certification and order denying Defendant's *Daubert* motion and drafting an objection to a small portion of Magistrate Poplin's report and recommendations regarding the motion for class certification; (m) opposing Defendant's multiple motions to stay proceedings; (n) opposing Defendant's Rule 23(f) petition and motion to stay to the Sixth Circuit; (o) engaging in extensive discovery, including numerous meet-and-confers with Defendant and nearly a dozen third parties, reviewing hundreds of thousands of pages of documents, and serving and/or responding to requests for production, interrogatories, requests for admission and nearly a dozen subpoenas; and (p) drafting detailed mediation statements, conducting multiple oral mediation presentations and participating in three mediation sessions (two full-day) and extensive further negotiations that resulted in reaching the terms of the Settlement. *See* Posner Decl. at ¶ 10. As such, CMST is largely (if not entirely) responsible for the successful resolution of this action.

CMST understands that Mr. Ball will be submitting a separate motion for an award of attorney's fees and reimbursement of litigation expenses. While CMST had not seen Mr. Ball's request and, thus, can take no position regarding it at this time, CMST notes that the hours Mr. Ball asked CMST to submit to the Court to justify the attorneys' fee award could not possibly be accurate for a variety of reasons. Accordingly, CMST also requests that the Court either refer the determination of how any attorneys' fee award should be divided among Co-Lead Counsel to Magistrate Judge Poplin, who handled several substantive motions in this case, or

alternatively, that the Court order separate briefing by Co-Lead Counsel regarding how the attorneys' fee award should be divided in accordance with each firm's respective contributions to the successful resolution of this case. Seeing Mr. Ball's time records will be an important factor necessary to briefing this issue.

In compliance with the Court's order granting preliminary approval of the Settlement (ECF No. 237), Epiq Global ("Epiq"), the Claims Administrator, notified potential members of the Settlement Class by mail in accordance with the Preliminary Approval Order. Additionally, Summary Notice was published over *PR Newswire* and *Investors Business Daily*, as well as on CMST's website. Posner Decl. ¶ 5; Posner Decl., Ex. 1, Declaration of Alexander Villanova Regarding (I) Mailing of Postcard Notice; (II) Publication of Summary Notice; (III) Call Center Services; (IV) The Settlement Website; and (V) Requests for Exclusion and Objections Received to Date ("Villanova Decl.") at ¶¶ 4-7. The Notice describes the terms of the Settlement, including the maximum fees and expenses to be sought by Co-Lead Counsel. Villanova Decl. Exs. A and B (Postcard and Summary Notices). The deadline to file objections is June 16, 2022. As of May 31, 2022, no objections or requests for exclusion have been received by Co-Lead Counsel or Epiq. Posner Decl. ¶ 75; Villanova Decl. ¶¶ 13, 15.

For these reasons, and as stated in more detail below and in the accompanying declarations, Plaintiffs and CMST request that the Court approve this motion.

## ARGUMENT

### I. The Court Should Award CMST's Request for Attorneys' Fees

#### A. The "Percentage of the Fund Method" is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases Like This One

The U.S. Supreme Court has long recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable

attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). That principle is reflected in the Federal Rules of Civil Procedure, which provide that "in a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). When awarding the attorneys' fees in a class action, "a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Gascho v. Glob. Fitness Holdings*, LLC, 822 F.3d 269, 298 (6th Cir. 2016) (quoting *Rawlings v. Prudential–Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir.1993)).

In the Sixth Circuit, district courts have discretion to use either of two methods to calculate attorneys' fees: (1) the "lodestar" method (in which the court "multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate"), and (2) the "percentage of the fund" method (in which the court "determines a percentage of the settlement to award to class counsel"). *Gascho*, 822 F.3d at 279 (internal quotation marks omitted)*; see also Rawlings*, 9 F.3d at 516. Courts within the Circuit have recognized that the "trend in common fund cases has been toward use of the percentage method." *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) (quotation omitted); *Southeastern Milk Antitrust Litig.*, 2013 WL 2155387, at *2 (E.D. Tenn. May 17, 2013) ("The percentage-of-the-fund method, however, clearly appears to have become the preferred method in common fund cases" (citing Manual for Complex Litigation Fourth Ed. §14.121)). And the PSLRA supports the use of the percentage-of-the-fund approach, too. *See* 15 U.S.C. §78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class.").

