# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| LEWIS COSBY, ERIC MONTAGUE, and MARTIN ZIESMAN, as Co-Trustee for the Carolyn K. Ziesman Revocable Trust, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>KPMG LLP,<br><br>        Defendant. | Case No. 3:16-cv-121-TAV-DCP |

## DECLARATION OF LAURA H. POSNER IN SUPPORT OF (1) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE PROPOSED SETTLEMENT, PLAN OF ALLOCATION AND PLAINTIFFS' REIMBURSEMENTS; AND (2) COHEN MILSTEIN SELLERS & TOLL PLLC'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES AND FOR FURTHER BRIEFING OR REFERRAL TO A MAGISTRATE JUDGE FOR THE APPROPRIATE DIVISION OF THE ATTORNEYS' FEE AWARD

I, Laura H. Posner, declare and state, under penalty of perjury, that the following is true and correct to the best of my knowledge, information and belief:

## I. PRELIMINARY STATEMENT

1.      I am a partner in Cohen Milstein Sellers & Toll, PLLC, the Court-appointed Co-Lead Counsel in this Action[1] and counsel for Plaintiffs Lewis Cosby, Eric Montague, and Martin Ziesman, as Co-Trustee for the Carolyn K. Ziesman Revocable Trust.  I actively supervised and participated in the prosecution of this Action, and thus have personal knowledge of all material matters related to this Action. I submit this declaration in support of Plaintiffs' Motion for Final Approval of the Proposed Settlement, Plan of Allocation and Plaintiffs' Reimbursements and Cohen Milstein Sellers & Toll PLLC's ("CMST") Motion for An Award of Attorneys' Fees, Reimbursement of Litigation Expenses and for Further Briefing or Referral to a Magistrate Judge for the Appropriate Division of the Attorneys' Fee Award.

2.      This Declaration describes (a) the efforts undertaken by CMST alone to prosecute the action; (b) the events leading up to the Settlement with Defendants, the Settlement, and the risks that Plaintiffs and CMST considered in determining that the Settlement provides an outstanding recovery for the Settlement Class; (c) the Notice to members of the Settlement Class; (d) the proposed Plan of Allocation for the Settlement; (e) CMST's fee and expense application; and (f) Co-Lead Counsel's request for reimbursement awards for the Lead Plaintiffs.  This Declaration sets forth facts that demonstrate why the Settlement is fair, reasonable, and adequate

---

[1] Unless otherwise notes, capitalized terms have the meaning set forth in the Stipulation and Agreement of Settlement, dated March 11, 2022 (the "Stipulation").  ECF No. 236.

and should be approved by this Court, as well as why CMST's fee and expense request should be approved by the Court.

3.     While Co-Lead Counsel and Plaintiffs agree that a 33.33% attorneys' fee award is appropriate in this case, CMST was unwilling to submit Gordon Ball PLLC's ("Mr. Ball") time and lodestar to the Court in support of any attorneys' fee request.   Accordingly, CMST and Mr. Ball are submitting separate fee and expense requests to the Court. Specifically, while CMST has not seen Mr. Ball's formal attorneys' fee request and, thus, can take no position regarding it at this time, CMST notes that the 7,600 hours  Mr. Ball, a sole practitioner, asked CMST to submit to the Court in support of the attorneys' fee award could not possibly be accurate for a variety of reasons.[2] Accordingly, in accordance with its ethical obligations to the Court and fiduciary duties to the Settlement Class, CMST refused to submit a joint request with Mr. Ball for an attorneys' fee award and respectfully requests that the Court order further briefing by Co-Lead Counsel regarding how the attorneys' fee award should be divided in accordance with each firm's respective contributions

---

[2] For example, CMST alone handled virtually all of the research, drafting and filing of all of the motions and briefs in this case, including ECF Nos. 59-60, 68, 71, 77, 83, 86, 89, 92, 94, 100, 101, 103, 107-108, 118, 121, 141-144, 147-149, 151, 153, 166, 174, 177, 191, 194-195, 198, 202-203, 207, 217-218, 223-224, 226, 228, and 234-236. CMST alone also handled virtually all of the dozens of meet and confers with Defendant and the third parties, and the drafting and negotiation of virtually all of the discovery requests, including document requests, subpoenas and the Freedom of Information Request to the SEC.   CMST alone worked with Plaintiffs' economics and accounting experts in drafting the complaints, drafting their reports, preparing for their testimony and reviewing discovery, and alone defended the economics expert's two depositions and took Defendant's economics expert's deposition.   CMST virtually alone prepared each of the Plaintiffs for their depositions and defended each of the Plaintiffs' depositions.   CMST alone reviewed and coded all of Defendant's and the third parties' document productions.   CMST handled all court conferences and hearings, including the nearly five-hour hearing on Plaintiffs' Motion for Class Certification, Motion to Substitute and in opposition to Defendants' *Daubert* Motion. CMST alone also handled the drafting of the mediation statements and handled the overwhelming bulk of the mediation presentations to Mr. Meyer and Magistrate Judge Steger. Yet, CMST's total hours with 7 lawyers and multiple paralegals involved, totaled just under 6,700 hours.

to the successful resolution of this case, or alternatively consider referring the matter to Magistrate Judge Poplin, who handled a number of the substantive motions in this case.

4.    On March 23, 2022, the Court preliminarily approved the proposed settlement with Defendant.   ECF No. 237 (the "Preliminary Approval Order").   Among other things, the Stipulation provides for a payment of $35,000,000 in cash into an interest-bearing escrow account in exchange for the release of all claims asserted by Plaintiffs against Defendant, and completely resolves this Action.

5.    Since then, with oversight by CMST, the Court-approved claims administrator Epiq Global ("Epiq" or "Claims Administrator") notified potential members of the Settlement Class by mail in accordance with the Preliminary Approval Order.   Additionally, Summary Notice was published over *PR Newswire* and *Investors Business Daily*, as well as on CMST's website.

6.    On March 31, 2022, Defendant caused the Settlement Amount to be deposited into an escrow account, established by CMST, for the benefit of the Settlement Class.

7.    This declaration does not seek to detail each and every event that occurred in the course of the litigation.   Rather, it highlights certain key events leading to the Settlement, and the basis upon which Plaintiffs and CMST recommend its approval.

8.    Under any measure, the Settlement is an outstanding result for the Settlement Class. Indeed, the $35,000,000 Settlement Amount represents nearly 18% of the Settlement Class's estimated *maximum* provable aggregate damages of – and multiples greater than the typical recovery in securities class actions.   *See infra* ¶¶ 61-62.   The recovery is also noteworthy when weighed against the risks of continued litigation.   Defendant disagreed with Plaintiffs' estimation

of damages and contended that even if Plaintiffs could have established liability and damages, the maximum damages would be far less than Plaintiffs' estimates based upon their experts' competing damages analysis, and that even if Plaintiffs prevailed at trial, they would only obtain a fraction of the purported maximum damages. This recovery, therefore, represents an excellent result given risks of a jury trial, and is far above the range of typical securities class action settlements.

9. While CMST believes that the allegations in the Third Amended Complaint ("TAC") (ECF No. 174) have substantial merit, Defendant had credible arguments that could have been accepted in whole or in part by a jury at trial. Further, if the Court or jury ultimately concluded that certain of the alleged actionable statements were not false or misleading, that certain of the alleged disclosures were not recoverable and, therefore, that all or a substantial portion of the stock price decline that occurred was not attributable to the alleged fraud, or that part of all of the fault should be apportioned to an entity or individual other than Defendant, the Classes' potential Section 10(b) recovery would be reduced dramatically, and potentially to zero. Likewise, if the Court or jury ultimately concluded that Plaintiffs did not have standing to pursue their Section 11 claims or could not satisfy the statutory "tracing" requirements, they would be unable to recover their damages under Section 11. Even a favorable jury verdict would have been subjected to an inevitable and lengthy appeals process, the conclusion of which would have been uncertain. Accordingly, even if Plaintiffs had prevailed at trial, it is highly questionable as to whether the Settlement Class would have recovered more than (or even as much as) the Settlement Amount.

