# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT

LEWIS COSBY, ERIC MONTAGUE, and MARTIN
ZIESMAN, as Co-Trustee for the Carolyn K.
Ziesman Revocable Trust, on behalf of
themselves and all others similarly situated
individually and on behalf of all others
similarly situated,

                   Plaintiffs

v.

KPMG, LLP,

                   Defendants

Civil Action No. 3:16-cv-121 (TAV)
Judge Thomas Varlan
Magistrate Judge Deborah Poplin

## UNSWORN DECLARATION OF GORDON BALL
## IN RESPONSE TO DECLARATION OF STEVE TOLL

I, Gordon Ball, declare the following statements are true and correct and that the following statements are of my own personal knowledge and if called as a witness I would competently testify regarding the same. I declare under penalty of perjury under the laws of the United States of America that the statements hereinafter made are true and correct. This declaration is made pursuant to 28 USC §1746.

1. Cohen Milstein was not mine nor Lewis Cosby's first choice to assist us in this case. We interviewed other firms prior to my transplant and discussed with each firm a 50/50 equal split on fees and expenses. Mr. Cosby will testify to this fact. I told Steve Toll that we would do the case on a 50/50 basis as to fees and expenses. Mr. Toll agreed. I also told him that I believed that the Tennessee Rule of Professional Conduct 1.5(e) required us to have a signed agreement with the client(s) and inform the client(s) of our fee agreement.

2. On April 12, 2017, I caused an email to be sent to be sent to Steve Toll and Cohen Milstein attorney Times Wang with an attached agreement for the class representatives that complied with the Tennessee Rules. (Email attached as Exhibit 1). I never received a response from Mr. Toll.

3. On April 13, 2017, I received an email from Don Daugherty describing that Times Wang of Cohen Milstein would be in China in early May 2017. Further, Don Daugherty stated that we had ample time to do the fee agreement in writing. (Email attached as Exhibit 2). Don Daugherty, Times Wang and I were writing the first amended complaint which was due on May 5, 2017. The amended complaint was essential because we added the evidence taken from Miller CFO, Paul Boyd, and Miller Executive, Bobby Gaylor. I had previously taken the sworn statements of Boyd and Gaylor in 2016.

**My History with Cosby v. Miller/KPMG**

4. Lewis Cosby and I had started working on this case in March 2015 and had spent hundreds of hours on the investigation of the case prior to the filing of the complaint in March of 2016. In 2016, Mr. Cosby and I took the sworn statements of KPMG employees, Paul Boyd and Bobby Gaylor. I engaged and received a damage report from Nathan and Associates. Mr. Cosby and I reviewed all the Alaskan Oil bankruptcy documents and the reports concerning the value of the Alaskan Oil assets. We reviewed the SEC filings (8K and 10K) of Miller Energy. All of this was done prior to October 2016. I received a heart transplant on the morning of October 21, 2016. The day before, October 20, 2016, I worked in my office with Lewis Cosby on the Miller/KPMG case.

5. I returned to work on April 15, 2017 and worked continuously on the case after that.

Lewis Cosby, Don Daugherty, Times Wang and I wrote the response to the motion to dismiss. Neither Laura Posner nor Steve Toll was involved. Mr. Toll states that there was nothing to do while the case was stayed between 2017 and 2019. During this time, Lewis Cosby and I prepared 451 Requests to Admit and reviewed each and every response from KPMG. Lewis Cosby and I prepared discovery requests and all Rule 30b)(6) requests to be propounded to KPMG. In February 2019, I reviewed in depth the discovery which we received concerning the 2011 audit by KPMG. This audit was the key audit because the first audit established what KPMG really did. All the later audits were copycat audits. Lewis Cosby and I both realized that we would never win this case if we had to rely on proving the value of the Alaskan Oil fields. Lewis Cosby and I researched the asset purchase issue and realized that the purchase of the Alaskan Oil filed by Miller Energy in 2009 was an asset purchase. It is undisputed that an asset purchase cannot have a bargain sale value attached to that purchase. Lewis Cosby and I had to hire a separate expert, Larry Crumley, to be able to testify to an asset purchase. I hired not only Mr. Crumley but retained Mark Zyla as a value expert in this case.

6. I have been contacted by over 50 separate investors in this case. I have communicated with these clients for years. Cohen Milstein has never met these clients. I furnished the names of class representative Eric Montague and Martin Ziesman to Laura Posner. Further, a small but important fact is that Lewis Cosby and I added preferred stockholders to the last amended complaint.

7. I thought in 2016 and early 2017 that I might not survive the heart transplant. Fortunately, I was able to return to work on April 15, 2017. I have always been intimately involved in _my_ case. In 2015 through mid-2018 I worked continuously with my full-time writer, Don Daugherty and Lewis Cosby who had an office in my law office. Lewis Cosby and I

extensively prepared to take the depositions of the KPMG employees on two different occasions. In May 2021 I wrote Laura Posner that I intended to take the depositions of KPMG employees. Laura Posner refused. (A copy of the email is attached as Exhibit 3).

8. In July 2020, I wrote Steve Toll the attached letter concerning this case and two other ongoing cases that we were co-counsel with (the Gatlinburg Fire case and the Deloitte case in South Carolina). Steve Toll replied to me that no agreement as to fees and expenses existed as to the instant KPMG case. (A copy of the letter dated July 13, 2020 is attached as Exhibit 4). Since that time, I have always known that in the event of a settlement in this case, a fee dispute was inevitable.

9. I am at a loss to explain Steve Toll's conflicting stance between his declaration and the notice of the proposed settlement to the class. Cohen Milstein notified this Court and class members of the Proposed Settlement in paragraph 73 as follows, referring to a fee agreement negotiated with co-lead counsel:

> **"Lead plaintiffs negotiated a fee agreement with co-lead counsel** which permits co-lead counsel to apply for fees of up to 33-1/3% of the settlement fund plus out of pocket expenses. For the settlement, co-lead counsel intends to request a fee of 33-1/3% of the net recovery to the class, plus reimbursement of out of pocket expenses. The fees would pay the lawyers for investigating the facts, actively litigating the case for several years and negotiating the settlement."

(Emphasis added). The fee agreement negotiated with co-lead plaintiff actually provides at paragraph XII as follows:

> XII. ATTORNEYS' SERVICES AND FEE-SHARING:
> The Attorneys listed in Paragraph 1 herein have agreed that each named firm has provided and will continue to provide legal services to the Client and **that each firm shall share equally in all attorneys' fees earned or awarded in the**

> **litigation.** The expectation is that each firm will provide equivalent value services, albeit different services, in connection with this litigation and, further, each firm assumes joint financial responsibility for the litigation. The Attorneys have further agreed, pursuant to Paragraph V, that any non-reimbursed reasonable expenses shall be paid from the attorneys' fee funds prior to division among attorneys.

(Emphasis added.)

10. I am aware that only one lead plaintiff actually signed a fee agreement. That lead plaintiff was Eric Montague who signed the agreement in 2018. This is the same form agreement that was sent to Toll on April 12, 2017. (A copy of the signed agreement is attached as Exhibit 5).

11. Lewis Cosby has always been the unquestioned class representative in this case. This case was Lewis Cosby's brain child and he nursed it from birth through the settlement. Lewis Cosby will testify as to my value to the case and his own value. Lewis Cosby will tell the court that I had as many hours, if not more, than he had in this case.

12. In further support, attached is the declaration of Times Wang. (Exhibit 6) Respectfully submitted this 28th day of June 2022.

*s/Gordon Ball*
Gordon Ball