The advantages of the percentage-of-the-fund method are that it "more accurately reflects the results achieved" and that "it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation." *Gascho*, 822 F.3d at 279 (quoting *Rawlings*, 9 F.3d at 516). As one court within this Circuit put it, this method directly "aligns the interests of the class and its counsel and provides a powerful incentive" to maximize recovery as efficiently as possible. *Southeastern Milk*, 2013 WL 2155387, at *2 (quoting *Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 121 (2d Cir. 2008)). By contrast, "the lodestar method is difficult to apply, time-consuming to administer, inconsistent in result, and capable of manipulation" and "creates inherent incentive to prolong the litigation." *Southeastern Milk*, 2013 WL 2155387, at *2 (quoting Manuual for Complex Litigation Fourth §14.121).

Therefore, the Court should award attorneys' fees here using the percentage-of-the-fund approach.

**B. The Requested 33.33% Fee Award is Within the Normal Range of Fees Awarded in Similar Cases**

CMST's requested fee award of 33.33% of the Settlement Fund is fair and reasonable under the percentage-of-the-fund approach. Indeed, courts routinely award fees of similar sizes for securities class action settlements at similar or even earlier stages of the case than this one. *See, e.g., Burges v. BancorpSouth, Inc.*, No. 3:14- cv-01564, Doc. No. 265 at 1- 2 (M.D. Tenn. Sept. 21, 2018) (awarding 33% of $13 million settlement plus expenses where settlement was reached before end of fact discovery); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459 , at *1 (E.D. Tenn. June 30, 2014) ("The Court finds that the requested counsel fee of one third [of the settlement recovery] is fair and reasonable and fully justified. The Court finds it is within the range of fees ordinarily awarded."); *In re Chemed Corp. Sec. Litig.*, 2014 WL

12650642, at *1 (S.D. Ohio July 15, 2014) (affirming percentage-of-the-fund approach as the appropriate method for awarding attorneys' fees and finding that award of 33% was "reasonable when compared to percentage awards in cases of similar complexity") (citing *Rawlings*, 9 F.3d at 515-16); *In re Southeastern Milk Antitrust Litig.*, 2013 WL 2155387 , at *15-*16 (E.D. Tenn. May 17, 2013) (holding that "attorneys' fees requested represent one-third of the settlement fund … the percentage requested is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit"); *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (citing cases for the proposition that "[a]n award of 33% of the total settlement fund is well within the range of fees requested in class and collective action"); *In re Caraco Pharm. Laby's, Ltd. Sec. Litig.*, 22013 WL 3213328, at *4 (E.D. Mich. June 26, 2013) (granting award of 33%).[2]

### C. The Sixth Circuit Factors Support the Fee Request

In *Ramey v. Cincinnati Enquirer, Inc.*, the Sixth Circuit identified six factors for courts to examine to determine the reasonableness of a fee request: (1) "the value of the benefit rendered to the [the plaintiffs]", (2) "society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others," (3) "whether the services were undertaken on a contingent fee basis," (4) "the value of the services on an hourly basis [*i.e.,* the lodestar cross-check]," (5) "the complexity of the litigation," and (6) "the professional skill and standing of counsel involved on

---

[2] *See also In re Direct Gen. Corp. Sec. Litig.*, No. 3:05-0077, Doc. No. 290 at 1 (M.D. Tenn. July 20, 2007) (awarding 30% of $14.94 million recovery, plus expenses, where settlement was reached before motions for summary judgment); *Hicks v. Stanley*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) (awarding 30% of $10 million settlement plus expenditures, where settlement was reached before expert discovery was completed); *Taft v. Ackermans*, No. 02 CIV. 7951 (PKL), 2007 WL 414493, at *11 (S.D.N.Y. Jan. 31, 2007) (awarding 30% of $15.2 million settlement, where settlement reached before ruling on motion to dismiss); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 372 (S.D.N.Y. 2002) (awarding 33.3% of $11.5 million settlement before ruling on motions to dismiss).

both sides." 508 F.2d 1188, 1196 (6th Cir. 1974). These factors have since become the standard metric in the Sixth Circuit for evaluating the reasonableness of the attorneys' fees requested in a class action. *See Gascho*, 822 F.3d at 280 (applying same factors) (quoting *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (quoting *Rawlings*, 9 F.3d at 516)). Each of the *Ramey* factors supports the reasonableness of the requested fee award.