10. Considering these arguments and the other risks inherent in continued litigation, CMST respectfully submits that the Settlement represents an outstanding recovery for the

Settlement Class that is supported by each of the factors as set forth in Federal Rule of Civil Procedure 23(e). The Settlement is the result of Plaintiffs' and CMST's nearly six years of substantial litigation efforts, including (a) a lengthy investigation including the review and analysis of publicly available information regarding Defendant and Miller Energy, including SEC filings, SEC Orders, online and newspaper articles, analyst reports, press releases, stock price movements, earnings conference calls, and analyst presentations; (b) serving, litigating and negotiating a Freedom of Information Act request to the Securities and Exchange Commission; (c) drafting three detailed complaints; (d) consulting and working extensively with an experienced economics expert to evaluate damages, loss causation and recoverable losses; (e) consulting and working extensively with an experienced accounting expert regarding Plaintiffs' claims and to analyze and evaluate the evidence; (f) consulting with an experienced oil and gas expert regarding Plaintiffs' claims; (g) successfully defending against Defendant's multiple motions to dismiss; (h) successfully moving to substitute certain of the Lead Plaintiffs; (i) successfully moving for class certification, which included defending against Defendant's *Daubert* motion and defending each of the Class Representatives' depositions; (j) submitting opening and rebuttal market efficiency expert reports and conducting and defending three expert depositions; (k) handling lengthy oral arguments in support of Plaintiffs' motion for class certification and motion for substitution and in opposition to Defendant's *Daubert* motion and on multiple court conferences; (l) responding to Defendant's objections to Magistrate Judge Poplin's report and recommendations regarding the motion for class certification and order denying Defendant's *Daubert* motion and drafting an objection to a small portion of Magistrate Judge Poplin's report and recommendations regarding the motion for class certification; (m) opposing Defendant's multiple motions to stay proceedings; (n) opposing Defendant's Rule 23(f) petition and motion to stay to the Sixth Circuit; (o) engaging in extensive

5

discovery, including numerous meet-and-confers with Defendant and nearly a dozen third parties, reviewing hundreds of thousands of pages of documents, and serving and/or responding to requests for production, interrogatories, requests for admission and nearly a dozen subpoenas; (p) drafting detailed mediation statements, conducting multiple oral mediation presentations and participating in three mediation sessions (two full-day) and extensive further negotiations that resulted in reaching the terms of the Settlement.

11. The Settlement is the result of extensive arm's length settlement negotiations among experienced counsel with the aid of two different mediators. First, the parties participated in a session with experienced private mediator, Robert A. Meyer, Esq. of Judicial Arbitration and Mediation Services, Inc. ("JAMS"), on July 15, 2021. The parties then had two sessions with experienced Magistrate Judge Steger on November 4, 2021 and November 23, 2021. Through these sessions the parties vigorously debated the strengths and weaknesses of the claims and defenses in this Action and Magistrate Judge Steger was able to evaluate each of the parties' respective positions and chances at trial. The ability of CMST to reach a compromise with Defendant in light of the many complex issues present in this Action – including the risks attendant with continued litigation – evidences the skill of representation and the quality of the results. The Settlement provides an immediate and certain benefit to the Settlement Class and eliminates the significant risks that a smaller recovery – or indeed, no recovery – might be achieved after a trial and the likely appeals that would follow, which could prolong the Action for years.

12. Furthermore, to date, no Settlement Class Member has objected to the Settlement nor requested exclusion. Consistent with the Court's Preliminary Approval Order, Settlement Class Members were provided a comprehensive notice program that included: (a) the Postcard Notice of the Proposed Settlement that was sent to 29,681 potential Settlement Class Members,

brokers, and other nominees as of May 31, 2022; (b) the Notice and Claim Form, the Court's Preliminary Approval Order, and the Stipulation that were posted online at www.MillerEnergy-KPMGsecuritiessettlement.com on April 20, 2022; and (c) the Summary Notice that was published electronically on *PR Newswire* on May 2, 2022 and in *Investors Business Daily* on May 9, 2022. *See* Declaration of Alexander P. Villanova on Behalf of Epiq Global ("Villanova Decl.") ¶¶ 6-7, 10-11, (attached hereto as Ex.1). The Settlement documents were also posted online on CMST's website at www.cohenmilstein.com/case-study/lewis-cosby-et-al-v-kpmg-llp on April 20, 2022.

13. In addition to seeking the Court's final approval of the Settlement, Plaintiffs seek approval of the proposed Plan of Allocation as fair and reasonable. To prepare the Plan of Allocation, CMST engaged Global Economics Group, a well-recognized firm of financial consulting professionals. Under the proposed Plan of Allocation, the Net Settlement Fund will be distributed on a *pro rata* basis to members of the Settlement Class who timely submit valid proofs of claim based on their "Recognized Loss" amount as calculated pursuant to the Plan, consistent with the principles of *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005).

14. CMST also requests an award of attorneys' fees for its efforts in prosecuting this Action, which resulted in a substantial recovery for the Settlement Class in the face of significant risks. Specifically, CMST is applying for a total attorneys' fee award of 33 1/3% of the $35,000,000 Settlement Amount for Co-Lead Counsel, or $11,666,667, plus interest earned thereon. I believe the requested fee is fair in light of the results achieved by CMST, the work performed by CMST, the risks involved in the litigation, and similar awards in this type of litigation. In light of the serious ethical issues identified above in paragraph 3 above, CMST also requests that the Court order further briefing by Co-Lead Counsel regarding how the attorneys'

7

fees should be divided or, alternatively, refer the determination of how any attorneys' fee award should be divided to Magistrate Judge Poplin.

15. CMST also requests reimbursement of its litigation expenses of $439,548.22, which were advanced by CMST and represent nearly 80% of all expenses incurred by Co-Lead Counsel in the prosecution of this case. CMST submits that this expense request is also reasonable, fair, and should be approved. Mr. Ball had informed us his firm's expenses were $156,618.09. CMST's expenses were required and necessary to further the prosecution of this Action and, even with Mr. Ball's expenses, are less than the $600,000 maximum amount specified in the Notice.

16. Finally, CMST also requests a reimbursement award of $25,000 for Mr. Cosby, and $10,000 each for Mr. Montague and Mr. Ziesman. These named plaintiffs dedicated substantial time and effort towards this litigation for several years. Given their active commitment to the Settlement Class and their substantial sacrifice of time, these reimbursements are justified.

17. For the reasons set forth herein and in the supporting memoranda filed herewith, I respectfully submit that this Court should find that the Settlement, Plan of Allocation and request for attorneys' fees, reimbursement of expenses, and grant of reimbursements to the named plaintiffs are fair, reasonable, and adequate, and should be approved.

## II. HISTORY OF THE ACTION

### A. Overview of Plaintiffs' Claims

18. Plaintiffs' claims are set forth in the TAC, which asserts claims against Defendant on behalf of certain classes of investors in Miller Energy Resources, Inc. ("Miller Energy") between August 29, 2011 and July 30, 2015, inclusive.

19.     The TAC alleges that Defendant violated the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act") as a result of its improper and fraudulent conduct as the outside auditor for Miller Energy.  In 2009, Miller Energy purchased oil and gas reserves in Alaska for only $2.25 million in cash in a bankruptcy sale and used that acquisition to catapult itself from a penny stock to being traded on the New York Stock Exchange ("NYSE") by falsely inflating the value of the Alaska assets to $480 million.  The TAC further alleges that when KPMG became Miller Energy's auditor, Miller Energy continued to file financial statements that misrepresented the valuation of the assets with KPMG's sign-off and blessing, and that KPMG misleadingly told investors that Miller Energy's financial statements followed Generally Accepted Accounting Principles and that they had conducted their audits in accordance with Generally Accepted Auditing Standards.  The TAC also alleges that Miller Energy's stock price was artificially inflated as a result of Defendant's false and misleading statements omitting material information about the true value of the Alaska assets and KPMG's commitment to independently verify Miller Energy's accounting practices.

20.     The TAC alleges that the truth began to emerge in 2014 when Miller Energy announced it would need to take impairment charges for the Alaska assets and that it was suspending dividend payments.  The TAC also explains that the SEC then filed charges against Miller Energy and the NYSE delisted Miller Energy stock.  Miller Energy filed for Chapter 11 bankruptcy and in March 2016, it admitted that the Alaska assets had been worthless all along.  The SEC settled its charges against Miller Energy and its executives and officers, and then announced charges against KPMG relating to its review and audit of Miller Energy's financial statements.  After concluding its investigation, the SEC found that KPMG had violated its legal and professional duties as an independent auditor and that its misconduct had violated the federal

9

securities laws. In response to each of these various events revealing KPMG's fraud, Miller Energy's stock fell dramatically.