### 1. The Value of the Benefit Rendered to the Settlement Class

"District courts in this Circuit widely regard the first *Ramey* factor as the most important." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 764 (S.D. Ohio 2007); *see also Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (explaining that "the most critical factor is the degree of success obtained"). And CMST's efforts here obtained a sizeable recovery for the Classes of $35,000,000 million. This represents nearly 18% of the *maximum*, best-case aggregate recoverable damages estimated by Plaintiffs' damages expert. *See* Posner Decl. ¶ 8, 61. The settlement amount is an excellent result when compared to historical averages of recovery as a percentage of possible damages in securities fraud cases. From 2012 to 2021, the average settlement in cases raising both Rule 10b-5 and Section 11 claims, like this one, was for 6.1% of "simplified tiered damages."). Cornerstone Research, *Securities Class Action Settlements: 2021 Review and Analysis*, at 7 (2022). Further, as Plaintiffs explain in the Final Approval Memo, the recovery is also significant given the significant risks to recovery of damages if Plaintiffs proceeded to trial. *See* Final Approval Memo at 8, 11, 15-16. By any of measure, this is an impressive recovery.

### 2. Society's Stake in Rewarding Plaintiff's Counsel's Work

The Supreme Court "has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007); *see also Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (explaining that

private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" (quoting *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)). The Sixth Circuit has likewise explained that "class actions ... have value to society more broadly, both as deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense of litigation—and as private law enforcement regimes that free public sector resources." *Gascho*, 822 F.3d at 287.

To obtain the "positive societal effects" of these private rights of action, "class counsel must be adequately compensated." *Id.* "Reasonable fee awards in such cases encourage and support other prosecutions, and thereby forward the cause of securities law enforcement and compliance." *Cardinal Health*, 528 F. Supp. 2d at 766 (internal quotation marks omitted); *see also Ramey*, 508 F.2d at 1196 (explaining that an important factor is "society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others"). The need for adequate compensation for achieving a settlement is heightened by the fact that attorneys for plaintiffs in these cases almost always work on contingent basis, and therefore assume the risk of not being compensated at all. *See Southeastern Milk*, 2013 WL 2155387, at *5 ("Awards of substantial attorneys' fees in cases like this are necessary to incentivize attorneys to shoulder the risk of nonpayment to expose violations of the law and to achieve compensation for injured parties.").

That was the case here. As discussed below, *see infra* Part II.C.3, CMST worked for more than six years, spending 6,675 hours and $439,548.22 on this case without any guarantee of being compensated. During that time, CMST alone handled the research, drafting and filing of ECF Nos. 59-60, 68, 71, 77, 83, 86, 89, 92, 94, 100, 101, 103, 107-108, 118, 121, 141-144, 147-149, 153, 166, 174, 177, 191, 194-195, 198, 202-203, 207, 217-218, 223-224, 226, 228, 234-

236. CMST alone also handled virtually all of the dozens of meet and confers with Defendants and third parties, the drafting and negotiation of virtually all of the discovery requests, including document requests, subpoenas and the Freedom of Information Request to the SEC. CMST alone also took Defendants' economics expert's deposition, defended Plaintiffs' economics expert's two depositions, prepared each of the Plaintiffs for their depositions and alone defended each of the Plaintiffs' depositions. CMST virtually alone worked with Plaintiffs' economics and accounting experts in drafting their reports, preparing for their testimony and reviewing discovery. CMST alone reviewed and coded all of Defendants' and the third parties' document productions, handled all court conferences and hearings, including the nearly five-hour hearing on Plaintiffs' Motion for Class Certification, Motion to Substitute and in opposition to Defendants' *Daubert* Motion. Finally, CMST alone also handled the drafting of the mediation statements and handled the overwhelming bulk of the mediation presentations to Mr. Meyer and Magistrate Judge Steger until, after three days of mediation sessions, Defendant finally agreed to this Settlement. Posner Decl. ¶¶ 3 & n.2, 10, 22-46. CMST virtually alone handled all of the negotiations and drafting of the settlement documentation, briefing and notice program as well. CMST's work is precisely the kind of legal advocacy that society has an interest in rewarding and encouraging.