21. Defendant continues to deny each and all of Plaintiffs' allegations. Defendant contends that it did not make material misstatements or omissions, that it disclosed all information required by the federal securities laws, that it did not act with scienter and that it was not responsible for Plaintiffs' losses.

## B. Procedural History

22. On March 14, 2016, an initial complaint was filed in this Court by Mr. Ball alleging violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, and Sections 11 and 15 of the Securities Act. ECF No. 1.

23. As provided by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), plaintiffs Lewis Cosby and Kenneth Martin filed a motion to serve as Lead Plaintiffs, and, by Order dated June 1, 2016, the Court appointed them as Lead Plaintiffs and approved the selection of Gordon Ball PLLC as Lead Counsel. ECF No. 16.

24. In 2017, due to serious health issues and his inexperience in securities fraud class actions, Mr. Ball contacted CMST and requested that it join as Co-Lead Counsel in the case. Shortly thereafter, on May 8, 2017, an Amended Complaint was filed. ECF. No. 35. Plaintiffs Cosby and Martin then moved on May 18, 2017 for CMST to be appointed as Co-Lead Counsel, which was granted by Court's order dated July 24, 2017. ECF No. 54.

25. CMST then drafted and served a Freedom of Information Request to the SEC. After the SEC denied that request, CMST drafted and filed a formal administrative appeal of the denial. The SEC subsequently agreed to negotiate with Plaintiffs regarding the production of document

10

and transcripts. CMST handled those negotiations and was able to obtain crucial information relevant to Plaintiffs' claims, including numerous transcripts and exhibits to the transcripts, all of which CMST reviewed and analyzed.

26. On September 15, 2017, after an extensive fact investigation and consultation with an accounting expert, CMST on behalf of Lead Plaintiffs filed a substantially expanded and much more detailed Second Amended Class Action Complaint ("SAC"), which added Martin Weakley as a named plaintiff, added allegations regarding the preferred classes of Miller Energy stock, which had the effect of more than doubling the potentially recoverable damages and adding in a viable strict liability claim under Section 11, and which greatly revised and improved the earlier filed complaints. ECF No. 59. The SAC alleged violations of the Exchange Act based on false and misleading statements contained in Miller Energy's reported quarterly and annual financial results, and violations of the Securities Act based on Miller Energy's filing of a misleading registration statement and offering documents.

27. Defendant moved to dismiss the SAC on October 17, 2017. ECF No. 63. CMST drafted and filed Plaintiffs' opposition on November 22, 2017 (ECF No. 68), and Defendant filed its reply on December 15, 2017. ECF No. 69. On January 26, 2018, CMST drafted Plaintiffs' Notice Requesting the Court to Take Judicial Notice of Indictments and SEC Charges which involved at least one of the KPMG employees with a high-level role on the Miller Energy engagement. ECF No. 71. Defendants filed a response on February 2, 2018, arguing that the SEC indictment was irrelevant as it was not related to any work KPMG completed for Miller Energy (ECF No. 72), and CMST drafted and filed Plaintiffs' reply on February 5, 2018. On August 2, 2018, the Court denied Defendant's motion to dismiss nearly in its entirety. ECF No. 76. Specifically, the Court found: (i) Plaintiffs had sufficiently pled scienter by demonstrating that

11

Defendant had ignored "highly suspicious facts;" (ii) loss causation had been established; (iii) Defendant had failed to establish that the statute of limitations had run; (iv) Plaintiffs allegations that Defendant knew or should have known that Miller Energy's annual financial results and audited financial statements were false and misleading were actionable; (v) Defendant's standing and statute of repose arguments were unpersuasive; and (vi) that the offering documents were materially misleading in violation of the federal securities laws.

28.     After multiple meet and confers led by CMST, Defendant than filed a motion for a Protective Order on October 26, 2018 to address the level of confidentiality protection afforded to documents produced in the Action. ECF No. 80. CMST drafted and filed a response on November 2, 2018, arguing that the broad protection Defendant requested was inappropriate in this case. ECF No. 83. Defendant filed its reply on November 9, 2018 (ECF No. 85) and CMST drafted and filed a supplemental response on November 27, 2018. ECF No. 86. Defendant responded the following day. ECF No. 87. CMST then prepared for and represented Plaintiffs on a Status Conference before Magistrate Judge Poplin for argument on the motion and to discuss amending the scheduling order. Following that Status Conference and further meet and confers, the parties were ultimately able to come to agreement on the parameters of confidentiality that should apply in the Action and submitted an Agreed Confidentiality Stipulation and Order, which Magistrate Poplin entered on January 11, 2019. ECF No. 90.

29.     Concurrently, CMST also substantially drafted and served Plaintiffs' First Request for Production of Documents on Defendant on September 12, 2018, substantially edited and served Plaintiffs' First Set of Requests for Admissions on Defendant on September 25, 2018, and drafted and served Plaintiffs' First Set of Interrogatories to KPMG on Defendant on November 5, 2018. CMST also drafted Plaintiffs' Objections and Responses to Defendant's First Set of Requests for

12

Production and served them on Defendant on October 9, 2018. CMST also drafted and served dozens of subpoenas on non-parties in December 2018 and conducted all necessary follow-up and meet and confer discussion with those individuals and entities.

30.     Following the service of document requests and multiple meet and confers led by CMST, on February 8, 2019, Defendant filed a motion requesting a discovery conference to discuss the potential for filing a motion to compel the production of documents from Plaintiffs. ECF No. 93. CMST alone drafted and filed an opposition on February 11, 2019 (ECF No. 94) and Defendants replied on February 26, 2019. ECF No. 99. The next day, CMST drafted and filed a response. ECF No. 100.

31.     On March 1, 2019, CMST alone drafted and filed Plaintiffs' motion to substitute Eric Montague and Martin Ziesman, as Co-Trustee for the Carolyn K. Ziesman Revocable Trust, for Kenneth Martin and Martin Weakley as Class Representatives. ECF No. 101. Defendants opposed this motion on March 15, 2019 (ECF No. 115), and CMST drafted and filed Plaintiffs' reply in support of the motion on June 28, 2019. ECF No. 147. CMST also alone drafted and filed a notice of supplemental authority in support of the substitution motion on July 12, 2019. ECF No. 153. Prior to and concurrent with this briefing, CMST and Counsel for Defendant held multiple conferences with the Court regarding the Motion to Substitute.

32.     During this same time period, CMST alone drafted and filed Plaintiffs' motion for class certification on March 15, 2019. ECF No. 107. Extensive discovery on the class certification motion ensued. Working with CMST alone, Plaintiffs' expert, Mr. Chad Coffman, CFA,[3] the

---

[3]     Further information regarding Mr. Coffman's background is available at https://www.globaleconomicsgroup.com/expert-chad-w-coffman/

President of Global Economics Group, prepared an initial and corrected report, as well as a rebuttal report, containing nearly 200 pages, demonstrating that Miller Energy stock traded in an efficient market, and that damages could be calculated using a methodology common to the Classes. Defendant's expert Dr. Mukarram Attari, the co-lead of the finance practice group of Charles River Associates consulting firm, prepared a 190-page report contending that Mr. Coffman's expert report was not reliable, did not demonstrate market efficiency, and failed to specify a class-wide damages methodology consistent with Plaintiffs' theory of liability. Mr. Coffman sat for two all-day depositions, which CMST alone prepared him for and defended. CMST alone also conducted a full day deposition of Dr. Attari. In addition, Defendants took the depositions of proposed class representatives Lewis Cosby, Eric Montague and Martin Ziesman. CMST travelled to and prepared each of the witnesses for their depositions and defended each of their depositions (2 of the 3 entirely alone). The parties also engaged in class certification related document discovery. After CMST alone negotiated Defendant's document requests to each of the Plaintiffs, CMST alone reviewed and produced Plaintiffs' responsive documents to Defendant. CMST alone also reviewed Defendant's class certification related discovery. Defendants thereafter responded with a brief in opposition to class certification on May 21, 2019 (filed under seal), to which CMST drafted and filed a reply in support of Plaintiffs' Motion on June 14, 2019. ECF No. 141.

33. On March 19, 2019, the Court referred Plaintiffs' Motion for Class Certification to Magistrate Judge Poplin and ordered the Action stayed other than briefing on class certification. ECF No. 109.