### 3. The Contingency-Fee Basis of Plaintiff's Counsel's Work

When counsel works on a contingency-fee basis, as CMST did here, it "accept[s] a substantial risk of non-payment for legal work and reimbursement of out-of-pocket expenses advanced." *Southeastern Milk*, 2013 WL 2155387, at *5. Some courts even consider the "risk that attorneys will not recover compensation for the work they put into a case" to be "the most important factor in the fee determination." *Cardinal Health*, 528 F. Supp. 2d at 766 (citing several cases). "If counsel are not rewarded for this risk, few attorneys will undertake the

representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing." *Southeastern Milk*, 2013 WL 2155387, at *5 (internal quotation marks omitted). From 2012 to 2021, out of all securities cases in which a motion to dismiss was filed and decided, 56% of those cases were dismissed. NERA Economic Consulting, Recent Trends in Securities Class Action Litigation: 2021 Full Year Review, at 14 (2022).

Here, CMST worked on a contingency-fee basis, spending $439,548.22 on out-of-pocket expenses and dedicating 6,675 attorney hours to pursuing Plaintiffs' claims without any guarantee of compensation. CMST ultimately obtained a settlement for the Class, but only after defeating multiple motions to dismiss, a *Daubert* motion, opposition to class certification, as well as Defendant's objections to the Magistrate Judge's rulings—any of which would have lessened recovery or even eliminated the Action and thus CMST's chances for compensation.

Furthermore, many of the complex legal and factual issues raised in support of Defendant dispositive motions would have made trial particularly risky. Defendant would have contested many elements of the claims, such as whether the alleged misstatements were false and misleading, whether the alleged misstatements were material, whether Defendant acted with scienter, and whether Plaintiffs could prove loss causation. *See, e.g., Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *8 (S.D.N.Y. Dec. 18, 2019) (noting "the difficulty of establishing liability is a common risk of securities litigation" and that "proof of scienter is typically a difficult challenge in a securities fraud action" (internal quotation marks omitted)). And even if Plaintiffs could establish each of those elements, the Classes would have still been at risk of not winning substantial or any damages, the determination of which would likely have come down to a risky battle of experts. *See Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008, at *2 (S.D. Ohio Jan. 26, 2011) ("Acceptance of expert testimony is always far from

certain, no matter how qualified the expert, inevitably leading to a 'battle of the experts.'). Defendant also would have argued that damages should be sharply reduced by the PSLRA's proportionate liability provision. Posner Decl. ¶ 57. Plaintiffs could avoid the proportionate liability provision only by proving that Defendant's violations were made knowingly, a heavy burden that would be difficult to meet in any case. *Id.* And thus, if Plaintiffs proceeded to trial, they would have faced the real risk that even if they could establish a substantial damages amount, a jury would still find that Defendant's proportion of liability for those damages was small compared to Miller Energy, its executives, or others. *Id.* Given the contingency-fee-based compensation, those challenging factual and legal issues heightened the risk that CMST's work would be for naught if it lost any of the dispositive motions or at trial.

Indeed, there are many examples of securities fraud cases requiring multiple years and thousands of hours of work, only to result in non-recovery late in the litigation process. *See In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) (summary judgment granted to defendants after eight years of litigation and after 100,000 hours of work by lead counsel, with a lodestar of $48 million); *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (affirming district court's rejection of jury verdict for plaintiff for lack of sufficient evidence).

In short, CMST assumed significant risk by prosecuting this case on a contingency-fee basis, which supports approving the fee award request. *See Southeastern Milk*, 2013 WL 2155387, at *5 ("This Court finds that the fee awarded should fully reflect the risk taken by these lawyers and is a very substantial factor in this case which weighs in favor of the requested fee.")