34. On March 29, 2019, Defendant filed a Motion to Partially Lift Stay in order to seek discovery related to the withdrawing named plaintiffs and to request that the Court rule on the substitution motion prior to the resolution of the class certification motion. ECF No. 113. CMST

alone drafted and filed an opposition to this motion on April 12, 2019. ECF No. 118. The Court referred this motion to Magistrate Judge Poplin as well. ECF No. 119. On June 21, 2019, Magistrate Judge Poplin entered an Order partially lifting the stay and instructing Plaintiffs to file their reply brief in support of the Motion to Substitute (ECF No. 145), which CMST alone drafted and filed on June 28, 2019. ECF No. 147.

35.     Simultaneously with its opposition to class certification, on May 21, 2019, Defendant filed a motion to exclude Mr. Coffman's report and testimony. ECF No. 126. On June 28, 2019, CMST alone drafted and filed an opposition to Defendants' motion (ECF No. 150) and Defendant filed its reply brief on July 19, 2019. ECF No. 159.

36.     On December 10, 2019, Magistrate Judge Poplin heard oral argument on Plaintiffs' motion for class certification and motion to substitute named plaintiffs, as well as on Defendant's motion to exclude the opinion and testimony of Plaintiffs' expert, Mr. Coffman. The hearing required an immense amount of preparation and lasted nearly 5 hours. CMST alone handled all of the preparation for and oral argument on behalf of the Plaintiffs.

37.     On June 29, 2020, Magistrate Judge Poplin granted Plaintiffs' motion to substitute parties and ordered Plaintiffs to file an amended complaint with the corrected names to serve as the operative pleading. ECF No. 167. Plaintiffs complied and CMST alone drafted and filed the Third Amended Complaint ("TAC") on July 13, 2020. Defendant moved to dismiss the TAC on July 27, 2020. ECF No. 180. CMST alone drafted and filed Plaintiffs' opposition to this motion on September 25, 2020 (ECF No. 202), and Defendant's reply was filed on October 2, 2020. ECF No. 204. In conjunction with the filing of the motion to dismiss the TAC, Defendant also moved to stay discovery on July 31, 2020. ECF No. 187. CMST alone drafted and filed Plaintiffs'

opposition to the stay motion on August 14, 2020 (ECF No. 191), and Defendant replied on August 20, 2020. ECF No. 192. On September 15, 2020, the Court denied Defendant's stay motion as moot due to the fact that the Court had previously ordered the stay of discovery pending a decision on Plaintiffs' motion for class certification. Then, on May 7, 2021, the Court again denied Defendant's motion to dismiss the TAC and upheld Plaintiffs' claims. ECF No. 209.

38.     On June 29, 2020, Magistrate Judge Poplin entered an Order largely denying Defendant's motion to exclude the testimony of Plaintiff's expert. ECF No. 171. CMST alone drafted and filed Plaintiffs' limited objection to one portion of the Order excluding one of Mr. Coffman's opinions on July 27, 2020 (ECF No. 177), and on the same date Defendant objected to the remainder of the order allowing Mr. Coffman's testimony. ECF No. 179. Defendant opposed Plaintiffs' objection on August 24, 2020 (ECF No. 193) and CMST alone drafted and filed a reply in support of Plaintiffs' limited objection on September 3, 2020 (ECF No. 198). CMST alone also drafted and filed a response to Defendant's objections on August 24, 2020 (ECF No. 194) and Defendant replied on September 3, 2020. ECF No. 200. The Court overruled all objections to Magistrate Judge Poplin's Order on Mr. Coffman's testimony on May 7, 2021. ECF No. 210.

39.     Also on June 29, 2020, Magistrate Judge Poplin entered a Report and Recommendation to grant Plaintiffs' motion for class certification. ECF No. 172. Defendant objected on July 27, 2020 (ECF No. 178). CMST alone drafted and filed Plaintiffs' opposition to Defendant's objections on August 25, 2020 (ECF No. 195) and Defendant filed its reply on September 3, 2020. ECF No. 199. While Defendant's objections were pending, on March 26, 2021, CMST alone drafted and filed a Notice of Supplemental Authority in further support of the class certification motion. ECF No. 207. Defendant responded on April 2, 2021. ECF No. 208.

16

40.     On May 7, 2021, the Court overruled Defendant's objections and accepted in whole Magistrate Judge Poplin's Report and Recommendation and incorporated it into its Order granting Plaintiffs' motion for class certification and appointing Co-Lead Counsel as Class Counsel.  ECF No. 211.  The Court also simultaneously lifted the stay and set the Action for trial on February 8, 2022.  ECF No. 212.

41.     On May 21, 2021, Defendant filed with the United States Court of Appeals for the Sixth Circuit a Petition for Permission to Appeal Pursuant to Federal Rule of Civil Procedure 23(f). *See* ECF No. 214-1.  In the petition, Defendant asserted that it had rebutted the class-wide presumption of reliance by showing that Miller Energy's stock did not increase when the alleged false statements were made, and the Court's rejection of this argument was in error.  Defendant also argued that the presumption of reliance afforded Plaintiffs under *Affiliated Ute* was in error because the allegations here were not primarily misstatements by omissions.  Finally, Defendants challenged the proposed class representatives' standing with respect to the Section 11 claims and argued that the Court's order deferring the standing issue to the merits portion of the case was squarely in conflict with established law.  *Id*.  CMST alone drafted and filed Plaintiffs' response to the petition with the Sixth Circuit.[4]  Plaintiffs' response argued Defendant's petition should be rejected because: (i) Plaintiffs did not rely on a price-maintenance theory in support of its class certification motion and the Court applied the appropriate rule when addressing the arguments in support of finding a presumption of reliance had been established; (ii) the Court applied the correct standard in finding that Plaintiffs could rely on the *Affiliated Ute* presumption; and (iii) there was

---

[4] Concurrently, CMST alone drafted and filed a notice informing the Court that it would submit a proposed plan for disseminating class notice once the Sixth Circuit had resolved Defendant's petition. ECF No. 217.

nothing improper about the Court deferring decision on whether the class representatives can trace their stock purchases to the offerings at issue. On June 7, 2021, Defendant filed a motion for leave to file a reply in support of its Petition, along with a proposed reply. CMST alone drafted and filed Plaintiffs' opposition to this motion on June 11, 2021, and attached a proposed sur-reply, also prepared alone by CMST. On July 16, 2021, Defendant submitted supplemental authority to the Sixth Circuit, to which CMST alone drafted and filed Plaintiffs' response on July 19, 2021. On July 26, 2001, per the Sixth Circuit's direction, CMST tendered Plaintiffs' sur-reply.

42. In conjunction with its petition for permission to appeal, Defendant filed a Motion to Stay Proceedings in this Court on May 21, 2021 (ECF No. 213) and an Emergency Motion for a Stay of Proceedings Pending Resolution of its Rule 23(f) Petition, and if Granted, 23(f) Appeal which simultaneously and improperly asked both courts for the same relief. CMST alone drafted and filed Plaintiffs' opposition to both of these motions on June 4, 2021. ECF No. 218. This Court denied Defendant's stay motion on June 29, 2021. ECF No. 222. On July 1, 2021, Defendant informed the Sixth Circuit of the Court order denying the motion to stay as further support for its request that the Sixth Circuit order the action stayed pending consideration of the Rule 23(f) petition.

43. On August 3, 2021, following multiple meet-and-confer negotiations between CMST and counsel to Defendant, the parties filed a Joint Status Report with the Court to request an amended scheduling order in light of the discovery stay that had been in place (ECF No. 223), and on August 4, 2021 filed a [Proposed] Third Scheduling Order setting forth new deadlines for the completion of fact and expert discovery. ECF No. 224.

44.     On August 26, 2021, the Court entered an Order referring the action to Magistrate Judge Steger for a judicially hosted settlement conference.  ECF No. 225.

## III.  THE SETTLEMENT

45.     Prior to the August 26, 2021 Court ordered settlement conference, the parties had engaged private mediator, Robert A. Meyer, Esq. of JAMS to assist in resolving the Action.  On July 15, 2021, the parties participated in a mediation session.  In advance of the mediation, CMST alone drafted and exchanged with Defendant detailed mediation statements addressing the facts and law of the case, including, among other things, Defendant's defenses and positions on the issues of falsity, standing, and loss causation.  CMST alone also prepared and presented a detailed oral presentation with PowerPoint during the mediation session to Defendant and the mediator. This full day mediation did not result in resolution.