### 4. The Lodestar Cross-Check

"Although not mandatory," courts often "cross-check counsel's request for percentage-of-the-fund awards against the lodestar." *Allen v. Silverback Moving Inc.*, 2021 WL 4839248, at *3 (S.D. Ohio Jan. 19, 2021); *Ramey*, 508 F.2d at 1196. When the fee is being awarded based on the percentage-of-the-fund approach, this factor can be evaluated by conducting a lodestar "cross-check." *In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.*,2014 WL 12808031, at *5 (W.D. Tenn. Dec. 24, 2014). "To determine the lodestar figure, the court multiplies the number of hours 'reasonably expended' on the litigation by a 'reasonable hourly rate.'" *Gascho*, 822 F.3d at 279 (quoting *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995)). "Unlike the situation when the Court employs the lodestar method in full, the hours documented by counsel need not be exhaustively scrutinized by the district court where a lodestar cross-check is used." *Southeastern Milk*, 2013 WL 2155387, at *2 n. 3 (internal quotation marks omitted).

"Generally, district courts are free to look to national markets, an area of specialization, or any other market they believe is appropriate to fairly compensate attorneys in individual cases." *McHugh v. Olympia Ent., Inc.*, 37 F. App'x 730, 740 (6th Cir. 2002) (citing *Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 278 (6th Cir.1983)). Defendants being represented by out-of-town counsel is another factor that weighs in favor of using out-of-town rates for the lodestar calculation of out-of-town class counsel. *See In re UnumProvident Corp. Derivative Litig.*, 2010 WL 289179, at *6 (E.D. Tenn. Jan. 20, 2010). Furthermore, using the current (2022) billing rate is appropriate to "compensate for the delay in payment during the pendency of the litigation." *Id.* (citing *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005). Thus, the billing rates used by CMST—which are based on the market rate in the cities where CMST is based and which were approved recently by a court in this District —are

13

reasonable. *See* Order Awarding Attorney's Fees and Litigation Expenses, *Weiner v. Tivity Health, Inc.*, No. 17-cv-1469, ECF No. 177 (M.D. Tenn. Oct. 7, 2021), at 4 (confirming the "reasonableness" of CMST's hourly fees and explaining that the "[t]he use of current (2021) rates is appropriate to 'compensate for the delay in payment during the pendency of the litigation'") (citing *UnumProvident Corp.*, 2010 WL 289179, at \*6).

Here, the lodestar cross-check confirms that requested 33.33% fee is reasonable and should be approved. CMST alone has spent, in the aggregate, 6,675 hours on this Action through March 14, 2022 and the filing of the motion for preliminary approval of the Settlement, with a cumulative lodestar of $4,082,955.00. Posner Decl. ¶ 90 & Ex. 6. CMST's request for 33.33% of the Settlement Fund, or around $11.67 million plus accrued interest, therefore amounts to a lodestar multiplier of 2.86 (including CMST's lodestar alone).[3] This multiplier is similar or below the accepted range for securities fraud cases and other complex class actions. *See, e.g., Hosp. Authortiy of Metropolitan Govt. of Nashville v. Momenta Pharm., Inc.*, 2020 WL 3053468, at \*1 (M.D. Tenn. May 29, 2020) (awarding fees as reasonable and concluding that "a multiplier on a one-third fee of 3.12… falls within an acceptable range"); *Johnson v. W2007 Grace Acq. I, Inc.*, 2015 WL 12001269, at \*12 (W.D. Tenn. Dec. 4, 2015) (recognizing that "[l]odestar multipliers in securities class actions generally range from 1.3 to 4.5"); *In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473, at \*4 (E.D. Mich. Jan. 20, 2015) (finding multiplier of 3.01 to be "reasonable in light of what has been routinely accepted as fair and reasonable in complex matters"); *Underwood v. Carpenters Pension Tr. Fund-Detroit and Vicinity*, 2017 WL 655622, at \*14 (E.D. Mich. Feb. 17, 2017); *Cardinal Health*, 528 F. Supp. 2d at 768 (awarding a multiplier of 6.0 and noting that "[m]ost courts agree that the typical lodestar multiplier" in a large class

---

[3] Any legitimate time in the case by Mr. Ball would further reduce the multiplier.

action "ranges from 1.3 to 4.5"); *see also Bailey v. AK Steel Corp.*, 2008 WL 553764, at *2 (S.D. Ohio Feb. 28, 2008) (awarding multiplier of 3.04 and noting "normal range of between two and five").