46.     Then, pursuant to the Court's August 26, 2021 Order, Magistrate Judge Steger hosted a full-day settlement conference on November 4, 2021.  CMST again drafted and submitted detailed mediation statements outlining each sides' arguments and addressing the strengths and weaknesses of the evidence and defenses.   CMST prepared and presented a detailed oral presentation at the mediation to Judge Steger and the Defendant. Mr. Ball then asked to and did speak for around 15-20 minutes. This was followed by a day-long mediation session.  During this session, Magistrate Judge Steger was able to get a full understanding of the parties' positions and the strengths and weaknesses of their respective cases.  This mediation session involved a full day of extensive, hard-fought, arm's length negotiations before Magistrate Judge Steger, but it did not end in resolution.  However, numerous informal negotiations continued, and with the substantial assistance of Magistrate Judge Steger, plus a follow-up remote session over Zoom on November 23, 2021, the Parties ultimately reached an agreement in principle to settle the case for $35,000,000

19

in cash for the benefit of the Settlement Class, subject to approval by the Court. The named plaintiffs were fully engaged in all of the discussions that led up to the proposed Settlement, and Mr. Cosby attended each mediation session in person.

47. On December 6, 2021, the Court was informed through a Mediator's report that the Parties had reached an agreement in principle to settle the Action. ECF No. 232. CMST proceeded to negotiate with Defendant and draft all of the settlement documentation, including the terms to the Stipulation and Agreement of Settlement.

48. On March 14, 2022, CMST alone drafted and filed Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and accompanying documents. ECF Nos. 235-236. On March 23, 2022, the Court issued its Preliminary Approval Order. ECF No. 237. In its Preliminary Approval Order, the Court scheduled the Settlement Fairness Hearing – during which it would hear any objections by Settlement Class Members and decide on final approval of the Settlement and attorneys' fees and expenses – for June 30, 2022. Defendant then caused the full Settlement Amount to be paid into the Escrow Account for the benefit of the Settlement Class, a portion of which is earmarked for Notice and Administration Costs. On March 18, 2022, Defendant also caused the CAFA Notice to be distributed pursuant to 28 U.S.C. § 1715(b) as required by paragraph 41 of the Stipulation.

A. Reasons for the Settlement

49. Plaintiffs and CMST fully endorse the Settlement. *See* Declaration of Lewis Cosby in Support of Final Approval ("Cosby Decl."); Declaration of Eric Montague in Support of Final Approval ("Montague Decl."); Declaration of Martin Ziesman in Support of Final Approval ("Ziesman Decl."), attached hereto as Exhibits 2-4. The Plaintiffs have actively overseen the

prosecution of this Action and fully understand the duty to act in the best interests of the Settlement Class. The Plaintiffs have been fully apprised of and consulted on all important matters relating to the Action by CMST. CMST provided them with regular updates regarding the status of the case, rulings by the Court, important motions, and settlement discussions and strategy. The Plaintiffs gave detailed deposition testimony and participated in the production of their documents in response to discovery requests. Mr. Cosby was also actively involved in reviewing Defendant's document production throughout the litigation. Accordingly, Plaintiffs had substantial ability to evaluate the fairness of the Settlement and the information with which to make an informed evaluation.

50. CMST has many decades of experience in prosecuting complex securities class actions, and the senior lawyers who led the Action are likewise highly experienced in such litigation, including in cases involving claims against outside auditors. *See* CMST biography attached hereto as Ex. 5. Based on their experience and knowledge of the facts and applicable law, Plaintiffs and CMST have determined that the Settlement is in the best interests of the Settlement Class.

51. Although, Plaintiffs had prevailed on all substantive motions presented to the Court at the time of Settlement, Plaintiffs and CMST recognize and acknowledge the substantial risk, expense, and likely extended duration of continued proceedings that would be necessary to prosecute the Action, and they have balanced those considerations against an immediate benefit for the Settlement Class.

1. <u>Risks of Proving Liability and Damages at Trial</u>

52.     Had the Parties not reached an agreement in principle to settle on November 23, 2021, an outlay of substantial resources would have been necessary to complete fact discovery, present expert opinions and testimony, and prepare for summary judgement and trial in a truncated amount of time.   Additionally, there was a risk that the Sixth Circuit would have granted Defendant's Petition for Permission to Appeal the class certification order, and that the Sixth Circuit would have agreed with Defendant's arguments on appeal and vacated the order granting class certification, which would have effectively ended the Action.  Moreover, trial undoubtedly would have been expensive, risky and followed by years of appeals even if Plaintiffs secured a favorable verdict.

53.     A federal securities fraud jury trial presents many challenges.  Plaintiffs would need to prevail on multiple complex securities fraud issues, including materiality, falsity, scienter, damages and loss causation.  As demonstrated by Defendant's motion practice, it vehemently disputed each of these elements.

54.     With respect to showing that the alleged securities violations caused Plaintiffs' losses, testimony from financial experts would be required.  Presenting proof of this element would have inevitably resulted in a "battle of the experts" at trial regarding highly technical and complicated evidence, with no certainly as to which expert the jury would credit.  Similarly, accounting and oil & gas industry experts would have been required on highly complex issues subject to significant confusion.  CMST recognized the possibility that the jury could have been swayed by Defendant's experts and awarded little to no damages.  Furthermore, particularly given the technical aspects involved in this Action, the trial would have involved substantial attorney and expert time and the considerable use of judicial resources.

22

55.     Additionally, even if Plaintiffs established KPMG's liability, they would encounter significant loss causation defenses as KPMG would have sought to, among other things, disaggregate the portion of any decline in the price of Miller Energy stock allegedly caused by KPMG's alleged false statements and omissions from the portion caused by other confounding factors, including Miller Energy's and its officers and directors' false and misleading statements and omissions.

56.     Moreover, the risk of bringing the case to trial is also highlighted by uncertainty about which evidence would be admitted.  The Parties each would have filed numerous motions *in limine* and how the Court ruled on those motions could have significantly affected the strength of each side's evidence.  For example, Plaintiffs intended to offer evidence of the SEC's investigation into KPMG's conduct and its conclusions regarding federal securities law violations which supports Plaintiffs' allegations here.  If the Court did not allow such evidence, it may have been more difficult for Plaintiffs to establish the facts supporting their claims.  Additionally, KPMG would argue that Plaintiffs did not have standing to assert their Section 11 claims and could not satisfy the statutory "tracing" requirement.  While Plaintiffs intended to vigorously litigate these issues, there is no guarantee that the decisions would be in Plaintiffs' favor.  Adding yet more risk to trial would have been the fact that Plaintiffs would need to introduce much of its evidence through hostile witnesses, including executives and employees of Defendant KPMG.

57.     Although Plaintiffs believe that they would prevail on all claims, it can be difficult to prove liability in a securities fraud case.  Plaintiffs acknowledge that proceeding to trial would expose shareholders to a risk of no recovery if the jury accepted Defendant's arguments and experts' opinions, or a much lower recovery if the jury were to determine that damages should be reduced by the PSLRA's proportionate liability provision.  Plaintiffs could avoid this outcome

23

only if they would be successful in proving that KPMG's violations were made knowingly which is a heavy burden to meet. Thus, Plaintiffs would face the real risk that a jury could find that a portion of or all of the liability was the fault of Miller Energy, its executives or others not party to this Action and that KPMG should not be forced to pay substantial damages as a result

56. Even if Plaintiffs prevailed at trial, Defendant might have appealed the decision. The appeals process can go on for months or even years, significantly prolonging the Action and jeopardizing any recovery awarded to the Settlement Class at trial should Defendant be victorious. Accordingly, there was a risk that the Action might yield a small recovery – or indeed no recovery at all – following additional years of hard-fought litigation. Furthermore, it is important to consider that the manner in which damages are calculated post-verdict allows the jury to determine the amount of inflation per share per day and then the claims process is used to calculate the actual total damage amount for payout to class members which can lead to a different, and often lower, damages number than the expert models may have originally estimated. Thus, there can be a wide variance between a plaintiff's initial damages estimates and calculations and what is feasible to collect even with a favorable jury verdict.

58. In contrast to the foregoing, the Settlement represents an immediate and certain benefit for the Settlement Class. Plaintiffs and CMST, having evaluated the substantial risk, time and expense required to prosecute this Action through trial and appeals, strongly believe that the Settlement is an excellent result for the Settlement Class.