### 5. The Complexity of the Litigation

Courts in this Circuit have recognized that "[s]ecurities litigation class actions are inherently complex." *N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 244 (E.D. Mich. 2016) (internal quotation marks omitted). This Action is no exception.

This Action lasted more than six years before reaching settlement. Defendant and non-parties produced—and CMST reviewed and analyzed—hundreds of thousands of pages of documents. Defendant took multiple depositions of Plaintiffs, and Plaintiffs' served interrogatories and requests for admission, and responded to written discovery, all of which CMST handled virtually alone. CMST virtually alone also handled discovery negotiations, the drafting and negotiation of almost every discovery request, reviewed Defendant's and third parties' document productions, handled court hearings and conferences, successfully defended against multiple motions to dismiss, a *Daubert* motion, opposition to class certification, and objections to the Magistrate Judge's rulings, many of which involved complicated legal and factual issues. *See* Posner Decl. ¶¶ 3 & n.2, 10, 22-40 . After the Court certified the Class, Defendant appealed and moved to stay in both this Court and the Sixth Circuit (which CMST alone opposed), with CMST again alone successfully defeating Defendant's stay motion filed in this Court. *See id.* at ¶¶ 41-42. CMST performed the overwhelming majority of this work without the assistance of Co-Lead Counsel and did so successfully. *Id.* at ¶¶ 2, 22-44. Further, as discussed above in the context of the risks with working on a contingency fee basis, the Classes would have faced many additional complexities if it had moved to trial, such as proving falsity, materiality, scienter, loss causation, and significant

damages. *See supra* Part II.C.3; *see also* Posner Decl. at ¶¶ 52-59. Thus, the complexity of this Action supports the requested fee award.

### 6. The Quality of the Representation

CMST is experienced in prosecuting class action and securities fraud cases, and it displayed skill and tenacity throughout this litigation. As demonstrated by its firm resume, CMST is a highly qualified and experienced law firm in the fields of securities class actions and complex litigation, including in cases brought against auditor defendants. *See* Posner Decl., Ex. 5 (firm resume). The successful result in this case, like CMST's many successes in this Circuit and across the country, was achieved solely because of CMST's skillful litigation and commitment to obtaining a substantial recovery for the Classes. *See Tivity Health,* No. 17-cv-1469, ECF No. 177, at 4 (concluding that CMST's attorneys are "experienced class action and securities law practitioners" who "displayed skill and commitment throughout the litigation").

Obtaining a sizable recovery for the Classes—$35 million, or about 18% of the estimated maximum recoverable damages—CMST achieved a result which is nearly six times the average recovery in securities class actions. *See* Cornerstone Research, *Securities Class Action Settlements: 2021 Review and Analysis*, at 7 (2022) (stating that for all settlements in cases raising both Rule 10b-5 and Section 11 claims, like this one, was for 6.1% of "simplified tiered damages."). CMST's dedication to this case is also shown by the advanced stage that this case reached. Most securities class actions do not make it nearly as far. From 2012 to 2021, 56% of securities cases in which a motion to dismiss was filed were dismissed. *See* NERA Economic Consulting, Recent Trends in Securities Class Action Litigation: 2021 Full Year Review, at 14 (2022). Without question, CMST's skills and experience were a major factor in obtaining the excellent result achieved here.

Lastly, the quality of opposing counsel is also important in evaluating the quality of CMST's work. *See, e.g., In re Delphi Corp. Sec., Deriviative & "ERISA" Litig.*, 248 F.R.D. 483, 504 (E.D.

Mich. 2008) ("The ability of Co-Lead Counsel to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee award requested."); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) ("Securities Lead Counsel obtained the Settlement in the face of vigorous opposition by defendants who were represented by some of the nation's leading law firms."). Here, Defendant was represented by McDermott Will & Emery and Waller, Lansden, Dortsch & Davis, LLP, law firms that regularly defend major securities class actions and Big 4 accounting firm in particular, and that vigorously contested this Action. They asserted every available defense and filed motion after motion to defeat Plaintiffs' claims: multiple motions to dismiss, a *Daubert* motion, opposition to class certification, objections to the Magistrate Judge's rulings, a Rule 23(f) petition to appeal the class-certification order, and multiple motions to stay. *See* Posner Decl. ¶¶ 27, 31-35, 37-39, 41-42,87. These motions implicated complex factual and legal issues about materiality, scienter, reliance, loss causation, damages, standing and the statute of limitations, as well as expert economic analysis bearing on many of those elements, all of which CMST handled almost entirely on its own. *See id.* at ¶¶ 22-44. The ability of CMST to obtain the Settlement against this formidable opposition confirms the quality of representation, supporting CMST's fee request.