2. Stage of Proceedings

59. Substantial time and resources had been expended on motion practice and discovery at the time of Settlement. Defendant and numerous third parties produced, and CMST reviewed

24

hundreds of thousands of pages of documents. CMST took and/or defended each of the 3 expert depositions and each of the 3 class representative depositions. The parties fully briefed and the Court ruled on multiple motions to dismiss. Additionally, the Parties agreed to settle only after the significant motion for class certification and Daubert motion was fully briefed and decided and Defendant's Rule 23(f) petition to the Sixth Circuit was fully briefed.

60. CMST conducted a thorough evaluation of the strengths and weaknesses of the action upon an in-depth assessment of the voluminous evidence, not to mention extensive legal research and consultation with experts. These efforts have informed CMST in evaluating the strengths and weaknesses of the Action and the challenges that would arise through trial. Moreover, CMST was able to marshal the evidence and present a compelling analysis of the Action to Defendant and the mediators during settlement negotiations.

3. <u>Range of Reasonableness</u>

61. CMST engaged an expert to estimate the potentially recoverable aggregate damages. According to Plaintiffs' damages expert's analysis and utilizing a very aggressive damages model that, among other things, does not discount for Defendant's likely successful loss causation arguments, the Settlement represents nearly 18% of Plaintiffs' *maximum* provable damages. This figure, however, was premised on the Classes being able to recover the full amount from Defendant, an issue that was aggressively disputed by Defendant, who argued that others were responsible for Plaintiffs' losses according to the proportionate liability rule in Section 10(b) claims. If Defendant prevailed on this argument, the recoverable damages could have been significantly reduced. The $35,000,000 Settlement thus represents a reasonable recovery. Moreover, the damages computation assumes that 100% of eligible class members will file claims.

It is more likely that significantly less than 100% would do so (despite efforts made to notify as many eligible claimants as possible, including publishing the notice and posting it on the Internet).

62.     The recovery here as a percentage of possible damages far exceeds the historical average for similar cases.  Looking at all settlements in securities-fraud cases from 2012 through 2021, the median settlement was for approximately 6% of "simplified tiered damages" in both Rule 10b-5 and Section 11 cases.  Cornerstone Research, *Securities Class Action Settlements: 2021 Review and Analysis* at 7, Figure 6 (2022).[5]  Rule 10b-5 cases with $75-149 million of "simplified damages" at stake settled on average for 4.9% in 2012-2020 and with $150-249 million of "simplified tiered damages" at stake settled on average for 4% of those potential damages.  *Id*. at 6, Figure 5.  Even in cases that made it past motions for summary judgment, the average settlement value from 2017 through 2021 was 6.2% of simplified tiered damages.  *Id*. at 14, Figure 13; *see also* NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation:  2021 Full Year Review*, at 23 (noting that for cases settled during the December 2012-December 2021 time period, the median of settlement value as a percentage of "NERA-Defined Investor Losses" by level of "Investor Losses" was 2.8% for cases with investor losses between $100 and $199 million).[6]

4.   Reaction of the Settlement Class

63.     As of the date of this filing, not a single Settlement Class Member has sought exclusion or objected to the Settlement, Plan of Allocation, or request for fees and reimbursement

---

[5]https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf

[6] https://www.nera.com/content/dam/nera/publications/2022/PUB_2021_Full-Year_Trends_012022.pdf

of expenses. *See* Villanova Declaration at ¶¶ 13 and 15. This is particularly noteworthy given the large number of sophisticated institutional investors that comprise the Settlement Class, who are generally well-equipped to evaluate the merits of a settlement. The Settlement Class's positive reaction to the Settlement supports final approval.

### B. Notice of the Settlement was Properly Made to the Settlement Class

64. On March 23, 2022, the Court issued the Preliminary Approval Order. ECF No. 237. In the Preliminary Approval Order, the Court:

(a) preliminarily approved the Stipulation and the Settlement set forth therein, subject to further consideration at the Settlement Fairness Hearing;

(b) scheduled a Settlement Fairness Hearing for June 30, 2022 at 1:30 p.m. Pacific Time to determine: whether the proposed Settlement on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate, and should be approved by the Court; whether a Judgment as provided in the Stipulation should be entered; whether the proposed Plan of Allocation should be approved; and whether to award any amount of fees and expenses to Co-Lead Counsel;

(c) approved the form and content of the Notice, Postcard Notice and Claim Form;

(d) appointed the "Claims Administrator" to supervise and administer the notice procedure as well as the processing of claims;

(e) directed the Claims Administrator to take all reasonable efforts to cause a copy of the Postcard Notice to be mailed by first-class mail to potential Settlement Class Members;

(f) directed copies of the Notice and Claim Form to be posted on https://www.MillerEnergy-KPMGsecuritiessettlement.com;

(g) directed the Claims Administrator to cause the Publication Notice to be transmitted over *PR Newswire* and published in *Investors Business Daily*;

27

(h)     directed Co-Lead Counsel to serve on Defendant's counsel and file with the Court proof of such mailing and publication no later than June 23, 2022;

(i)     established procedures and deadlines for Settlement Class Members to object to the Settlement, Plan of Allocation, award of attorneys' fees and reimbursement of litigation expenses, and to appear at the Settlement Fairness Hearing; and

(j)     established procedures and deadlines for Settlement Class Members to submit Claim Forms or seek exclusion.

65.     Attached hereto as Exhibit 1is a true and correct copy of the Villanova Decl., which sets forth the efforts undertaken by Epiq, under the supervision of CMST, to mail the Postcard Notice to potential Settlement Class Members, to publish the Publication Notice, and to establish the website which posted the Notice.

66.     As detailed in the Villanova Decl., beginning on April 20, 2022, Epiq mailed or caused to be mailed a total of 1,079 Postcard Notices through first-class mail to potential Settlement Class Members, brokers, and other nominees.  Villanova Decl. ¶ 4.  Consistent with the Court's Preliminary Approval Order, the Postcard Notice directed those who purchased or acquired Miller common or preferred stock during the Class Period or purchsed Series C or Series D stock pursuant and/or traceable to a public offering, that a more detailed Notice and the Claim Form were available on the website dedicated to the settlement of the Action or by contacting Epiq.  Epiq received an additional 29,681 requests for Notice and Claim Forms to be forwarded to potential Settlement Class Members.  *Id.* ¶ 5.  Additionally, on April 20, 2022, Epiq also posted the Notice and the Proof of Claim Form and the Stipulation on the Settlement Website.  *Id.* ¶ 11. The Publication Notice was posted over *PR Newswire* on May 2, 2022 and in *Investors Business Daily* on May 9, 2022 (*id.* ¶ 7) and was placed on CMST's website beginning on April 20, 2022.

67. This method of giving notice, previously approved by the Court, is appropriate because it directs notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]." Fed. R. Civ. P. 23(e)(1).

68. Furthermore, as required by Federal Rule of Civil Procedure 23, due process and the PSLRA, the Notice: (a) described the nature of the Action; (b) included the definition of the Settlement Class; (c) set forth the Settlement Class's claims; (d) described the Settlement terms; (e) disclosed that Co-Lead Counsel intends to seek attorneys' fees of up to 33 1/3 % of the Settlement Fund, plus reimbursement of expenses and plaintiff reimbursement awards; (f) advised Settlement Class members of the right to exclude themselves from the Settlement Class and the binding effect of not doing so; (g) provided the deadline and procedure for opting out of the Settlement or opposing the Settlement, Plan of Allocation, award of attorneys' fees and reimbursement of expenses; (h) provided the date, time, and place of the Settlement Fairness Hearing; (i) summarized the reasons why the Parties are proposing the Settlement; and (j) provided the names, telephone numbers, and addresses of Co-Lead Counsel. Villanova Decl., Exs. 1 and 2.

69. The notice procedures set forth above satisfied the federal due-process requirements because they more than adequately apprised the interested parties of the proposed Settlement and afforded them the opportunity to present their objections.

C. The Plan of Allocation Should Be Approved, as It is Fair and Reasonable

70. Plaintiffs have proposed a plan to allocate the proceeds of the Net Settlement Fund among members of the Settlement Class who submit valid proofs of claim. The objective of the proposed Plan of Allocation (the "Plan") is to equitably distribute the Settlement proceeds, on a

29

*pro rata* basis, to those members of the Settlement Class who suffered economic losses as a result of Defendant's alleged misrepresentations and omissions.