### D. The Court Should Either Order Further Briefing on the Appropriate Division of the Attorneys' Fee Award or Refer the Division of the Attorneys' Fee Award to Magistrate Judge Poplin

Finally, while CMST had not seen Mr. Ball's request and, thus, can take no position regarding it at this time, CMST notes that the hours Mr. Ball asked CMST to submit to the Court to justify the attorneys' fee award could not possibly be accurate for a variety of reasons. Given its ethical obligations to the Court and its fiduciary duty to the Settlement Class, CMST thus informed Mr. Ball it would not submit his time to the Court. Accordingly, CMST also requests that the Court either order separate briefing by Co-Lead Counsel regarding how the attorneys'

fee award should be divided in accordance with each firm's respective contributions to the successful resolution of this case or, alternatively, refer the determination of how any attorneys' fee award should be divided among Co-Lead Counsel to Magistrate Judge Poplin, who handled several substantive motions in this case.

## II. The Court Should Grant CMST's Request for Litigation Expenses

"Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. 2003); *see also Southeastern Milk*, 2013 WL 2155387, at *8 ("expense awards are customary" in common fund cases). "In determining whether the requested expenses are compensable in this common fund, the Court has considered whether the particular costs are the type routinely billed by attorneys to paying clients in similar cases." *Cardizem*, 218 F.R.D. at 535; *see also* 5 Newberg on Class Actions §16:5 (5th ed.) (collecting cases supporting the proposition that, in a common fund case, compensable expenses include "reasonable expenses normally charged to a fee-paying client.").

CMST requests reimbursement for the $439,548.22 in expenses incurred in prosecuting this Action. These expenses are set forth in the Declaration of Laura H. Posner submitted to the Court and are the type generally approved by courts for reimbursement, with a substantial part attributable to the extensive and complex expert discovery in this case. Posner Decl. Ex. 7. CMST took on the bulk of the expenses born by Co-Lead Counsel (nearly 80%), and thus prosecuted this lengthy case with significantly more financial risk, expending funds to cover the costs of hiring experts, conducting an investigation, document database management for discovery, mediator fees, travel expenses, expenses relating to  depositions, court fees and computerized

research, among other things, all of which "are the type routinely billed by attorneys to paying clients in similar cases." *Cardizem*, 218 F.R.D. at 535; *see See Delphi*, 248 F.R.D. at 504-05 (approving reimbursement of $1.3 million in costs and expenses for "such items as accounting and damages expert and consultant fees, management and photocopying of documents, on-line research, messenger service, postage, express mail and overnight delivery, long distance and facsimile expenses, transportation, meals, travel and other incidental expenses directly related to the prosecution of this action."). Not one objection to the expense request has been received, and the amount requested is below the $600,000.00 limit provided for in the Stipulation and the Notice to the Class. *See* Posner Decl. at ¶ 15.

## CONCLUSION

For all these reasons, CMST respectfully requests that the Court grant its application for an award of attorneys' fees and reimbursement of its reasonable litigation expenses and either order further briefing on the appropriate division of the attorneys' fee award or refer the decision to Magistrate Judge Poplin.

Date: May 31, 2022                    Respectfully submitted,

/s/ Laura H. Posner
Laura H. Posner
COHEN MILSTEIN SELLERS & TOLL
PLLC
Laura H. Posner
88 Pine Street, 14th Floor
New York, NY 10005
Tel: (212) 220-2925
Fax: (212) 838-7745
lposner@cohenmilstein.com

Steven J. Toll
Susan G. Taylor
Jan E. Messerschmidt
1100 New York Ave. NW, Suite 500
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
stoll@cohenmilstein.com
sgtaylor@cohenmilstein.com
jmesserschmidt@cohenmilstein.com

*Co-Lead Counsel for Plaintiffs*