71.     Pursuant to the Preliminary Approval Order, and as explained in the Notice, all Settlement Class Members who wish to participate in the Settlement must submit a Claim Form to Epiq postmarked no later than August 18, 2022.  All Settlement Class Members who wish to exclude themselves from the Settlement must file a request for exclusion by June 16, 2022.

72.     As set forth in the Notice, all Settlement Class Members who timely file a valid Claim Form entitling him/her to a recovery of $10.00 or more will receive a distribution of the Settlement proceeds, after deduction of attorneys' fees and expenses, notice/administration expenses, and taxes incurred on interest income earned by the gross Settlement Fund.  The distribution will be made in accordance with the Plan of Allocation set forth and described in the Notice.

73.     CMST engaged Global Economics Group to prepare the Plan of Allocation.  The Plan of Allocation was designed to ensure that the distribution of the Settlement Fund was fair and consistent with Plaintiffs' theory of the case, which asserted that Defendant made false and misleading statements and omitted material information that inflated the price of Miller Energy common and preferred stock during the Class Period, and to ensure that the allocation comported with the federal securities laws, including principles of loss causation and damages.

74.     The Plan of Allocation has also taken into consideration the Limitation on Damages provision of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(e), as well as the principles of economic loss articulated by the Supreme Court in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005).  In accordance with the Limitation on Damages provisions of the

30

PSLRA, damages on a share purchased during the Class Period (the "90-Day Lookback Period") cannot exceed the difference between the purchase price paid for the stock and the average price of the stock during the 90-Day Lookback Period. Damages on shares purchased during the Class Period and sold during the 90-Day Lookback Period cannot exceed the difference between the purchase price paid for the share and the rolling average price of the stock during the portion of the 90-Day Lookback Period elapsed as of the date of sale. While damages on the Securities Act claims are set by a statutory formula as set forth in the Notice, the Plan of Allocation has also taken into consideration the Secondary Public Offering of the Miller Energy Series D preferred stock and will limit the purchase price per share to $24.50 for those claimants who do not provide adequate documentation of the purchase price on the Claim form.

75.     As of the date of this filing, there have been no objections to the Plan of Allocation. Plaintiffs respectfully submit that it is fair, reasonable, and adequate and should be approved by the Court.

## IV. CMST'S FEE AND EXPENSE APPLICATION AND NAMED PLAINTIFF REIMBURSEMENT AWARDS

76.     In addition to seeking final approval of the Settlement and Plan of Allocation, CMST seeks an award of attorneys' fees and reimbursement of its litigation expenses and reimbursement awards for the three named plaintiffs. Specifically, CMST is applying for a total fee of 33 1/3% of the Settlement Amount ($11,666,667), plus interest at the same rate as that earned on the Settlement Fund, to be paid from the Settlement Fund (the "Fee Application"). CMST further requests that the Court order further briefing by Co-Lead Counsel regarding how the attorneys' fees should be divided between CMST and Mr. Ball's firm in accordance with each firm's respective contributions to the successful resolution of the case, or alternatively refer the

determination of how any attorneys' fee award should be divided among Co-Lead Counsel to Magistrate Judge Poplin, who was involved in a number of the substantive motions filed in this case.

77. CMST also seeks reimbursement from the Settlement Fund of litigation expenses that it incurred in connection with the prosecution of the Action from the Settlement Fund in the amount of $439,548.22. In support, CMST attaches hereto schedules which include the amount of time spent by each attorney and professional support staff on the case, and the expenses for which CMST seeks reimbursement. *See* Exs. 6 and 7. The Named Plaintiffs support the 33.33% attorneys' fee request and the reimbursement of litigation expenses. *See* Ex. 2, Cosby Decl. at ¶5; Ex. 3, Montague Decl. at ¶ 5; Ex. 4, Ziesman Decl. at ¶ 5.

78. Finally, Co-Lead further requests reimbursement awards in the amount of $25,000 for Mr. Cosby and $10,000 each for Mr. Montague and Mr. Ziesman.

## A. CMST's Request for an Award of Attorneys' Fees

79. Based on the factors discussed below, and on the legal authorities discussed in the accompanying Memorandum of Law in Support of CMST's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses and for Referral to a Magistrate Judge for the Appropriate Allocation of the Attorneys' Fee Award, CMST respectfully submits that its request for fees and expenses should be granted.

80. CMST has represented the Settlement Class on a wholly contingent basis for five years, not receiving any payment for its service or the expenses incurred in prosecuting this Action. Throughout this time, CMST's dedication to recovering a favorable result for the Settlement Class has been steadfast.

32

81.     The Notice informed Settlement Class Members that Co-Lead Counsel would apply for attorneys' fees not to exceed 33 1/3% of the Settlement Fund, plus reimbursement of expenses not to exceed $600,000, and for reimbursement awards for the three named plaintiffs not to exceed $45,000 total.

82.     CMST requests that the Court award attorneys' fees in the amount of 33 1/3% of the Settlement Fund, or $11,666,667, plus accrued interest.  As discussed in the Fee Application filed concurrently herewith, the requested fee is within the range of reasonable fees awarded in common-fund cases.

83.     In light of several factors, including the excellent result achieved for the Settlement Class, the skill required, the quality of work performed, and the risk of pursuing claims on a contingency basis, a 33 1/3% fee is justified and should be approved.

84.     From the inception of its role in this case, CMST aggressively litigated this Action. CMST's experience in securities class action litigation allowed its senior lawyers responsible for this case to identify the complex issues involved in this action and to formulate strategies to effectively and efficiently prosecute a case of this complexity.  Additionally, CMST submits that the reputations of its attorneys as able and willing to see a meritorious securities case through trial and appeals substantially assisted in the Settlement negotiations.  In particular, and as set forth in detail in Exhibit 5, CMST is a nationally recognized class-action firm with extensive experience litigating complex class actions, including securities fraud actions against auditors.

85.     The quality of legal services performed by CMST in obtaining the Settlement should also be evaluated in light of the quality of the opposition.  Defendant was represented by very able and zealous counsel, McDermott Will & Emery LLP, Waller Lansden Dortch & Davis

33

LLP and Lewis Roca Rothgerber Christie LLP. Each of those firms possesses significant experience in complex securities class action litigation, and in accounting fraud cases in particular. Defendant's counsel spared no effort in defense of its clients. In the face of this opposition, CMST was nonetheless able to repeatedly secure favorable rulings in response to Defendant's challenges and effectively position to case well for trial, and ultimately settle the Action on terms favorable to the Settlement Class.

86. As discussed above, Plaintiffs and CMST faced significant risks in pursuing the Action and no recovery was assured at trial given the complexities of the issues and the competing expert opinions. Adding to these risks is the contingent nature of the Action and that CMST had no assurance its expenditures of time and resources would be compensated for the past nearly six years of litigation. Recovering its fees and expenses is totally dependent upon a successful result, such as the Settlement here, and an award by this Court.

87. Collectively, CMST expended approximately 6,675 hours in the investigation and prosecution of this Action, which CMST submits were reasonable and reflect their commitment to aggressively pursuing compensation for the Settlement Class, while avoiding unnecessary duplication of tasks. As set forth above, CMST was responsible for virtually all of the daily litigation tasks, the drafting of the operative complaints and virtually all of the briefs, overall strategy for the prosecution of the Action, drafting and responding to discovery, coordination and communication with the retained experts, preparation and presentation of oral arguments and Court appearances and preparation and presentation of mediation statements and mediation negotiations with Mr. Meyer and Magistrate Judge Steger. More specifically, CMST was actively prosecuting this Action up until the time of Settlement, including time spent on: (a) conducting a lengthy and detailed investigation by reviewing and analyzing publicly available information regarding

34

Defendant and Miller Energy, including SEC filings, SEC Order, online and newspapers articles, analyst reports, press releases, stock price movements, earnings conference calls, and analysts presentations; (b) serving, litigating and negotiating a Freedom of Information Act request to the Securities and Exchange Commission; (c) drafting multiple detailed complaints; (d) consulting and working extensively with a damages expert to evaluate market efficiency, loss causation and recoverable damages; (e) consulting with an experienced accounting expert regarding Plaintiffs' claims and the evidence; (f) consulting with an experienced oil and gas expert regarding Plaintiffs' claims; (g) successfully defending against Defendant's multiple motions to dismiss; (h) successfully moving to substitute certain of the Lead Plaintiffs; (i) successfully moving for class certification, which included defending against Defendant's *Daubert* motion and defending each of the Class Representative's depositions; (j) submitting opening and rebuttal expert reports and conducting and defending multiple expert depositions; (k) participating in lengthy oral arguments in support of Plaintiffs' motion for class certification and motion for substitution and in opposition to Defendant's *Daubert* motion; (l) drafting a limited objection to Magistrate Judge Poplin's *Daubert* Order and responding to Defendant's objections to Magistrate Judge Poplin's report and recommendations regarding the motion for class certification and to Magistrate Judge Poplin's order denying Defendant's *Daubert* motion; (m) opposing Defendant's motions to stay proceedings; (n) opposing Defendant's Rule 23(f) petition; (o) engaging in discovery, including numerous meet-and-confers with Defendant and numerous third parties, review of hundreds of thousands of pages of documents, and serving and responding to requests for production, interrogatories, requests for admission and nearly a dozen subpoenas; (p) drafting detailed mediation statements, conducting multiple oral mediation presentations and participating in three

full-day mediation sessions and extensive further negotiations that resulted in reaching the terms of the Settlement.

88.     The time submitted by CMST only includes time expended through March 14, 2022 – the date on which the Motion for Preliminary Approval was filed.  While CMST has and will continue to expend significant time with respect to the finalization and administration of this Settlement, none of this time is included in the fee application.

89.     The information in this declaration regarding CMST's time, including in the schedule attached hereto as Ex. 6, was prepared from daily time records regularly prepared and maintained in the ordinary course of business.  I am the partner who oversaw the work conducted by my firm in this Action.  I reviewed the daily time records and confirmed their accuracy.  The time for timekeepers who had worked only a *de minimis* total amount of time on this case (*e.g.*, less than 20 hours) was removed from the time report.  Time expended in preparing the application for fees and expenses has not been included in this report.  As a result of this review and adjustments, I believe that the time reflected in my firm's lodestar calculation is reasonable in amount and was necessary for the effective and efficient prosecution and resolution of the litigation.

90.     The total number of hours expended on this Action by our firm's attorneys and professional support staff employees, as well as contract discovery counsel, from its inception through March 14, 2022 was 6,675.  Applying the hourly rates of CMST to the 6,675 hours that they collectively expended in the Action yields a lodestar amount of $4,082,955.00.  The schedule attached hereto is a summary reflecting the amount of time spent by each attorney and professional support staff employee of our firm or contract counsel who was involved in the Action, and the

lodestar calculation based on our firm's currently hourly rates. *See* Ex. 6. Thus, the requested attorneys' fee award reflects a multiplier of only 2.86, not including any legitimate time that Mr. Ball actually spent litigating this case.

91. The hourly rates utilized by CMST in calculating its lodestar are set annually by CMST and reflect CMST's current billing rates. For personnel who are no longer employed by CMST, the lodestar calculation is based upon the billing rates of such personnel in his or her final year of employment by the firm. The hourly rates are comparable to the rates submitted by our firm and approved by courts for lodestar cross-checks in other securities class action litigation fee applications in the Middle District of Tennessee and other Districts across the country, including less than a year ago in *Weiner v. Tivity Health, Inc., et al.*, Case No. 3:17-cv-01469, at Doc. No. 172-5 at Ex. 1 (M.D. TN Sept. 13, 2021) (using hourly rates comparable to those submitted here) (attached hereto as Ex. 8); *see, also, e.g. Weiner v. Tivity Health, Inc., et al.*, Case No. 3:17-cv-01469, at Doc. No. 177 (Oct. 7, 2021) at 2 (Order awarding fees using lodestar cross-check submitted by CMST) (attached hereto as Ex. 9); *City of Birmingham Ret. And Relief Sys., et al. v. Credit Suisse Grp. AG, et al.,* Case No. 1:17-cv-10014-LGS, at Doc. No. 151-8 at ¶ 6 (S.D.N.Y. Nov. 5, 2020) (submission of CMST hourly rates ranging from $245 to $1,075) (attached hereto as Ex. 10); *City of Birmingham Ret. And Relief Sys., et al. v. Credit Suisse Grp. AG, et al.,* Case No. 1:17-cv-10014-LGS, at Doc. No. 158 (Dec. 17, 2020) at 8 (Order awarding fees using lodestar cross-check submitted by CMST) (attached hereto as Ex. 11), as well as submissions by other law firms working on class actions in this District. *See, e.g.,* Ex. 12, *Zwick Partners, LP v. Quorum Health Corp.*, No. 3:16-cv-02475, at Doc. No. 351 at ¶ 103 (Md. Tenn. Nov. 9, 2020) (using lodestar calculus where hourly rate ranged from $485 to $1000); Ex. 13, *Zwick Partners, LP v. Quorum Health Corp.*, No. 3:16-cv-02475, at Doc. No. 359 (Nov. 30, 2020) at 12-13 (citing lead

37

counsel's lodestar cross-check calculation in awarding requested attorneys' fees of 30% of $18 million plus expenses). Our firm's lodestar figures are based solely upon the firm's hourly rates and do not include expense items. Expense items are recorded separately as discussed below.

### B. CMST's Request for Reimbursement of Litigation Expenses

92. CMST incurred $439,548.22 of unreimbursed expenses in connection with the prosecution of this action from its inception through March 14, 2022. Ex. 7. CMST respectfully submits that these expenses – much of which related to the cost of the essential expert discovery in this case – were reasonable, in line with typical expenses incurred in a securities class action, and necessary in light of the complexity of the litigation, and that reimbursement of these expenses would be appropriate and fair to the Settlement Class. No potential Settlement Class Members have objected to the requested expense reimbursement as of the date of this filing.

93. The expenses incurred in this Action are reflected in the books and records of CMST, which are regularly prepared and maintained in the ordinary course of business. These books and records are prepared from expense vouchers, check records, invoices and other source materials and are an accurate record of the expenses incurred.

94. CMST incurred these expenses at substantial risk to itself and with no guarantee of receiving any reimbursement, or, indeed, any remuneration whatsoever. It could not have effectively prosecuted the Action without incurring these expenses.

95. For example, CMST engaged the services of KL Discovery to host its database of electronically stored information produced in this Action, and CMST could not have managed electronic discovery of the volume produced here without the services of such a vendor.

96.     In addition, effective prosecution of the Action required the extensive services of the damages, materiality, loss causation, and market efficiency expert Chad Coffman.  Mr. Coffman prepared an expert report and a rebuttal report concerning class certification issues and damages issues of this Action and gave deposition testimony twice.  This Action also required the extensive services of Harris L. Devor of Friedman LLP, an audit and forensic accounting expert, in order to review and analyze KPMG's accounting services provided and audit workpapers prepared pursuant to its engagement for Miller Energy.

97.     Other substantial expenses included (i) deposition fees and travel expenses when required in connection with those depositions; (ii) travel fees for CMST to appear at hearings and the mediation sessions; (iii) mediation fees; and (iv) online legal research.  All of the expenses incurred were necessary to prosecute the Action effectively.

## C.  Co-Lead Counsel's Request for Reimbursement Awards to the Plaintiffs

98.     Co-Lead Counsel requests reimbursement awards of $25,000 for Mr. Cosby, and $10,000 each for Mr. Montague and Mr. Ziesman.  These Plaintiffs supervised Co-Lead Counsel, participated in all aspects of the litigation, reviewed court filings, provided deposition testimony and produced documents, periodically met with Co-Lead Counsel for updates, participated actively in the settlement negotiations, including Mr. Cosby attending and actively participating in person in each of the mediation sessions, and ultimately approved the Settlement.  In addition, Mr. Cosby was actively involved in reviewing and identifying important documents in Defendant's document production throughout the litigation.  In doing so, the Plaintiffs dedicated substantial time and effort towards this litigation for several years.  The requested reimbursement award is justified given the Plaintiffs' commitment to the Settlement Class and the sacrifice of time.

## V. CONCLUSION

99.     For all of the reasons discussed above, CMST respectfully submits that the Settlement and the Plan of Allocation should be approved as fair, reasonable, and adequate.  CMST further submits that the requested fee in the amount of 33 1/3% of the Settlement Fund plus interest, should be approved as fair and reasonable, CMST's request for reimbursement of total litigation costs and expenses in the amount of $439,548.22 should be approved, and the Plaintiff reimbursement awards in the amount of $45,000 should also be approved.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 31st day of May, 2022, at New York, New York.


*/s/ Laura H. Posner*
Laura H. Posner